IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| In re: | ) | Case No. 26-17757-MMH |
| | ) | (Chapter 11) |
| PSC Thrive, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Case No. 26-17758-MMH |
| In re: | ) | (Chapter 11) |
| | ) | |
| Jenk's Best Living, LLC | ) | *Joint Administration Motion Pending* |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**MOTION FOR LEAVE TO INCUR
POST-PETITION DEBTS AND USE CASH COLLATERAL**

Come now Jenk's Best Living, LLC ("Jenk's") and PSC Thrive, LLC ("PSC") (collectively, the "Debtors" and each a "Debtor"), by and through undersigned proposed counsel, pursuant to sections 363 and 364 of title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and move this Honorable Court for leave to (i) use the cash collateral of one or more creditors, post-petition; (ii) provide adequate protection to those creditors whose cash collateral is so utilized; and (iii) obtain credit from one or more insiders, post-petition, and in support thereof state as follows:

**I.      Introduction**

These cases concern an apartment building, a dispute as to the ownership thereof, and a healthy quotient of malfeasance, misfeasance, and nonfeasance on the part of third parties. Yet, for all the eccentricities of these cases, two familiar bankruptcy-centric truths are at the fore of the Debtors' efforts to reorganize: (i) the Debtors will need cash to operate while in chapter 11; and

1

(ii) a traditional first position mortgage (inclusive of an assignment of rents clause), on Jenk's apartment building, needs to be serviced during the pendency of these cases.

To achieve these ends, what the Debtors ask is markedly modest: an insider will lend monies to either or both bankruptcy estates, at 8% per annum, with the resulting obligation being an unsecured administrative expense obligation. No priming lien is being sought. No roll up of pre-petition debt is being sought. And no exit fee is being sought. All that is proposed is a simple, commercially reasonably loan, provided in the form of a line of credit to be drawn as-needed with an eye toward ensuring sufficient cash flow to navigate the chapter 11 process.

It is strongly suspected that once Jenk's regains unqualified control of the apartment building at the center of these cases, the need for post-petition financing will abate. The property has a healthy rent roll and the income flowing from tenants' monthly remittances should be more-than-sufficient to cover (i) operating expenses; (ii) the service of legitimate secured debt; and (iii) the administrative expenses of chapter 11. But until such a time as control is reestablished and rent collections are stabilized, the Debtors will need money. And the terms on which such funds are being made available, as proposed herein, are eminently reasonable and will ultimately well promote the advancement of this case.

## II.    Standard

Title 11 of the United States Code (the "Bankruptcy Code") expressly contemplates the provision of debtor-in-possession ("DIP") financing by third parties:

> The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this as an administrative expense.

11 U.S.C. § 364(b).

The permitting of cash collateral usage is also specifically provided for by the Bankruptcy Code, which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.     Argument: DIP Loans Should be Permitted

The Debtors are keen to ensure their post-petition obligations—including adequate protection payments to a legitimate secured lender, as discussed *infra*—are made without issue. However, until such a time as Jenk's firmly regains control of the apartment complex at the center of these cases, the entities will be without sufficient operating revenue to make these payments. And this is accordingly a case where DIP financing is not only sensible but, too, largely necessary.

In assessing a proposed DIP loan, the core question is whether or not the proposed borrowing activity is a sound exercise of a given debtor's business judgment. *See In re Clouter Creek Res. LLC*, 669 B.R. 764, 789 (Bankr. D.S.C. 2025). *See also In re TVI Corp.*, 2009 Bankr. LEXIS 5357, at *23 (Bankr. D. Md. May 5, 2009).

Here, an insider of the Debtors (the "DIP Lender") has offered to make up to $600,000.00 available, on a revolving basis, to any combination of the two entities' bankruptcy estates, on the conditions spelled out in the term sheet appended hereto as Exhibit A. The terms are sufficiently generous as to assuredly constitute a reasonable exercise of both Debtors' business judgment.

Critically, while the DIP Lender *is* an insider of the Debtors, the proposed DIP financing terms are more favorable to the Debtors than would be those attainable on the open market.

3

Specifically, and without limitation, the term sheet provides for (i) interest only to accrue on monies actually drawn, from the time at which they are drawn; (ii) interest at a rate that mirrors what banks charge consumers in the present environment (a rate palpably lower than that which anecdotally predominates in the DIP financing industry); (iii) no exit fee; (iv) no commitment fee; (v) no prepayment penalty; and (vi) no security interest.

The Debtors' insider is—very cognizantly—*not* being opportunistic in connection with the provision of DIP financing. What is proposed herein is basically a loan at below-market rates, without any security whatsoever (not even a lien on chapter 5 claims). While the financing is assuredly not gratuitous (interest is being charged), the financing is also far friendlier than would be otherwise available to the Debtors. Such is designed to permit these cases to proceed without any immediate concerns about the sufficiency of cash on hand or the Debtors' abilities to continue in operation of a preeminent apartment building of which they are striving to regain firm possession.

## IV.    Argument: Cash Collateral Utilization Should be Permitted

There is one undisputed lien on the property held by Jenk's, which the Debtors uniformly believe ought to be serviced without disruption or incident: a multifamily mortgage, assignment of leases and rents, and security agreement (the "Valid Mortgage"), in favor of Berkadia Commercial Mortgage LLC ("Berkadia"), securing a loan in the principal sum of $18,960,000.00, made pursuant to a program of the United States Department of Housing and Urban Development ("HUD"). *See* Valid Mortgage, attached hereto as Exhibit B. The Valid Mortgage is on enormously favorable terms. The Valid Mortgage secures a valid debt. And the Debtors are markedly keen to ensure they not fall any further into arrears on the Valid Mortgage or risk any compromise of their relationship with HUD.

As noted by the United States Court of Appeals for the Eleventh Circuit: "Adequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc*., 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or (iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also In re JKJ Chevrolet, Inc*., 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995), subsequently aff'd, 117 F.3d 1413 (4th Cir. 1997) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the debtor may provide an additional or replacement lien to the extent of a decrease in the value of the

property. Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Here, as titularly indicated, the Valid Mortgage is inclusive of an assignment of rents. Yet, as noted *supra*, the Debtors plan to ultimately look to rents collected from operation of the underlying asset to (i) make payments on the Valid Mortgage; (ii) pay ordinary operating expenses; and (iii) pay the costs of chapter 11 administration. So what the Debtors propose is quite simple: they continue to pay the Valid Mortgage (or, more precisely, the promissory note secured thereby) every month, on time, and without issue, as a form of adequate protection to Berkadia and HUD.[1]

To be clear, there does exist an extant default on the Valid Mortgage—which the Debtors will look to the DIP loan to remedy in due course. Once the Valid Mortgage is not in default, the assignment of rents thereunder will cease being in effective (or, more precisely, will remain in effect but with Jenk's permitted to utilize the funds pursuant to the terms of the lien instrument). *See* Valid Mortgage, attached hereto as Exhibit B, at § 3(a). So the payment of each month's mortgage obligation, to Berkadia, will work not merely to keep the Debtors in good standing under the applicable loan terms but, too, to ensure Berkadia and HUD receive the precise variety of protection in bankruptcy that they bargained to receive outside of bankruptcy.

V.     Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit the Debtors to incur credit obligations post-petition on the terms set forth on the Term Sheet appended hereto

---

[1] The Debtors are in the process of preparing a budget that will be presented as an exhibit at a hearing on this motion and appreciate that such a budget is necessary to the approval of the use of cash collateral. Here, given certain tumult in the operation of Jenk's asset, the Debtors propose a 20% variance be permitted for the first two months of this case, with a 10% variance thereafter being more appropriate. The Debtors further urge the variance ought to be on a gross basis, per each budgeted period, and not specific to any line item therein.

as Exhibit A; (ii) permit the Debtors to use cash collateral; (iii) direct the Debtors to make ordinary monthly mortgage payments to Berkadia, as adequate protection for the use of cash collateral; and (iv) afford such other and further relief.

Respectfully submitted,

Dated: July 19, 2026                    By:     /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig, Esq.
                                                Bar No. MD18071
                                                The VerStandig Law Firm, LLC
                                                9812 Falls Road
                                                #114-160
                                                Potomac, Maryland 20854
                                                (301) 444-4600
                                                mac@mbvesq.com
                                                *Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7