IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| In re: | ) | Case No. 26-17757-MMH |
| | ) | (Chapter 11) |
| PSC Thrive, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Case No. 26-17758-MMH |
| In re: | ) | (Chapter 11) |
| | ) | |
| Jenk's Best Living, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Jenk's Best Living, LLC | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marc Kulick; Vesta Realty, LLC; Vesta | ) | |
| Capital, LLC; YSA Investments 1, LLC; | ) | |
| and Bocaire Tulsa Lender, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT (i) TO AVOID PREFERENTIAL
TRANSFERS AND FRAUDULENT CONVEYANCES; (ii) FOR
DECLARATORY RELIEF TO REMOVE THE CLOUD ON TITLE;
AND (iii) FOR BREACH OF FIDUCIARY DUTY**

Comes now Jenk's Best Living, LLC ("Jenk's" or the "plaintiff" or the "Debtor"), by and

through undersigned proposed counsel and undersigned proposed special counsel, pursuant to

Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for

its complaint (the "Complaint") against Marc Kulick ("Mr. Kulick"), Vesta Realty, LLC ("VRL"),

Vesta Capital, LLC ("VCL"), YSA Investments 1, LLC ("YSA") and Bocaire Tulsa Lender, LLC

1

("Bocaire") (Mr. Kulick, VRL, VCL, YSA and Bocaire are referred to collectively as the "Defendants" and individually as a "Defendant") states as follows:

**Introduction**

1. This action seeks to remove several encumbrances from the title to the Debtor's apartment complex in Jenks, Oklahoma (the "Apartment Complex" or "Thrive") or, alternatively, to avoid the imposition of those encumbrances as preferences and/or fraudulent conveyances. Mr. Kulick, acting through entities he controlled, pledged the Debtor's sole asset as collateral for millions of dollars of loans that the Debtor never requested, never approved, never guaranteed, and from which the Debtor received no benefit. The Debtor's operating agreement (the "Operating Agreement") expressly prohibited those transactions without the unanimous consent of all members. That consent was never obtained. Because Mr. Kulick lacked the authority to encumber the property, the recorded instruments are invalid clouds on the plaintiff's title.

2. The Debtor is a manager-managed limited liability company formed for the sole purpose of owning and operating a multifamily apartment community in Jenks, Oklahoma. The Operating Agreement carefully limits the managing member's authority and reserves to the unanimous consent of all members any decision to borrow money, grant security interests, mortgage the property, transfer interests in the property, or otherwise encumber its sole asset.

3. Those limitations were central to the agreement among the members. The limitations ensured that no manager could unilaterally place the Debtor's property at risk to finance unrelated ventures or to satisfy obligations owed by other persons or entities.

4. Mr. Kulick disregarded those limitations. He purported to grant mortgages, negative pledges, option rights, and other security interests affecting the property in connection

with loans made primarily to entities affiliated with him. The Debtor neither authorized those transactions nor received the loan proceeds.

5.      The result is a title burdened by millions of dollars in unauthorized encumbrances that materially impair the Debtor's ability to sell, refinance, and properly operate the Apartment Complex.

6.      Because Mr. Kulick lacked authority to create these interests, the challenged instruments were executed without actual authority under the Operating Agreement and therefore void or, alternatively, voidable and subject to cancellation. The Debtor therefore seeks declaratory relief declaring the challenged instruments void or voidable and subject to cancellation, including the cancellation of the recorded instruments, damages for breach of fiduciary duty, and injunctive relief preventing the Defendants from acting on the challenged instruments and preventing Mr. Kulick from entering further unauthorized encumbrances.

7.      One of the Defendants is already acting upon the unauthorized instruments by asserting ownership of the property and attempting to seize control of its management. Unless immediately enjoined, the Defendants will continue to interfere with the Debtor's ownership, possession, operation, and financing of its sole asset, causing irreparable harm for which there is no adequate remedy at law.

8.      In the alternative, if the Apartment Complex has been validly conveyed (which plaintiff denies) to one or more of the Defendants, this suit seeks to avoid such conveyance pursuant to the allowances of title 11 of the United States Code (the "Bankruptcy Code") and, more specifically, chapter 5 thereof. The putative conveyance of the Apartment Complex pursuant to a deed in lieu of foreclosure occurred less than 90 days before these bankruptcy cases were commenced, rendering the putative conveyance an avoidable preference. Similarly, given the

3

wholesale lack of consideration to the Debtor and the existence of *bona fide,* unrelated obligations of the Debtor to third parties, the putative conveyance was, too, a fraudulent conveyance.

## Parties

9. The Debtor is a Kansas limited liability company that owns the Apartment Complex.

10. Defendant VRL is a Kansas limited liability company with a principal office at 6911 S 66th E Ave, Suite 100, Tulsa, OK 74133.

11. Defendant VCL is a Kansas limited liability company with a principal office at 6911 S 66th E Ave, Suite 100, Tulsa, OK 74133.

12. Defendant Mr. Kulick is an individual residing in Oklahoma.

13. Defendant YSA is a Delaware limited liability company with a mailing address at 8 The Green #23817, Dover, Delaware 19901. YSA claims an interest in the Apartment Complex pursuant to a Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing recorded in the land records of Tulsa County as Document No. 2025099639, and a Deed in Lieu of Foreclosure recorded as Document No. 2026057371.

14. Defendant Bocaire is a Delaware limited liability company with its principal place of business at 4092 Bocaire Boulevard, Boca Raton, Florida 33487. Bocaire claims interests in the Apartment Complex pursuant to the Option Agreement and Negative Pledge Agreement recorded in the land records of Tulsa County as Document Nos. 2026054355 and 2026054356.

## Jurisdiction and Venue

15. This Honorable Court enjoys jurisdiction over the instant proceeding pursuant to the allowances of section 1334 of title 28 of the United States Code, insofar as various causes of action set forth herein arise under the Bankruptcy Code.

16.     Venue is properly laid in this Honorable Court pursuant to the allowances of section 1409 of title 28 of the United States Code insofar as the chapter 11 case of the Debtor is pending in this Honorable Court.

**General Allegations**

A. The Property and Governing Operating Agreement

17.     The Debtor was formed in 2017 to purchase and manage a multifamily apartment building in Jenks, Oklahoma.

18.     The Apartment Complex, known as Thrive, is located at 204 S Riverfront Drive, Jenks, OK 74037 and is more particularly described as follows: VILLAGE ON MAIN II, an Addition to the City of Jenks, Tulsa County, State of Oklahoma, according to the recorded plat.

19.     The Debtor purchased the Apartment Complex on November 13, 2017 and is the sole owner thereof.

20.     The Debtor has been in sole possession of Thrive since that date.

21.     The Debtor is governed by the Operating Agreement, which defines the rights and authority of its manager, managing member, and members.

22.     Pursuant to the Operating Agreement, VRL served as the manager of the Debtor, and VCL served as its managing member. At times relevant to this Complaint, Mr. Kulick was the designated representative of those entities and exercised their management authority with respect to the Debtor. (For want of ambiguity, the management of the Debtor was replaced pre-petition and the Debtor has been managed by its chief restructuring officer since just prior to seeking chapter 11 relief.)

23.     The Operating Agreement prohibits the managing member from permitting or engaging in the following activities without the consent of all members: "Transfer any interest in

5

the Property, except as otherwise provided in this Agreement"; "Create, incur, or become obligated for any bank indebtedness other than the Approved Financing"; or make any "indebtedness obligation or financing arrangement" beyond a specific loan described in the Operating Agreement. §8.2; 9.1(b). The Operating Agreement is attached hereto as Exhibit A.

24.     Under the Operating Agreement, the prohibition on "transfer[ing] any interest" means "to, directly or indirectly, sell, transfer, assign, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, pledge, encumbrance, hypothecation, or similar disposition." §1.1(vv).

25.     These limitations are mandatory. Mr. Kulick possessed no authority to disregard them.

26.     The only indebtedness and security interest authorized by the Operating Agreement is a mortgage in favor of the United States Department of Housing and Urban Development ("HUD") recorded in the land records of Tulsa County as Document No. 2021102994. The Operating Agreement authorized no additional borrowing, financing arrangement, mortgage, lien, security interest, option, or other encumbrance affecting the property without the consent of all members.

27.     The Operating Agreement requires prior written consent from HUD for "any grant of a security interest in any of [the Debtor's] assets or mortgaged property." §14.3(d).

28.     The Operating Agreement defines and limits the managing member's authority. Where the Operating Agreement withholds authority to borrow money, grant mortgages, create security interests, transfer interests in company property, or otherwise encumber company assets

absent unanimous member consent, any purported exercise of those powers without the required consent exceeds the managing member's authority and is unauthorized.

29.     The Operating Agreement was the exclusive source of the managing member's authority to act on behalf of the Debtor. Neither Mr. Kulick, the Vesta entities (VCL and VRL), nor any person purporting to act through them could create authority by representation, implication, power of attorney, or otherwise where the Operating Agreement expressly denied that authority.  Because the Operating Agreement expressly withheld that authority unless all members consented, Mr. Kulick possessed no authority to bind Jenk's Best Living in the challenged transactions.

30.     The Operating Agreement is not merely evidence relevant to this dispute. It is the legal instrument that defines the existence and scope of Mr. Kulick's authority to act on behalf of the Debtor. Because that agreement expressly withheld authority to borrow money, mortgage the property, transfer interests in the property, grant security interests, execute options, create negative pledges, or otherwise encumber Thrive absent unanimous member consent, Mr. Kulick possessed no actual authority to undertake the challenged transactions. As a matter of agency law, neither Mr. Kulick nor any person acting through him could convey authority that the Operating Agreement expressly denied.

B.     The YSA Mortgage

31.     On October 31, 2025, defendant YSA recorded a Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing in the land records of Tulsa County as Document No. 2025099639.

32.     The recorded mortgage purports to encumber the Apartment Complex as security for approximately $7.5 million in obligations owed by Vesta-affiliated entities.

7

33.     YSA is a lending entity owned and controlled by Efraim Diveroli ("Mr. Diveroli"), a former arms dealer. Numerous court filings demonstrate YSA's exorbitant interest rates, aggressive tactics,  and extensive litigation involving Mr. Kulick and others.

34.     Court filings describe Mr. Diveroli as "a repeat litigant notorious for weaponizing baseless lawsuits to force businesses into transactions that benefit him financially." *Maddox Defense, Inc. v. Diveroli*, Case No. 3:26-cv-02992, Complaint at ¶ 1 (S.D. Cal. May 13, 2026).

35.     The mortgage was executed by YSA, purporting to act as attorney-in-fact for the Debtor, under a purported power of attorney from Mr. Kulick in his capacity as the authorized member of VCL, which in turn purported to act as the managing member of the Debtor.

36.     VCL possesses no authority under the Operating Agreement to borrow money, execute loan documents, grant security interests, mortgage the property, or otherwise bind the Debtor without the consent of all members.

37.     The Debtor never authorized, approved, or ratified the YSA loan or the mortgage securing that loan.

38.     The unanimous consent required by the Operating Agreement was never sought nor obtained. In fact, the remaining members had no knowledge of these agreements.

39.     The Debtor was not the borrower under the loan documents and received none of the loan proceeds. Instead, the loan was made for the benefit of entities affiliated with Mr. Kulick.

40.     Although the Debtor was not the borrower, court documents have revealed details of the loans. Interest rates on the loans went up to 7,000% per annum, compounded daily. Small loans have compounded to over $925,000,000.00 owed.

41.     At the time the mortgage was accepted and recorded, YSA either knew Mr. Kulick lacked authority or, at a minimum, had access to the Operating Agreement, which established that Mr. Kulick lacked authority to encumber the property without unanimous member consent.

42.     The YSA transaction itself demonstrated that Mr. Kulick lacked authority. The loan documents identify borrowers and obligors other than the Debtor, yet the mortgage purports to encumber property owned exclusively by the Debtor. Those circumstances would have alerted any reasonable commercial lender that further inquiry into Mr. Kulick's authority was required before accepting and recording the mortgage.

43.     The transaction was extraordinary on its face. The recorded mortgage purported to encumber real property owned exclusively by the Debtor as collateral for obligations of separate entities affiliated with Mr. Kulick. The Debtor was not identified as the borrower, did not receive the loan proceeds, and received no consideration in exchange for placing its sole asset at risk.

44.     A reasonably prudent commercial lender presented with such a transaction would have recognized that the person purporting to act on behalf of the property owner lacked authority to do so. At a minimum, those circumstances required YSA to determine whether Mr. Kulick possessed authority under the Debtor's governing documents before accepting and recording the mortgage and related instruments.

45.     Had YSA made even a reasonable inquiry, it would have discovered that the Operating Agreement expressly withheld from Mr. Kulick and the Vesta entities the authority to mortgage, pledge, transfer, or otherwise encumber Thrive without the unanimous consent of all members. That consent was never obtained.

46.     YSA therefore accepted the challenged instruments with actual knowledge, or in conscious disregard, of facts demonstrating that Mr. Kulick lacked authority to bind the Debtor.

9

At a minimum, the extraordinary nature of the transaction placed YSA on inquiry notice that Mr. Kulick's authority required independent verification. YSA deliberately chose not to undertake that inquiry and instead proceeded to accept and record the challenged instruments in bad faith.

47.     YSA accepted and recorded the challenged instruments despite possessing actual knowledge, or at a minimum, knowledge of facts that would have caused any reasonably prudent commercial lender to question Mr. Kulick's authority. Rather than determining whether the Operating Agreement authorized the transaction, YSA deliberately proceeded despite obvious circumstances demonstrating that the Debtor was pledging its sole asset to secure obligations it did not owe and from which it received no consideration.

48.     On June 17, 2026, YSA used the same power of attorney to transfer Thrive to YSA via a deed in lieu of foreclosure. That document was recorded on June 23, 2026 at Doc #: 2026057371. The document purported to transfer Thrive, a property valued in excess of $20 million, to satisfy the $7.5 million recorded YSA mortgage.

49.     YSA either knew or recklessly disregarded that the alleged loans benefited an entity controlled by Mr. Kulick, rather than the entity that owned the property and purportedly granted the encumbrances.

50.     The foregoing circumstances permit no reasonable conclusion other than that YSA understood the transaction was extraordinary and that Mr. Kulick's authority to bind the Debtor was, at a minimum, highly questionable. Rather than verifying that authority, YSA deliberately proceeded with the transaction despite obvious warning signs, consciously disregarding a substantial risk that Mr. Kulick lacked authority to encumber plaintiff's sole asset. Such conduct was undertaken in bad faith.

51. Because Mr. Kulick lacked authority to grant the mortgage, and because the required unanimous member consent was never obtained, the mortgage recorded as Document No. 2025099639 is unauthorized and constitutes an improper cloud on the Debtor's title.

52. YSA then contacted the Debtor's management software company used to manage the property and tried to transfer the account to Mr. Diveroli.

53. Access to the Debtor's management systems would permit defendants to interfere with rent collection, vendor relationships, financial reporting, maintenance operations, tenant communications, and the ordinary management of Thrive.

54. YSA took active steps to lock the Debtor out of its bank accounts, causing problems with the Debtor's financial institutions.

C. The Bocaire Tulsa Lender, LLC Loan and Cloud on Title

55. On June 15, 2026, defendant Bocaire recorded an Option Agreement and a Negative Pledge Agreement in the land records of Tulsa County as Document Nos. 2026054355 and 2026054356.

56. Those recorded instruments purport to grant Bocaire the unilateral right to purchase the Apartment Complex and prohibit the Debtor from selling, transferring, mortgaging, or otherwise encumbering the property without Bocaire's consent.

57. The recorded instruments purport to secure a loan evidenced by a promissory note identifying the Debtor and Jenk's Best Living Investors, LLC as borrowers. Jenk's Best Living Investors, LLC is a Vesta-controlled member of the Debtor.

58. The Debtor never authorized, approved, or ratified the loan transaction, the promissory note, the Option Agreement, the Negative Pledge Agreement, or any related security documents.

11

59. The unanimous member consent required by the Operating Agreement was never obtained.

60. The loan proceeds were not obtained for the benefit of the Debtor. Rather, the financing was undertaken for the benefit of entities affiliated with Mr. Kulick.

61. Under the Operating Agreement, Mr. Kulick lacked authority to borrow money on behalf of the Debtor, execute the loan documents, grant an option affecting the property, enter into a negative pledge, or otherwise encumber the property without the unanimous consent of all members.

62. At the time Bocaire accepted and recorded the Option Agreement and Negative Pledge Agreement, it either knew or, at a minimum, had access to the Operating Agreement, which established that Mr. Kulick lacked authority to grant those interests without unanimous member consent.

63. Bocaire either knew or recklessly disregarded that the alleged loans benefited a Mr. Kulick-controlled entity, Jenk's Best Living Investors, LLC, which is a member of the Debtor, and the loan did not benefit the entity that owned the property and purported to grant the encumbrances.

64. The same circumstances likewise imposed upon Bocaire a duty to ascertain whether Mr. Kulick possessed authority to bind the Debtor. The transaction purported to grant Bocaire substantial rights affecting plaintiff's sole asset in connection with financing that principally benefitted entities affiliated with Mr. Kulick rather than the Debtor.

65. Bocaire knew that the Operating Agreement expressly prohibited Mr. Kulick and the Vesta entities from borrowing money on behalf of the Debtor, granting options, creating negative pledges, or otherwise encumbering Thrive without the unanimous consent of all members. That consent was never obtained.

66. Bocaire accepted and recorded the challenged instruments with actual knowledge of facts demonstrating Mr. Kulick's lack of authority or, at a minimum, with knowledge of facts that would have caused a reasonably prudent lender to inquire further before accepting interests in plaintiff's property.

67. The recorded documents demonstrate that Bocaire was aware that Thrive was subject to HUD-insured financing and the restrictions imposed by that financing. Those restrictions prohibited the challenged encumbrances absent HUD approval, and the challenged transactions therefore exposed the Debtor to potential default under its existing HUD financing.

68. Bocaire is a sophisticated investor and the transaction demonstrated on its face that Mr. Kulick lacked authority. The financing purported to restrict the Debtor's rights with respect to its sole asset in connection with financing that primarily benefitted entities affiliated with Mr. Kulick rather than the Debtor. Bocaire was admittedly aware that the transaction was prohibited by Thrive's HUD loan.

69. Bocaire likewise accepted and recorded the challenged instruments despite obvious circumstances demonstrating Mr. Kulick's lack of authority to bind the Debtor. Rather than verifying that authority, Bocaire proceeded with knowledge of Mr. Kulick's lack of authority, in conscious disregard of those circumstances, and in bad faith.

70. Because Mr. Kulick lacked authority to execute the challenged instruments, and because the required unanimous member consent was never obtained, the Option Agreement and Negative Pledge Agreement recorded as Document Nos. 2026054355 and 2026054356 are unauthorized and constitute invalid clouds on the Debtor's title.

D.    <u>Mr. Kulick Lacked Authority to Bind Plaintiff</u>

71.    Mr. Kulick purported to grant mortgages, liens, options, negative pledges, and other encumbrances and interests affecting real property owned by other entities affiliated with him, including the property owned by the Debtor.

72.    Mr. Kulick was aware that he did not have the power or authority to encumber Thrive.

73.    The transactions were extraordinary on their face, carrying exorbitant and predatory interest rates.

74.    The loans were not incurred for the benefit of the Debtor, the proceeds were not payable to the Debtor, and the obligations purportedly secured by the property were obligations of Mr. Kulick or entities affiliated with him rather than obligations of the Debtor.

75.    Any sophisticated commercial lender accepting a mortgage, option, negative pledge, deed, or other security interest affecting Thrive was on inquiry notice and could not reasonably rely solely upon Mr. Kulick's representations concerning his authority. The authority of Mr. Kulick and the Vesta entities was defined by the Operating Agreement, which expressly required the unanimous consent of all members before the property could be mortgaged, pledged, or otherwise encumbered.

76.    A reasonably prudent commercial lender possessing the information it had was required to ascertain whether Mr. Kulick had authority to bind the Debtor before accepting or recording the challenged instruments.

77.    The Debtor did not request those loans, was not the borrower on those obligations, did not receive the proceeds of those loans, and did not authorize Mr. Kulick to encumber the property as security for those obligations.

78. Mr. Kulick likewise did not obtain the unanimous consent of the members before purporting to grant those interests, as expressly required by the Operating Agreement.

79. Plaintiff never represented, directly or indirectly, that Mr. Kulick possessed authority to borrow money, execute loan documents, mortgage Thrive, grant options, create negative pledges, execute deeds, or otherwise encumber plaintiff's property without unanimous member consent. Any appearance of authority resulted solely from Mr. Kulick's own unauthorized conduct and representations.

80. Under settled principles of agency law, an agent cannot create his own apparent authority, and no defendant was entitled to rely upon Mr. Kulick's representations concerning the scope of his own authority.

81. Upon learning of the challenged transactions, plaintiff immediately investigated the circumstances, rejected the validity of the transactions, removed VCL as managing member, refused to ratify any challenged instrument, accepted no benefits arising therefrom, and promptly commenced this action seeking to invalidate the recorded instruments.

82. The authority of the managing member and manager to act on behalf of the Debtor existed only to the extent affirmatively granted by the Operating Agreement. Because the Operating Agreement expressly withheld authority to borrow money, grant mortgages, execute deeds, create liens, grant options, create negative pledges, or otherwise transfer or encumber any interest in Thrive without the unanimous consent of all members, Mr. Kulick possessed no actual authority to undertake the challenged transactions. Accordingly, any purported conveyance or encumbrance executed by Mr. Kulick exceeded the authority conferred upon him by the Debtor and was without authorization from its principal.

83.    Neither YSA nor Bocaire acquired greater rights than Mr. Kulick possessed. Because Mr. Kulick lacked actual authority to create the challenged interests, defendants acquired only such rights, if any, as could lawfully arise from transactions executed by a person acting without authority under the Debtor's Operating Agreement.

## COUNT I
### Declaratory Judgment

84.    The allegations of the foregoing paragraphs are incorporated as if fully set forth herein.

85.    The challenged instruments are not merely historical transactions. They remain recorded in the land records of Tulsa County and presently cloud the Debtor's title to Thrive. Unless removed, those recorded instruments continue to impair the Debtor's ownership rights each day they remain of record.

86.    As a direct result of the challenged instruments, the Debtor's title to Thrive is disputed. The existence of competing recorded claims substantially impairs the Debtor's ability to sell, refinance, obtain financing secured by the property, negotiate with lenders, or otherwise freely alienate or manage its sole asset.

87.    The Deed in Lieu of Foreclosure recorded by YSA purports to transfer title to Thrive from the Debtor to YSA. That recorded instrument creates an immediate dispute concerning ownership of the property and materially interferes with the Debtor's ability to exercise the ordinary rights of ownership.

88.    The continuing existence of the challenged instruments also materially impairs the Debtor's ability to obtain title insurance, refinance existing indebtedness, negotiate replacement financing, or market the property for sale because prospective lenders, purchasers, and title insurers are confronted with competing recorded claims affecting ownership and priority.

16

89. The challenged transactions also place the Debtor in jeopardy under its existing HUD financing. The recorded mortgages, options, negative pledges, and related encumbrances purport to burden property that is subject to HUD restrictions prohibiting unauthorized subordinate financing and encumbrances. Unless declared invalid, those instruments expose plaintiff to the continuing and immediate risk of default under its existing financing arrangements.

90. YSA has already acted in a manner consistent with its assertion of ownership. After recording the Deed in Lieu of Foreclosure, YSA sought to obtain control of the Debtor's property management software by requesting that the management account be transferred from the Debtor to YSA. Those actions demonstrate that YSA is actively asserting rights arising from the challenged instruments rather than merely claiming a contingent future interest.

91. Control of the Debtor's property management systems carries with it the ability to interfere with the day-to-day operation of the apartment community, including rent collection, tenant communications, vendor relationships, maintenance operations, financial reporting, and other essential management functions. Such interference can damage the property and tenant relations in a manner that cannot be fully compensated through an award of money damages after the fact.

92. YSA took active steps to lock the Debtor out of its bank accounts, causing problems with the Debtor's financial institutions.

93. The continuing existence of competing claims to ownership and control of Thrive creates uncertainty affecting the Debtor's relationships with tenants, lenders, vendors, insurers, governmental agencies, and prospective purchasers or refinancing sources. The resulting injury to the Debtor's property rights and business operations is ongoing and cannot be adequately remedied solely through monetary damages.

94.    Although the members have removed VCL as managing member, that action does not eliminate the existing clouds upon title created by the challenged recorded instruments, nor does it prevent defendants from continuing to assert rights under those instruments. Unless those instruments are declared void and defendants are enjoined from enforcing them, the controversy concerning ownership and control of Thrive will continue.

95.    The Debtor has no adequate remedy at law. Money damages cannot restore clear title to real property, eliminate competing recorded claims of ownership, undo interference with unique real property rights, or adequately compensate the Debtor for the continuing impairment of its ability to own, finance, manage, and convey its sole asset. Only declaratory and injunctive relief can fully protect the Debtor's rights pending final adjudication of this action.

96.    Absent immediate injunctive relief, the Defendants will remain free to continue asserting rights under the challenged instruments, including rights purportedly arising from the recorded Deed in Lieu of Foreclosure, thereby perpetuating the cloud on the Debtor's title and the continuing interference with plaintiff's ownership and management of Thrive.

97.    The managing member (Mr. Kulick on behalf of the Vesta entities) of the Debtor required consent from all members prior to borrowing funds for the Debtor or encumbering the property owned by the Debtor in any way.

98.    Mr. Kulick neither sought nor obtained such consent before encumbering the Debtor's property with mortgages, liens, options, negative pledges, or other security interests in exchange for loans for his benefit.

99.    The Debtor requests a declaratory judgment that Mr. Kulick, VCL and VRL lacked the authority to borrow funds on behalf of the Debtor or to encumber the Debtor's property with any lien, mortgage, encumbrance, security interest, or other burden.

18

100. The Debtor further requests a declaratory judgment that any such actions undertaken by Mr. Kulick, VCL, and/or VRL, without the consent of all members, were executed without actual authority under the Operating Agreement and therefore void or, alternatively, voidable and subject to cancellation.

## COUNT II

### Breach of Fiduciary Duty

101. The allegations of the foregoing paragraphs are incorporated as if set forth herein.

102. At all times relevant to this action, Mr. Kulick exercised management authority over the Debtor through VCL, as managing member, and VRL, as manager, and owed fiduciary duties of loyalty, good faith, honesty, due care, and full disclosure to the Debtor.

103. Those fiduciary duties required Mr. Kulick to act at all times in the best interests of the Debtor, to comply with the Operating Agreement, to exercise only the authority granted to him thereunder, to avoid self-dealing and conflicts of interest, and to refrain from using plaintiff's assets to benefit himself or entities affiliated with him.

104. Rather than acting in plaintiff's best interests, Mr. Kulick knowingly placed the Debtor's sole asset at risk to obtain financing for himself and entities affiliated with him. The Debtor received no loan proceeds, incurred substantial risks, obtained no consideration, and derived no corresponding corporate benefit, while Mr. Kulick and his affiliated entities received the entire benefit of the challenged transactions.

105. Mr. Kulick knowingly exceeded the authority granted to him under the Operating Agreement by purporting to borrow money, execute loan documents, grant mortgages, execute options, create negative pledges, execute powers of attorney, transfer title, and otherwise encumber

plaintiff's property without obtaining the unanimous consent of all members as expressly required by the Operating Agreement.

106. Mr. Kulick further breached his fiduciary duties by concealing the challenged transactions from the remaining members, acting for his own personal benefit and the benefit of entities affiliated with him, placing plaintiff's sole asset at risk to secure obligations that plaintiff did not owe, and exposing plaintiff to the risk of default under its existing HUD financing.

107. Mr. Kulick acted knowingly, intentionally, and in bad faith. He knew the Operating Agreement prohibited the challenged transactions, knew the Debtor was receiving no benefit from those transactions, and nevertheless proceeded to encumber the Debtor's property for his own benefit and the benefit of entities affiliated with him.

108. But for Mr. Kulick's breaches of fiduciary duty, the challenged mortgages, deed, option, negative pledge, and related instruments would not have been executed or recorded against plaintiff's property. The clouds upon title, impairment of the Debtor's ownership rights, exposure to competing ownership claims, and resulting damages were the direct and foreseeable result of Mr. Kulick's misconduct.

109. As a direct and proximate result of Mr. Kulick's breaches of fiduciary duty, the Debtor has suffered and continues to suffer damages, including impairment of title, diminution in the marketability and value of Thrive, interference with the Debtor's ability to sell or refinance the property, increased financing risks and costs, exposure to defaults under plaintiff's HUD financing, attorneys' fees where recoverable by law and other damages to be proven at trial.

110. The Debtor is entitled to recover all damages proximately caused by Mr. Kulick's breaches of fiduciary duty, together with all other relief permitted by law.

## COUNT III
### Preference (11 U.S.C. § 547; 11 U.S.C. § 550)

111.   The allegations of the foregoing paragraphs are incorporated as if set forth herein.

112.   This count is pleaded expressly in the alternative to count I hereof and, more specifically, seeks relief that may be afforded only if this Honorable Court concludes the Apartment Complex to have been actually conveyed to YSA.

113.   If the actions of Mr. Kulick were valid, YSA was a creditor of the Debtor at the time the Apartment Complex was conveyed to YSA.

114.   If the actions of Mr. Kulick were valid, the conveyance of the Apartment Complex, from the Debtor to YSA, was undertaken on account of an antecedent debt owed by the Debtor prior to the date of the recordation of the deed in lieu of foreclosure.

115.   If the actions of Mr. Kulick were valid, the Debtor was insolvent at the time of the recordation of the deed in lieu of foreclosure, with the Apartment Complex being of a value roughly comparable to the Debtor's other obligations and with the Debtor thusly being grotesquely insolvent on account of the additional obligations incurred by Mr. Kulick.

116.   The deed in lieu of foreclosure, for the Apartment Complex, was recorded fewer than 90 days prior to the date on which the Debtor petitioned for bankruptcy relief.

117.   Recordation of the deed in lieu of foreclosure allows YSA to receive more than it would take in a hypothetical chapter 7 liquidation, as the first position lienholder on the Apartment Complex—HUD—would be able to foreclose the Apartment Complex in a hypothetical chapter 7 liquidation, leaving little-to-nothing for YSA.

## COUNT IV
### Fraudulent Conveyance (11 U.S.C. § 548; 11 U.S.C. § 550)

118.   The allegations of the foregoing paragraphs are incorporated as if set forth herein.

21

119. This count is pleaded expressly in the alternative and, more specifically, seeks relief that may be afforded only if this Honorable Court concludes the Apartment Complex to have been actually conveyed to YSA.

120. The Debtor received nothing in exchange for the loans from YSA.

121. The Debtor did not owe a valid, legally cognizable debt to YSA at the time the deed in lieu of foreclosure was recorded.

122. The Debtor accordingly lost the Apartment Complex in exchange for no consideration whatsoever, thereby receiving less than reasonably equivalent value for the asset.

123. If the actions of Mr. Kulick were valid, the Debtor was insolvent on the date of recordation of the deed in lieu of foreclosure, with the Debtor having assets of less than $25 million and liabilities in excess of $900 million.

## PRAYER FOR RELIEF

WHEREFORE, the Debtor respectfully requests this Honorable Court enter judgment in its favor and against the Defendants and grant the following relief:

a. Declare that defendant Marc Kulick, whether acting individually or through Vesta Capital, LLC, Vesta Realty, LLC, or any other entity, lacked authority under Jenk's Best Living's Operating Agreement to borrow money on behalf of Jenk's Best Living, execute loan documents, grant mortgages, deeds, options, negative pledges, powers of attorney, security interests, or otherwise transfer or encumber any interest in Thrive without the unanimous consent of all Members.

b. Declare that the Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing recorded as Tulsa County Document No. 2025099639, the Option Agreement recorded as Document No. 2026054355, the Negative Pledge Agreement recorded as Document

22

No. 2026054356, the Deed in Lieu of Foreclosure recorded as Document No. 2026057371, together with any rights, liens, claims, security interests, options, assignments, amendments, substitutions, notices, or other interests arising out of or dependent upon those transactions, and any other encumbrance, known or unknown, arising out of an unauthorized transaction, are void or, alternatively, voidable and subject to cancellation, and are of no force or legal effect as against plaintiff or the property.

c. Adjudge that defendants, known or unknown, and all persons claiming by, through, or under them, have no estate, right, title, lien, security interest, option, encumbrance, or other legal or equitable interest in the property arising from the unauthorized transactions, and forever bar defendants and all such persons from asserting any adverse claim to the property.

d. To declare the instruments void and direct the defendants to execute whatever releases are necessary, with the judgment itself being recordable in Tulsa County, including to cancel, release, strike, or otherwise remove from the land records the Mortgage, Assignment of Rents and Leases, Security Agreement, and Fixture Filing recorded as Document No. 2025099639, the Option Agreement recorded as Document No. 2026054355, the Negative Pledge Agreement recorded as Document No. 2026054356, the Deed in Lieu of Foreclosure recorded as Document No. 2026057371, together with any assignments, amendments, substitutions, notices, corrective instruments, or other recorded documents derived from or dependent upon those transactions, as clouds upon plaintiff's title.

e. Temporarily and permanently enjoin defendants, known or unknown, and all persons acting in concert with them or claiming by, through, or under them, from asserting, enforcing, assigning, transferring, foreclosing upon, recording additional instruments pursuant to, or

23

otherwise exercising any rights purportedly arising from the challenged transactions or the instruments described herein.

f. Temporarily and permanently enjoin defendant Marc Kulick, Vesta Capital, LLC, Vesta Realty, LLC, and all persons acting in concert with them from purporting to act on behalf of Jenk's Best Living or from borrowing money, granting mortgages, executing deeds, granting options, creating liens, negative pledges, security interests, or otherwise transferring or encumbering any interest in Thrive except as expressly authorized by Jenk's Best Living's Operating Agreement or further order of this Court.

g. In the alternative, avoid the recordation of the deed in lieu of foreclosure, pursuant to the provisions of section 547 and/or 548 of the Bankruptcy Code.

h. Award plaintiff all compensatory damages recoverable on Count II for breach of fiduciary duty, including damages resulting from impairment of title, loss of marketability, diminution in value, interference with plaintiff's ownership and management of Thrive, increased financing costs, professional fees incurred to protect plaintiff's property rights, exposure to default under plaintiff's HUD financing, and all other damages proven at trial.

i. Award plaintiff its costs, reasonable attorneys' fees, litigation expenses, and all other amounts recoverable under contract, statute, equity, or other applicable law.

j. Award plaintiff prejudgment and post-judgment interest as permitted by law.

k. Grant such other, further, different, legal, and equitable relief as the Court deems just and proper; and

l. Order that any judgment entered by this Honorable Court may be recorded in the land records of Tulsa County and that a certified copy of the judgment shall constitute conclusive notice

24

that the challenged instruments have been declared void or otherwise canceled and no longer constitute clouds upon plaintiff's title.

Respectfully Submitted,


/s/ Ari S. Casper
Ari S. Casper (Bar # 14512)
Elimelech Baruch (Bar # 31855)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(p) 410-989-5097
(f) 410-630-7776
(e) acasper@casperfirm.com
(e) ebaruch@casperfirm.com
*Proposed Special Counsel for Plaintiff*

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Plaintiff*