## PROMISSORY NOTE

July 31, 2025 (the "**Effective Date**")

| | |
|---|---|
| "**Borrower**": | VESTA HOLDINGS LLC, an Oklahoma limited liability company, having an address for notices of % Vesta Realty, LLC, 6911 S. 66th E. Ave., Suite 100, Tulsa, OK 74133, Attention: Marc Kulick and A.J. Jindal, Email: legalnotices@vestarealproperty.com |
| "**Lender**": | YSA INVESTMENTS 1, LLC, a Delaware limited liability company, having an address for notices of 8325 NE 2nd Ave, Miami, FL 33138, Email: robert@vdacquisitions.com |
| "**Pledgor**": | VESTA HOLDINGS, LLC, an Oklahoma limited liability company, having an address for notices of % Vesta Realty, LLC, 6911 S. 66th E. Ave., Suite 100, Tulsa, OK 74133, Attention: Marc Kulick and A.J. Jindal, Email: legalnotices@vestarealproperty.com |
| "**Principal Amount**": | Three Hundred Seven Thousand Dollars ($317,000) |
| "**Funding Date**": | The date on which Lender funds the Principal Amount (subject to reductions set forth under §§ 2.2, 3 and 4 below) to Borrower, which Lender shall cause to occur within the same business day as the Effective Date |
| "**Original Maturity Date**": | August 5, 2025 |
| "**Maturity Date**": | The first to occur of (i) the Original Maturity Date and (ii) the date on which an Event of Default (defined below) occurs |
| "**Interest Rate**": | Seven Thousand Percent (7000%) per annum, based on a three-hundred-sixty (360)-day year and compounded daily |
| "**Note**": | This Promissory Note, as same may be amended, renewed, extended, substituted for, amended and restated, or otherwise modified from time to time |
| "**Loan Documents**": | Collectively, (1) this Note, (2) the Collateral Pledge and Security Agreement of even date herewith between Lender and Borrower (as same may be amended, renewed, extended, substituted for, amended and restated, or otherwise modified from time to time, the "**CPSA**"), (3) the Guaranty and ROFO of even date herewith made by Marc Kulick, an individual ("**Guarantor**"), for the benefit of Lender, (4) the Affidavit of Confession of Judgment made by Borrower for the benefit of Lender, and (5) and any other document that is executed in connection with the Loan from time to time |
| "**Loan**": | The Loan from Lender to Borrower, as evidenced by this Note and the other Loan Documents |
| "**O.P.B.**": | At any given time, the sum of (i) the outstanding Principal Amount, (ii) any and all capitalized interest on the Loan, and (iii) any other amounts that are due or have accrued under the Loan and have not been paid (excluding interest that has not been capitalized) |
| "**Payoff Amount**": | At any given time, the greater of: a) the Minimum Payoff Amount or b) the sum of (i) the O.P.B., (ii) all interest on the Loan that has accrued, not been paid, and not been capitalized, and (iii) any amounts that would become due under the Loan (including under this Note) if the O.P.B. were prepaid, if due |

Prior Exhibit Sticker Redacted

"Event of Default": Each of the following: (i) Borrower fails to pay any amount that becomes due under this Note, (ii) Borrower defaults in the performance or observance of any other term or condition in this Note, and Borrower does not cure such default within ten (10) days after Lender notifies Borrower thereof; (iii) Borrower breaches any warranty or representation under this Note and does not cure such breach within ten (10) days after Lender notifies Borrower thereof; and (iv) the occurrence of an "Event of Default" under any other Loan Document. Notwithstanding anything to the contrary in clauses (ii) and (ii) above, if the cause of the default thereunder is fraud in the inducement, then Borrower shall not be entitled to the cure period therein.

1. PROMISE TO PAY. For value received, Borrower promises to pay to the order of Lender the Loan, together with any other amounts due under this Note and any other Loan Document, on or before the Maturity Date.

2. PRINCIPAL AND INTEREST.

2.1. ACCRUAL. Interest shall accrue on the O.P.B. at the Interest Rate, subject to §4.

2.2. PAYMENTS.

2.2.1. Notwithstanding anything in this Agreement to the contrary, payments shall be made in accordance with the following schedule and in the following minimum amounts except as otherwise increased by accrued interest or any other applicable costs or fees:

| August 1, 2025 | $348,700 |
| August 5, 2025 | $31,700 |

2.2.2. On the Maturity Date, the entire Payoff Amount shall be due.

2.2.3. All payments under the Loan must be made in immediately available U.S. funds.

2.3. DUE DATE. Whenever any payment is stated to be due or a computation is to be made on a day that is not a business day, such payment or computation will be made on the immediately following business day.

2.4. APPLICATION. Each payment under the Loan shall be applied when received as follows: first, to any fees, penalties, expenses, and other costs (including reasonable attorneys' fees and costs incurred hereunder or under any other Loan Document) that Borrower is obligated to pay hereunder or under any other Loan Document; second, to interest on the Loan that has accrued, not been paid, and not been capitalized; and the remainder to reduce the O.P.B.

2.5. MINIMUM PAYOFF AMOUNT. Borrower shall be obligated to pay Lender at least three hundred eighty thousand four hundred dollars ($380,400) (the "Minimum Payoff Amount"). I.e., if when Borrower pays the Payoff Amount, the total amount that would be due is less than the Minimum Payoff Amount, then the Payoff Amount shall be increased to equal the Minimum Payoff Amount.

2.6.    LENDER PAYMENT INSTRUCTIONS. All payments by Borrower to Lender shall be made payable by ACH in accordance with the following ACH payment instructions except as otherwise provided by Lender to Borrower in writing:

YSA Investments I LLC
6899 Collins Ave
Unit #808
Miami Beach, FL 33141

&#x2610;  ACH & Domestic wires

Receiving Bank ABA: ███████
Receiving Bank Name:    Pinnacle Bank
150 3rd Ave S, Nashville, TN 37201

For Credit to (Beneficiary): YSA Investments 1 LLC
Account number: ███████

2.7.    PREPAYMENTS. Subject to the Minimum Payoff Amount, Borrower may prepay the Loan in whole or in part from time to time without penalty, fee, or premium.

2.8.    LATE FEE. If any payment that is due under the Loan is not timely paid, then a late charge equal to two percent (2%) of the amount of such payment shall immediately and automatically accrue. Borrower (i) acknowledges that a late payment would result in losses and expenses to Lender such as lost opportunity costs and increased costs of collection, (ii) agrees that the actual losses and expenses in connection with a late payment are unpredictable and uncertain (and may be less or more than the late charge), and (iii) agrees that such charge is a fair, *ex ante* agreement on such losses and expenses.

3.    INTENTIONALLY OMITTED.

4.    FEES. The Parties acknowledge that Lender has incurred fees in connection with the negotiation, revision, and execution of the Loan Documents. On the Funding Date, Lender shall deduct the amount of $10,000 from Lender's funding of the Principal Amount.

5.    EVENT OF DEFAULT.

5.1.    If an Event of Default occurs, then Lender may exercise any lawful rights and remedies that may be available to Lender, whether at law, in equity, or otherwise. In addition thereto and without limiting the foregoing: (i) the commitment and obligation of Lender to extend credit or to make disbursements under this Note or any other Loan Document shall immediately and automatically terminate; (ii) Borrower shall indemnify, defend, and hold Lender harmless from and against any actual loss, damage, harm, injury, claim, liability, cost, or expense (including reasonable attorneys' fees) that is caused by such Event of Default or arises therefrom; (iii) while an Event of Default exists, the O.P.B. shall accrue interest at a rate equal to the Interest Rate plus five percent (5%) per annum; (iv) pursuant to Section 4.6 of the CPSA, Lender as Borrower's attorney-in-fact may take any steps it deems necessary in its sole discretion to protect its interests; and (v) Lender may pursue any remedy provided in the CPSA. Lender shall further be entitled to any attorney's fees, costs, or other damages that may be available to it as a result of an Event of Default.

5.2.    In connection with any Event of Default (and in addition to any other remedies Lender may possess), Borrower knowingly, voluntarily, and intentionally authorizes any attorney who represents Lender to appear on Borrower's behalf, from time to time, in any court of record possessing jurisdiction over this Note for the purposes of (i) waiving issuance and service of process and (ii) confessing judgment in favor of Lender against Borrower in the Payoff Amount. In connection therewith, presenting this Note or a copy hereof verified by an affidavit shall be a sufficient warrant.

|3

6. WAIVER. Borrower—for itself and any and all endorsers, guarantors and sureties of this Note, and each of them, and their successors and assignees, respectively—hereby (i) waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the Note and CPSA, including but not limited to the payment of this Note (excepting only notices expressly provided for herein), and agrees that its liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender; (ii) waives all defenses to the enforcement of this Note other than the defense of full performance; (iii) consents to every extension of time, renewal, waiver or modification that may be granted by Lender with respect to the payment or other provisions of this Note, and to the release of any borrowers, makers, endorsers, guarantors or sureties, or of the collateral pledged under the CPSA (the "Collateral"), or any part hereof, with or without substitution, and agrees that additional borrowers, makers, guarantors or endorsers may become parties hereto without notice to Borrower and without affecting the liability of Borrower hereunder; and (iv) waives the right to assert a setoff, counterclaim, or deduction in any action or arising out of or in any way connected with this Note or any other Loan Document (except for compulsory counterclaims and the defense of full performance). No right of rescission, setoff, abatement, diminution, counterclaim, or defense has been or will be asserted with respect to this Note or any other Loan Document.

7. SECURITY. This Note is secured by—and on the terms in the CPSA, Lender is and shall be entitled to the benefits of—the liens, encumbrances, and obligations on the Collateral that are created by this Note and the other Loan Documents. In connection therewith, the applicable terms and provisions of the other Loan Documents are hereby incorporated herein.

8. BUSINESS LOAN; USURY.

   8.1. Borrower represents and warrants that (i) the entire proceeds of the Loan will be used to further the business purposes and objectives of it and its affiliates, and (ii) none of the proceeds of the Loan will be used for personal, family, or household purposes. Borrower shall not, whether directly or indirectly, use any proceeds of the Loan (a) for the purpose of purchasing or carrying any margin stock within the meaning of Regulation U of the Board of Governors of the Federal Reserve System, (b) to extend credit to any person for the purpose of purchasing or carrying any such margin stock, or (c) for any purpose which violates, or is inconsistent with, Regulation X of such Board of Governors.

   8.2. If the interest rate under this Note exceeds the maximum lawful interest rate at any time, then the interest rate under this Note, for such period of time which it exceeds the maximum lawful rate, will be reduced to (and will equal) the maximum lawful rate at such time. If Lender receives any interest payments in excess of the maximum amount permitted by law, then (i) such excess will be applied to reduce the O.P.B., whether then due and payable or not, and any other amounts owing under this Note, and (ii) the balance remaining (if any) will be returned to Borrower upon Borrower's request.

9. REPRESENTATIONS AND WARRANTIES OF BORROWER. Borrower represents and warrants as follows:

   9.1. FORMATION. Borrower is a limited liability company duly organized, validly existing, and in good standing under the laws of its jurisdiction of formation, and is duly qualified or licensed and in good standing to do business as a foreign entity in all jurisdictions in which Borrower does business and such qualification is required.

   9.2. AUTHORIZATION. Borrower has full power and authority to enter into this Note and to perform all obligations required to be performed by it hereunder. The execution, delivery and performance by Borrower of this Note and any Loan Documents to which Borrower is a party

are within Borrower's powers, have been authorized by all necessary company action and do not and will not contravene Borrower's formation or constitutional documents, violate any provision of law or result in a breach of or default under any other agreement to which Borrower is a party.

9.3.   OBLIGATION.   This Note, when executed and delivered by Borrower, will constitute Borrower's valid and legally binding obligation, enforceable in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and any other laws of general application affecting enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

9.4.   LITIGATION. As of the Effective Date, there are no Material Actions, as defined below, against Borrower, Pledgor, or Guarantor, or any entity (i) directly or indirectly controlled or managed by Guarantor or (ii) directly or indirectly owned by Guarantor in whole or in part with respect to which Guarantor receives notices in the ordinary course of business (each of (i) and (ii), a **"Guarantor Entity"**), in each except as follows: (1) Case No. 22-cv-00392-JFH-CDL in the United States District Court for the Northern District of Oklahoma; and (2) Case No. CJ-2024-35 in the District Court of Adair County, Oklahoma. This statement is being made by Borrower under the penalty of perjury. For purposes of this Section, **"Material Action"** means any pending litigation against Borrower, Pledgor, Guarantor, or any Guarantor Entity that (x) is not a landlord-tenant dispute and (y) if such lawsuit were adversely adjudicated against such entity or person, such entity or person would have liability that exceeds $150,000.

9.5.   CURRENT DEFAULT. As of the Effective Date, neither Borrower, Pledgor, Guarantor, nor any Guarantor Entity (x) is to Borrower's knowledge in material breach or default of, or (y) has been notified in writing of any material breach or default in each case under any loan agreement taken by Borrower, Pledgor, Guarantor, or such entity (each, an **"Other Loan Default"**).

9.6.   AFFILIATED NOTES.   Borrower, Pledger and Guarantor, acknowledge and understand that the terms of this Note do not supersede, change, modify or affect in any way the obligations of the Guarantor or any entities in which the Lender has made a loan guaranteed by the Guarantor (each loan guaranteed by the Guarantor an **"Affiliate Loan"**). Further, the Borrower, Pledger and Guarantor represent and warrant that the issuance of this Note will not otherwise affect the ability of the Guarantor or any entities in which the Lender has made an Affiliate Loan to make any principal and interest payment due on such Affiliate Loan. In the event that any amount due under any Affiliate Loan is not paid, then a penalty amount of $1,000,000 shall immediately and automatically accrue under this Loan. Borrower (i) acknowledges that such missed payment would result in losses and expenses to Lender such as lost opportunity costs and increased costs of collection, (ii) agrees that the actual losses and expenses in connection with a late payment under any Affiliate Loan are unpredictable and uncertain (and may be less or more than the late charge), and (iii) agrees that such charge is a fair, ex ante agreement on such losses and expenses.

10.   RELATED COVENANTS.

10.1.   OTHER LOAN DEFAULT AND MATERIAL ACTIONS.   So long as the Payoff Amount remains outstanding, Borrower covenants that if an Other Loan Default occurs or if Borrower receives notice of a Material Action, then Borrower shall notify Lender within two (2) business days thereafter, which notice shall be delivered to:

YSA Investments 1, LLC
C/O Capital Fund Law Group, LLP
Attn: Christopher Rogers

405 Lexington Ave, 26th Floor
New York, New York 10174
email: crogers@capitalfundlaw.com

This notice will include a summary of the default and, with respect to any action, the summary shall include the court in which it is filed, the plaintiff(s) and defendant(s), case number, and summary of the claims being brought. A copy of any notice pursuant to this section shall also be delivered to Lender.

10.2. DEBT OBLIGATIONS. So long as the Payoff Amount remains outstanding, Borrower shall alert Lender of any debt in excess of $50,000 that is taken by Borrower, Guarantor, or any Guarantor Entity and provide a summary of the same, including the name of the party owed, the amount, and a summary of the purpose or cause of the debt. This Section shall not apply to any future loan arising from the Right of First Offer (as defined in the Guaranty).

11. MISCELLANY.

11.1. JOINT AND SEVERAL LIABILITY. If more than one person or entity constitutes "Borrower," then all obligations of any kind under this Note (including all liabilities) shall be joint and several to each person or entity that constitutes "Borrower" from time to time.

11.2. NOTICES, DISBURSEMENTS, AND PAYMENTS.

11.2.1. Each notice, request, demand, approval, consent, and other communication that pertains to this Note (each, a "**notice**") must be in writing, be delivered to the address(es) set forth on the first page of this Note, and be delivered (a) personally, (b) by a national overnight courier, or (c) by electronic mail (provided, however, that any notice delivered personally or by a national overnight courier must also be sent on the same day by electronic mail). Each notice shall be deemed to have been given when it is received or refused (whether affirmatively or due to the recipient failing to maintain a current address for receiving notices with the sender).

11.2.2. Each disbursement or payment under this Note (as applicable) shall be made using wire, A.C.H., or other such instructions that Borrower or Lender (as applicable) provides to the other party from time to time. Each such disbursement or payment shall be deemed to have been made when it is received.

11.2.3. From time to time, each of Borrower and Lender may (i) change its address for receiving notices and/or instructions for receiving disbursements or payments (as applicable), and (ii) specify up to two (2) additional addresses for receiving a copy of any notice, in each case by delivering a notice thereof to the other party in accordance with §9.2.1 above at least five (5) days in advance.

11.3. TRANSFER OF LOAN. Without the other party's prior approval, neither party hereto shall assign, delegate, or otherwise transfer or convey any of its rights or obligations pertaining to the Loan. Subject to the foregoing, this Note shall bind and inure to the benefit of each party hereto and its successors and assignees.

11.4. GOVERNING LAW; VENUE. This Note shall in all respects be governed by and enforced in accordance with the laws of the State of Delaware. Any chancery court in Delaware shall have exclusive jurisdiction to hear and determine any and all claims, actions, and proceedings brought by Borrower and pertaining to or arising from this Note, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein; provided, however, that if such claim, action, or proceeding cannot be brought in a chancery court in Delaware, the state and federal courts of Delaware shall have exclusive jurisdiction with

respect to such claim, action, or proceeding. Lender may bring any and all claims, actions, and proceedings pertaining to or arising from this Note, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein in any court of competent jurisdiction. Each party hereto (i) waives any right it may have to domesticate any judgment obtained in connection with this Note, and (ii) waives trial by jury in any action, proceeding, or claim pertaining to this Note. In connection with any claim, action, or proceeding that is against a party hereto and pertains to this Note (including any document or agreement executed in connection herewith), the substantially prevailing party therein shall be entitled to receive, and shall be awarded, all its court costs, collection costs, and reasonable attorneys' fees. Notwithstanding anything in this Note to the contrary, the parties agree that any Event of Default will result in irreparable harm to the injured party. In case any Event of Default occurs and is not waived, the injured Party will be entitled to the issuance of an injunction, restraining order, or other equitable relief in its favor as a result of the breach, and the breaching party will be deemed to have consented to the granting of an application for the same without any prior notice to the breaching party and without the injured party being required to furnish a bond or other undertaking in connection with the application. Upon an Event of Default by Borrower, Borrower further waives and is estopped from asserting any defense to expedited or pre-judgment relief by Lender and waives any defense or protection mechanism that may be available to Borrower, in each case excluding the defense of full performance.

11.5.   CLAIMS UNDER SEAL. Any claim, whether made in arbitration or a court of competent jurisdiction, shall be filed under seal.

11.6.   TIME OF ESSENCE. Time is of the essence in this Note.

11.7.   SEVERABLE PROVISIONS. Every provision of this Note is intended to be severable. If any term or provision hereof is declared by a court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the balance of the terms and provisions hereof, which shall remain binding and enforceable.

11.8.   INTERPRETATION. Unless specifically written to the contrary, (i) all instances of "including" and other derivations of "include" in this Note shall mean "including, without limitation," and (ii) all instances of "any" shall mean "any and all." Section headings shall be for convenience and reference only—not interpretation.

11.9.   NO ORAL MODIFICATION; INTEGRATION. This Note and any other Loan Document may be amended or revised only by a written instrument that is signed by Borrower and Lender. This Note, together with any other Loan Documents, (i) supersedes any prior commitments, agreements, representations, and understandings (whether oral or written) between Borrower and Lender regarding the subject matter hereof and thereof, and (ii) may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions between Borrower and Lender. Each of Borrower and Lender acknowledges and agrees that there are no oral agreements between Borrower and Lender.

11.10.   EXECUTION AND STORAGE.

11.10.1.This Note may be executed in counterpart signature pages. Electronic and other non-original signatures on this Note shall be permitted, shall be deemed to be original signatures, and shall be as effective as originals for all purposes. Without limiting the foregoing, this Note may be executed, accepted, and/or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, Title 15, United States Code, §§7001 et seq., the Uniform Electronic Transaction Act, and any applicable state law. Any Note that is executed,

accepted, and/or agreed to in conformity with such laws shall be binding on the parties hereto as though such Note had been physically executed using so-called "wet ink" signatures.

11.10.2. A copy of this Note may be stored by each party using any electronic or digital storage method or process, and each party may destroy any original Note so stored. All parties hereto agree and stipulate that any reproduction of this Note that has been electronically or digitally stored shall be admissible in evidence as the original itself in any judicial, arbitration, or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made by each party in the regular course of business), and that any further reproduction of such reproduction shall likewise be admissible in evidence.

IN WITNESS WHEREOF, Borrower has executed this Note as of the Effective Date.

**BORROWER AND PLEDGOR**

**VESTA HOLDINGS LLC**, an Oklahoma limited liability company

By: Its Manager
Louis Investments LLC

By: _____
Name: Marc Kulick
Title: Manager

STATE OF OKLAHOMA    )
                     )
COUNTY OF TULSA      )

This instrument was acknowledged before me on July 31, 2025 by Marc Kulick, as the Manager of Louis Investments LLC, the manager of Vesta Holdings LLC.

CHANDLER RAE PHILLIPS
Notary Public, State of Oklahoma
Commission # 21013210
My Commission Expires 10-07-2025

_____
(Signature of notarial officer)

My Commission Expires: 10/07/2025

Commission No.: 21013210

(STAMP SEAL ABOVE)