necessary, in its sole discretion, to comply with all laws applicable to any such OFAC Violation, including, without limitation, the requirements of the Anti-Terrorism Regulations (including the "freezing" and/or "blocking" of assets).

v.    Upon Noteholder's written request from time to time during the term of the loan evidenced by the Note, Mortgagor agrees to deliver a certification confirming that the representations and warranties set forth in this Section 2.2(i) remain true and correct as of the date of such certificate and confirming Mortgagor's and the general partner of Mortgagor's compliance with this Section 2.2(i).

2.3    Right of Noteholder to Perform. Mortgagor agrees that if Mortgagor fails to perform any act or to take any action which hereunder Mortgagor is required to perform or take, or to pay any money which hereunder Mortgagor is required to pay, or takes any action prohibited hereby, Noteholder may, but shall not be obligated to, perform or cause to be performed such act or take such action or pay such money or remedy any action so taken, and any reasonable out-of-pocket expenses so incurred by Noteholder, and any money paid by Noteholder in connection therewith, shall be a demand obligation owing by Mortgagor to Noteholder and Noteholder, upon making such payment, shall be subrogated to all of the rights of the person, corporation or body politic receiving such payment. Any amounts due and owing by Mortgagor to Noteholder pursuant to this Mortgage shall bear interest from the date such amount becomes due until paid at the rate of interest payable on matured but unpaid principal of or interest on the Note and shall be a part of the secured indebtedness and shall be secured by this Mortgage.

## ARTICLE 3
### Remedies in Event of Default

3.1    Defaults. The term "Default" or "Event of Default" as used in this Mortgage shall mean the occurrence of any of the following events:

(a)    without the prior written consent of Noteholder, Mortgagor sells, leases, exchanges, assigns, transfers, conveys or otherwise disposes of all or any part of the Property or any interest therein (except for the disposition of worn-out fixtures under the circumstances described in subsection 2.2(d) hereof), or legal or equitable title to the Property, or any interest therein, is vested in any other party, in any manner whatsoever, by operation of law or otherwise, it being understood that the consent of Noteholder required hereunder may be refused by Noteholder in its sole discretion or may be predicated upon any terms, conditions and covenants deemed advisable or necessary in the sole discretion of Noteholder, including but not limited to the right to change the interest rate, date of maturity or payments of principal or interest on the Note, to require payment of any amount as additional consideration as a transfer fee or otherwise and to require assumption of the Note and this Mortgage;

(b)    without the prior written consent of Noteholder, Mortgagor creates, places or permits to be created or placed, or through any act or failure to act, acquiesces in the placing

CONFIDENTIAL

KULICK016301

of any deed of trust, mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual (except for the lien for ad valorem taxes on the Property which are not delinquent and except for involuntary liens that are released or bonded against within forty-five (45) days of Mortgagor acquiring knowledge of the filing of the same), security interest, encumbrance or charge, or conditional sale or other title retention document, against or covering the Property, or any part thereof, other than the Permitted Exceptions, regardless of whether the same are expressly or otherwise subordinate to the lien created in this Mortgage; or

(c)     an Event of Default occurs under the Note or the Legacy Loan Agreement (following a cure period of thirty (30) days).

3.2     Acceleration. Upon the occurrence of an Event of Default, Noteholder shall have the option of declaring all secured indebtedness in its entirety to be immediately due and payable, and the liens and security interests created hereby shall be subject to foreclosure in accordance with Applicable Law.

3.3     Foreclosure. Upon the occurrence of an Event of Default, Noteholder shall have the option to institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner. Additionally, upon the occurrence of an Event of Default, Noteholder may, with or without entry and to the extent permitted and pursuant to the procedures provided by Applicable Law, institute proceedings for the partial foreclosure of this Mortgagee for the portion of the secured indebtedness then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the secured indebtedness not then due, unimpaired and without loss of priority.

3.4     Credit Bid. Upon sale of the Property at any non-judicial foreclosure, Noteholder may credit bid (as determined by Noteholder in its sole and absolute discretion) all or any portion of the secured indebtedness. In determining such credit bid, Noteholder may, but is not obligated to, take into account all or any of the following: (i) appraisals of the Property; (ii) expenses and costs incurred by Noteholder with respect to the Property prior to foreclosure; (iii) expenses and costs which Noteholder anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g. commissions, attorneys' fees, and taxes), costs of any hazardous materials clean-up and monitoring (each to the extent required to comply with applicable Environmental Law), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Noteholder; (iv) declining trends in real property values generally and with respect to properties similar to the Property; (v) anticipated discounts upon resale of the Property as a distressed or foreclosed property; (vi) the fact of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Noteholder (in its sole and absolute

CONFIDENTIAL

KULICK016302

discretion) deems appropriate. In regard to the above, Mortgagor acknowledges and agrees that: (w) Noteholder is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (x) this Section does not impose upon Noteholder any additional obligations that are not imposed by law at the time the credit bid is made; (y) the amount of Noteholder's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Mortgagor and Noteholder; and (z) Noteholder's credit bid may be (at Noteholder's sole and absolute discretion) higher or lower than any appraised value of the Property.

3.5     Proceeds of Sale. The proceeds of any sale or in foreclosure of the lien evidenced hereby shall be applied:

FIRST, to the payment of all reasonable out-of-pocket costs, fees, and expenses incident to such foreclosure sale but actually incurred, including but not limited to the cost of evidence of title and reasonable attorneys' fees in connection with such sale and costs and expenses of sale and of any judicial proceedings related to such sale;

SECOND, to the payment in full of the secured indebtedness (including specifically without limitation the principal, interest and attorneys' fees due and unpaid on the Note and the amounts due and unpaid and owed to Noteholder under this Mortgage) in such order as Noteholder may elect; and

THIRD, the remainder, if any there shall be, shall be paid to, to the person or persons legally entitled thereto by law.

3.6     Noteholder as Purchaser. Noteholder shall have the right to become the purchaser at any sale held by any receiver or public officer, and any Noteholder purchasing at any such sale shall have the right to credit upon the amount of the bid made therefor, to the extent necessary to satisfy such bid, the secured indebtedness owing to such Noteholder.

3.7     Remedies Cumulative. All remedies herein expressly provided for are cumulative of any and all other remedies existing at law or in equity and are cumulative of any and all other remedies provided for in any other instrument securing the payment of the secured indebtedness, or any part thereof, or otherwise benefitting Noteholder.

3.8     Delivery of Possession After Foreclosure. In the event there is a foreclosure sale hereunder and at the time of such sale Mortgagor or Mortgagor's heirs, devisees, representatives, successors or assigns or any other persons claiming any interest in the Property by, through or under Mortgagor are occupying or using the Property, or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall (subject to the provisions of any separate agreement entered into between Mortgagee and any such tenant) be a tenancy from day-to-day, terminable at the will of either landlord or tenant at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser. In the event the tenant fails to surrender possession of such property upon demand,

CONFIDENTIAL

KULICK016303

the purchaser shall be entitled to institute and maintain an action for unlawful detainer of such property in any court of competent jurisdiction in the county in which such property, or any part thereof, is situated.

## ARTICLE 4
### Security Interest

4.1     Grant of Interest. In order to secure the payment of the secured indebtedness hereinabove referred to and the performance of the obligations, covenants, agreements and undertakings of Mortgagor hereinabove described, Mortgagor hereby grants to Noteholder a security interest in each of the following now or hereafter owned by Mortgagor, and all proceeds thereof (collectively, the **"Collateral"**):

(a)     all goods, equipment, furnishings, fixtures, furniture, chattels and personal property of whatever nature now or hereafter attached or affixed to or used in and about the buildings or other improvements now erected or hereafter to be erected on the land described in Exhibit A attached hereto, or otherwise located on such land, and all fixtures, accessions and appurtenances thereto, and all renewals or replacements of or substitutions for any of the foregoing;

(b)     all building materials and equipment now or hereafter delivered to the Property and intended to be installed therein;

(c)     all security deposits and advance rentals under lease agreements now or at any time hereafter covering or affecting any of the Property or any Collateral and held by or for the benefit of Mortgagor;

(d)     all monetary deposits which Mortgagor has been required to give to any public or private utility with respect to utility services furnished to the Property;

(e)     all issues and profits from any part of the Property or any Collateral;

(f)     all proceeds (including premium refunds) of each policy of insurance relating to the Property or any Collateral;

(g)     all proceeds from the taking of the Property or any Collateral or any part thereof or any interest therein or right or estate appurtenant thereto by eminent domain or by purchase in lieu thereof;

(h)     all contracts related to the Property or any Collateral;

(i)     all money, funds, accounts, instruments, documents, general intangibles (including trademarks, trade names and symbols used in connection therewith), and notes or

CONFIDENTIAL

KULICK016304

chattel paper arising from or related to the Property or any Collateral, including any funds deposited or set aside in any operating or reserve account, or for the payment of taxes or insurance premiums related to the Property or any Collateral;

(j) all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Property or any Collateral,

(k) all plans, specifications, maps, surveys, reports, architectural, engineering and construction contracts, books of account, insurance policies and other documents, of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Property or any Collateral;

(l) all proceeds and other amounts paid or owing to Mortgagor under or pursuant to any and all contracts and bonds relating to the construction, erection or renovation of the Property or any Collateral; and

(m) all oil, gas and other hydrocarbons and other minerals produced from or allocated to the Property and all products processed or obtained therefrom, the proceeds thereof, and all accounts and general intangibles under which such proceeds may arise, together with any sums of money that may now or at any time hereafter become due and payable to Mortgagor by virtue of any and all royalties, overriding royalties, bonuses, delay rentals and any other amount of any kind or character arising under any and all present and future oil, gas and mining leases covering the Property or any part thereof.

4.2     Uniform Commercial Code. Upon the occurrence of an Event of Default, Noteholder may exercise its rights of enforcement as a "Secured Party" with respect to the Collateral under the Uniform Commercial Code as adopted and enacted by the state or states where any of the Collateral is located (the **"UCC"),** and in conjunction with, in addition to or in substitution for those rights and remedies:

(a) Noteholder may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable; and

(b) Noteholder may require Mortgagor to assemble the Collateral and make it available at a place Noteholder designates which is mutually convenient to allow Noteholder to take possession or dispose of the Collateral; and

(c) written notice mailed to Mortgagor as provided herein five (5) days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made shall constitute reasonable notice; and

(d) any sale made pursuant to the provisions of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the sale of the Property under power of sale as provided herein upon

CONFIDENTIAL

KULICK016305

giving the same notice with respect to the sale of the Collateral hereunder as is required for such sale of the Property under power of sale; and

(e)     in the event of a foreclosure sale, whether made under judgment of a court or otherwise, the Collateral and the Property may, at the option of Noteholder, be sold as a whole; and

(f)     it shall not be necessary that Noteholder take possession of the Collateral or any part thereof prior to the time that any sale pursuant to the provisions of this paragraph is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; and

(g)     prior to application of proceeds of disposition of the Collateral to the secured indebtedness, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Noteholder; and

(h)     any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to nonpayment of the indebtedness or as to the occurrence of any Event of Default, or as to Noteholder having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to any other act or thing having been duly done by Noteholder, shall be taken as prima facie evidence of the truth of the facts so stated and recited; and

(i)     Noteholder may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Noteholder, including the sending of notices and the conduct of the sale, but in the name and on behalf of Noteholder.

4.3     Rights of Secured Party. In addition to Noteholder's rights as a "Secured Party" under the UCC, Noteholder may, but shall not be obligated to, at any time without notice and at the expense of Mortgagor: (a) give notice to any person of Noteholder's rights hereunder and enforce such rights at law or in equity; (b) insure, protect, defend and preserve the Collateral or any rights or interests of Noteholder therein; (c) inspect the Collateral; and (d) endorse, collect and receive any right to payment of money owing to Mortgagor under or from the Collateral. Notwithstanding the above, in no event shall Noteholder be deemed to have accepted any property other than cash in satisfaction of any obligation of Mortgagor to Noteholder unless Noteholder shall make an express written election of said remedy under UCC Section 9-620, or other applicable law.

4.4     Reproduction as Financing Statement. A carbon, photographic or other reproduction of this Mortgage or of any financing statement relating to this Mortgage shall be sufficient as a financing statement.

CONFIDENTIAL

KULICK016306

4.5     Fixture Filing. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records in the Office of the County Clerk where the Property (including such fixtures) is situated. The mailing address of Mortgagor is set forth below opposite the signature of Mortgagor to this Mortgage and the address of Noteholder from which information concerning the security interest may be obtained is the address of Noteholder set forth at the end of this Mortgage.

4.6     Filing and Recordation. Mortgagor shall cause this Mortgage and all amendments and supplements thereto and substitutions therefor and all financing statements and continuation statements relating hereto to be recorded, filed, re-recorded and refiled in such manner and in such places as Noteholder shall reasonably request, and shall pay all such recording, filing, re-recording and refiling taxes, fees and other charges.

4.7     Financing Statement Filings. Upon an Event of Default, Mortgagor authorizes Noteholder to file any financing statements it deems necessary relating to the Collateral, including an "all asset," "super generic" filing or otherwise.

## ARTICLE 5
### Assignment of Leases and Rents

5.1     Assignment. Mortgagor hereby irrevocably assigns to Noteholder all of Mortgagor's right, title and interest in, to and under: (a) all leases or license agreements, if any, relating to the Property or any portion thereof, and all other agreements of any kind relating to the occupancy or use of the Property or any portion thereof, whether now existing or entered into after the Effective Date (collectively, the **"Leases")**; and (b) the rents, revenue, income, issues, deposits and profits of the Property, including without limitation all amounts payable and all rights and benefits accruing to Mortgagor under the Leases (collectively, **"Payments"**), if any. Payments covered by this assignment shall include, but not be limited to, minimum rents, additional rents, percentage rents, deficiency rents and liquidated damages following default, security deposits, advance rents, all proceeds payable under any policy of insurance covering the loss of rents. Payments covered by this assignment shall also include any money Mortgagor is entitled to recover from any lessee in bankruptcy such as, without limitation, money recoverable for use and occupancy of any part of the Property and damage claims arising out of lease defaults, including rejections, under any applicable bankruptcy law. The term "Leases" shall also include all guarantees of and security for the lessees' performance thereunder, and all amendments, extensions, renewals or modifications thereto which are permitted hereunder. This is a present and absolute assignment, not an assignment for security purposes only, and Noteholder's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

5.2     Grant of License. Noteholder confers upon Mortgagor a license (**"License"**) to collect and retain the Payments as they become due and payable, until the occurrence of an Event of Default. Upon an Event of Default, the License shall be automatically revoked and Noteholder

CONFIDENTIAL

KULICK016307

may collect and apply the Payments to the secured obligations without taking possession of the Property. Mortgagor hereby irrevocably authorizes and directs the lessees under the Leases to rely upon and comply with any notice or demand by Noteholder for the payment to Noteholder of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the lessees' undertakings under the Leases, and the lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder. Mortgagor hereby relieves the lessees from any liability to Mortgagor by reason of relying upon and complying with any such notice or demand by Noteholder.

5.3     Effect of Assignment. The foregoing irrevocable assignment shall not cause Noteholder to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; or (c) responsible or liable for any waste committed on the Property by the lessees under any of the Leases or any other parties; for any dangerous or defective condition of the Property; or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee, licensee, employee, invitee or other person. Noteholder shall not directly or indirectly be liable to Mortgagor or any other person as a consequence of: (i) the exercise or failure to exercise by Noteholder, or any of its employees, agents, contractors or subcontractors, any of the rights, remedies or powers granted to Noteholder hereunder; or (ii) the failure or refusal of Noteholder to perform or discharge any obligation, duty or liability of Mortgagor arising under the Leases.

5.4     Representations and Warranties. Mortgagor represents and warrants that: (a) the rent roll provided to Noteholder is a true, accurate and complete list of all Leases; (b) all existing Leases are in full force and effect and are enforceable in accordance with their respective terms, and no breach or default, or event which would constitute a breach or default after notice or the passage of time, or both, exists under any existing Leases on the part of any party; (c) no rent or other payment under any existing Lease, if any, has been paid by any lessee for more than one (1) month in advance; and (d) none of the lessor's interests under any of the Leases has been transferred or assigned.

5.5     Covenants. Mortgagor shall not, without Noteholder's prior written consent: (a) execute any other assignment relating to any of the Leases; (b) substantially discount any rent or other sums due under the Leases or collect the same in advance, other than to collect rentals one (1) month in advance of the time when they become due; or (c) subordinate or agree to subordinate any of the Leases to any other mortgage or encumbrance. Any such attempted action in violation of the provisions of this Section 5.5 shall be null and void. Without in any way limiting the requirement of Noteholder's consent hereunder, any sums received by Mortgagor in consideration of any termination (or the release or discharge of any lessee) modification or amendment of any Lease shall be applied to reduce the outstanding secured obligations and any such sums received by Mortgagor shall be held in trust by Mortgagor for such purpose.

**ARTICLE6**

CONFIDENTIAL

KULICK016308

## Miscellaneous

6.1     Release. If all of the secured indebtedness be paid as the same becomes due and payable and if all of the covenants, warranties, undertakings and agreements made in this Mortgage are kept and performed, then and in that event only, all rights under this Mortgage shall terminate and the Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Noteholder in due form at Mortgagor's cost.

**6.2     Intentionally omitted**

6.3     Lender's Performance of Defaults. If Mortgagor defaults in the payment of any tax, assessment, encumbrance or other imposition, in its obligation to furnish insurance hereunder and the payment of premiums with respect thereto or in the performance or observance of any other covenant, condition or term in this Mortgage or in any other instrument securing the Note, including any maintenance, repair and/or replacement obligations, Mortgagee may at its option perform or observe the same, and all expenses incurred by Mortgagee shall become due and payable immediately by Mortgagor. The expenses so incurred, together with interest thereon at the rate of default interest described in the Note, from the date incurred until paid by Mortgagor, shall be added to the indebtedness and secured by the lien of this Mortgage. Nothing contained herein shall be construed as requiring Mortgagee to advance or expend monies for any purposes mentioned in this paragraph, or for any other purpose.

6.4     Waiver by Noteholder. Noteholder may at any time and from time to time (a) waive or not enforce compliance by Mortgagor with any covenant herein made by Mortgagor; (b) consent to Mortgagor doing any act which hereunder Mortgagor is prohibited from doing, or consent to Mortgagor failing to do any act which hereunder Mortgagor is required to do; (c) release any part of the Property, or any interest therein, from the lien of this Mortgage, or (d) release any party liable, either directly or indirectly, for the secured indebtedness or for any covenant herein or in any other instrument now or hereafter securing the payment of the secured indebtedness, without impairing or releasing the liability of any other party. No such act shall in any way impair the rights of Noteholder hereunder except to the extent specifically agreed to by Noteholder in writing.

6.5     Actions by Noteholder. The lien and other security rights of Noteholder hereunder shall not be impaired by any indulgence, moratorium or release granted by Noteholder, including but not limited to (a) any renewal, extension, increase or modification which Noteholder may grant with respect to any secured indebtedness, (b) any surrender, compromise, release, renewal, extension, exchange or substitution which Noteholder may grant in respect of the Property, or any part thereof or any interest therein, or (c) any release or indulgence granted to any endorser, guarantor or surety of any secured indebtedness.

CONFIDENTIAL

KULICK016309

6.6     Rights of Noteholder. Noteholder may waive any Event of Default without waiving any other prior or subsequent Event of Default. Noteholder may remedy any Event of Default without waiving the Event of Default remedied. Neither the failure by Noteholder to exercise, nor the delay by Noteholder in exercising, any right, power or remedy upon any Event of Default shall be construed as a waiver of such Event of Default or as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise of any right, power or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right, power or remedy hereunder may be exercised at any time and from time to time. No modification or waiver of any provision hereof nor consent to any departure by Mortgagor therefrom shall in any event be effective unless the same shall be in writing and signed by Noteholder and then such waiver or consent shall be effective only in the specific instances, for the purpose for which given and to the extent therein specified. No notice to nor demand on Mortgagor in any case shall of itself entitle Mortgagor to any other or further notice or demand in similar or other circumstances. Acceptance by Noteholder of any payment in an amount less than the amount then due on any secured indebtedness shall be deemed an acceptance on account only and shall not in any way affect the existence of an Event of Default hereunder.

6.7     Dealing with Successor. In the event the ownership of the Property or any part thereof becomes vested in a person other than Mortgagor, Noteholder may deal with such successor or successors in interest with reference to this Mortgage and to the indebtedness secured hereby in the same manner as with Mortgagor, without in any way vitiating or discharging Mortgagor's liability hereunder or for the payment of the indebtedness secured hereby. No sale of the Property, no forbearance on the part of Noteholder and no extension of the time for the payment of the indebtedness secured hereby given by Noteholder shall operate to release, discharge, modify, change or affect, in whole or in part, the liability of Mortgagor hereunder or for the payment of the indebtedness secured hereby or the liability of any other person hereunder or for the payment of the indebtedness secured hereby, except as agreed to in writing by Noteholder.

6.8     Place of Payment. The Note and all other secured indebtedness which may be owing hereunder at any time by Mortgagor shall be payable at the place designated in the Note.

6.9     Notice. Any notice, request, demand or other communication required or permitted hereunder, or under the Note, or under any other instrument securing the payment of the Note (unless otherwise expressly provided therein) shall be given in accordance with Section 8.17 of the Loan Agreement.

6.10    Application of Indebtedness. If any part of the secured indebtedness is not, for any reason, lawfully secured by this Mortgage, then Noteholder may without notice to Mortgagor apply payments made on the secured indebtedness first in discharge of the part not secured by this Mortgage. If for any reason any part of the secured indebtedness is not lawfully secured by the entire Property, then Noteholder may without notice to Mortgagor apply payments made on

CONFIDENTIAL

KULICK016310

the secured indebtedness first in discharge of that part. If Noteholder has full recourse against Mortgagor or any guarantor for part, but not all, of the secured indebtedness for any reason, then Noteholder may without notice to Mortgagor apply foreclosure proceeds which are to be applied to the secured indebtedness first against that portion of the secured indebtedness for which Noteholder does not have full recourse against Mortgagor or the guarantor. Similarly, Noteholder may without notice to Mortgagor apply any cash payments actually paid by Mortgagor or any guarantor before final maturity of the Note (by acceleration or otherwise) to the portion of the secured indebtedness for which Noteholder does not have full recourse against Mortgagor or the guarantor.

6.11    Heirs, Successors and Assigns. The terms, provisions, covenants and conditions hereof shall be binding upon Mortgagor, and the heirs, devisees, representatives, successors and assigns of Mortgagor including all successors in interest of Mortgagor in and to all or any part of the Property, and shall inure to the benefit of Noteholder and its respective heirs, successors, substitutes and assigns and shall constitute covenants running with the land. All references in this Mortgage to Mortgagor or Noteholder shall be deemed to include all such heirs, devisees, representatives, successors, substitutes and assigns.

6.12    Severability. A determination that any provision of this Mortgage is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Mortgage to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

6.13    Gender and Number. Within this Mortgage, words of either gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless in each instance the context otherwise requires.

6.14    Counterparts. This Mortgage may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument, but in making proof hereof it shall only be necessary to produce one such counterpart.

6.15    Joint and Several. Where two or more persons or entities have executed this Mortgage, unless the context clearly indicates otherwise, the term "Mortgagor" as used in this Mortgage means the Mortgagors hereunder or either or any of them and the obligations of Mortgagor hereunder shall be joint and several.

6.16    Modification or Termination. Subject to Section 6.7 above, the Note and this Mortgage may only be modified or terminated by a written instrument or instruments executed by the party against which enforcement of the modification or termination is asserted, and any alleged modification or termination which is not so documented shall not be effective as to any party.

CONFIDENTIAL                                                                    KULICK016311

6.17    Filing and Recordation. Mortgagor shall cause this Mortgage and all amendments and supplements thereto and substitutions therefor and all financing statements and continuation statements relating hereto to be recorded, filed, re-recorded and refiled in such manner and in such places as Noteholder shall reasonable request, and shall pay all such recording, filing, re-recording and refiling taxes, fees and other charges.

6.18.    Waiver by Mortgagor. In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Mortgagor agrees as follows: to the extent permitted by law, Mortgagor agrees that Noteholder shall be entitled to seek a deficiency judgment from Mortgagor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Mortgagor expressly recognizes that this section constitutes a waiver of any applicable law which would otherwise permit Mortgagor, any guarantor and any other persons against whom recovery of deficiencies is sought to independently (even absent the initiation of deficiency proceedings against them) present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Mortgagor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Mortgagor, any guarantor, and any others against whom recovery of a deficiency is sought.

6.19    ENTIRE AGREEMENT. **THE NOTE, THIS MORTGAGE AND OTHER DOCUMENTS EXECUTED BY MORTGAGOR AND/OR NOTEHOLDER AND DELIVERED IN CONNECTION THEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

6.20    WAIVER OF TRIAL BY JURY. **MORTGAGOR HEREBY KNOWINGLY, WILLINGLY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF MORTGAGEE, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.**

6.21    GOVERNING LAW. **THIS MORTGAGE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF**

CONFIDENTIAL

KULICK016312

OKLAHOMA AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE.

## ARTICLE 7
### Oklahoma Specific Provisions

7.1 Principles Of Construction. In the event of any inconsistencies between the terms and conditions of this Article 7 and the terms and conditions of this Mortgage, the terms and conditions of this Article 7 shall control and be binding.

7.2 Additional Oklahoma Rights and Remedies. Mortgagee shall have the following rights and remedies, which shall be in addition to, and not in limitation of, any other rights and remedies set forth in this Mortgage:

(a) Power of Sale. Mortgagee may elect to use the non-judicial Power of Sale which is hereby granted and conferred. Such Power of Sale shall be exercised by giving Mortgagor notice of Intent to Foreclose by Power of Sale and setting forth among other things, the nature of the breach(es) or default(s) and the action required to effect a cure thereof and the time period within which such cure may be effected all in compliance with the Oklahoma Power of Sale Mortgage Foreclosure Act, 46 OKLA. STAT. Section 40 *et seq.* (the "Act"), as the same may be amended from time to time or other applicable statutory authority. If no cure is effected within the statutory time limits, Mortgagee may accelerate the indebtedness secured by this Mortgage without further notice (the Act's cure period shall run concurrently with any contractual provisions for notice and/or cure period before acceleration of the indebtedness) and may then proceed in the manner and subject to the conditions of the Act to send to Mortgagor and other necessary parties a Notice of Sale and to sell and convey the Property and other Collateral in accordance with the above referenced statutes. The sale shall be made at one or more sales, as an entirety or in parcels, upon such notice, at such time and places, subject to all conditions and with the proceeds thereof to be applied all as provided in the Act. No action of Mortgagee based upon the provisions contained herein or contained in the Act, including, without limitation, the giving of the Notice of Intent to Foreclose by Power of Sale or the Notice of Sale, shall constitute an election of remedies which would preclude Mortgagee from pursuing judicial foreclosure before or at any time after commencement of the power of sale foreclosure procedure. Mortgagor fully understands the consequences of conferring on Mortgagee the above-described power of sale, and if Mortgagee elects to enforce this Mortgage by exercising such power of sale, Mortgagor hereby expressly waives, to the fullest extent permitted by law, any right to a judicial hearing prior to the sale of the Property. As often as any proceedings may be taken to foreclose this Mortgage, whether pursuant to the power of sale or by judicial proceedings, or to foreclose the security interest which has been granted to Mortgagee, Mortgagor agrees to pay to Mortgagee, in addition to all other sums due, all reasonable costs and expenses, including reasonable attorneys' fees incurred by Mortgagee.

**CONFIDENTIAL**

**KULICK016313**

(b)     Judicial Foreclosure. Whether or not proceedings have commenced by the exercise of the Power of Sale above given, Mortgagee in lieu of proceeding with the power of sale may at its option declare the whole amount of the indebtedness remaining unpaid, immediately due and payable without notice, and proceed by suit or suits in equity or at law to foreclose this Mortgage.

(c)     Appointment of Receiver. Without regard to Mortgagee's election of non-judicial Power of Sale Foreclosure or judicial foreclosure, Mortgagee shall be entitled to the appointment of a receiver by any court of competent jurisdiction, without notice and without regard to the sufficiency or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment. The receiver shall have all of the rights and powers permitted under the laws of the state within which the Property is located.

(d)     Waiver of Appraisement. Notwithstanding anything to the contrary contained in this Mortgage or the other Loan Documents, if the Mortgagee elects to foreclose upon this Mortgage by judicial proceedings, appraisement of the Property is waived or not waived at the option of the Mortgagee. Such option can be exercised at or prior to the time judgment is rendered in any judicial foreclosure thereof.

7.3     Assignment of Leases and Rents. With respect to the Assignment of Leases and Rents, whether contained herein or contained in a separate assignment of leases and rents, the license granted to the Mortgagor to receive rents shall be on the condition and with the understanding and agreement that the Mortgagor shall hold same, as well as the right and license to receive same, as a trust fund to be applied, and the Mortgagor hereby covenants to so apply same, first, to the payment of taxes and assessments then due and payable upon the Property before penalty or interest are due thereon, second, to the cost of insurance then due and payable and maintenance and repairs on the Property, and third, to the payment of interest and principal then due and payable on the indebtedness secured by this Mortgage, before using any part of the same for any purpose.

7.4     Oklahoma Mortgage Tax. Mortgagor shall pay the Oklahoma Real Estate Mortgage Tax to be paid upon the recording of this Mortgage as prescribed and levied pursuant to 68 OKLA. STAT. Section 1901 *et seq,* as the same may be amended from time to time.

7.5     Invalid Provisions. If any provision of this Mortgage is held to be illegal, invalid or unenforceable, such provision shall be fully severable; this Mortgage shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof; the remaining provisions hereof shall remain in full effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance herefrom; and in lieu of such illegal, invalid or unenforceable provision there shall be added automatically as a part of this Mortgage a provision as similar in terms lo such illegal, invalid or unenforceable provision as may be possible to be legal, valid and enforceable.

CONFIDENTIAL                                                                      KULICK016314

7.6     Minerals. Mortgagor agrees that the making of any oil, gas or mineral lease or the sale or conveyance of any mineral interest or right to explore for minerals under, through, or upon the Property could impair the value of the Property as security for payment of the secured indebtedness and that the Mortgagor shall not lease the Property, or any part thereof, for oil, gas or other mineral purposes, or grant, assign, or convey any mineral interest of any nature, or the right to explore for oil, gas, and other minerals, without first obtaining Noteholder's written consent. If Noteholder consents to such lease or grant of mineral rights, Mortgagor and Noteholder will mutually agree on the division of any consideration to be paid for such lease or grant of mineral rights, with the Noteholder's share to be applied upon the indebtedness hereby secured; provided, however, that the acceptance of such consideration shall in no way impair the lien of this Mortgage on the entire Property and all rights therein, including all mineral rights, if any, owned by Mortgagor. Noteholder and Mortgagor acknowledge that it is not within Mortgagor's power to prohibit entry upon the Property by third persons holding the right to explore for and produce minerals, whether such right is granted or held by persons other than Mortgagor owning a mineral interest in the Property or by persons acquiring such rights through pooling or other actions permitted under Oklahoma law. In the event that entry is made upon the Property for such purpose, Mortgagor and Noteholder will mutually agree on the division of any consideration paid for surface damages to the Property in accordance with the terms of the Loan Agreement.

*[Signatures appear on next page]*

CONFIDENTIAL

KULICK016315

IN WITNESS WHEREOF, THIS SECOND MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING is executed by the undersigned effective as of the Effective Date.

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE LENDER TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.**

Mortgagor's Address:

c/o Vesta Realty, LLC

4211 E 71st St

Suite J

Tulsa, OK 74136

MORTGAGOR:

**EATON PLACE BEST LIVING, LLC,**

a Delaware limited liability company

By:    **EATON PLACE INVESTOR, LLC**, a Delaware limited liability company, Manager

By:    **LOUIS INVESTMENTS, LLC**, a Kansas limited liability company, Manager

By: _____

Marc Kulick

Manager

[Acknowledgements on page following]

**CONFIDENTIAL**

**KULICK016316**

ACKNOWLEDGMENT

STATE OF OKLAHOMA     )

                          )    SS:

COUNTY OF TULSA      )

The foregoing instrument was acknowledged before me this 24th day of October, 2025, by Marc Kulick, the Manager of Louis Investments, LLC, a Kansas limited liability company, the Manager of Eaton Place Investor, LLC, a Delaware limited liability company, the Manager of Eaton Place Best Living, LLC, a Delaware limited liability company, on behalf of the limited liability company.

MARANDA FAITH MORALES
Notary Public in and for
STATE OF OKLAHOMA
Commission #23003429
Expires: 9 Mar 2027

_____
Notary Public

[SEAL]

CONFIDENTIAL

KULICK016317

## EXHIBIT A

### LEGAL DESCRIPTION

Lots 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69 and 71, on Douglas Avenue, in N.A. English's Addition to Wichita, Sedgwick County, Kansas, together with all of the vacated east-west alley lying south of and adjacent to said Lots; and Lots 1, 3, 5, 7, 9 and 11, on Emporia Avenue, in N.A. English's Addition to Wichita, Sedgwick County, Kansas; and Lots 2, 4, 6, 8, 10 and 12, on Fourth, now St. Francis Avenue, in N.A. English's Addition to Wichita, Sedgwick County, Kansas, together with all of the vacated north-south alley adjoining said Lots, in N.A. English's Addition to Wichita, Sedgwick County, Kansas.

**CONFIDENTIAL**

**KULICK016318**

2025103101156568  B: 16277 P: 674
10/31/2025 01:51:35 PM  Pgs: 15
Fee: $46.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma



This instrument was prepared by and
after recording should be returned to:

David P. Limekiller, Esq.
GableGotwals
110 N. Elgin, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

Received: $400.00 MTG TAX
Rcpt# T2524184
Dated this 31st day of October, 2025.
Forrest "Butch" Freeman
Oklahoma Co. Treasurer
By AMARTIN, Deputy

## MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, AND FIXTURE FILING

(Oklahoma County, Oklahoma)

(This document serves as a fixture filing under § 1-9-502 of the Oklahoma Uniform Commercial Code.)

**A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE GRANTOR UNDER THIS MORTGAGE**

THIS MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, AND FIXTURE FILING (this "**Mortgage**") is made as of October 29th, 2025, by Montgomery Best Living LLC, a Delaware limited liability company, (the "**Grantor**"), having a mailing address at 6911 S 66th East Ave Suite 100 Tulsa, OK 7413, in favor of YSA Investments 1, LLC, a Delaware limited liability company (together with its successors and/or assigns, the "**Mortgagee**"), having a mailing address at 8 The Green #23817 Dover, DE 19901.

### RECITALS

A.  Mortgagee as lender, extended credit to the Borrower Parties through multiple loans (the "Loans") and pursuant to the terms of the loan documents.

B.  The Borrower Parties defaulted on the payment and performance of the Loans and loan documents.

C.  The Borrower Parties own equity interests in Grantor or otherwise are affiliated with Grantor, and Grantor will derive substantial and material direct or indirect benefits from the execution and delivery of this Mortgage.

4860-2926-3509, v. 4

D.    Borrower Parties and guarantor of the Loans have granted Lender a Power of Attorney authorizing the Mortgage.

NOW, THEREFORE, Grantor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, and for the purpose of securing the Secured Obligations (as subsequently defined), hereby agrees with Mortgagee as follows:

1.    **Grant of Security**.  Grantor hereby irrevocably GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS, PLEDGES, MORTGAGES, and SETS OVER and has by these presents GRANTED, BARGAINED, SOLD, CONVEYED, TRANSFERRED AND ASSIGNED, to Mortgagee, with the power of sale and right of entry and possession, all of Grantor's right, title and interest, whether now owned or hereafter acquired, in the land described in the attached Exhibit A (the "**Land**"), together with: (i) all the buildings and other improvements now on or that may be placed hereafter on the Land during the existence of this lien; (ii) Grantor's rights and interests in all fixtures or other property now or hereafter attached to, installed in, or used in connection with the buildings and other improvements now erected or hereafter to be erected on the Land; (iii) Grantor's rights and interests in all leases, easements, rights-of-way, permits, licenses and all other interests which are appurtenant to, relate to or used in connection with the Land, whether or not such right, title and interest be correctly, fully or sufficiently described or referred to herein; (iv) Grantor's rights and interests in any streets, ways, alleys and strips of land adjoining the Land or any part thereof; and (v) all rights, estates, powers and privileges appurtenant or incident to the foregoing (the Land together with such other property, rights and/or interests described in (i) though (iv) above are hereafter collectively referred to as the ("**Mortgaged Property**").

TO HAVE AND TO HOLD the Mortgaged Property unto the Mortgagee and its successors or and assigns, upon the terms, provisions and conditions of this Mortgage.

In order to secure the payment and performance of the Secured Obligations, Grantor also grants to Mortgagee a security interest in each of the following now owned or acquired in the future by Grantor (the "**Collateral**") and all proceeds of the Collateral:

(i)    all goods, equipment, furnishings, fixtures, furniture, chattels and personal property of whatever nature now or hereafter attached or affixed to or used in and about the buildings or other improvements now erected or hereafter to be erected on the Land, or otherwise located on such land, and all fixtures, accessions and appurtenances thereto, and all renewals or replacements of or substitutions for any of the foregoing;

(ii)    all building materials and equipment now or hereafter delivered to the Mortgaged Property and intended to be installed therein;

(iii)    all security (including cash deposits, letters of credit, stock warrants, bonds or other forms of security) and all advance rentals under lease agreements now or at any time hereafter covering or affecting any of the Mortgaged Property or any of the Collateral and held by or for the benefit of Grantor;

(iv)    all monetary deposits which Grantor has been required to give to any public or private utility with respect to utility services furnished to the Mortgaged Property;

4860-2926-3509, v. 4                                   2

(v) all issues and profits from any part of the Mortgaged Property or any of the Collateral;

(vi) all proceeds (including premium refunds) of each policy of insurance relating to the Mortgaged Property or any of the Collateral;

(vii) all proceeds from the taking of the Mortgaged Property, any of the Collateral, or any part of either of them, or any interest therein or right or estate appurtenant thereto, by eminent domain or by purchase in lieu thereof;

(viii) all contracts related to the Mortgaged Property or any Collateral;

(ix) all money, funds, cash, cash equivalents, securities, investment property, accounts, instruments, documents, general intangibles (including copyrights, trademarks, trade names, trade dress, domain names, symbols and licenses of the foregoing used in connection therewith), and notes or chattel paper (whether tangible or intangible chattel paper or electronic chattel paper) arising from or related to the Mortgaged Property or any Collateral, including any funds deposited or set aside for the payment of taxes or insurance premiums related to the Mortgaged Property or any Collateral;

(x) all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Mortgaged Property or any Collateral;

(xi) all plans, specifications, maps, surveys, reports, architectural, engineering and construction contracts, books of account, insurance policies and other documents or records of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Mortgaged Property or any Collateral;

(xii) all proceeds and other amounts paid or owing to Grantor under or pursuant to any and all contracts and bonds or commercial tort claims relating to the construction, erection renovation, or otherwise of the Mortgaged Property or any Collateral; and

(xiii) all of Grantor's interest in oil, gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons and all products refined or separated therefrom and all other hydrocarbons and other minerals produced, saved from, attributable to or transported through any Mortgaged Property and all products processed or obtained therefrom, the proceeds thereof, and all accounts and general intangibles under which such proceeds may arise, together with any sums of money that may now or at any time hereafter become due and payable to Grantor by virtue of any and all royalties, overriding royalties, bonuses, delay rentals and any other amount of any kind or character arising under any and all present and future oil, gas and mining leases covering the Mortgaged Property or any part thereof.

The Mortgaged Property and the Collateral are sometimes collectively called the "**Property**".

1.     **Secured Obligations**.

(a) This Mortgage is made to secure the full and timely payment and performance of the following (collectively, the "**Secured Obligations**"):

(i)      The sum of $2,000,000.00 and all indebtedness, now existing or arising in the future, including any extensions, modifications, substitutions, amendments, replacements, rearrangements and renewals thereof, whether for principal, interest, fees, expenses, indemnification or otherwise, including all interest and all reasonable costs and out-of-pocket expenses (including reasonable attorneys' fees and expenses) incurred by Mortgagee in connection with any exercise of its rights or remedies hereunder; and

(ii)      all future advances and re-advances made for Borrower Parties' or Grantor's benefit or to protect any of the Property or any of the rights of Mortgagee and out-of-pocket expenses (including reasonable attorneys' fees and expenses) incurred by Mortgagee in connection with any exercise of its rights or remedies hereunder, pursuant to the terms of this Mortgage; and

(iii)      all other obligations, debts and liabilities, plus interest thereon, of Grantor or Borrower Parties to Mortgagee, as well as all claims by Mortgagee against Grantor or Borrower Parties, whether arising from a loan or a purchased obligation, whether incurred for a consumer or a business purpose, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Loans, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor or Borrower Parties may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

(b)      The initial principal amount and initial maturity date of the Mortgage is $2,000,000.00 and November 7th 2025, respectively.

2.      **Title**. Grantor has good, indefeasible, marketable and insurable fee simple title of record to the Property, free and clear of all liens, encumbrances and charges except for permitted encumbrances. Grantor shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all Persons whomsoever.

3.      **Covenants and Agreements**. So long as any Secured Obligations remain unpaid or outstanding, Grantor covenants and agrees with Mortgagee as follows:

(a)      <u>Operation of Property</u>.  Grantor shall operate and keep the Property in accordance with all applicable restrictive covenants, zoning ordinances and building codes, flood disaster laws in all material respects, and all other applicable laws and shall pay all reasonable fees or charges necessary in connection therewith, in each case except where the failure to do so could not reasonably be expected to have a material adverse effect.

(b)      <u>Taxes</u>.  Grantor shall cause to be paid prior to delinquency all taxes and assessments heretofore or hereafter levied or assessed (i) against the Property or any part thereof or (ii) against the Mortgagee for or on account of the Secured Obligations or the interest created by this Mortgage. Notwithstanding the foregoing, Grantor may in good faith and with

4860-2926-3509, v. 4

4

adequate reserves to pay, contest, by any and all appropriate administrative, trial or appellate proceedings, or any combination thereof, the amount, validity, enforceability or application of any imposition that Grantor is required to pay or perform to any person other than Mortgagee.

(c)     Repair and Maintenance.  Grantor shall not, without the prior written consent of Mortgagee, make any significant alterations to the Mortgaged Property that would materially reduce the value of the Mortgaged Property at the time made. Grantor will keep the Property (or cause the Property to be kept) in first class order, repair, operating condition and appearance, causing all necessary repairs, renewals, replacements, additions and improvements to be promptly made, and will not allow any of the Property to be misused, abused or wasted or to deteriorate.

(d)     Condemnation.  Grantor shall notify Mortgagee immediately of any threatened or pending proceeding for condemnation affecting the Property or arising out of damage to the Property, and Grantor shall, at Grantor's expense, diligently prosecute any such proceedings. Mortgagee shall have the right (but not the obligation) to participate in any such proceeding and to be represented by counsel of its own choice.  Mortgagee shall be entitled to receive all sums which may be awarded or become payable to Grantor for the condemnation of the Property, or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Grantor for injury or damage to the Property.  Grantor shall, promptly upon request of Mortgagee, execute such additional assignments and other documents as may be necessary from time to time to permit such participation and to enable Mortgagee to collect and receipt for any such sums.  All such sums are hereby assigned to Mortgagee, and shall, after deduction therefrom of all reasonable expenses actually incurred by Grantor, including attorneys' fees, and at Mortgagee's sole option be (1) applied (upon compliance with such terms and conditions as may be required by Mortgagee) to repair or restore the Property, or (2) applied to the payment of the Secured Obligations in such order and manner as Mortgagee, in its sole discretion, may elect, whether or not due.  After such payment, the unpaid portion of the Secured Obligations shall remain in full force and effect. Mortgagee shall not be, under any circumstances, liable or responsible for failure to collect or to exercise diligence in the collection of any such sum or for failure to see to the proper application of any amount paid over to Grantor.  Mortgagee is hereby authorized, in the name of Grantor, to execute and deliver valid acquittances for, and to appeal from, any such award, judgment or decree.  All costs and expenses (including but not limited to attorneys' fees) incurred by Mortgagee in connection with any condemnation shall be a demand obligation owing by Grantor and added to the Secured Obligations.

(e)     Insurance.  Grantor will maintain policies of insurance (including general liability and property insurance) with financially sound and reputable insurance companies, in such amounts, and with such deductibles and covering such risks as are customarily carried by companies engaged in similar businesses and owning similar properties and acceptable to Lender. Lender shall be named as loss payee, as its interest may appear, and/or additional insured with respect to any such insurance, and each provider of any such insurance shall agree, by endorsement upon the policy that it will give Lender thirty (30) days' prior written notice before any such policy or policies shall be altered or canceled

(f)     Environmental Compliance.  The Property and the intended use thereof by Grantor will comply with all applicable Environmental Laws (as defined herein). "Environmental Laws" means, collectively, any local, state or federal law, rule or regulation,

order, decree, together will all amendments thereto, pertaining to the environment, natural resources, pollution, or public health including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 *et seq.*), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 *et seq.*), the Federal Water Pollution Control Act (33 U.S.C. § 1251 *et seq.*), the Hazardous Materials Transportation Act (49 U.S.C. § 5101 *et seq.*), the Clean Air Act (42 U.S.C. § 7401 *et seq.*), the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 *et seq.*), the Emergency Planning and Community Right-to-Know Act (42 U.S.C. § 11001 *et seq.*), the Occupational Safety and Health Act (29 U.S.C. § 651 *et seq.*), the Residential Lead-Based Paint Hazard Reduction Act (42 U.S.C. § 4851 *et seq.*).

4.      **Right of Mortgagee to Perform**.  If Grantor fails to perform any act or to take any action which hereunder Grantor is required to perform or take, or to pay any money which hereunder Grantor is required to pay, or takes any action prohibited hereby, Mortgagee may, but shall not be obligated to, perform or cause to be performed such act or take such action or pay such money or remedy any action so taken, and any expenses so incurred by Mortgagee, and any money paid by Mortgagee in connection therewith, shall be a demand obligation owing by Grantor to Mortgagee and Mortgagee, upon making such payment, shall be subrogated to all of the rights of the person receiving such payment.  Any amounts due and owing by Grantor to Mortgagee pursuant to this Mortgage shall bear interest from the date such amount becomes due until paid at the default rate, (Lender and Grantor intend that the Mortgage strictly comply with applicable usury law) will be part of the Secured Obligations and shall be secured by this Mortgage and by any other instrument securing the Secured Obligations.

5.      **Assignment of Rents, Income, Profits and Proceeds**.

(a)      <u>Assignment</u>.  Grantor absolutely and unconditionally assigns, transfers and sets over to Mortgagee any leases (the "**Leases**") now or hereafter covering the Mortgaged Property, or any part of the Mortgaged Property, and all of the rents, income, receipts, revenues, issues, profits and other sums of money (collectively, "**Rent**") that are now or at any time hereafter become due and payable to Grantor under the terms of, or arising or issuing from or out of, the Leases or from or out of the Mortgaged Property.  Rents covered by this assignment will include but not be limited to minimum rents, additional rents, percentage rents, deficiency rents and liquidated damages following default, security deposits, advance rents, and all proceeds payable under any policy of insurance covering the loss of any such rents, income, receipts, revenues, issues or profits.  Rents covered by this assignment shall also include any money Grantor is entitled to recover from any lessee in bankruptcy or other similar insolvency proceeding such as, without limitation, money recoverable for use and occupancy of any part of the Mortgaged Property and damage claims arising out of Lease defaults, including rejections, under any applicable bankruptcy law or other similar insolvency or debtor relief law.  This assignment shall include, without limitation, the immediate and continuing right to collect and receive Rent.

(b)      <u>Collections Before and After Default</u>.  Until receipt from Mortgagee of notice of the occurrence and continuance of an Event of Default (a "**Notice of Default**"), each lessee under the Leases may pay Rent directly to Grantor and Grantor shall have the right to receive such Rent.  Upon receipt from Mortgagee of a Notice of Default, each lessee under the Leases is hereby authorized and directed to pay directly to Mortgagee all Rent thereafter accruing and the receipt of Rent by Mortgagee shall be a release of such lessee to the extent of all amounts

4860-2926-3509, v. 4                                            6

so paid. The receipt by a lessee under the Leases of a Notice of Default shall be sufficient authorization for such lessee to make all future payments of Rent directly to Mortgagee and each such lessee shall be entitled to rely on such Notice of Default and shall have no liability to Grantor for any Rent paid to Mortgagee after receipt of the Notice of Default. After a Notice of Default, any Rent received by Grantor shall be held in trust for Mortgagee and Grantor shall immediately deliver such rent to Mortgagee. Rent received by Mortgagee for any period prior to foreclosure under this Mortgage or acceptance of a deed in lieu of foreclosure shall be applied by Mortgagee to the payment (in such order as Mortgagee shall determine) of: (i) all expenses of managing the Property reasonably incurred, including but not limited to the salaries, fees and wages of a managing agent and such other employees as Mortgagee may deem reasonably necessary or desirable; all expenses of operating and maintaining the Property, including but not limited to all taxes, assessments, charges, claims, utility costs and premiums for insurance, and the cost of all reasonable alterations, renovations, repairs or replacements; and all expenses incident to taking and retaining possession of the Property or collecting Rent due and payable under the Leases; and (ii) the indebtedness secured by this Mortgage, reasonable attorneys' and collection fees and other amounts, in such order as Mortgagee in its sole discretion may determine. In no event will the assignment under this Section 5(b) reduce the Secured Obligations except to the extent (dollar for dollar), if any, that Rent is actually received by Mortgagee and applied upon or after receipt to the Secured Obligations in accordance with the preceding sentence. Without impairing its rights hereunder, Mortgagee may, at its option, at any time and from time to time, release to Grantor any Rent received by Mortgagee. As between Grantor and Mortgagee, and any Person claiming through or under Grantor, other than any lessee under the Leases who has not received a Notice of Default under this Section 5, the assignment under this Section 5 is intended to be absolute, unconditional and presently effective and the provisions of this Section 5 for notification of lessees under the Leases upon the occurrence and continuance of a default are intended solely for the benefit of each such lessee and shall never inure to the benefit of Grantor or any Person claiming through or under Grantor, other than a lessee who has not received such notice. It shall never be necessary for Mortgagee to institute legal proceedings of any kind whatsoever to enforce the provisions of this Section 5. At any time during which Grantor is receiving Rent directly from lessees under the Leases, Grantor shall, upon receipt of written direction from Mortgagee, make demand and sue for all Rent due and payable under one or more Leases, as directed by Mortgagee, as it becomes due and payable, including Rent which is past due and unpaid. In the event Grantor fails to take such action, or at any time during which Grantor is not receiving Rent directly from lessees under the Leases, Mortgagee shall have the right (but shall be under no duty) to demand, collect and sue for in its own name all Rent due and payable under the Leases, as it becomes due and payable, including Rent which is past due and unpaid. Mortgagee shall not be deemed to have taken possession of the Mortgaged Property except on the exercise of any option Mortgagee may have to do so, evidenced by its demand and overt act for such purpose.

(c)     Limitation of Mortgagee's Liability. Mortgagee shall not be liable for any loss sustained by Grantor resulting from Mortgagee's failure to let the Mortgaged Property, or any part thereof; or from any other act or omission of Mortgagee under or relating to any Lease unless such loss is due to Mortgagee's gross negligence or willful misconduct. Nor shall Mortgagee be obligated to perform or discharge any obligation, duty or liability under the Leases by reason of the assignment set forth in this Section 5 or the exercise of rights or remedies hereunder. Without limiting the foregoing, Mortgagee shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of rent, but shall be

accountable only for rent that Mortgagee actually receives. This Section 5 shall not operate to place responsibility upon Mortgagee for the control, care, management or repair of the Mortgaged Property, nor for the carrying out of any of the terms and conditions of any Lease.

6. **Events of Default and Remedies**.

(a) Events of Default. Each of the following shall constitute an "**Event of Default**" under this Mortgage whether voluntary or involuntary and whether occurring by operation of law or otherwise: (i) the occurrence of a default under the Loans, or any loan document, (ii) Grantor's failure to perform any obligation or condition under this Mortgage, (iii) the bankruptcy or dissolution of the Grantor; or (v) the liens, mortgages or security interests of Mortgagee in any of the Property become unenforceable in whole or in part, or cease to be of the priority herein required, (or the validity or enforceability thereof, in whole or in part, shall be challenged or denied by Grantor or any person obligated to pay any part of the Secured Obligations).

(b) Remedies. If an Event of Default is continuing, Mortgagee may, at its option, and without prior notice or demand, exercise, and hereby is authorized and empowered by Grantor so to exercise, any or all of the remedies set forth in the Mortgage (including enforcement of the Assignment of Rents), or otherwise permitted by law or in equity.

(c) Foreclosure. During the continuance of an Event of Default, Mortgagee has the option and is authorized and empowered to enforce this Mortgage and to commence foreclosure proceedings against the Mortgaged Property through judicial proceedings or by advertisement, pursuant to the statutes in such case made and provided, and to sell the Mortgaged Property or to cause the same to be sold at public sale, and to convey the same to the purchaser, in accordance with said statutes in a single parcel or in several parcels. Any sale made by Mortgagee hereunder may be as an entirety or in parcels, and any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as is required by applicable law. To the extent permitted by applicable law, Grantor hereby waives its right, if any, to require that the Mortgaged Property be sold as separate tracts or units. The sale by Mortgagee of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and Mortgagee is specifically empowered to make successive sale or sales under such power until the whole of the Mortgage Property shall be sold; and, if the proceeds of such sale of less than the whole of the Mortgaged Property shall be less than the aggregate of the Secured Obligations and the expenses thereof, this Mortgage and the lien hereof shall remain in full force and effect as to the unsold portion of the Mortgaged Property just as though no sale had been made; provided, however, that Grantor shall never have any right to require the sale of less than the whole of the Mortgaged Property but Mortgagee shall have the right, at its sole election, to sell less than the whole of the Mortgaged Property. If any sale hereunder is not completed or is defective in the opinion of Mortgagee, such sale shall not exhaust the power of sale hereunder and Mortgagee shall have the right to cause a subsequent sale or sales to be made hereunder. Any and all statements of fact or other recitals made in any deed or deeds given by Mortgagee or any successor or substitute appointed hereunder as to nonpayment of the indebtedness secured hereby, or as to the continuance of any Event of Default, or as Mortgagee having declared all of such indebtedness to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to the refusal, failure or inability to act of Mortgagee, or as to any other act or thing having been duly done by Mortgagee, shall be taken

4860-2926-3509, v. 4                                          8

as prima facie evidence of the truth of the facts so stated and recited. Mortgagee may appoint or delegate any one or more Persons as agent to perform any act or acts necessary or incident to any sale held by Mortgagee, including the posting of notices and the conduct of sale, but in the name and on behalf of Mortgagee. In any action to foreclose this Mortgage by judicial proceedings, appraisement of the Mortgaged Property is hereby waived or not waived at the option of the Mortgagee

(d)     Proceeds of Sale. The proceeds of any sale held by the Mortgagee in foreclosure of the Mortgage granted herein shall be applied in accordance with applicable law.

(e)     Receiver. Upon the occurrence of an Event of Default, Mortgagee, without regard to the value of the Property or the adequacy of the security for the Secured Obligations and other sums secured hereby, shall be entitled as a matter of right and without any additional showing or proof, at Mortgagee's election, to either (i) the appointment by the court of a receiver (without the necessity of Mortgagee posting a bond) to enter upon and take possession of the Property and to collect all Rents, income and other benefits thereof and apply the same as the court may direct or (ii) to be placed by the court into possession of the Property as mortgagee in possession with the same power herein granted to a receiver and with all other rights and privileges of a mortgagee in possession under law.

(f)     Mortgagee as Purchaser. Mortgagee has the right to become the purchaser at any sale held by Mortgagee or by any receiver or public officer, and if Mortgagee purchases at any such sale, it has the right to credit bid the Secured Obligations.

(g)     Uniform Commercial Code Rights and Remedies. During the continuance of an Event of Default, Mortgagee may exercise its rights of enforcement with respect to the Collateral under the Uniform Commercial Code as in effect in the State of Oklahoma, as amended from time to time.

(h)     Remedies Cumulative. All remedies herein expressly provided for are cumulative of any and all other remedies existing at law or in equity under applicable law and may be exercised independently, concurrently or successively in Mortgagee's sole discretion and as often as occasion therefor shall arise. Mortgagee's delay or failure to exercise any other remedy upon the occurrence of an Event of Default shall not be deemed a waiver of such right or remedy. No partial exercise by Mortgagee of any right or remedy will preclude further exercise thereof. Mortgagee will not be deemed as a consequence of its delay or failure to act, or any forbearance granted, to have waived or be estopped from exercising any of its rights or remedies.

(i)     Power of Sale. In addition to all other remedies available to Mortgagee under this Mortgage and the other Loan Documents, Grantor confers on Mortgagee the power to sell the Mortgaged Property, upon the occurrence and during the continuation of an Event of Default, in the manner and pursuant to the procedures set forth in the "Oklahoma Power of Sale Mortgage Foreclosure Act" (46 O.S. §§ 40-49), as amended from time to time (the "**Power of Sale Act**"), or pursuant to other applicable statutory or judicial authority. If an Event of Default is not cured in the time period provided in the Power of Sale Act, Mortgagee may accelerate the Secured Obligations without further notice and may then proceed in the manner and subject to the conditions of the Power of Sale Act to send Grantor and other necessary parties a notice of sale and may sell and convey the Mortgaged Property in accordance with

the Power of Sale Act. Mortgagee may enforce this Mortgage by exercising its power of sale or, at Mortgagee's sole option, by judicial foreclosure proceedings as provided by applicable law. No action of Mortgagee based upon the provisions contained in this Mortgage or in the Power of Sale Act, including, without limitation, the giving of the notice of intent to foreclose by power of sale or the notice of sale, will constitute an election of remedies that would preclude Mortgagee from accelerating the Secured Obligations and pursuing judicial foreclosure before or at any time after commencements of the power of sale foreclosure procedure. Grantor fully understands the consequences of conferring on Mortgagee the above-described power of sale, and if Mortgagee elects to foreclose this Mortgage by exercising this power of sale, Grantor expressly waives, to the fullest extent permitted by applicable law, any right to a judicial hearing before the sale of the Mortgaged Property.

(j) Costs and Expenses. As often as any proceedings are taken to foreclose this Mortgage, whether pursuant to the power of sale or by judicial proceedings or to foreclose the security interest granted to Mortgagee, Grantor agrees to pay to Mortgagee, in addition to all other sums due, all reasonable costs and out-of-pocket expenses, including reasonable attorney fees, incurred by Mortgagee.

(k) Waiver of Marshalling; Additional Rights of Mortgagee. Grantor waives any and all right to have the Property (and/or any other property that secures any of the Secured Obligations) marshaled. In exercising its rights and remedies, Mortgagee may sell all or any part of the Property together or separately, in one sale or by separate sales. If an Event of Default occurs and is continuing, Mortgagee may pursue any of its remedies and rights under this Mortgage with respect to the Property and Grantor to collect payment in full of the Secured Obligations, regardless of whether Mortgagee first proceeds against any other collateral for the Secured Obligations. Additionally, Grantor acknowledges and agrees that, upon the occurrence of an Event of Default, Mortgagee, in its sole discretion, (i) may proceed against the Property pursuant to this Mortgage, or against any other party obligated under, or collateral for, the Secured Obligations, as Mortgagee deems appropriate, and (ii) may exercise any right, power, or remedy to which it is entitled under applicable law simultaneously or separately, and in such order, as Mortgagee deems appropriate.

7. **Miscellaneous.**

(a) Release. Upon the payment and satisfaction in full of the Secured Obligations and termination of all obligations (if any) on the part of Mortgagee to extend credit to the Borrower Parties, all rights under this Mortgage will automatically terminate and the Property will become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Mortgagee in due form at Grantor's cost. Without limitation, all provisions herein for indemnity of Mortgagee shall survive discharge of the Secured Obligations and any foreclosure, release or termination of this Mortgage.

(b) Waiver by Mortgagee. Mortgagee may at any time and from time to time (i) waive or not enforce compliance by Grantor with any covenant herein made by Grantor; (ii) consent to Grantor doing any act which hereunder Grantor is prohibited from doing, or consent to Grantor failing to do any act which hereunder Grantor is required to do; (iii) release any part of the Property, or any interest therein, from the lien and security interest of this Mortgage, or (iv) release any party liable, either directly or indirectly, for the Secured Obligations or for any covenant herein or in any other instrument now or hereafter securing the

4860-2926-3509, v. 4                                           10

payment of the Secured Obligations, without impairing or releasing the liability of any other party. No such act shall in any way impair the rights of Mortgagee hereunder except to the extent specifically agreed to by Mortgagee in a signed writing.

(c)     Actions by Mortgagee. The lien, security interest and other rights of Mortgagee hereunder shall not be impaired by any indulgence, moratorium or release granted by Mortgagee, including but not limited to (i) any renewal, extension, increase or modification which Mortgagee may grant with respect to any of the Secured Obligations, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant in respect of the Property, or any part thereof or any interest therein, or (iii) any release or indulgence granted to any endorser, guarantor or surety of any of the Secured Obligations or any security for the Secured Obligations.

(d)     Entire Agreement. The Mortgage constitutes the entire understanding and agreement between Grantor and Mortgagee with respect to the Mortgage and supersede all prior written or oral understandings and agreements between Grantor and Mortgage with respect to the matters addressed in the Mortgage.

(e)     Authority. If Grantor, or any signatory who signs on behalf of Grantor, is a corporation, partnership, limited liability company or other legal entity, Mortgagor and any such signatory, and the person or persons signing for it, represent and warrant to Lender that this instrument is executed, acknowledged and delivered by Grantor's duly authorized representatives

(f)     Rights of Mortgagee. Mortgagee may waive any Event of Default without waiving any other prior or subsequent Event of Default. Mortgagee may remedy any Event of Default without waiving the Event of Default remedied. Neither the failure by Mortgagee to exercise, nor the delay by Mortgagee in exercising, any right, power or remedy upon any Event of Default shall be construed as a waiver of such Event of Default, nor shall it be construed as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise by Mortgagee of any right, power or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right, power or remedy hereunder may be exercised at any time and from time to time. No modification or waiver of any provision hereof nor consent to any departure by Grantor therefrom shall in any event be effective unless the same shall be in writing and signed by Mortgagee and then such waiver or consent shall be effective only in the specific instances, for the purpose for which given and to the extent therein specified. No notice to nor demand on Grantor in any case shall of itself entitle Grantor to any other or further notice or demand in similar or other circumstances. Acceptance by Mortgagee of any payment in an amount less than the amount then due on any of the Secured Obligations shall be deemed an acceptance on account only and shall not in any way affect the existence of any Event of Default hereunder.

(g)     Notification of Account Debtors. Mortgagee may at any time during the continuance of an Event of Default notify the account debtors or obligors of any accounts, chattel paper, negotiable instruments or other evidence of indebtedness included in the Collateral to pay Mortgagee directly.

(h)     Fixture Filing. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for

record in the real estate records in the Office of the County Clerk where the Property (including such fixtures) is situated. The mailing address of Grantor is set forth above. The address of Mortgagee from which information concerning the security interest may be obtained is as follows: 8 The Green #23817 Dover, DE 19901, Attention: Northwest Registered Agent.

(i)  Dealing with Successors. If ownership of the Property or any part thereof becomes vested in a Person other than Grantor, Mortgagee may, without notice to Grantor, deal with such successor or successors in interest with reference to this Mortgage in the same manner as with Grantor, without in any way vitiating or discharging Grantor's liability hereunder or for the payment and performance of the Secured Obligations. No sale of the Property, no forbearance on the part of Mortgagee and no extension of the time for the payment or performance of any of the Secured Obligations given by Mortgagee shall operate to release, discharge, modify, change or affect, in whole or in part, the liability of Grantor hereunder or for the payment or performance of the Secured Obligations or the liability of any other Person hereunder or for the payment or performance of the Secured Obligations, except as agreed to in writing by Mortgagee.

(j)  Further Acts. Grantor, at Grantor's expense, agrees to take such further actions and execute such further documents as Mortgagee reasonably may request to carry out the intent of this Mortgage or to establish and protect the rights and remedies created or intended to be created in favor of Mortgagee hereunder or to protect the value of the Mortgaged Property and the liens and security hereby created in favor of Mortgagee. Grantor agrees to pay all filing, registration or recording fees or taxes, and all expenses incident to the preparation, execution, acknowledgment or filing/recording of this Mortgage or any such instrument of further assurance, except where prohibited by law so to do.

(k)  Notice. Any notice or communication required or permitted hereunder shall be given to the parties' addresses set forth in this Mortgage.

(l)  Successors and Assigns. The terms, provisions, covenants and conditions hereof shall be binding upon Grantor, and the successors and permitted assigns of Grantor including all successors in interest of Grantor in and to all or any part of the Property, and shall inure to the benefit of the Mortgagee and its successors, substitutes and permitted assigns and shall constitute covenants running with the land. All references in this Mortgage to Grantor or Mortgagee shall be deemed to include all such successors, substitutes and assigns.

(m)  Severability. A determination that any provision of this Mortgage is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Mortgage to any Person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other Persons or circumstances.

(n)  Gender and Number. Within this Mortgage, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural and words in the plural number shall be held and construed to include the singular, unless in each instance the context otherwise requires.

(o)  Counterparts. This Mortgage may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of

which when taken together shall constitute a single contract.

(p) <u>Modification or Termination</u>. This Mortgage may only be modified or terminated by a written instrument or instruments executed by the party against which enforcement of the modification or termination is asserted. Any alleged modification or termination which is not so documented shall not be effective as to any party.

(q) <u>Negation of Partnership</u>. Mortgagee has no fiduciary or other special relationship with Grantor. Nothing contained herein or in other Loan Documents is intended to create any partnership, joint venture or association between Grantor and Mortgagee, or in any way make Mortgagee a co-principal with Grantor with reference to the Property, and any inferences to the contrary are hereby expressly negated.

(r) <u>Modification by Subsequent Owners</u>. Grantor agrees that it shall be bound by any modification of this Mortgage made by Mortgagee and any subsequent owner of the Mortgaged Property, with or without notice to Grantor, and no such modification shall impair the obligations of Grantor under this Mortgage. Nothing in this Section permits any transfer of the Property that constitutes an Event of Default.

(s) <u>Governing Law</u>. THIS MORTGAGE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF OKLAHOMA WITHOUT REGARD TO CHOICE OF LAW RULES.

(t) <u>Jurisdiction and Venue</u>. GRANTOR HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT SITTING IN THE COUNTY AND STATE WHERE THE MORTGAGED PROPERTY IS LOCATED WITH RESPECT TO ANY LEGAL ACTION OR PROCEEDING DIRECTLY OR INDIRECTLY ARISING FROM OR RELATED TO THIS MORTGAGE AND WAIVES ALL OBJECTIONS WHICH IT MAY HAVE TO SUCH JURISDICTION AND VENUE. NOTHING HEREIN SHALL, PRECLUDE OR PREVENT MORTGAGEE FROM BRINGING ACTIONS AGAINST GRANTOR IN ANY OTHER JURISDICTION AS MAY BE NECESSARY TO ENFORCE OR REALIZE UPON THE SECURITY HEREIN PROVIDED.

(u) <u>WAIVER OF JURY TRIAL</u>. GRANTOR AND MORTGAGEE IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(v) <u>Future Advances</u>. This Mortgage secures future principal advances by Mortgagee to Borrower Parties.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[SIGNATURE PAGE ATTACHED]*

4860-2926-3509, v. 4

13

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FINANCING STATEMENT is executed and delivered by the undersigned as of the date indicated at the top of the first page.

> **GRANTOR:**
> **Montgomery Best Living LLC,**
> a Delaware limited liability company
>
> By: Montgomery Apartment Holdings LLC
> A Delaware limited liability company, its sole member
>
> By: Montgomery Vesta Investors LLC
> A Kansas limited liability company, its sole member
>
> By: Louis Investments LLC
> A Kansas limited liability company, its manager
>
> By: _____
> Aharon Diveroli, Authorized Representative of Lender,
> Attorney in Fact, on behalf of sole member and manager
> Marc Kulick

STATE OF           )
                         ) ss.
COUNTY OF        )

The foregoing instrument was acknowledged before me on October , 2025, by Aharon Diveroli as authorized representative of YSA Investments 1, LLC as Attorney in Fact on behalf of sole member and manager Marc Kulick.

_____
Notary Public

Notary Commission No. HH687186

My Commission Expires: 6/12/2029

[S E A L]

> ANTONELLA PILAR YAZBAK
> MY COMMISSION # HH 687186
> EXPIRES: June 12, 2029

*SIGNATURE PAGE*
*MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, AND FIXTURE FILING*

**Exhibit A**

**Legal Description**

Lots THREE (3), FOUR (4), FIVE (5), SIX (6), SEVEN (7), and EIGHT (8), in Block THREE (3) of the AMENDED PLAT OF BLOCK THREE (3) MAIN STREET ADDITION, to Oklahoma City, Oklahoma County, Oklahoma,

according to the recorded plat thereof. TAX ID #013681350

2025103101156569  B: 16277 P: 689
10/31/2025 01:51:35 PM  Pgs: 10
Fee: $36.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma



## GUARANTY AND ROFO

July 16, 2025

**MARC KULICK**, an individual ("**Guarantor**") having an address for notices of % Vesta Realty, 6911 S. 66th E. Ave., Suite 100, Tulsa, OK 74133, hereby makes this Guaranty and ROFO (this "**Guaranty**") in favor of YSA INVESTMENTS 1, LLC, a Delaware limited liability company, having an address of 8325 NE 2nd Ave, Miami, FL 33138, Email: robert@vdacquisitions.com ("**Lender**"). Any defined term that is used herein and not defined herein shall have its meaning in the Promissory Note of even date herewith (the "**Note**") between Vesta Holdings LLC, an Oklahoma limited liability company (the "**Company**") and Lender.

1. GUARANTY. Guarantor guarantees, unconditionally and absolutely, to Lender the full and faithful keeping, performance, observance, and payment of all of the Company's obligations, representations, and warranties in the Note and the full and faithful keeping, performance and observance of all of the obligations, representations, and warranties of the Company ("**Pledgor**"), in the Collateral Pledge and Security Agreement ("**Agreement**") by and between the Company, Pledgor, and Lender (collectively, the "**Obligations**").

2. CERTAIN WAIVERS AND REQUIREMENTS.

   a. The obligations of Guarantor hereunder shall not be affected by any of the following: (a) the release or discharge of the Company or Pledgor in any creditors', receivership, bankruptcy, reorganization, insolvency, or other proceedings; (b) the rejection or disaffirmance in any such proceeding of the Note or Agreement or any portion thereof; (c) the impairment or modification of the Note or Agreement or any portion thereof, any remedy for the enforcement thereof, or the estate of the Company or Pledgor in bankruptcy that results from any present or future federal or state bankruptcy law or any other law of any kind or from the decision or order of any court or other governmental authority; (d) any defense of the Company or Pledgor; (e) the cessation of the liability of the Company or Pledgor for any cause whatsoever; or (f) any disability or defense of any kind of Guarantor now existing with respect to any of the Obligations or any provision of this Guaranty.

   b. Guarantor, with respect to its liabilities and obligations under this Guaranty, hereby waives (i) any requirement of notice of non-payment, non-keeping, non-performance, or non-observance by the Company, (ii) any proof of notice or demand to the Company, and (iii) any right to require that any action be first brought against the Company.

   c. If this Guaranty is held ineffective or unenforceable by any court of competent jurisdiction, then, at the election of Lender, Guarantor shall be deemed to be part of the "Company" and "Pledgor" under the Note or Agreement (as applicable) with the same force and effect as if Guarantor were expressly named therein with joint and several liability.

   d. Guarantor hereby agrees that Guarantor may be joined in any action against the Company and/or Pledgor in connection with the Note and/or Agreement, and recovery may be had against Guarantor in such action or in any independent action against Guarantor without Lender first pursuing or exhausting any remedy or claim against the Company or Pledgor. Guarantor also agrees that it will be conclusively bound by the judgment in any such action by Lender against the Company or Pledgor as if Guarantor were a party to such action even though Guarantor is not joined as a party in such action.

   e. Guarantor's obligations under this Guaranty shall not be terminated or affected in any way or manner whatsoever by (a) Lender's resort, or Lender's omission to resort, to any summary or other proceedings, actions, or remedies for the enforcement of any of Lender's rights under the Note or Agreement, or (b) any extensions of time or indulgences granted by Lender.

   f. Insofar as the payment by the Company of any sums of money to Lender is involved, this Guaranty is a guaranty of payment and not of collection, and shall remain in full force and

effect until the Obligations are satisfied.

g.    Guarantor hereby subordinates any claims of Guarantor against the Company or Pledgor of any kind to Guarantor's obligations under this Guaranty and to any other claims of Lender against the Company, the Company's assets, Pledgor, or the Pledgor's assets. Upon any notice by Lender to the Company or Pledgor of any default under the Note or Agreement, Guarantor shall enforce any of their claims as a trustee for Lender, and shall cause any receipts to be paid over to Lender on account of the Note and Agreement without affecting in any manner the liability of Guarantor under this Guaranty (except to the extent of such payment). As long as no such notice of default has been given, Guarantor may apply to its own account any payments made to Guarantor by the Company or Pledgor.

3.    RIGHT OF FIRST OFFER.

a.    CERTAIN DEFINITIONS.

i.    "**Loan**" shall mean between the Funding Date (as defined in the Note) and the Termination Date (defined below), any loan that Guarantor or any entity that Guarantor controls (whether directly or indirectly) desires to obtain for depositing earnest money in connection with a purchase of commercial real estate by Guarantor or any entity that Guarantor controls (whether directly or indirectly).

ii.   "**Opportunity Notice**" shall mean a notice from Guarantor to Lender that contains Guarantor's proposed terms to Lender for providing a Loan, including (without limitation) the amount, duration, funding date, and interest rate of such Loan. Notwithstanding the foregoing, regardless of the interest rate or any other terms or conditions stated in the Opportunity Notice, if Lender agrees to make such Loan on the terms and conditions herein, then the Opportunity Notice shall be deemed to have an interest rate of sixty percent (60%) per annum, based on a three-hundred-sixty (360)-day year and compounded annually.

b.    ROFO.

i.    Offer. With respect to each Loan, Guarantor shall first offer Lender the right to make such Loan as provided herein (the "**ROFO**"). In connection with each Loan, Guarantor shall deliver an Opportunity Notice to Lender.

ii.   Response. If, within two (2) business days after receiving an Opportunity Notice, Lender does not notify Guarantor that Lender will make such Loan on the terms in the Opportunity Notice (or such other terms as Lender and Guarantor may have negotiated), then Lender shall be deemed to have declined to make such Loan. If within two (2) business days after receiving an Opportunity Notice Lender notifies Guarantor that Lender will make such Loan, then within four (4) business days after receiving such Opportunity Notice, Lender and Guarantor (and/or their applicable affiliates) shall enter into loan documents that reflect the terms of the Opportunity Notice and are otherwise substantively identical to the Loan Documents (as defined in the Note). If such parties do not execute and deliver such loan documents within such period and the cause thereof is not Guarantor's failure to act in good faith and with commercially reasonable efforts, then Lender shall be deemed to have declined to make such Loan.

c.    RENEWED RIGHT. If (i) Lender declines (or is deemed to have declined) a Loan, and (ii) subsequently, Guarantor is willing to enter into such Loan on terms that are materially more favorable to the lender thereof, then the ROFO shall again apply; Guarantor shall deliver a new Opportunity Notice to Lender with such terms; and the process in §3(b) shall be followed

| 2

with respect thereto.

    d.    TERMINATION. The ROFO shall terminate upon the first to occur of the following events: (a) Lender declines (or is deemed to have declined) two (2) consecutive Loans with an aggregate lending amount of $1,000,000 or less while no loan between Lender and Guarantor (or an entity that Guarantor controls, whether directly or indirectly) is outstanding at the time of each such decline and Guarantor (or an entity that Guarantor controls, whether directly or indirectly) obtains each such Loan; or (b) the third anniversary of the date hereof.

4.    REPRESENTATIONS AND WARRANTIES. Guarantor represents and warrants to Lender the matters listed below.

    a.    This Guaranty constitutes a valid and legally binding agreement of Guarantor that is enforceable in accordance with its terms.

    b.    Neither the execution and delivery of this Guaranty nor the compliance with any of its terms or conditions will violate any presently existing law, regulation, order, writ, injunction, or decree to which Guarantor is bound or result in a breach of or default under any other agreement to which Guarantor is a party.

    c.    As of the date hereof, there are no Material Actions, as defined below, against Borrower, Pledgor, Guarantor, or any entity (i) directly or indirectly controlled or managed by Guarantor or (ii) directly or indirectly owned by Guarantor in whole or in part with respect to which Guarantor receives notices in the ordinary course of business (each of (i) and (ii), a "**Guarantor Entity**"), in each except as follows: (1) Case No. 22-cv-00392-JFH-CDL in the United States District Court for the Northern District of Oklahoma; and (2) Case No. CJ-2024-35 in the District Court of Adair County, Oklahoma. This statement is being made by Guarantor under the penalty of perjury. For purposes of this Section, "**Material Action**" means any pending litigation against Borrower, Pledgor, Guarantor, or any Guarantor Entity that (x) is not a landlord-tenant dispute and (y) if such lawsuit were adversely adjudicated against such entity or person, such entity or person would have liability that exceeds $150,000.

    d.    As of the date hereof, neither Borrower, Pledgor, Guarantor, nor any Guarantor Entity (x) is to Guarantor's knowledge in material breach or default of, or (y) has been notified in writing of any material breach or default, in each case under any loan agreement taken by Borrower, Pledgor, Guarantor, or such entity (each, an "**Other Loan Default**").

    e.    All of the items provided by Guarantor to Lender via email and access to one or more cloud storage environments prior to the Effective Date related to certain Collateral pledged in the Agreement are true and correct as of this date, and there have been no Material Changes since the date that they were provided to Lender. In the event of a change to Guarantor, Borrower, Pledgor, any Guarantor Entity or any asset owned by, or any liability of, any Guarantor Entity, that would have a material adverse effect on Guarantor (a "**Material Change**"), Borrower, Pledgor, any Guarantor Entity, Guarantor shall provide Lender with written notice of the same, and such Material Change shall be deemed a default of this Guaranty.

5.    COVENANTS.

    a.    OTHER LOAN DEFAULT AND MATERIAL ACTIONS. So long as the Payoff Amount remains outstanding, Guarantor covenants that if an Other Loan Default occurs or if Guarantor receives notice of a Material Action, then Guarantor shall notify Lender within two (2) business days thereafter, which notice shall be delivered to:

            YSA Investments 1, LLC
            C/O Capital Fund Law Group, P.C.

Attn: Christopher Rogers
405 Lexington Ave, 26th Floor
New York, New York 10174
email: crogers@capitalfundlaw.com

This notice will include a summary of the default and, with respect to any action, the summary shall include the court in which it is filed, the plaintiff(s) and defendant(s), case number, and summary of the claims being brought. A copy of any notice pursuant to this section shall also be delivered to Lender.

b.  DEBT OBLIGATIONS. So long as the Payoff Amount remains outstanding, Guarantor shall alert Lender of any debt in excess of $50,000 that is taken by Borrower, Guarantor, or any Guarantor Entity and provide a summary of the same, including the name of the party owed, the amount, and a summary of the purpose or cause of the debt. This Section shall not apply to any future loan arising from the Right of First Offer.

c.  SCHEDULE OF REAL ESTATE OWNED. By July 18, 2025, Guarantor shall deliver to Lender a true, correct, and complete schedule of real estate and entities owned (whether directly or indirectly, and whether wholly or partly) by Guarantor; provided, however, that in the event that the schedule of real estate as of July 18, 2025 is identical to the schedule of real estate most recently provided by Guarantor to Lender, then Guarantor may instead email Lender confirmation that the schedule of real estate provided as of the date it was last provided to Lender remains true, correct, and complete as of July 18, 2025 in lieu of resubmitting the schedule of real estate. The same schedule shall provide the percentage of ownership attributable to Guarantor with respect to such real estate and entities and, with respect to real estate, identify which entity the real estate is owned through. Upon delivering same to Lender, Guarantor shall be deemed to have represented and warranted that such schedule is true, correct, and complete as of the date thereof.

d.  TRAILING REPORTS. By or before July 18, 2025, Guarantor shall provide Lender with individual and consolidated trailing three-month reports ("T3 Reports") of all entities owned and/or controlled by Guarantor, Pledgor, and/or Borrower which shall report an aggregate net operating income of no less than $5,300,000 in accordance with accrual accounting principles. Deviation between the consolidated and individual T3 Reports shall not exceed $1/10^{th}$ of a percent.

e.  DOMO REPORTING ACCESS. By or before July 18, 2025, Guarantor shall provide Lender with a link to Borrower's reporting generated by "DOMO". This link will provide Lender with monthly annualized, three-month annualized, and twelve-month annualized reporting of all entities owned and/or controlled by Guarantor, Borrower, and Pledgor (directly or indirectly). Lender may request that Guarantor provide additional information and data related to the same, and Guarantor shall make a good faith effort to provide such information and data to Lender.

6.  EVENT OF DEFAULT. Any breach by Guarantor of its representations, warranties, and obligations provided in this Guaranty that is not cured within ten (10) days after Lender notifies Guarantor thereof (provided, however, that no cure period shall apply if the cause of such breach is fraud in the inducement) shall constitute an "**Event of Default.**" Any Event of Default shall constitute an irreparable harm to Lender for which injunctive relief may be sought. Additionally, in connection with any Event of Default, Lender shall have all rights and remedies that may be available to it at law, in equity, or otherwise and shall be entitled to attorney's fees and any other costs and damages that may be available to it. All of Lender's rights and remedies under this Guaranty shall be distinct, separate, and cumulative.

7.  MISCELLANY.

|4

a.  All notices, requests, consents, approvals, demands and other communications required or allowed under this Guaranty (y) *must be* (i) in writing, (ii) delivered to the address/addresses written in the preamble of this Guaranty (or to such other address/addresses as either party may from time to time specify in a notice to the other in accordance with this subsection), and (iii) delivered by email, personal delivery, or a national overnight courier; and (z) shall be effective when delivered or delivery is refused (whether affirmatively or due to the recipient failing to maintain a current address for receiving notices with the sender).

b.  Any amendment or other modification to the Note or Agreement shall not affect the Obligations. Guarantor waives any right to approve, consent, or be notified of any renewal, extension, amendment, or other modification to the Note or Agreement.

c.  No waiver of any term, provision, condition, covenant, or agreement in this Guaranty shall be effective unless set forth in a writing signed by Lender and Guarantor, and any such waiver shall be effective only to the extent set forth in such writing. No failure to exercise or delay in exercising by Lender of any right, power, or privilege in this Guaranty shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege preclude any other or further exercise thereof or the exercise of any other right or remedy provided by law, in equity, or otherwise. No notice or demand on any Guarantor in any case shall entitle Guarantor to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of Lender to any other or further action in any circumstances without notice or demand. No consent or waiver, whether expressed or implied, by Lender to or of any breach or default by any Guarantor in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance of the same or any other obligations of Guarantor hereunder. Any failure by Lender to complain of any acts, or any failure to act or to declare a default under this Guaranty, irrespective of the length of such failure, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers, or remedies on account of any default by Guarantor.

d.  In connection with any claim, action, or proceeding that is against a party hereto and pertains to this Guaranty, the substantially prevailing party shall be entitled to receive, and shall be awarded, all its court costs, collection costs, and reasonable attorneys' fees.

e.  Headings and titles in this Guaranty are for convenience only. Time is of the essence in this Guaranty, except that if any deadline or similar date herein falls on a non-business day, then such deadline shall be extended to the next business day. The invalidity or unenforceability of any provision of this Guaranty shall not affect or impair any other provisions of this Guaranty.

f.  This Guaranty—along with any and all claims or causes of action (whether in contract, tort, or statute) that may be based upon, arise from, or relate to this Guaranty, its negotiation, execution, or performance, or the transactions described herein—shall in all respects be governed by and enforced in accordance with the internal laws of the State of Delaware (including its statutes of limitations), without regard to its conflict-of-law provisions or borrowing statutes. Any chancery court in Delaware shall have exclusive jurisdiction to hear and determine any and all claims, actions, and proceedings brought by Guarantor and pertaining to or arising from this Guaranty, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein; provided, however, that if such claim, action, or proceeding cannot be brought in a chancery court in Delaware, the state and federal courts of Delaware shall have exclusive jurisdiction with respect to such claim, action, or proceeding. Lender may bring any and all claims, actions, and proceedings pertaining to or arising from this Guaranty, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein in any court of competent jurisdiction. Each of Guarantor and Lender waives trial by jury in any action, proceeding, or claim brought by it against the

| 5

other party that pertains to or arises from this Guaranty. Notwithstanding anything in this Agreement to the contrary, Guarantor acknowledges that any Event of Default will result in irreparable harm to the injured Party. In case any Event of Default occurs and is not waived, the injured Party will be entitled to the issuance of an injunction, restraining order, or other equitable relief in its favor as a result of the breach, and the breaching Party will be deemed to have consented to the granting of an application for the same without any prior notice to the breaching Party and without the injured Party being required to furnish a bond or other undertaking in connection with the application. Upon a breach by Guarantor, Guarantor further waives and is estopped from asserting any defense to expedited or pre-judgment relief by Lender and waives any defense or protection mechanism that may be available to Guarantor, in each case excluding the defense of full performance.

g.   Any claim, whether made in arbitration or a court of competent jurisdiction, shall be filed under seal.

h.   Guarantor appoints Lender as its/his/her attorney-in-fact with full power in Guarantor's name and behalf to do every act that Guarantor is obligated to do or may be required to do hereunder; however, nothing in this section shall be construed to obligate Lender to take any action hereunder. The power of attorney hereby created is a power coupled with an interest and shall be irrevocable. Through exercise of this irrevocable power of attorney, Lender may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither Lender nor any of its officers, managers, employees or agents of Lender will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, Lender shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

i.   This Guaranty shall be binding on and inure to the benefit of each party's successors, assignees, and legal representatives; provided, however, that except by operation of law in connection with death, neither party may assign, delegate, or otherwise transfer any of its rights or obligations under this Guaranty without the other party's prior approval.

j.   This Guaranty is the complete and entire agreement between Lender and Guarantor with respect to the subject matter hereof, and it supersedes all prior discussions, understandings, and agreements (whether oral or written) between the parties hereto with respect to the subject matter hereof.

k.   This Guaranty may be executed in counterparts, each of which shall be considered an original and all of which together shall constitute the same instrument. Counterparts to this Guaranty may be delivered by email or facsimile, each of which shall be as effective as originals for all purposes.

[signature pages follow]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the first date written above.

**GUARANTOR**

_____

**MARC KULICK**, an individual

STATE OF OKLAHOMA )
)
COUNTY OF TULSA )

This instrument was acknowledged before me on July $\underline{16^{th}}$, 2025 by Marc Kulick, an individual.

_____
(Signature of notarial officer)

My Commission Expires: $\underline{02-21-2029}$

Commission No.: $\underline{25002105}$

```
ETHAN WYATT AUTRY
Notary Public, State of Oklahoma
Commission # 25002105
My Commission Expires 02-21-2029
```

(STAMP SEAL ABOVE)

[signature pages continue]

| 7

## JOINDER

Lender joins this Guaranty for the sole purpose of acknowledging and agreeing to §3 hereof.

**YSA Investments 1, LLC**, a Delaware limited liability company

By: *Robert Miley*

Name: Robert Miley

Title: Authorized Representative

| 8

Marc Kulick

**Schedule of Real Estate Owned**

| Property Name/Entity/ EIN# | Address | City | State | Type | # of Units or Size | Class |
|---|---|---|---|---|---|---|
| Thrive Argenta | 501 N. Mangolia St. | North Little Rock | AR | Multifamily | 164 | A |
| Lexington Commons | 5530 Colony Way | Bartlesville | OK | Multifamily | 206 | B |
| Thrive Jenks | 204 S Riverfront Dr | Jenks | OK | Multifamily | 168 | A |
| Lakeside Place | 2186 S 99th E Ave | Tulsa | OK | Multifamily | 208 | B |
| Shoreline Apartments | 9601 E 21st Pl | Tulsa | OK | Multifamily | 464 | B |
| Remington Ranch | 1815 N Boomer Rd. | Stillwater | OK | Multifamily | 292 | C |
| Seminole Ridge | 125 W Interstate 240 Service Rd | Oklahoma City | OK | Multifamily | 224 | C |
| Tuscany Village | 6900 London Way | Oklahoma City | OK | Multifamily | 316 | C |
| The Canopy Apartments | 9201 Kanis Rd | Little Rock | AR | Multifamily | 240 | B |
| Barcelona | 5160 S Yale Ave | Tulsa | OK | Multifamily | 232 | B |
| Wedgewood Village | 4101 Northwest Expy | Oklahoma City | OK | Multifamily | 301 | B |
| Esplanade by the Lake | 4601 W Nicklas Ave | Oklahoma City | OK | Multifamily | 136 | B |
| Mansion West | 4320 NW 50th St | Oklahoma City | OK | Multifamily | 78 | B |
| Salem West | 3920 NW 50th St | Oklahoma City | OK | Multifamily | 34 | B |
| 23 East | 11121 E 23rd St Unit 1 | Tulsa | OK | Multifamily | 236 | C |
| Villas at Midtown | 2001 E Skelly Dr | Tulsa | OK | Multifamily | 476 | C |
| The Classen | 2200 N Classen Blvd | Oklahoma City | OK | Multifamily | 66 | A |
| Putnam Green | 7525 Knight Lake Dr | Oklahoma City | OK | Multifamily | 250 | C |
| River Walk | 410 E Marion Rd | Wichita | KS | Multifamily | 558 | B |
| Riverpark Apartments | 7803 S Wheeling Ave | Tulsa | OK | Multifamily | 400 | B |
| Drexel Flats | 8800 Drexel Ave | Oklahoma City | OK | Multifamily | 400 | B |
| The Ridge | 3834 N Oak Grove Dr | Midwest City | OK | Multifamily | 278 | C |
| Lofts at North Penn | 15501 N Pennsylvania Ave | Edmond | OK | Multifamily | 192 | A |
| Village Creek at 67th | 6630 S Zunis Ave | Tulsa | OK | Multifamily | 226 | C |
| The Montgomery | 500 W Main St | Oklahoma City | OK | Multifamily | 70 | A |
| 727 Lofts | 727 E Main Pl | Jenks | OK | Multifamily | 98 | A |
| The Muntage | 3041 NW 41st St | Oklahoma City | OK | Multifamily | 165 | C |
| Fairfax Apartments | 7801 Ne 10th St | Midwest City | OK | Multifamily | 252 | C |
| Woodland Oaks | 7142 S 92nd East Ave | Tulsa | OK | Multifamily | 428 | B |

| | | | | | | |
|---|---|---|---|---|---|---|
| Bryan Hills | 7204 NW 36th St | Bethany | OK | Multifamily | 232 | C |
| Springdale Village | 4330 S Barnes Ave | Oklahoma City | OK | Multifamily | 128 | C |
| Summer Oaks | 5770 NW 16th St | Oklahoma City | OK | Multifamily | 197 | C |
| One Eton Square | 8111 E 60th St | Tulsa | OK | Multifamily | 448 | B |
| Wood and Manor | 8641 E 61st St | Tulsa | OK | Senior | 305 | B |
| Eaton Place | 517 E Douglas Ave | Wichita | KS | Multifamily | 117 | A |
| Woodscape | 4200 N Meridian Ave | Oklahoma City | OK | Multifamily | 498 | B |
| Copperfield Apartments | 2400 NW 30th St | Oklahoma City | OK | Multifamily | 262 | B |
| Capitol on 28th | 215 NE 28th St. | Oklahoma City | OK | Multifamily | 231 | B |

Warning: HUD will prosecute false claims and statements.  Conviction may result

2025103101156570    B: 16277 P: 699
10/31/2025 01:51:35 PM  Pgs: 14
Fee: $44.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma



## COLLATERAL PLEDGE AND SECURITY AGREEMENT

This Collateral Pledge and Security Agreement (this "**Agreement**") is made as of July 16, 2025 by and among **YSA INVESTMENTS 1 LLC**, a Delaware limited liability company ("**Lender**") and **VESTA HOLDINGS, LLC**, an Oklahoma limited liability company (both "**Borrower**" and "**Pledgor**").

### RECITALS

A.  Concurrently herewith, Lender is making a loan (the "**Loan**") to Borrower. The Loan is evidenced by documents that include a Promissory Note of even date herewith by Borrower in favor of Lender (as same may be amended, renewed, extended, substituted for, amended and restated, or otherwise modified from time to time, the "**Note**"). Any defined term that is used herein and not defined herein shall have its meaning in the Note.

B.  Borrower holds the rights, title, and interests (collectively, the "**Unencumbered Interests**") in and to each of the following entities (each, a "**Borrower Entity**"): (1) a membership interest in Capitol on 28th Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000); (2) a membership interest in Remington Ranch Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000); (3) a membership interest in Copperfield Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000); (4) a membership interest in Putnam Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000).

C.  Pledgor holds the following rights, title, and interests (collectively, the "**Encumbered Interests**") in and to each of the following entities (each, a "**Pledgor Entity**"): (1) a membership interest in WoodScape Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000); (2) a membership interest in Barcelona Best Living, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Three Hundred Thousand Dollars ($300,000); (3) a membership interest in Riverpark Best Living Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Eighty-Nine Thousand Three Hundred Dollars ($189,300); (4) a membership interest in Montgomery Vesta Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (5) a membership interest in Fairfax Holding Company, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (6) a membership interest in OKC3 Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (7) a membership interest in Eton Investor, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (8) a membership interest in Eaton Place Investor, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (9) a membership interest in W.O. Holding Co., LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (10) a membership interest in Regency Holdings, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (11) a membership interest in Woodland Manor Holdings, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (12) a membership interest in 727-Classen Best Living Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Fifty Thousand Dollars ($50,000); and (13) a membership interest in Muntage Vesta Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of Forty-Nine Thousand Two Hundred Seventy-Five Dollars ($49,275).

D.  Together, the Unencumbered Interests and Encumbered Interests comprise the "**Interests**".

E.  Together, the Borrower Entities and Pledgor Entities comprise the "**Entities**".

1

F.    In connection with the Loan, Pledgor and Borrower have agreed to pledge the Interest to Lender on the terms and conditions herein.

AGREEMENTS

NOW, THEREFORE, for and in consideration of the direct benefits to be realized by Borrower (which will also benefit Pledgor) from the Loan, the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower, Pledgor, and Lender hereby agree as written below.

1.    PLEDGE.

    1.1    SECURITY INTEREST.

        (a)    Borrower and Pledgor pledge, grant, and assign to Lender a security interest in and lien upon the Collateral (defined below) to secure the payment and the performance of the Obligations (defined below). "**Collateral**" shall mean the Interest and any and all other interests in any Entity that are now owned or hereafter acquired by Borrower or Pledgor, as applicable, in or to any Entity, together with (i) all additional membership interests or other equity interests in any Entity now or hereafter acquired by Borrower or Pledgor, as applicable, and (1) all options, warrants, and other rights now or hereafter acquired by Borrower or Pledgor, as applicable, in respect of such membership interests or other equity interests in any Entity (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of such Entity or otherwise), and (2) all other property, rights or instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests or other equity interests in any Entity; (ii) any certificates, instruments, or other writings representing or evidencing membership interests or other ownership interests in any Entity now or hereafter acquired by Borrower or Pledgor, as applicable, and all accounts and general intangibles arising out of, or in connection with, the membership interests in any Entity now or hereafter acquired by Borrower or Pledgor, as applicable; (iii) any and all monies or property due and to become due to Borrower or Pledgor, as applicable, now or in the future in respect of its membership interests or other ownership interests in any Entity, or to which Borrower or Pledgor, as applicable, may now or in the future be entitled in its capacity as a member or other equity holder of any Entity, whether by way of a dividend, distribution, return of capital or otherwise; (iv) all other claims that Borrower or Pledgor, as applicable, now has or may in the future acquire in its capacity as a member, partner, shareholder, or other equity holder of any Entity against such Entity and its property; and (v) all rights of Borrower or Pledgor, as applicable, under any Entity's organizational documents (and all other agreements, if any, to which Borrower is a party from time to time which relate to its ownership of the membership interests or other ownership interests in any Entity), including all voting and consent rights of Borrower or Pledgor, as applicable, arising thereunder or otherwise in connection with Borrower's or Pledgor's, as applicable, ownership of the membership interests or other equity interests in any Entity (provided, however, that any time an Event of Default (defined below) does not exist, Borrower or Pledgor, as applicable, may exercise all rights of Borrower or Pledgor, as applicable, under each Entity's organizational documents, including all voting rights). With respect to the Unencumbered Interests comprising the Collateral, the same may be referred to hereafter as the "**Unencumbered Collateral**". With respect to the Encumbered Interests comprising the Collateral, the same may be referred to hereafter as the "**Pledgor Collateral**".

        (b)    For clarity, it is acknowledged and agreed that the Collateral does not include a personal residence.

| 2

1.2 ATTACHMENT. The foregoing security interest shall attach automatically to any interests in any Entity that Borrower or Pledgor, as applicable, may at any time in the future acquire without any further action by Borrower or Lender; provided, however, that as a condition to Lender's consent to any such transfer, Lender may require Borrower to execute a modification to this Agreement or a supplementary collateral pledge and security agreement.

1.3 UNENCUMBERED COLLATERAL. The Unencumbered Collateral is and will remain unencumbered by any debt or other payment obligation. The Parties further agree that in its sole discretion, Lender may at any time file a financing statement against the Unencumbered Collateral in the form of a UCC-1 or UCC-3, as applicable, filed pursuant to the Uniform Commercial Code, but Lender's failure to do so shall not impair the validity or enforceability of this Agreement.

2. OBLIGATIONS.

2.1 SECURITY. The following obligations (the "**Obligations**") are secured by this Agreement: (i) all payment and performance duties, liabilities, and obligations of Borrower under the Note; and (ii) all reasonable costs incurred by Lender to obtain, preserve, perfect, and enforce this Agreement and security interest, collect the Obligations, and maintain, preserve, collect, and enforce the Collateral, including taxes, assessments, insurance premiums, attorneys' fees and legal expenses, and expenses of sale.

2.2 DIRECT. The obligations of Borrower and Pledgor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against any other person or entity (including the other entities that comprise Borrower or Pledgor, as applicable) nor against the security or liens or encumbrances available to Lender. Borrower and Pledgor waive any right to require that an action be brought against any other person or entity or to require that resort be had to any security or to any balance of any account or credit on the books of Lender in favor of any other person or entity prior to any exercise of rights or remedies hereunder. No renewal or extension of or any other indulgence with respect to the Obligations or any part thereof, no release of any security, no release of any person (including any maker, endorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Lender under this Agreement, applicable law, or any other agreement pertaining to security for the Obligations. Borrower and Pledgor (i) waive any right to the benefit of, or to require or control application of, any other security or proceeds thereof, and (ii) agree that Lender shall have no duty or obligation to Borrower or Pledgor to apply to the Obligations any such other security or proceeds thereof.

3. REPRESENTATIONS AND WARRANTIES. Borrower and Pledgor represent and warrant as follows:

3.1 FINANCING STATEMENTS. No financing statement covering the Unencumbered Collateral is or will be on file in any public office except a financing statement filed by Lender pursuant to this Agreement.

3.2 OWNERSHIP. Borrower owns the Unencumbered Collateral absolutely and free of any setoff, claim, restriction, lien, security interest, or encumbrance. Borrower has the unencumbered and unrestricted right to pledge the Unencumbered Collateral. No consent or approval of any governmental authority or other person that has not been obtained was or is necessary to the validity of this pledge or the enforcement of Lender's rights and remedies hereunder.

3.3 POWER AND AUTHORITY. Borrower and Pledgor have the full power and authority to make and deliver this Agreement. This Agreement constitutes the valid and legally binding obligation of Borrower and Pledgor, and is enforceable in accordance with its terms.

13

3.4 **MEMBERSHIP INTERESTS.** The Collateral constitutes "general intangibles," as defined in the Uniform Commercial Code as in effect in the State of Delaware (the "**UCC**"), and this Agreement constitutes a security agreement under the UCC.

3.5 **LITIGATION.** As of the date hereof, there are no Material Actions, as defined below, against Borrower, Pledgor, or Guarantor, or any entity (i) directly or indirectly controlled or managed by Guarantor or (ii) directly or indirectly owned by Guarantor in whole or in part with respect to which Guarantor receives notices in the ordinary course of business (each of (i) and (ii), a "**Guarantor Entity**"), in each except as follows: (1) Case No. 22-cv-00392-JFH-CDL in the United States District Court for the Northern District of Oklahoma; and (2) Case No. CJ-2024-35 in the District Court of Adair County, Oklahoma. This statement is being made by Pledgor under the penalty of perjury. For purposes of this Section, "**Material Action**" means any pending litigation against Borrower, Pledgor, Guarantor, or any Guarantor Entity that (x) is not a landlord-tenant dispute and (y) if such lawsuit were adversely adjudicated against such entity or person, such entity or person would have liability that exceeds $150,000.

3.6 **CURRENT DEFAULT.** As of the date hereof, neither Borrower, Pledgor, Guarantor, nor any Guarantor Entity (x) is to Pledgor's knowledge in material breach or default of, or (y) has been notified in writing of any material breach or default, in each case under any loan agreement taken by Borrower, Pledgor, Guarantor, or such entity (each, an "**Other Loan Default**").

3.7 Due Diligence Materials. All of the items provided by Guarantor to Lender via email and access to one or more cloud storage environments prior to the Effective Date related to certain Collateral pledged in the Agreement are true and correct as of this date, and there have been no Material Changes since the date that they were provided to Lender. In the event of a change to Guarantor, Borrower, Pledgor, any Guarantor Entity or any asset owned by, or any liability of, any Guarantor Entity, that would have a material adverse effect on Guarantor (a "**Material Change**"), Borrower, Pledgor, any Guarantor Entity, Guarantor shall provide Lender with written notice of the same, and such Material Change shall be deemed a default of this Guaranty.

3.8 Minimum Reserves. As of the date hereof, Borrower and Pledgor directly and indirectly possess debt service reserves in an aggregate amount of at least $20,000,000 ("**Reserves**") as required by loan agreements with various third parties. Until repayment of the Loan, neither Borrower nor Pledgor nor any entity directly or indirectly owned or controlled by Borrower or Pledgor shall withdraw any Reserves without Lender's prior written consent.

4. COVENANTS. Borrower and Pledgor shall promptly perform all of its covenants in this Agreement, including the covenants in this section.

4.1 **OWNERSHIP OF UNENCUMBERED COLLATERAL.** Borrower shall not further transfer, sell, pledge, assign, or encumber any of the Unencumbered Collateral. Borrower shall keep the Unencumbered Collateral free from any liens, claims, encumbrances, or security interests except the security interest created hereby and shall preserve the priority of all security interests in the Unencumbered Collateral in favor of Lender. Lender shall have no duty to preserve such security but may do so at the expense of Borrower without waiving any default hereunder.

4.2 **COSTS.** Borrower and Pledgor shall pay all costs that are reasonably necessary to obtain, preserve, perfect, defend, and enforce the security interests created by this Agreement, and to preserve, defend, enforce, and collect the Collateral.

4.3 **DEBT OBLIGATIONS.** So long as the Payoff Amount remains outstanding, Borrower and Pledgor shall alert Lender of any debt in excess of $50,000 that is taken by Borrower, Guarantor, or any entity directly or indirectly controlled by Guarantor and provide a summary of the same, including the name of the party owed, the amount, and a summary of the purpose or cause of the debt. This Section shall not apply to any future loan arising from the Right of First Offer (as defined in the

|4

Guaranty).

4.4 OTHER LOAN DEFAULT AND MATERIAL ACTIONS. So long as the Payoff Amount remains outstanding, Borrower and Pledgor shall notify Lender within two (2) business days after (i) an Other Loan Default occurs or (ii) receiving notice of a Material Action, which notice shall be delivered to:

> YSA Investments 1, LLC
> C/O Capital Fund Law Group, P.C.
> Attn: Christopher Rogers
> 405 Lexington Ave, 26th Floor
> New York, New York 10174
> email: crogers@capitalfundlaw.com

This notice will include a summary of the default and, with respect to any action, the summary shall include the court in which it is filed, the plaintiff(s) and defendant(s), case number, and summary of the claims being brought. A copy of any notice pursuant to this section shall also be delivered to Lender.

4.5 RIGHT OF LENDER TO NOTIFY OTHERS. While an Event of Default exists, Lender may (i) notify persons obligated on any Collateral to make payments directly to Lender, (ii) take control of all proceeds of any Collateral (subject to any other secured lenders' interests in the Pledgor Collateral), and (iii) take any other steps that Lender deems necessary with respect to the Collateral that are permissible in accordance with applicable law. Until Lender elects to exercise such rights, Borrower and Pledgor, as trustees for the benefit of Lender, shall collect and enforce all payments owed on the Collateral pledged by Borrower and Pledgor.

4.6 POWER OF ATTORNEY. Borrower and Pledgor each appoint Lender as its/his/her/their attorney-in-fact with full power in Borrower's and Pledgor's name and behalf to do every act that Borrower and Pledgor are obligated to do or may be required to do hereunder or to do all other things which Lender is permitted to do under this Agreement or any other Loan Documents or are necessary to carry out this Agreement or the other Loan Documents; however, nothing in this section shall be construed to obligate Lender to take any action hereunder. Through exercise of this irrevocable power of attorney, Lender may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender. This shall include but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither Lender nor any of its officers, managers, employees or agents of Lender will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, Lender shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

4.7 NO WAIVER BY LENDER. No renewal or extension of or any other indulgence with respect to the Obligations or any part thereof, no release of any security, no release of any person (including any maker, endorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Lender under the law, hereunder or under any other agreement pertaining to security for the Obligations. Borrower and Pledgor waive any right to the benefit of or to require or control application of any other security or proceeds thereof and agree that Lender shall have no duty or obligation to Borrower or Pledgor to apply to the Obligations any such other security or proceeds thereof.

15

4.8     INDEMNIFICATION. In addition to any other indemnifications expressly provided for herein, Borrower will save, indemnify, and hold Lender harmless from and against all actual expenses, losses, or damages suffered by reason of any (a) wrongful interference (i.e., interference in bad faith) by Borrower with the exercise of any rights or remedies by Lender under this Agreement, or (b) Event of Default. The foregoing obligation of Borrower and Pledgor to indemnify Lender shall not extend to any suit, proceeding, or action arising out of the gross negligence or willful misconduct of Lender.

4.9     TRAILING REPORTS. By or before July 18, 2025, Borrower and Pledgor shall provide Lender with individual and consolidated trailing three-month reports ("T3 Reports") of all entities owned and/or controlled by Guarantor, Pledgor, and/or Borrower which shall report an aggregate net operating income of no less than $5,300,000 in accordance with accrual accounting principles. Deviation between the consolidated and individual T3 Reports shall not exceed 1/10th of a percent.

4.10     DOMO REPORTING ACCESS. By or before July 18, 2025, Borrower and Pledgor shall provide Lender with a link to Borrower's reporting generated by "DOMO". This link will provide Lender with monthly annualized, three-month annualized, and twelve-month annualized reporting of all entities owned and/or controlled by Guarantor, Borrower, and Pledgor (directly or indirectly). Lender may request that Borrower and Pledgor provide additional information and data related to the same, and Borrower and Pledgor shall make a good faith effort to provide such information and data to Lender.

5.     DEFAULT.

5.1     EVENTS OF DEFAULT. Each of the following shall be an **"Event of Default"** by Borrower and Pledgor hereunder:

    (a)     a levy on, seizure, or attachment of the Collateral by any third party, and same is not fully removed within thirty (30) days thereafter;

    (b)     a failure to pay any amount that becomes due under this Agreement, and neither Borrower nor Pledgor cures such failure within ten (10) days thereafter;

    (c)     a default in the performance or observance of any other term or condition in this Agreement, and neither Borrower nor Pledgor cures such default within ten (10) days after Lender notifies Borrower thereof;

    (d)     a breach of any warranty or representation under this Agreement, and neither Borrower nor Pledgor cures such breach within ten (10) days after Lender notifies Borrower thereof (provided, however, that no cure period shall apply if the cause of such breach is fraud in the inducement);

    (e)     Borrower or Pledgor makes a general assignment for the benefit of its creditors, or Borrower or Pledgor consents to an application for the appointment of a trustee, receiver, or other custodian for Borrower or Pledgor, as applicable, or the institution of any proceeding by Borrower or Pledgor, as applicable, under any federal or state laws providing for the relief of debtors or otherwise alleging that Borrower or Pledgor, as applicable, is insolvent, bankrupt, or unable to pay its debts generally as they become due, and same is not dismissed within ninety (90) days of filing; or

    (f)     an Event of Default occurs under the Note or any other Loan Document.

5.2     REMEDIES UPON DEFAULT. While an Event of Default exists, Lender may, without notice or demand to Borrower or Pledgor, enforce payment of the Obligations then due (whether due by

16

acceleration in whole or part or otherwise), and may exercise any rights under the UCC, rights and remedies of Lender under this Agreement, or otherwise, including but not limited to taking any action against the Collateral or any of the Collateral's real or personal property. Upon any Event of Default, Lender shall further be entitled to its attorney's fees, costs, and any other damages that may be available to it. Without limiting the foregoing, (i) Lender may file a financing statement against Borrower to perfect Lender's lien on the Collateral, and (ii) Lender may conduct a private sale as written below.

(a)     Borrower and Pledgor recognize that Lender may be unable to effect a public sale of any or all of the Collateral, by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "**Securities Act**"), and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers who will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. Borrower and Pledgor (i) acknowledge and agree that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale, and (ii) notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale. Lender shall be under no obligation to delay a sale of any of the Collateral for the period of time necessary to permit any Entity, Borrower, or Pledgor to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if such Entity, Pledgor, or Borrower would agree to do so.

(b)     Further, Borrower and Pledgor shall use commercially reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Collateral pursuant to this section valid and binding and in compliance with any and all other requirements of applicable law. Borrower and Pledgor further agree that a breach of any of the covenants contained in this section will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach, and, as a consequence, that each and every covenant contained in this section shall be specifically enforceable against Borrower and Pledgor; and Borrower and Pledgor hereby waive and agree not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred, or any defense relating to Lender's willful misconduct or gross negligence.

(c)     Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market. Borrower and Pledgor hereby waive any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Obligations, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

(d)     It is acknowledged that the UCC states that a lender is able to purchase collateral only if it is sold at a public sale. Lender has advised Borrower and Pledgor that Securities and Exchange Commission ("**SEC**") staff personnel have issued various No-Action Letters describing procedures that, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the UCC, yet not public for purposes of §4(2) of the Securities Act. It is also acknowledged that the UCC permits Borrower and Pledgor to agree on the standards for determining whether a lender has complied with its obligations under Article 9 of the UCC. Pursuant to the UCC, Borrower and Pledgor specifically agree that (x) they shall not raise any objection to

Lender's purchase of the Collateral (through bidding on the obligations or other commercially reasonable means), and (y) a sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the UCC, (ii) will be considered commercially reasonable notwithstanding that Lender has not registered or sought to register the Collateral under the Securities Laws, even if Borrower, Pledgor, or any Entity agrees to pay all costs of the registration process, and (iii) shall not be considered to be commercially unreasonable solely because Lender purchases the Collateral at such a sale.

(e)    Borrower and Pledgor agree that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Collateral sold by Lender pursuant to this Agreement. Lender, in its sole discretion, may decide to approach or not to approach any potential purchasers provided that the method of sale is commercially reasonable. Without in any way limiting Lender's right to conduct a sale in any manner that is considered commercially reasonable, Borrower and Pledgor hereby agree that any sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest any such sale:

(i)    Lender conducts the sale in the State of Delaware;

(ii)    the sale is conducted in accordance with the laws of the State of Delaware;

(iii)    at least ten (10) days in advance of the sale, Lender notifies Borrower or Pledgor, as applicable, of the time and place of the sale;

(iv)    the sale is conducted by an auctioneer licensed in the State of Delaware on any Business Day between the hours of 9:00 a.m. and 5:00 p.m. Eastern Time;

(v)    the notice of the date, time and location of the sale is published in the auction section of the Sunday edition of a local newspaper at least five (5) days prior to the date of the sale; and

(vi)    Lender sends notification of the sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices located in the state(s) of residence of Borrower(s) or Pledgor(s), as applicable, conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(f)    Upon a sale of the Collateral, Borrower and Pledgor hereby give their consent to the admission of the purchaser of the Collateral as a member of the applicable Entity, notwithstanding any provision of the operating agreement of such Entity to the contrary. Such consent shall be irrevocable as long as any Obligation remains unpaid.

6.    **LIMITATION AS TO PLEDGOR.**

6.1    OTHER INTERESTS. Lender acknowledges and agrees to the following matters: (i) security interests exist on the Encumbered Interests as of the date hereof, and Pledgor may grant additional security interests from time to time on the Encumbered Interests (collectively, "**Other Interests**"); (ii) Pledgor and the Encumbered Interests have entered into this Agreement merely as an accommodation to Lender; and (iii) Lender may be unable to foreclose on, sell, or otherwise exercise its remedies in this Agreement with respect to the Encumbered Interests.

6.2    LIMITATION. Accordingly, and notwithstanding anything to the contrary in this Agreement, at law, in equity, or otherwise, (i) any security interest in the Encumbered Interests that Lender has

under this Agreement shall be subordinate to each Other Interest, whether any such Other Interest (a) was created before the date hereof or (b) is created after the date hereof, (ii) the existence or creation of any Other Interest from time to time shall not be a breach of this Agreement, and (iii) any inability of Lender to foreclose on, sell, or otherwise exercise its remedies in this Agreement with respect to the Encumbered Interests shall not constitute a breach of this Agreement.

7.  MISCELLANY.

7.1  CONFIDENTIALITY.  Each party hereto shall keep confidential the existence of the Loan and the terms of this Agreement and the other Loan Documents, except in each case to the extent that disclosing such information may be (a) required by law or other governmental requirement or (b) reasonably required in connection with entering into or enforcing the Loan, including disclosures to a party's owners (whether direct or indirect), service professionals (including lawyers, accountants, advisors, and consultants), and lenders.

7.2  PARTIES BOUND.  Lender's rights and interests hereunder shall inure to the benefit of its successors and assignees (and any subsequent successor or assignee).  In the event of any assignment or transfer of any of the Obligations or the Collateral, the assignor or transferor, as applicable, shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but the assignor or transferor, as applicable, shall retain all rights and powers hereby given with respect to any of the Obligations or Collateral not so assigned or transferred.  All representations, warranties, and agreements of Borrower and Pledgor shall be joint and several and shall be binding upon their successors and assignees.  Time is of the essence of this Agreement.

7.3  WAIVER.  No delay of Lender in exercising any power or right shall operate as a waiver or modification thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.  No waiver by Lender of any right hereunder or of any default by Borrower or Pledgor shall be binding upon Lender unless in writing, and no failure by Lender to exercise any power or right hereunder or waiver of any default by Borrower or Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default.

7.4  TERMINATION OF SECURITY INTEREST.  Upon the full and indefeasible payment of all of the Obligations, Lender shall release the security interests granted herein.

7.5  CHOICE OF LAW; VENUE.  This Agreement shall in all respects be governed by and enforced in accordance with the laws of the State of Delaware.  Each party hereto waives trial by jury in any action, proceeding, or claim pertaining to this Agreement.  Any chancery court in Delaware shall have exclusive jurisdiction to hear and determine any and all claims, actions, and proceedings brought by Borrower or Pledgor and pertaining to or arising from this Agreement, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein; provided, however, that if such claim, action, or proceeding cannot be brought in a chancery court in Delaware, the state and federal courts of Delaware shall have exclusive jurisdiction with respect to such claim, action, or proceeding.  Lender may bring any and all claims, actions, and proceedings pertaining to or arising from this Agreement, the Loan Documents, their negotiation, execution, or performance, or the transactions described herein in any court of competent jurisdiction.  In connection with any claim, action, or proceeding that is against a party hereto and pertains to this Agreement (including any document or agreement executed in connection herewith), the substantially prevailing party therein shall be entitled to receive, and shall be awarded, all its court costs, collection costs, and reasonable attorneys' fees.  Notwithstanding anything in this Agreement to the contrary, the Parties agree that any Event of Default will result in irreparable harm to the injured Party.  In case any Event of Default occurs and is not waived, the injured Party will be entitled to the issuance of an injunction, restraining order, or other equitable relief in its favor as a result of the breach, and the breaching Party will be deemed to

| 9

have consented to the granting of an application for the same without any prior notice to the breaching Party and without the injured Party being required to furnish a bond or other undertaking in connection with the application. Upon an Event of Default, Borrower and Pledgor further waive and are estopped from asserting any defense to expedited or pre-judgment relief by Lender and waives any defense or protection mechanism that may be available to Borrower or Pledgor, in each case excluding the defense of full performance.

7.6     CLAIMS UNDER SEAL. Any claim, whether made in arbitration or a court of competent jurisdiction, shall be filed under seal.

7.7     DEFAULT BY LENDER. Lender shall not be liable for any action or inaction arising out of this Agreement and the other Loan Documents except for (a) Lender's failure to pay to Borrower the Principal Amount minus the Origination Fee, as defined in the Note, and/or (b) Lender's gross negligence or willful misconduct.

7.8     ADDITIONAL WAIVERS. BORROWER AND PLEDGOR EXPRESSLY AND UNCONDITIONALLY WAIVE, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY LENDER ON THIS AGREEMENT, ANY AND EVERY RIGHT HE, SHE, IT OR THEY MAY HAVE TO (i) INTERPOSE ANY COUNTERCLAIM THEREIN UNLESS UNDER THE APPLICABLE RULES OF COURT SUCH COUNTERCLAIM MUST BE ASSERTED IN SUCH PROCEEDING, OR (ii) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING UNLESS UNDER THE APPLICABLE RULES OF COURT SUCH SUIT, ACTION OR PROCEEDING MUST BE CONSOLIDATED WITH THE PROCEEDING BROUGHT BY LENDER.

7.9     MODIFICATIONS. No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Borrower, Pledgor, and Lender. No modification or limitation may be accomplished by course of conduct, usage of trade, or by the law merchant.

7.10     SEVERABILITY. In the event any provision (or any part of any provision) contained in this Agreement shall for any reason be finally held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision, or application of the provision to other circumstances) but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

7.11     FURTHER ASSURANCES. Borrower and Pledgor shall execute and deliver, or cause to be executed and delivered, such further assurances, including financing statements, as Lender from time to time may reasonably request, to accomplish the provisions of, and carry out the intent of, this Agreement.

7.12     LIMITATIONS OF LAW. If any law prohibits or limits any charge or expense provided for in this Agreement in connection with any Obligations secured hereby, then such charge or expense will not be made or incurred in connection with such Obligations beyond the limits permitted by such law.

7.13     NOTICES. Any notice, request, demand, approval, consent, and other communication that pertains to this Agreement shall be delivered in accordance with the Note.

7.14     INTERPRETATION. Whenever the context of any provisions hereof shall require it, words in the singular shall include the plural, words in the plural shall include the singular, and pronouns of any gender shall include the other gender. Captions and headings in this Agreement are for

convenience only and shall not affect the construction of the Agreement. All references in this Agreement to Schedules, articles, sections, subsections, paragraphs, and subparagraphs refer to the respective subdivisions of this Agreement, unless such reference specifically identifies another document. The terms "herein," "hereof," "hereto," "hereunder" and similar terms refer to this Agreement and not to any particular section or subsection of this Agreement. The terms "include" and "including" shall be interpreted as if followed by the words "without limitation." All references in this Agreement to sums denominated in dollars or with the symbol "$" refer to the lawful currency of the United States of America unless such reference specifically identifies another currency. For purposes of this Agreement, "person" or "persons" shall include firms, associations, partnerships (including limited partnerships), joint ventures, trusts, corporations, limited liability companies, and other legal entities, including governmental bodies, agencies, or instrumentalities, as well as natural persons. Provisions of this Agreement, unless by their terms exclusive, shall be in addition to other agreements between the parties. Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, then Chapter 9 definitions shall apply.

7.15    EXECUTION AND STORAGE.

(a)    This Agreement may be executed in counterpart signature pages. Electronic and other non-original signatures on this Agreement shall be permitted, shall be deemed to be original signatures, and shall be as effective as originals for all purposes. Without limiting the foregoing, this Agreement may be executed, accepted, and/or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, Title 15, United States Code, §§7001 et seq., the Uniform Electronic Transaction Act, and any applicable state law. Any Agreement that is executed, accepted, and/or agreed to in conformity with such laws shall be binding on the parties hereto as though such Agreement had been physically executed using so-called "wet ink" signatures.

(b)    A copy of this Agreement may be stored by each party using any electronic or digital storage method or process, and each party may destroy any original Agreement so stored. All parties hereto agree and stipulate that any reproduction of this Agreement that has been electronically or digitally stored shall be admissible in evidence as the original itself in any judicial, arbitration, or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made by each party in the regular course of business), and that any further reproduction of such reproduction shall likewise be admissible in evidence.

[signature pages follow]

| 11

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the first date written above.

**BORROWER AND PLEDGOR**

**VESTA HOLDINGS LLC**, an Oklahoma limited liability company

By: Its Manager
Louis Investments LLC

By:_____
Name: Marc Kulick
Title: Manager


STATE OF OKLAHOMA    )
    )
COUNTY OF TULSA    )

This instrument was acknowledged before me on July **16**, 2025 by Marc Kulick, as the Manager of Louis Investments LLC, the manager of Vesta Holdings LLC.

_____
(Signature of notarial officer)

My Commission Expires: **02-21-2029**

Commission No.: **25002105**

ETHAN WYATT AUTRY
Notary Public, State of Oklahoma
Commission # 25002105
My Commission Expires 02-21-2029

(STAMP SEAL ABOVE)


[signature pages continue]

12

**LENDER**

**YSA INVESTMENTS 1, LLC**, a Delaware limited liability company

By: _Robert Miley_
Name: ___Robert Miley___
Title: ___Authorized Representative___

: 13

JOINDER OF BORROWER-AFFILIATED ENTITIES

The undersigned, as a manager, member or other authorized person of any and all Guarantor Entities and any other entities in which the undersigned does now own or control or may herein after own or control during the term of that certain Collateral Pledge and Security Agreement dated July 16, 2025 (the "**Collateral Pledge and Security Agreement**"), hereby agrees to jointly and severally assume all obligations of Pledgor under the Collateral Pledge and Security Agreement for all purposes thereof on the terms set forth therein and to be bound by the terms of the Collateral Pledge and Security Agreement as fully as if the undersigned had personally and individually executed and delivered the Collateral Pledge and Security Agreement as of the date thereof.

By: _____
Name: Marc Kulick
Date:

STATE OF OKLAHOMA    )
                     )
COUNTY OF TULSA      )

This instrument was acknowledged before me on July 16th, 2025 by Marc Kulick, as an individual.

```
ETHAN WYATT AUTRY
Notary Public, State of Oklahoma
Commission # 26002105
My Commission Expires 02-21-2029
```

_____
(Signature of notarial officer)

My Commission Expires: 02-21-2029

Commission No.: 25002105

(STAMP SEAL ABOVE)

14

CaSa 2626 1178 5BLSDoD 04 76-3 FilEd 08 08 12 26 Page 858 of 2025060319



PULASKI CO. AR FEE $110.00
PRESENTED
11/3/2025 9:35:00 AM
RECORDED
11/03/2025 12:06:21 PM
TERRI HOLLINGSWORTH
Circuit / County Clerk
BY: DELLEON MCLIN
DEPUTY RECORDER

This instrument was prepared by
and after recording should be
returned to:

David P. Limekiller, Esq.
GableGotwals
110 N. Elgin, Suite 200
Tulsa, Oklahoma 74120
(918) 595-4800

## MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT

(This Document Serves as a Fixture Filing under § 4-9-502 of Arkansas Code Annotated §4-9-502)

**THIS MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT** (this "**Mortgage**") is made as of October 29th, 2025, by Thrive Argenta Owner LLC, a Delaware limited liability Company, whose mailing Address is 6911 S 66th East Ave Suite 100 Tulsa, OK 74136 ("**Mortgagor**"), in favor of YSA Investments 1, LLC, a Delaware limited liability company"), having a mailing address at 8 The Green #23817 Dover, DE 19901. ("**Lender**").

## RECITALS

A.     Lender, extended  credit to the Borrower Parties through multiple loans (the "Loans") and pursuant to the terms of the loan documents.

B.     The Borrower Parties defaulted on the payment and performance of the Loans and loan documents.

C.     The Borrower Parties own equity interests in Mortgagor or otherwise are affiliated with Mortgagor, and Mortgagor will derive substantial and material direct or indirect benefits from the execution and delivery of this Mortgage; and

D.     Borrower Parties and guarantor of the Loans have granted Lender a Power of Attorney authorizing the Mortgage.

{2505446;}

## AGREEMENT

NOW THEREFORE, in consideration of the recitals and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, and in order to secure the due and punctual payment and performance of all of the Secured Obligations (defined below) as and when the same become due and payable, Mortgagor represents, warrants, covenants, and agrees for the benefit of Lender as follows:

## ARTICLE 1.
### Definitions; Granting Clauses; Secured Obligations

**Section 1.1.**    Definitions. Any term defined in the Uniform Commercial Code of the State of Arkansas, as amended from time to time (the "**UCC**"), but not defined in this Mortgage, has the meaning provided in the UCC.

**Section 1.2.**    Title. Mortgagor has good, indefeasible, marketable and insurable fee simple title of record to the Property, free and clear of all liens, encumbrances and charges except for permitted encumbrances. Mortgagor shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Lender against the claims of all Persons whomsoever.

**Section 1.3.**    Secured Obligations. This Mortgage is made to secure the full and timely payment and performance of the following (collectively, the "**Secured Obligations**"):

(a)    The sum of $5,240,831.29 and all indebtedness, now existing or arising in the future, including any extensions, modifications, substitutions, amendments, replacements, rearrangements and renewals thereof, whether for principal, interest, fees, expenses, indemnification or otherwise, including all interest and all reasonable costs and out-of-pocket expenses (including reasonable attorneys' fees and expenses) incurred by Lender in connection with any exercise of its rights or remedies hereunder; and:

(b)    All future advances and re-advances made for Borrower Parties' or Mortgagor's benefit or to protect any of the Property or any of the rights of Lender and out-of-pocket expenses (including reasonable attorneys' fees and expenses) incurred by Lender in connection with any exercise of its rights or remedies hereunder, pursuant to the terms of this Mortgage;

(c)    All other obligations, debts and liabilities, plus interest thereon, of Mortgagor or Borrower Parties to Lender as well as all claims by Lender against Mortgagor or Borrower Parties, whether arising from a loan or a purchased obligation, whether incurred for a consumer or a business purpose, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Loans, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Mortgagor or Borrower Parties may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable; and

2

Case 25-11758-LSD Doc 47-3 Filed 08/13/26 Page 60 of 102

(d)     The initial principal amount and initial maturity date of the Secured Obligations are $5,240,831.29 and November 7th 2025, respectively.

(e)     This Mortgage does not secure any loan, advance, debt, obligation or liability that Lender is by applicable Law prohibited from securing with a lien on real estate.  This Mortgage does not require any assumption or payment by any person, in any way, of any debt of any other person to the extent that the same would violate or exceed the limit provided in any applicable usury or other law.

**Section 1.4.**     Granting Clause.     Mortgagor MORTGAGES, GRANTS, BARGAINS, SELLS, CONVEYS, TRANSFERS, ASSIGNS and SETS OVER to Lender, all of its right, title and interest in and to the following:

(a)     all Mortgagor's right, title and interest in and to the real property located in Pulaski County, Arkansas, described in the attached Exhibit A (the "**Land**") together with: (i) any and all buildings, structures, improvements, alterations or appurtenances now or hereafter situated or to be situated on the Land (collectively the "**Improvements**"); and (ii) all right, title and interest of Mortgagor, now owned or hereafter acquired, in and to (1) all common area and other use rights, tenements, hereditaments, streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining or appurtenant to any of the Land or the Improvements, before or after vacation thereof; (2) any strips or gores between the Land and abutting or adjacent properties; (3) all options to purchase the Land or the Improvements or any portion thereof or interest therein, and any greater estate in the Land or the Improvements; (4) all water and water rights or shares of stock evidencing water rights; and (5) all timber, crops and mineral interests on or pertaining the Land (the Land, Improvements and other rights, titles and interests referred to in this clause (a) collectively the "**Premises**")

(b)     all fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies, and articles of personal property, of every kind and character, tangible and intangible, now owned or hereafter acquired by Mortgagor, which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (the properties referred to in this clause (b) collectively called "**Accessories**," all of which are hereby declared to be permanent accessions to the Land);

(c)     all of Mortgagor's rights, title and interest in (i) plans and specifications for the Improvements, or any rehabilitation, renovation, or modification thereof; (ii) Mortgagor's rights, but not liability for any breach by Mortgagor, under all commitments (including any commitments for financing to pay any of the Secured Obligations, as defined below), insurance policies (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the loan documents or from or through any state or federal government sponsored program or entity), contracts and agreements for the design, construction, rehabilitation, renovation, operation or inspection of the Improvements and other contracts and general intangibles (including but not limited to payment intangibles, trademarks, trade names, goodwill, software and symbols) related

3

Case 26-11785-LSD Doc 4776-3 Filed 08/13/26 Page 161 of 202

to the Premises or the Accessories or the operation thereof; (iii) deposits and deposit accounts arising from or related to any transactions related to the Premises or the Accessories (including but not limited to Mortgagor's rights in tenants' security deposits, deposits with respect to utility services to the Premises, and any deposits, deposit accounts or reserves hereunder or under any other loan documents for taxes, insurance or otherwise), rebates or refunds of impact fees or other taxes, assessments or charges, money, accounts (including deposit accounts), instruments, documents, promissory notes and chattel paper (whether tangible or electronic) arising from or by virtue of any transactions related to the Premises or the Accessories, and any account or deposit account from which Mortgagor may authorize Lender to debit and/or credit payments due with respect to the Loan; (iv) all security (including cash deposits, letters of credit, stock warrants, bonds, or other forms of security), together with all advance rentals under lease agreements, now or at any time hereafter covering or affecting any of the Premises or any Collateral and held by or for the benefit of Mortgagor; (v) permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Premises or the Accessories; (vi) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Premises and the Accessories (without derogation of ARTICLE 3); (vii) as-extracted collateral produced from or allocated to the Land including, without limitation, oil, gas and other hydrocarbons and other minerals and all products processed or obtained therefrom, and the proceeds thereof; and (viii) engineering, accounting, title, legal, and other technical or business data concerning the Property which are in the possession of Mortgagor or in which Mortgagor can otherwise grant a security interest; and

(d) all (i) accounts and proceeds (cash or non-cash and including payment intangibles) of or arising from the properties, rights, titles and interests referred to above in this Section 1.4, including but not limited to proceeds of any sale, lease or other disposition thereof, proceeds of each policy of insurance (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the loan documents or from or through any state or federal government sponsored program or entity) relating thereto (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto, including change of grade of streets, curb cuts or other rights of access, by condemnation, eminent domain or transfer in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto; (ii) all letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Mortgagor now have or hereafter acquire relating to the properties, rights, titles and interests referred to in this Section 1.4; (iii) all commercial tort claims Mortgagor now have or hereafter acquire relating to the properties, rights, titles and interests referred to in this Section 1.4; and (iv) other interests of every kind and character which Mortgagor now have or hereafter acquire in, to or for the benefit of the properties, rights, titles and interests referred to above in this Section 1.4 and all property used or useful in connection therewith, including but not limited to rights of ingress and egress and remainders, reversions and reversionary rights or interests; and if the estates of Mortgagor in any of the property referred to above in this Section 1.4 is a leasehold estate, this conveyance shall include, and the lien and security interest created hereby shall encumber and extend to, all other or additional title, estates, interests or rights which are now owned

or may hereafter be acquired by Mortgagor in or to the property demised under the lease creating the leasehold estate.

The property described above and the Collateral (as herein defined), are hereinafter collectively defined to be the "**Property**".

      **Section 1.5.**    <u>Security Interest</u>. Mortgagor grants to Lender a security interest in all of the Property that constitutes personal property or fixtures, all proceeds and products thereof, and all supporting obligations ancillary to or arising in any way in connection therewith (the "**Collateral**") to secure the Secured Obligations. In addition to its rights hereunder or otherwise, Lender has all of the rights of a secured party under the UCC, as in effect from time to time, or under the Uniform Commercial Code in force, from time to time, in any other state to the extent the same is applicable Law. This Mortgage is a security agreement within the meaning of Article 9 of the UCC.

**ARTICLE 2.**
**<u>Representations, Warranties and Covenants</u>**

      **Section 2.1.**    Mortgagor represents, warrants, and covenants as follows:

      (a)    <u>Performance</u>. Mortgagor will timely and properly perform and comply with all of the covenants, agreements, and conditions imposed upon it by this Mortgage and will not permit an Event of Default to occur. Time shall be of the essence in this Mortgage.

      (b)    <u>Title and Permitted Encumbrances</u>. Mortgagor has, and covenants to maintain, lawful, good and marketable title to the Property. Mortgagor is lawfully seized and possessed of the Property and every part thereof, and has the right to convey the same, free and clear of all liens, charges, claims, security interests, and encumbrances other than permitted encumbrances. Mortgagor, and Mortgagor's successors and assigns, will warrant generally and forever defend title to the Property, subject as aforesaid, to Lender, against the claims and demands of all persons claiming or to claim the same or any part thereof except the permitted encumbrances. Mortgagor will punctually pay, perform, observe and keep all covenants, obligations and conditions in or pursuant to any permitted encumbrances and will not modify or permit modification of any permitted encumbrances in a manner that is adverse to the Lender without the Lender's prior written consent. Inclusion of any matter as a permitted encumbrances does not constitute approval or waiver by Lender of any existing or future violation or other breach thereof by Mortgagor, by the Property or otherwise. If any right or interest of Lender in the Property or any part thereof shall be endangered or questioned or shall be attacked directly or indirectly, Lender (whether or not named as parties to legal proceedings with respect thereto) is hereby authorized and empowered to take such steps as in its discretion may be proper for the defense of any such legal proceedings or the protection of such right or interest of Lender, including but not limited to the employment of independent counsel, the prosecution or defense of litigation, and the compromise or discharge of adverse claims. All expenditures so made of every kind and character shall be a demand obligation (which obligation Mortgagor hereby promises to pay or shall) owing by Mortgagor to Lender shall be subrogated to all rights of the person receiving such payment.

      (c)    <u>Taxes and Other Impositions</u>. Mortgagor will pay, or cause to be paid, all taxes, assessments and other charges or levies imposed upon or against or with respect to the Property or the ownership, use, occupancy or enjoyment of any portion thereof, or any utility service thereto, as the

5

same become due and payable, including but not limited to all real estate taxes assessed against the Property or any part thereof, and shall deliver promptly to Lender such evidence of the payment thereof as Lender may require.

(d)     Insurance. Mortgagor will maintain policies of insurance (including general liability and property insurance) with financially sound and reputable insurance companies, in such amounts, and with such deductibles and covering such risks as are customarily carried by companies engaged in similar businesses and owning similar properties and acceptable to Lender. Lender shall be named as loss payee, as its interest may appear, and/or additional insured with respect to any such insurance, and each provider of any such insurance shall agree, by endorsement upon the policy that it will give Lender thirty (30) days' prior written notice before any such policy or policies shall be altered or canceled.

(e)     Condemnation. Mortgagor shall notify Lender immediately of any threatened or pending proceeding for condemnation affecting the Property or arising out of damage to the Property, and Mortgagor shall, at Mortgagor's expense, diligently prosecute any such proceedings. Lender shall have the right (but not the obligation) to participate in any such proceeding and to be represented by counsel of its own choice. Lender shall be entitled to receive all sums which may be awarded or become payable to Mortgagor for the condemnation of the Property, or any part thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Mortgagor for injury or damage to the Property. Mortgagor shall, promptly upon request of Lender, execute such additional assignments and other documents as may be necessary from time to time to permit such participation and to enable Lender to collect and receipt for any such sums. All such sums are hereby assigned to Lender, and shall, after deduction therefrom of all reasonable expenses actually incurred by Lender, including attorneys' fees, at Lender's option be (1) released to Mortgagor, or (2) applied (upon compliance with such terms and conditions as may be required by Lender) to repair or restoration of the Property so affected, or (3) applied to the payment of the Secured Obligations in such order and manner as Lender, in its sole discretion, may elect, whether or not due. In any event the unpaid portion of the Secured Obligations shall remain in full force and effect and the payment thereof shall not be excused. Lender shall not be, under any circumstances, liable or responsible for failure to collect or to exercise diligence in the collection of any such sum or for failure to see to the proper application of any amount paid over to Mortgagor. Lender is hereby authorized, in the name of Mortgagor, to execute and deliver valid acquittances for, and to appeal from, any such award, judgment or decree. All costs and expenses (including but not limited to attorneys' fees) incurred by Lender in connection with any condemnation shall be a demand obligation owing by Mortgagor (which Mortgagor hereby promises to pay) to Lender pursuant to this Mortgage.

(f)     Compliance with Legal Requirements. Mortgagor, the Property and the use, operation and maintenance thereof and all activities thereon do and shall at all times comply with the terms, conditions, covenants, representations and warranties of the Mortgage and all applicable Legal Requirements (hereinafter defined). The Property is not, and shall not be, dependent on any other property or premises or any interest therein other than the Property to fulfill any requirement of any Legal Requirement. Mortgagor shall not, by act or omission, permit any building or other improvement not subject to the lien of this Mortgage to rely on the Property or any interest therein to fulfill any requirement of any Legal Requirement. No improvement upon or use of any part of the Property constitutes a nonconforming use under any zoning law or similar law or ordinance. Mortgagor has

6

obtained and shall preserve in force all requisite zoning, utility, building, health, environmental and operating permits from the Governmental Authority having jurisdiction over the Property.

(g)     Notice of Noncompliance.  If Mortgagor receives a notice or claim from any person that the Property, or any use, activity, operation or maintenance thereof or thereon, is not in compliance with any Legal Requirement, Mortgagor will promptly furnish a copy of such notice or claim to Lender. Mortgagor represents it has received no notice and has no knowledge of any such noncompliance.  As used in this Mortgage: the term "**Legal Requirement**" means any law, regulation or ordinance of any jurisdiction, court order, agreement, covenant, restriction, easement or condition (including, without limitation of the foregoing, any condition or requirement imposed by any insurance or surety company), as any of the same now exists or may be changed or amended or come into effect in the future.

(h)     Maintenance, Repair and Restoration.  Mortgagor will keep the Property (or cause the Property to be kept) in first class order, repair, operating condition and appearance, causing all necessary repairs, renewals, replacements, additions and improvements to be promptly made, and will not allow any of the Property to be misused, abused or wasted or to deteriorate.  Notwithstanding the foregoing, Mortgagor will not, and will not allow or suffer any other person to, without the prior written consent of Lender, (i) remove from the Property any fixtures or personal property covered by this Mortgage except such as is replaced by an article of equal suitability and value, owned by Mortgagor, free and clear of any lien or security interest (except permitted encumbrances), or (ii) make any structural alteration to the Property or any other alteration thereto which impairs the value thereof. If any act or occurrence of any kind or nature (including any condemnation or any casualty for which insurance was not obtained or obtainable) shall result in damage to or loss or destruction of the Property, Mortgagor shall give prompt notice thereof to Lender and Mortgagor shall promptly, at Mortgagor's sole cost and expense and regardless of whether insurance or condemnation proceeds (if any) shall be available or sufficient for the purpose, secure the Property as necessary and commence and continue diligently to completion to restore, repair, replace and rebuild the Property as nearly as possible to its value, condition and character immediately before the damage, loss or destruction.

(i)     No Other Liens.   Mortgagor will not, without the prior written consent of Lender, create, place or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any deed of trust, mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual, security interest, encumbrance or charge, or conditional sale or other title retention document, against or covering the Property, or any part thereof, other than the Permitted Encumbrances, regardless of whether the same are expressly or otherwise subordinate to the lien or security interest created in this Mortgage, and should any of the foregoing become attached hereafter in any manner to any part of the Property without the prior written consent of Lender, Mortgagor will cause the same to be promptly discharged and released, subject to Mortgagor's right to contest such liens in good faith with adequate reserves to pay such lien if unsuccessful.

(j)     Operation of Property. Mortgagor will operate the Property, or cause the Property to be so operated, in a good and workmanlike manner and in accordance with all Legal Requirements and will pay all fees or charges of any kind in connection therewith.  Mortgagor will not use or occupy or conduct any activity on, or allow the use or occupancy of or the conduct of any activity on, the Property in any manner which violates any Legal Requirement or which constitutes a public or private nuisance or which makes void, voidable or cancelable, or increases the premium of, any insurance then in force

7

with respect thereto. Mortgagor will not initiate or permit any zoning reclassification of the Property or seek any variance under existing zoning ordinances applicable to the Property. Mortgagor will not impose any easement, restrictive covenant or encumbrance upon the Property, execute or file any subdivision plat or condominium declaration affecting the Property. Mortgagor will not do or suffer to be done any act whereby the value of any part of the Property may be lessened. Without the prior written consent of Lender, there shall be no drilling or exploration for or extraction, removal or production of any mineral, hydrocarbon, gas, natural element, compound or substance (including sand and gravel). Mortgagor will cause all debts and liabilities of any character (including without limitation all debts for labor, material and equipment and all charges for utilities servicing the Property) incurred in the construction, renovation, maintenance, operation and development of the Property to be promptly paid.

(k)    Certain Environmental Matters.   The Property and the intended use thereof by Mortgagor will comply with all applicable Environmental Laws (as defined herein). "**Environmental Laws**" means, collectively, any local, state or federal law, rule or regulation, order, decree, together will all amendments thereto, pertaining to the environment, natural resources, pollution, or public health including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. § 9601 *et seq.*), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 *et seq.*), the Federal Water Pollution Control Act (33 U.S.C. § 1251 *et seq.*), the Hazardous Materials Transportation Act (49 U.S.C. § 5101 *et seq.*), the Clean Air Act (42 U.S.C. § 7401 *et seq.*), the Federal Insecticide, Fungicide and Rodenticide Act (7 U.S.C. § 136 *et seq.*), the Emergency Planning and Community Right-to-Know Act (42 U.S.C. § 11001 *et seq.*), the Occupational Safety and Health Act (29 U.S.C. § 651 *et seq.*), the Residential Lead-Based Paint Hazard Reduction Act (42 U.S.C. § 4851 *et seq.*).

(l)    Further Assurances.   Mortgagor will, promptly on request of Lender, (i) correct any defect, error or omission which may be discovered in the contents, execution or acknowledgment of this Mortgage or any other loan document; (ii) execute, acknowledge, deliver, procure and record and/or file such further documents and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Mortgage, or as reasonably determined by Lender to protect the lien or the security interest hereunder against the rights or interests of third persons. Mortgagor shall pay all costs connected with any of the foregoing, which shall be a demand obligation owing by Mortgagor (which Mortgagor hereby promises to pay) to Lender pursuant to this Mortgage.

(m)    Fees and Expenses.   Without limitation of any other provision of this Mortgage and to the extent not prohibited by applicable law, Mortgagor will pay, and will reimburse to Lender on demand to the extent paid by Lender all costs and expenses, including attorneys' fees and expenses, incurred or expended in connection with the exercise of any right or remedy, or the defense of any right or remedy or the enforcement of any obligation of Mortgagor, hereunder.

(n)    Taxes.   Mortgagor will promptly pay all income, franchise and other taxes owing by Mortgagor and any stamp, documentary, recordation and transfer taxes or other taxes (unless such payment by Mortgagor is prohibited by law) which may be required to be paid.

**Section 2.2.**    Performance by Lender on Mortgagor's Behalf.   Mortgagor agrees that if Mortgagor fails to perform any act or to take any action which under the Mortgage requires Mortgagor to perform or take, or to pay any money that is required to pay, and whether or not the failure then

8

Case 26-11785-LSD Doc 4776-3 Filed 08/13/26 Page 66 of 102

constitutes an Event of Default, and whether or not there has occurred any Default or Event of Default or the Secured Obligations has been accelerated, Lender, in Mortgagor's name or its own name, may, but is not obligated to, perform or cause to be performed such act or take such action or pay such money, and any expenses so incurred by Lender and any money so paid by Lender shall be a demand obligation owing by Mortgagor to Lender (which obligation Mortgagor shall pay), shall be a part of the indebtedness secured hereby. Lender and its designees shall have the right to enter upon the Property at any time and from time to time for any such purposes. No such payment or performance by Lender shall waive or cure any Default or Event of Default or waive any right, remedy or recourse of Lender. Any such payment may be made by Lender in reliance on any statement, invoice or claim without inquiry into the validity or accuracy thereof. Each amount due and owing by Mortgagor to Lender pursuant to this Mortgage shall bear interest, at the default rate, (Lender and Mortgagor intend that the Mortgage strictly comply with applicable usury law).

**Section 2.3.** <u>Absence of Obligations of Lender with Respect to Property</u>. Notwithstanding anything in this Mortgage to the contrary, (i) to the extent permitted by applicable Law, the Property is composed of Mortgagor's rights, title and interests therein but not Mortgagor's obligations, duties or liabilities pertaining thereto, and (ii) Lender neither assumes nor shall have any obligations, duties or liabilities in connection with any portion of the items described in the definition of "Property" herein, either before or after obtaining title to such Property, whether by foreclosure sale, the granting of a deed in lieu of foreclosure or otherwise. Without limiting the generality of the foregoing, it is understood and agreed that Lender shall have no obligations, duties or liabilities before or after acquisition of title to any portion of the Property, as lessee under any lease or purchaser or seller under any contract or option unless Lender elects otherwise by written notification.

**Section 2.4.** <u>Authorization to File Financing Statements; Power of Attorney</u>. Mortgagor authorizes Lender to file any initial financing statements, amendments thereto and continuation statements as authorized by applicable Law, required by Lender to establish or maintain the validity, perfection and priority of the security interests granted in this Mortgage. For purposes of such filings, Mortgagor agrees to furnish any information requested by Lender promptly upon request by Lender. Mortgagor also ratifies its authorization for Lender to file any like initial financing statements, amendments thereto or continuation statements if filed before the date of this Mortgage. Mortgagor irrevocably constitutes and appoints Lender and any officer or agent of Lender, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Mortgagor or in Mortgagor's own name to execute in Mortgagor's name any such documents and to otherwise carry out the purposes of this <u>Section 2.4</u>, to the extent that Mortgagor's authorization above is not sufficient. To the extent permitted by Law, Mortgagor ratifies all acts said attorneys-in-fact shall lawfully do, have done in the past or cause to be done in the future by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

### ARTICLE 3.
### Assignment of Rents and Leases

**Section 3.1.** <u>Assignment.</u> As additional security for the Secured Obligations, and subject to the limited license given to Mortgagor to collect and use Rents (both arising under the Leases and

otherwise), Mortgagor assigns to Lender, for its benefit, all of the right, title and interest of Mortgagor, whether now owned or existing or hereafter acquired or arising in, to, and under:

      (a)    the Rents, it being intended that this Assignment Clause shall constitute an absolute and present assignment of the Rents; and

      (b)    the Leases, but without the Lender thereby becoming liable for the performance of the lessor's or lessee's obligations under the Leases, together with (i) all security therefor and guaranties thereof and all monies payable thereunder, (ii) all books and records owned by Mortgagor which contain evidence of payments made under the Leases and all security given therefor, and (iii) all liens and security interests in favor of Mortgagor under the terms of the Leases.

So long as no Event of Default has occurred, Mortgagor shall have a license (which license shall terminate automatically and without further notice upon the occurrence of an Event of Default) to collect, but not before accrual, the Rents under the Leases and, where applicable, subleases, such Rents to be held in trust for Lender and to otherwise deal with all Leases as permitted by this Mortgage. Each month, provided no Event of Default has occurred, Mortgagor may retain such Rents as were collected that month and held in trust for Lender; provided, however, that all Rents collected by Mortgagor shall be applied solely to the ordinary and necessary expenses of owning and operating the Property or paid to Lender or otherwise permitted by Lender. Upon the revocation of such license, all Rents shall be paid directly to Lender and not through Mortgagor, all without the necessity of any further action by Lender, including, without limitation, any action to obtain possession of the Land, Improvements or any other portion of the Property or any action for the appointment of a receiver. Mortgagor hereby authorizes and directs the tenants under the Leases to pay Rents to Lender upon written demand by Lender, without further consent of Mortgagor, without any obligation of such tenants to determine whether an Event of Default has in fact occurred and regardless of whether Lender has taken possession of any portion of the Property, and the tenants may rely upon any written statement delivered by Lender to the tenants. Any such payments to Lender shall constitute payments to Mortgagor under the Leases, and Mortgagor irrevocably appoints Lender as its attorney-in-fact to do all things, after an Event of Default, which Mortgagor might otherwise do with respect to the Property and the Leases thereon, including, without limitation, (i) collecting Rents with or without suit and applying the same, less expenses of collection, to any of the obligations secured hereunder or to expenses of operating and maintaining the Property (including reasonable reserves for anticipated expenses), at the option of the Lender, all in such manner as may be determined by Lender, (ii) leasing, in the name of Mortgagor, the whole or any part of the Property which may become vacant, and (iii) employing agents therefor and paying such agents reasonable compensation for their services. The curing of such Event of Default, unless other Events of Default also then exist, shall entitle Mortgagor to recover its aforesaid license to do any such things which Mortgagor might otherwise do with respect to the Property and the Leases thereon and to again collect such Rents. The powers and rights granted in this paragraph shall be in addition to the other remedies herein provided for upon the occurrence of an Event of Default and may be exercised independently of or concurrently with any of said remedies. Nothing in the foregoing shall be construed to impose any obligation upon Lender to exercise any power or right granted in this paragraph or to assume any liability under any Lease of any part of the Property and no liability shall attach to Lender for failure or inability to collect any Rents under any such Lease. The assignment contained in this Section shall become null and void upon the release of this Mortgage. As used herein: (i) "**Lease**" means each existing or future lease, sublease (to the extent of Mortgagor's rights thereunder) or other agreement under the terms of which any person has or acquires any right to

Case 26-17853-LSD Doc 4776-3 Filed 08/13/26 Page 68 of 202

occupy or use the Property, or any part thereof, or interest therein, and each existing or future guaranty of payment or performance thereunder, all extensions, renewals, modifications and replacements of each such lease, sublease, agreement or guaranty; and (ii) "**Rents**" means all of the rents, revenue, income, profits and proceeds derived and to be derived from the Property or arising from the use or enjoyment of any portion thereof, including but not limited to all revenue and deposits related to the use (and future use) of the Property and/or any room, cabin, or the like by any licensee or invitee of the Mortgagor; or from any Lease, including but not limited to the proceeds from any negotiated lease termination or buyout of such Lease, liquidated damages following default under any such Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the Property, all of Mortgagor's rights to recover monetary amounts from any tenant in bankruptcy including, without limitation, rights of recovery for use and occupancy and damage claims arising out of Lease defaults, including rejections, under any applicable bankruptcy or similar debtor relief law.

**Section 3.2.** <u>Covenants, Representations and Warranties Concerning Leases and Rents</u>. Mortgagor covenants, represents and warrants that: (a) Mortgagor has good title to, and is the owner of the entire interest in, the Leases and Rents hereby assigned and authority to assign them; (b) all Leases are valid and enforceable, and in full force and effect, and are unmodified except as stated therein; (c) neither Mortgagor nor, to the knowledge of Mortgagor, any tenant in the Property is in default under its Lease (and no event has occurred which with the passage of time or notice or both would result in a default under its Lease) or is the subject of any bankruptcy, insolvency or similar proceeding; (d) no Rents have been waived, released, discounted, set off or compromised, other than in the ordinary course of business; (e) except as stated in the Leases, Mortgagor has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued Rents; (f) Mortgagor shall perform all of its obligations under the Leases and enforce the tenants' obligations under the Leases to the extent enforcement is prudent under the circumstances; (g) except in the ordinary course of business, Mortgagor will not without the prior written consent of Lender, waive, release, discount, set off, compromise, reduce or defer any Rent, receive or collect Rents more than one (1) month in advance (except in the ordinary course of business operations), grant any rent-free period to any tenant, reduce any Lease term or waive, release or otherwise modify any other material obligation under any Lease, renew or extend any Lease, approve or consent to an assignment of a Lease or a subletting of any part of the premises covered by a Lease, or settle or compromise any claim against a tenant under a Lease in bankruptcy or otherwise; (h) except for in the ordinary course of business or in compliance with any applicable law, Mortgagor will not, without the prior written consent of Lender, terminate or consent to the cancellation or surrender of any Lease; (i) Mortgagor shall give prompt notice to Lender, as soon as Mortgagor first obtains notice, of any claim by any tenant or subtenant under or with respect to a Lease, and Mortgagor shall defend, at Mortgagor's expense, any proceeding pertaining to any Lease, including, if Lender so requests, any such proceeding to which Lender is a party; and (j) promptly upon request by Lender, Mortgagor shall deliver to Lender executed originals of all Leases and copies of all records relating thereto; (k) there shall be no merger of the leasehold estates created by the Leases, with the fee estate of the Land without the prior written consent of Lender.

**Section 3.3.** <u>No Liability of Lender</u>. Lender's acceptance of this assignment shall not be deemed to constitute Lender a "mortgagee in possession," nor obligate Lender to appear in or defend any proceeding relating to any Lease or to the Property, or to take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under any Lease, or assume any

11

obligation for any deposit delivered to Mortgagor by any tenant. Lender shall not be liable for any injury or damage to person or property in or about the Property, or for Lender's failure to collect or to exercise diligence in collecting Rents, but shall be accountable only for Rents that it shall actually receive. Neither the assignment of Leases and Rents nor enforcement of Lender's rights regarding Leases and Rents (including collection of Rents) nor possession of the Property by Lender nor Lender's consent to or approval of any Lease (nor all of the same), shall render Lender liable on any obligation under or with respect to any Lease, or the Property, or constitute affirmation of, or any subordination to, any Lease, occupancy, use or option.

If Lender seeks or obtains any judicial relief regarding Rents or Leases, the same shall in no way prevent the concurrent or subsequent employment of any other appropriate rights or remedies nor shall same constitute an election of judicial relief for any foreclosure or any other purpose. Lender neither has nor assumes any obligations as owner, lessor or landlord with respect to any Lease or to the Property. The rights of Lender under this <u>ARTICLE 3</u> are cumulative of all other rights of Lender under the Loan Documents or otherwise.

**ARTICLE 4.**
**<u>Events of Default</u>**

**Section 4.1.** <u>Events of Default</u>. The occurrence of any one of the following whether voluntary or involuntary and whether occurring by operation of law or otherwise is an "**<u>Event of Default</u>**": i) the occurrence of a default under the Loans, or any Loan Document, (ii) Mortgagor's failure to perform any obligation or condition under this Mortgage, (iii) the bankruptcy or dissolution of Mortgagor; or (iv) the liens, mortgages or security interests of Lender in any of the Property become unenforceable in whole or in part, or cease to be of the priority herein required, (or the validity or enforceability thereof, in whole or in part, shall be challenged or denied by Mortgagor or any person obligated to pay any part of the Secured Obligations).

**Section 4.2.** <u>Notice and Cure</u>. If any provision of this Mortgage provides for Lender to give to Mortgagor any notice regarding a Default or Event of Default, then if Lender shall fail to give such notice to Mortgagor as provided, the sole and exclusive remedy of Mortgagor for such failure shall be to seek appropriate equitable relief to enforce the agreement to give such notice and to have any acceleration of the maturity of the Secured Obligations postponed or revoked and foreclosure proceedings in connection therewith delayed pending upon the curing of the Default or Event of Default in the manner permitted by such agreement, if any, and Mortgagor shall have no right to damages or any other type of relief not herein specifically set out against Lender, all of which damages or other relief are hereby waived by Mortgagor.

**ARTICLE 5.**
**<u>Remedies</u>**

**Section 5.1.** <u>Certain Remedies</u>. If an Event of Default occurs, Lender may (but shall have no obligation to) exercise any one or more of the following remedies, without notice (unless notice is required by applicable statute):

(a) <u>Remedies</u>. Lender may, at its option, and without prior notice or demand, exercise, and hereby is authorized and empowered by Mortgagor so to exercise, any or all of the remedies set

12

forth in the Mortgage (including enforcement of the Assignment of Rents), or otherwise permitted by law or in equity.

(b)  <u>Foreclosure</u>.  Lender has the right to enter upon and take possession of the Property and thereafter, or without taking possession, shall be entitled, at its option, to (i) to pursue its remedies provided by judicial proceedings at law or in equity; or (ii) to foreclose this Mortgage and sell the Property pursuant to and in compliance with Act 53 of 1987, as amended, codified as Ark. Code Ann. Sec.18-50-101, et seq.  Election of either subparagraph (i) or (ii) by the Lender is not irrevocable and the Lender may at any time subsequent to commencement of the proceedings terminate such proceeds and continue with the other procedure.  If the Lender elects to foreclose this Mortgage, the Notice required under Act 53 of 1987 will be directed to the Mortgagor at the address specified for Notices in this Mortgage. Lender has the right to become the purchaser at any sale of the Property.

(c)  <u>Uniform Commercial Code</u>.  Without limitation of Lender's rights of enforcement with respect to the Collateral or any part thereof in accordance with the procedures for foreclosure of real estate, Lender may exercise its rights of enforcement with respect to the Collateral or any part thereof under the UCC, as in effect from time to time (or under the Uniform Commercial Code in force, from time to time, in any other state to the extent the same is applicable Law) and in conjunction with, in addition to or in substitution for those rights and remedies set forth in the this Mortgage.

(d)  <u>Receiver</u>.  Upon the occurrence of an Event of Default, Lender, without regard to the value of the Property or the adequacy of the security for the Secured Obligations and other sums secured hereby, shall be entitled as a matter of right and without any additional showing or proof, at Lender's election, to either (i) the appointment by the court of a receiver (without the necessity of Lender posting a bond) to enter upon and take possession of the Property and to collect all Rents, income and other benefits thereof and apply the same as the court may direct or (ii) to be placed by the court into possession of the Property as mortgagee in possession with the same power herein granted to a receiver and with all other rights and privileges of a mortgagee in possession under law.

(e)  <u>Remedies Cumulative</u>.  All remedies herein expressly provided for are cumulative of any and all other remedies existing at law or in equity and are cumulative and may be exercised independently, concurrently or successively in Lender's sole discretion and as often as occasion therefor shall arise. Lender's delay or failure to exercise any other remedy upon the occurrence of an Event of Default shall not be deemed a waiver of such right or remedy. No partial exercise by Lender of any right or remedy will preclude further exercise thereof. Lender will not be deemed as a consequence of its delay or failure to act, or any forbearance granted, to have waived or be estopped from exercising any of its rights or remedies.

**Section 5.2.**  <u>Proceeds of Foreclosure</u>. The proceeds of any foreclosure sale shall be applied in accordance with the requirements of applicable laws and to the extent consistent therewith, <u>FIRST</u>, to the payment of all necessary costs and expenses incident to such foreclosure sale, including but not limited to all attorneys' fees, advertising costs, and appraisal costs, fees, <u>SECOND</u> to the payment of superior liens and mortgages if any, <u>THIRD</u>, to the payment of the Secured Obligations, and <u>FOURTH</u>, the remainder, if any, shall be paid to Mortgagor,  provided, however, that if Lender is uncertain which person or persons are so entitled, Lender may interplead such remainder in any court of competent

13

jurisdiction, and the amount of any attorneys' fees, court costs and expenses incurred in such action shall be a part of the Secured Obligations and shall be reimbursable from such remainder.

**Section 5.3.** <u>Discretion as to Security</u>. Lender may resort to any security given by this Mortgage or to any other security now existing or hereafter given to secure the payment of the Secured Obligations, in whole or in part, and in such portions and in such order as may seem best to Lender in its sole and uncontrolled discretion, and any such action shall not in anywise be considered as a waiver of any of the rights, benefits, liens or security interests evidenced by this Mortgage.

**Section 5.4.** <u>Mortgagor's Waiver of Certain Rights</u>.

(a) To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or take the benefit or advantage of any Law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption (including under Ark. Code Ann. § 18-49-106), homestead, moratorium, reinstatement, marshaling or forbearance, and Mortgagor, for Mortgagor, Mortgagor's representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by applicable law, hereby waive and release all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the Secured Obligations, notice of election to mature or declare due the whole of the Secured Obligations and all rights to a marshaling of assets of Mortgagor, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and/or security interests hereby created. Mortgagor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents, or other matters whatsoever to defeat, reduce or affect the right of Lender under the terms of this Mortgage to a sale of the Property for the collection of the Secured Obligations without any prior or different resort for collection, or the right of Lender under the terms of this Mortgage to the payment of the Secured Obligations out of the proceeds of sale of the Property in preference to every other claimant whatsoever. Mortgagor waives any right or remedy which Mortgagor may have or be able to assert pursuant to any provision of any statute or rule of law pertaining to the rights and remedies of sureties. If any law referred to in this Section and now in force, of which Mortgagor or Mortgagor's representatives, successors or assigns or any other persons claiming any interest in the Property might take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section.

(b) Without limiting the foregoing, Mortgagor releases and waives all rights and benefits of the homestead exemption laws of the State of Arkansas as to all Secured Obligations, including particularly, but not limited to, all rights of redemption pursuant to Ark. Code Ann. § 18-49-106.

## ARTICLE 6.
## Miscellaneous

**Section 6.1.** Scope of Mortgage. This Mortgage is a mortgage of both real and personal property, a security agreement, an assignment of rents and leases, a financing statement and fixture filing and a collateral assignment, and also covers proceeds and fixtures.

**Section 6.2.** Effective as a Financing Statement. This Mortgage shall be effective as a financing statement filed as a fixture filing with respect to all fixtures included within the Property and is to be filed for record in the real estate records of each county where any part of the Property (including said fixtures) is situated. This Mortgage shall also be effective as a financing statement covering as-extracted collateral (including oil and gas), timber, accounts and general intangibles under the UCC, as, in effect from time to time, and the Uniform Commercial Code, as in effect from time to time, in any other state where the Property is situated which will be financed at the wellhead or minehead of the wells or mines located on the Property and is to be filed for record in the real estate records of each county where any part of the Property is situated. The mailing address of Mortgagor and the Lender are set forth at the opening paragraph of this Mortgage. A carbon, photographic or other reproduction of this Mortgage or of any financing statement relating to this Mortgage shall be sufficient as a financing statement for any of the purposes referred to in this Section.

**Section 6.3.** Notice to Account Debtors. In addition to the rights granted elsewhere in this Mortgage, Lender may at any time notify the account debtors or obligors of any accounts, chattel paper, general intangibles, negotiable instruments or other evidences of indebtedness included in the Collateral to pay Lender directly.

**Section 6.4.** Waiver by Lender. Lender may at any time and from time to time by a specific writing intended for the purpose: (a) waive compliance by Mortgagor with any covenant herein made by Mortgagor to the extent and in the manner specified in such writing; (b) consent to Mortgagor's doing any act which hereunder Mortgagor is prohibited from doing, or to Mortgagor's failing to do any act which hereunder Mortgagor is required to do, to the extent and in the manner specified in such writing; (c) release any part of the Property or any interest therein from the lien and security interest of this Mortgage; or (d) release any party liable, either directly or indirectly, for the Secured Obligations or for any covenant herein or in any other loan document, without impairing or releasing the liability of any other party. No such act shall in any way affect the rights or powers of Lender hereunder except to the extent specifically agreed to by Lender in such writing.

**Section 6.5.** No Impairment of Security. The lien, security interest and other security rights of Lender hereunder or under any other loan document shall not be impaired by any indulgence, moratorium or release granted by Lender including, but not limited to, any renewal, extension or modification which Lender may grant with respect to any Secured Obligations, or any surrender, compromise, release, renewal, extension, exchange or substitution which Lender may grant in respect of the Property, or any part thereof or any interest therein, or any release or indulgence granted to any endorser, guarantor or surety of any Secured Obligations. The taking of additional security by Lender

shall not release or impair the lien, security interest or other security rights of Lender hereunder or affect the liability of Mortgagor or of any endorser, guarantor or surety.

**Section 6.6.** <u>Acts Not Constituting Waiver by Lender</u>. Lender may waive any Default or Event of Default without waiving any other prior or subsequent Default or Event of Default. Lender may remedy any Default or Event of Default without waiving the Default or Event of Default remedied. Neither failure by Lender to exercise, nor delay by Lender in exercising, nor discontinuance of the exercise of any right, power or remedy (including but not limited to the right to accelerate the maturity of the Secured Obligations or any part thereof) upon or after any Default or Event of Default shall be construed as a waiver of such Default or Event of Default or as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise by Lender of any right, power or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right, power or remedy hereunder may be exercised at any time and from time to time. No modification or waiver of any provision hereof nor consent to any departure by Mortgagor therefrom shall in any event be effective unless the same shall be in writing and signed by Lender and then such waiver or consent shall be effective only in the specific instance, for the purpose for which given and to the extent therein specified. No notice to nor demand on Mortgagor in any case shall of itself entitle Mortgagor to any other or further notice or demand in similar or other circumstances. Acceptance by Lender of any payment in an amount less than the amount then due on any Secured Obligations shall be deemed an acceptance on account only and shall not in any way excuse the existence of a Default or Event of Default notwithstanding any notation on or accompanying such partial payment to the contrary.

**Section 6.7.** <u>Nature of Loan; Compliance with Usury Laws</u>. If it is determined that Mortgagor has paid or interest has accrued on the Secured Obligations in an amount in excess of that permitted by law, such excess shall, to the extent required by law and otherwise at the option of Lender, either be applied to reduce the unpaid Secured Obligations or be refunded to Mortgagor.

**Section 6.8.** <u>Releases</u>. Upon the payment and satisfaction in full of the Secured Obligations and termination of all obligations (if any) on the part of Lender to extend credit to the Borrower Parties, all rights under this Mortgage will automatically terminate and the Property will become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Mortgagor's cost. Without limitation, all provisions herein for indemnity of Lender shall survive discharge of the Secured Obligations and any foreclosure, release or termination of this Mortgage.

**Section 6.9.** <u>Invalidity of Certain Provisions</u>. A determination that any provision of this Mortgage is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Mortgage to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

**Section 6.10.** <u>Gender; Number</u>. Within this Mortgage, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed

16

to include the plural and words in the plural number shall be held and construed to include the singular, unless in each instance the context otherwise requires.

**Section 6.11.** <u>Lender's Consent</u>. Except where otherwise expressly provided herein, in any instance hereunder where the approval, consent or the exercise of judgment of Lender is required or requested, (a) the granting or denial of such approval or consent and the exercise of such judgment shall be within the sole discretion of Lender, and Lender shall not, for any reason or to any extent, be required to grant such approval or consent or exercise such judgment in any particular manner, regardless of the reasonableness of either the request or Lender's judgment, and (b) no approval or consent of Lender shall be deemed to have been given except by a specific writing intended for the purpose and executed by an authorized representative of Lender.

**Section 6.12.** <u>Mortgagor</u>. If Mortgagor, or any signatory who signs on behalf of Mortgagor, is a corporation, partnership, limited liability company or other legal entity, Mortgagor and any such signatory, and the person or persons signing for it, represent and warrant to Lender that this instrument is executed, acknowledged and delivered by Mortgagor's duly authorized representatives.

**Section 6.13.** <u>Execution; Recording</u>. This Mortgage may be executed in several counterparts, all of which are identical, and all of which counterparts together shall constitute one and the same instrument. The date or dates reflected in the acknowledgments hereto indicate the date or dates of actual execution of this Mortgage, but such execution is as of the date shown on the first page hereof, and for purposes of identification and reference the date of this Mortgage shall be deemed to be the date reflected on the first page hereof. Mortgagor consents to this Mortgage and all amendments and supplements thereto and substitutions therefor and all financing statements and continuation statements relating thereto to be recorded, filed, re-recorded and refiled in such manner and in such places as Lender shall reasonably request and will pay all such recording, filing, re-recording and refiling taxes, fees and other charges.

**Section 6.14.** <u>Successors and Assigns</u>. The terms, provisions, covenants and conditions hereof shall be binding upon Mortgagor, and the representatives, successors and assigns of Mortgagor, and shall inure to the benefit of Lender and shall constitute covenants running with the Land. All references in this Mortgage to Mortgagor shall be deemed to include all such representatives, successors and assigns of Mortgagor.

**Section 6.15.** <u>Modification or Termination</u>. The Loan Documents may only be modified or terminated by a written instrument or instruments intended for that purpose and executed by the party against which enforcement of the modification or termination is asserted. Any alleged modification or termination which is not so documented shall not be effective as to any party.

**Section 6.16.** <u>No Partnership, Etc.</u> The relationship between Lender and Mortgagor is solely that of lender, Mortgagor and mortgagor. Lender has no fiduciary or other special relationship with Mortgagor. Nothing contained in the loan documents is intended to create any partnership, joint venture, association or special relationship between Mortgagor and Lender or in any way make Lender a co-principal with Mortgagor with reference to the Property. All agreed contractual duties between Lender and Mortgagor are set forth herein and in the other loan documents and any additional implied

covenants or duties are hereby disclaimed. Any inferences to the contrary of any of the foregoing are hereby expressly negated.

**Section 6.17.** <u>Applicable Law</u>. THIS MORTGAGE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF ARKANSAS WITHOUT REGARD TO CHOICE OF LAW RULES

**Section 6.18.** <u>Consent to Jurisdiction and Venue</u>. MORTGAGOR HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT SITTING IN THE COUNTY AND STATE WHERE THE MORTGAGED PROPERTY IS LOCATED WITH RESPECT TO ANY LEGAL ACTION OR PROCEEDING DIRECTLY OR INDIRECTLY ARISING FROM OR RELATED TO THIS MORTGAGE AND WAIVES ALL OBJECTIONS WHICH IT MAY HAVE TO SUCH JURISDICTION AND VENUE. NOTHING HEREIN SHALL, PRECLUDE OR PREVENT LENDER FROM BRINGING ACTIONS AGAINST MORTGAGOR IN ANY OTHER JURISDICTION AS MAY BE NECESSARY TO ENFORCE OR REALIZE UPON THE SECURITY HEREIN PROVIDED.

**Section 6.19.** <u>Waiver of Jury Trial</u>. LENDER AND MORTGAGOR IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS MORTGAGE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

**Section 6.20.** <u>Entire Agreement</u>. The Mortgage constitutes the entire understanding and agreement between Mortgagor and Lender with respect to the transactions arising in connection with the Secured Obligations and supersede all prior written or oral understandings and agreements between Mortgagor and Lender with respect to the matters addressed in the Loan and loan documents.

**Section 6.21.** <u>Modification by Subsequent Owners</u>. Mortgagor agrees that it shall be bound by any modification of this Mortgage made by Lender and any subsequent owner of the Property, with or without notice to Mortgagor, and no such modification shall impair the obligations of Mortgagor under this Mortgage. Nothing in this Section permits any transfer of the Property that constitutes an Event of Default.

**Section 6.22.** <u>Future Advances</u>. This Mortgage secures future principal advances by Lender to Borrower Parties.

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[SIGNATURE PAGES ATTACHED]*

THIS MORTGAGE, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT is executed and delivered by the Mortgagor as of the date first indicated on the first page.

**MORTGAGOR:**

**Thrive Argenta Owner LLC,**
a Delaware limited liability company

By:_____

Aharon Baruch, Authorized Representative of Lender, Attorney in Fact, on behalf of authorized signatory Marc Kulick

STATE OF                        )
                                ) ss.
COUNTY OF                       )

The foregoing instrument was acknowledged before me on October   , 2025, by Aharon Baruch as authorized representative of YSA Investments 1, LLC as Attorney in Fact on behalf of authorized signatory Marc Kulick.

_____
Notary Public

Notary Commission No. HH687186

My Commission Expires: 6/12/2029

[S E A L]



ANTONELLA PILAR YAZBAK
MY COMMISSION # HH 687186
EXPIRES: June 12, 2029

*SIGNATURE PAGE*
*MORTGAGE*

## EXHIBIT A

### LAND

LOT IRR, MOUNTAIRE ADDITION TO THE CITY OF NORTH LITTLE ROCK, ARKANSAS, AND AS SHOWN ON PLAT OF RECORD AS INSTRUMENT NO. 2017045734, RECORDS OF PULASKI COUNTY, ARKANSAS.

BEING THE SAME LANDS AS SHOWN ON ALTA/NSPS LAND TITLE SURVEY, DATED JANUARY 28, 2019, BY NICHOLAS TUCKER, LS #1755, STATE OF ARKANSAS, OF CRAFTON, TULL & ASSOCIATES, INC., AND DESIGNATED AS PROJECT NO. 19200800, DESCRIBED AS FOLLOWS:

ALL OF THAT PART LOT IRR, MOUNTAIRE ADDITION TO THE CITY OF NORTH LITTLE ROCK, ARKANSAS, AND AS SHOWN ON PLAT OF RECORD AS INSTRUMENT NO. 2017045734, RECORDS OF PULASKI COUNTY, ARKANSAS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A MAG NAIL, SAID POINT BEING AT THE SOUTHWEST CORNER OF LOT 1RR; THENCE ALONG THE EASTERLY RIGHT-OF-WAY OF POPLAR STREET, N2°08'09"E A DISTANCE OF 234.86 FEET TO A SET 5/8" REBAR; THENCE N46°44'04"E A DISTANCE OF 35.14 FEET TO A SET CHISELED "X", SAID POINT BEING ON THE SOUTHERLY RIGHT-OF-WAY OF EAST 5TH AVENUE; THENCE ALONG SAID SOUTHERLY RIGHT-OF-WAY, S88°39'59"E A DISTANCE OF 432.77 FEET TO A SET 5/8" REBAR; THENCE ALONG A CURVE TO THE RIGHT, HAVING A RADIUS OF 20.00 FEET AND A CHORD BEARING AND DISTANCE OF S43°36'55"E 28.31 FEET, TO A SET CHISELED "X", SAID POINT BEING ON THE WESTERLY RIGHT-OF-WAY OF NORTH MAGNOLIA STREET; THENCE ALONG SAID WESTERLY RIGHT-OF-WAY, S1°26'08"W A DISTANCE OF 250.05 FEET TO SET CHISELED "X"; THENCE ALONG A CURVE THE RIGHT, HAVING A RADIUS OF 25.42 FEET, AND A CHORD BEARING AND DISTANCE OF S45°57'34"W 35.65 FEET, TO A SET CHISELED "X", SAID POINT BEING ON THE NORTHERLY RIGHT-OF-WAY OF EAST 4TH AVENUE; THENCE ALONG SAID NORTHERLY RIGHT-OF WAY, N89°31'00"W A DISTANCE OF 114.52 FEET TO A SET 5/8" REBAR; THENCE N88°11'39"W A DISTANCE OF 54.54 FEET TO A SET 5/8" REBAR; THENCE N88°45'10"W A DISTANCE OF 250.83 FEET TO A SET 5/8" REBAR; THENCE N42°11'04"W A DISTANCE OF 51.84 FEET TO THE POINT OF BEGINNING.

{2505446;}

# COMPOSITE

# EXHIBIT 10

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:28 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644183**
**Amendment No: 2026 0779013**
**Service Request No:   20260351587**

**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644183

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.    PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.    COLLATERAL CHANGE:**   Check only one box:     ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN* collateral

Indicate collateral:                    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:30 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0645180**
**Amendment No: 2026 0779211**
**Service Request No:   20260351686**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0645180

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5.    PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8.    COLLATERAL CHANGE:  Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:                                    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**<br>David P. Limekiller<br>**B. E-MAIL CONTACT AT SUBMITTER (optional)**<br>dlimekiller@gablelaw.com<br>**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>GableGotwals<br>110 N. Elgin Ave., Ste 200<br>Tulsa, OK 74120<br><br>**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION** | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 01:29 PM 01/29/2026**<br>**U.C.C. Initial Filing No: 2026 0644209**<br>**Amendment No: 2026 0779153**<br>**Service Request No:   20260351633** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644209

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.   PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:

This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record

AND   Check <u>one</u> of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c
☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.   COLLATERAL CHANGE:**   Check only <u>one</u> box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:   *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:32 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644266**
**Amendment No: 2026 0779336**
**Service Request No:   20260351758**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644266

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.   PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6.  CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7.  CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.   COLLATERAL CHANGE:**   Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:     *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9.  NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)<br>David P. Limekiller | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 01:31 PM 01/29/2026**<br>**U.C.C. Initial Filing No: 2026 0644241**<br>**Amendment No: 2026 0779260**<br>**Service Request No:   20260351702** |
| B. E-MAIL CONTACT AT SUBMITTER (optional)<br>dlimekiller@gablelaw.com | |
| C. SEND ACKNOWLEDGMENT TO:   (Name and Address)<br><br>GableGotwals<br>110 N. Elgin Ave., Ste 200<br>Tulsa, OK  74120 | |
| SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>2026 0644241 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5.  **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME<br>YSA Holdings 1 LLC | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME<br>YSA Investments 1, LLC | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS<br>8 The Green #23817 | CITY<br>Dover | STATE<br>DE | POSTAL CODE<br>19901 | COUNTRY<br>USA |
|---|---|---|---|---|

8.  **COLLATERAL CHANGE:**  Check only one box:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN* collateral

Indicate collateral:          *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9.  **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME<br>YSA Holdings 1 LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
   To be filed in DE

**FILING OFFICE COPY —** UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 04:15 PM 02/11/2026**<br>**U.C.C. Initial Filing No: 2026 1257977** |
| B. E-MAIL CONTACT AT SUBMITTER (optional) | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br><br>David P. Limekiller, ESQ.<br>GableGotwal<br>110 N. Elgin, Suite 200 Tulsa, OK 74120<br>SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | **Service Request No: 20260546451** |

**Print**  **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bryan Hill TIC 1, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of Bryan Hill TIC 1, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257860**

**Service Request No: 20260546462**

Print    Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bryan Hill TIC 2, LLC | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of Bryan Hill TIC 2, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:15 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1258256**

**Service Request No: 20260546457**

**Print**   **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Bryan Hill TIC 3, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS CORPORATION TRUST CENTER 1209 ORANGE ST | CITY Wilmington | STATE DE / POSTAL CODE 19801 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |
| 2c. MAILING ADDRESS 4920 E 113th St. S | CITY Tulsa | STATE OK / POSTAL CODE 74137 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS 8 The Green #23817 | CITY Dover | STATE DE / POSTAL CODE 19901 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of Bryan Hill TIC 3, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:33 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644324**
**Amendment No: 2026 0779344**
**Service Request No:   20260351763**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644324

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE:  Check only one box:

☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257597**

**Service Request No: 20260546468**

Print     Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CANOPY BEST LIVING, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of CANOPY BEST LIVING, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:15 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257928**

**Service Request No:   20260546433**

**Print**     **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Eaton Place Best Living, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS CORPORATION TRUST CENTER 1209 ORANGE ST | CITY Wilmington | STATE DE · POSTAL CODE 19801 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME Kulick | FIRST PERSONAL NAME Marc | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 4920 E 113th St. S | CITY Tulsa | STATE OK · POSTAL CODE 74137 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME YSA Investments 1, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 8 The Green #23817 | CITY Dover | STATE DE · POSTAL CODE 19901 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of Eaton Place Best Living, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box:    Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 05:49 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 0644431**
**Amendment No: 2026 1159652**
**Service Request No: 20260549391**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644431

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. COLLATERAL CHANGE: Check only one box:
☐ ADD collateral   ☐ DELETE collateral   ☑ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:   *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

100 out of 100 Membership Interests of Fairfax Best Living, LLC, a Delaware Limited Liability Company.

and

100 out of 100 Membership Interests of Fairfax Investors, LLC, a Delaware Limited Liability Company.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:48 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 0644431**
**Amendment No: 2026 1156476**
**Service Request No: 20260547605**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644431

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
Fairfax Holding Company, LLC

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
Fairfax Best Living, LLC

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1209 Orange St | Wilmington | DE | 19801 | USA |

8. **COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:31 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644431**
**Amendment No: 2026 0779278**
**Service Request No: 20260351716**

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644431

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes: | AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☑ Secured Party of record | ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY
8 The Green #23817 | Dover | DE | 19901 | USA

**8. COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral: | *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| --- |
| David P. Limekiller |

| B. E-MAIL CONTACT AT SUBMITTER (optional) |
| --- |
| dlimekiller@gablelaw.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:49 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 0644431**
**Amendment No: 2026 1156500**
**Service Request No: 20260547610**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13. |
| --- | --- |
| 2026 0644431 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. **PARTY INFORMATION CHANGE:**

Check one of these two boxes:     AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☑ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
| --- |
| Fairfax Investors, LLC |

| 7b. INDIVIDUAL'S SURNAME |
| --- |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 1209 Orange St | Wilmington | DE | 19801 | USA |

8. **COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME |
| --- |
| YSA Investments 1, LLC |

| 9b. INDIVIDUAL'S SURNAME    FIRST PERSONAL NAME    ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX |
| --- |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:34 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644456**
**Amendment No: 2026 0779468**
**Service Request No:   20260351817**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644456

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.   PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6.   CURRENT RECORD INFORMATION:**   Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7.   CHANGED OR ADDED INFORMATION:**   Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                                        SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.   COLLATERAL CHANGE:**   Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9.   NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**   Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:33 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644530**
**Amendment No: 2026 0779369**
**Service Request No:   20260351770**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644530

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum
(Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.**    **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                               SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.    COLLATERAL CHANGE:**   Check only one box:
☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:36 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644589**
**Amendment No: 2026 0779526**
**Service Request No:   20260351838**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644589

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:                *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:36 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644613**
**Amendment No: 2026 0779534**
**Service Request No:   20260351853**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644613

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.   PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6.   CURRENT RECORD INFORMATION:**   Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7.   CHANGED OR ADDED INFORMATION:**   Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.   COLLATERAL CHANGE:**   Check only one box:
☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN* collateral

Indicate collateral:                    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:37 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644563**
**Amendment No: 2026 0779567**
**Service Request No:   20260351874**

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644563

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.    PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.    COLLATERAL CHANGE:**  Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:                    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:33 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644647**
**Amendment No: 2026 0779419**
**Service Request No: 20260351778**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644647

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                 SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:15 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1256847**

**Service Request No:   20260546429**

**Print**      **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME NORTHBORO QN, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 1521 CONCORD PIKE SUITE 201 | CITY Wilmington | STATE DE   POSTAL CODE 19803 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME Kulick | FIRST PERSONAL NAME Marc | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 4920 E 113th St. S | CITY Tulsa | STATE OK   POSTAL CODE 74137 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME YSA Investments 1, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 8 The Green #23817 | CITY Dover | STATE DE   POSTAL CODE 19901 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of NORTHBORO QN, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:37 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644662**
**Amendment No: 2026 0779591**
**Service Request No: 20260351890**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644662

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE: Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257357**

**Service Request No: 20260546478**

Print     Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| One Eton Square, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE / 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK / 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE / 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of One Eton Square, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)