# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:39 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644696**
**Amendment No: 2026 0779625**
**Service Request No: 20260351925**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644696

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

**6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:
*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

**9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:59 PM 02/12/2026**
**U.C.C. Initial Filing No: 2026 1186226**

**Service Request No:   20260564570**

[ Print ]   [ Reset ]

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Putnam Green TIC Interest, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE / 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK / 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE / 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of Putnam Green TIC Interest, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT SUBMITTER** (optional)<br>David P. Limekiller | |
| **B. E-MAIL CONTACT AT SUBMITTER** (optional)<br>dlimekiller@gablelaw.com | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>GableGotwals<br>110 N. Elgin Ave., Ste 200<br>Tulsa, OK 74120 | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 01:38 PM 01/29/2026**<br>**U.C.C. Initial Filing No: 2026 0644118**<br>**Amendment No: 2026 0779617**<br>**Service Request No: 20260351917** |
| SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644118

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:

This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record

AND Check <u>one</u> of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c
☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

| 6a. ORGANIZATION'S NAME<br>YSA Holdings 1 LLC | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME<br>YSA Investments 1, LLC | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only <u>one</u> box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME<br>YSA Holdings 1 LLC | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER** (optional)
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER** (optional)
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

Delaware Department of State
U.C.C. Filing Section
Filed: 01:39 PM 01/29/2026
U.C.C. Initial Filing No: 2026 0644712
Amendment No: 2026 0779682
Service Request No:   20260351934

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644712

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

**AND** Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:39 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644738**
**Amendment No: 2026 0779641**
**Service Request No: 20260351927**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644738

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE: Check only one box:
☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:40 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644720**
**Amendment No: 2026 0779708**
**Service Request No: 20260351945**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644720

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:40 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644746**
**Amendment No: 2026 0779724**
**Service Request No: 20260351951**

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644746

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | |
|---|---|
| YSA Investments 1, LLC | |
| 7b. INDIVIDUAL'S SURNAME | |
| INDIVIDUAL'S FIRST PERSONAL NAME | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:40 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0752416**
**Amendment No: 2026 0779732**
**Service Request No:   20260351955**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0752416

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR
6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR
7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE:  Check only one box:
☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR
9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| --- |

| B. E-MAIL CONTACT AT SUBMITTER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, Esq. 7
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 11:50 AM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0751228**

**Service Request No: 20260335784**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| Springdale Village TIC 1 LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1209 Orange St | Wilmington | DE / 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK / 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE / 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of Springdale Village TIC 1 LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) | |
| B. E-MAIL CONTACT AT SUBMITTER (optional) | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)<br><br>David P. Limekiller, Esq. 7<br>GableGotwal<br>110 N. Elgin, Suite 200 Tulsa, OK 74120<br><br>SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | |

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 12:01 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0772968**

**Service Request No: 20260335793**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Springdale Village TIC 2 LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1209 Orange St | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of Springdale Village TIC 2 LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| --- |
| B. E-MAIL CONTACT AT SUBMITTER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

!David P. Limekiller, Esq. 7
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 12:12 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0773487**

**Service Request No: 20260335800**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| Springdale Village TIC 3 LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 1209 Orange St | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| YSA Investments 1, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of Springdale Village TIC 3 LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, Esq. 7
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 12:18 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0773792**

**Service Request No:  20260335821**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Springdale Village's Best Living LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILINGADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1209 Orange St | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Kulick | Marc | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| YSA Investments 1, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of Springdale Village's Best Living LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, Esq.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 06:56 PM 01/23/2026**
**U.C.C. Initial Filing No: 2026 0644878**

**Service Request No:   20260281993**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Summer Oaks Best Living, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1209 Orange St | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of Summer Oaks Best Living, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257738**

**Service Request No: 20260546472**

| Print | Reset |
|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| THRIVE ARGENTA OWNER, LLC | | | | |
| **1b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| **1c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| **2b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Kulick | Marc | | | |
| **2c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| YSA Investments 1, LLC | | | | |
| **3b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| **3c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

100 out of 100 Membership Shares of THRIVE ARGENTA OWNER, LLC, a Delaware Limited Liability Company

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:40 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644951**
**Amendment No: 2026 0779740**
**Service Request No: 20260351961**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0644951

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes: — This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
- ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
- ☐ ADD name: Complete item 7a or 7b, and item 7c
- ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral: *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:41 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0644829**
**Amendment No: 2026 0779807**
**Service Request No:   20260351979**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0644829

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5.   PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND  Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR  7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8.   COLLATERAL CHANGE:   Check only one box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT SUBMITTER** (optional)<br>David P. Limekiller<br>**B. E-MAIL CONTACT AT SUBMITTER** (optional)<br>dlimekiller@gablelaw.com<br>**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>⌐GableGotwals<br> 110 N. Elgin Ave., Ste 200<br> Tulsa, OK 74120 ⌐<br><br>**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION** | **Delaware Department of State**<br>**U.C.C. Filing Section**<br>**Filed: 01:41 PM 01/29/2026**<br>**U.C.C. Initial Filing No: 2026 0645008**<br>**Amendment No: 2026 0779773**<br>**Service Request No: 20260351968** |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0645008

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:
This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record

AND Check <u>one</u> of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c
☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR | **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only <u>one</u> box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR | **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY —— UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)**

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

Delaware Department of State
U.C.C. Filing Section
Filed: 01:41 PM 01/29/2026
U.C.C. Initial Filing No: 2026 0645081
Amendment No: 2026 0779823
Service Request No: 20260351995

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026 0645081

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:

This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record

AND Check <u>one</u> of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c
☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only <u>one</u> box:
☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
|---|
| David P. Limekiller |

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

⌐ GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120 ⌐

**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION**

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:41 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0645032**
**Amendment No: 2026 0779815**
**Service Request No:   20260351985**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0645032

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5.  **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☑ Secured Party of record    ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | |
|---|---|
| YSA Investments 1, LLC | |
| 7b. INDIVIDUAL'S SURNAME | |
| INDIVIDUAL'S FIRST PERSONAL NAME | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8.    COLLATERAL CHANGE:    Check only one box:    ☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN* collateral

Indicate collateral:                      *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
   To be filed in DE

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1257894**

**Service Request No: 20260546487**

**Print**     **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| WOODLAND MANOR TIC 1, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Kulick | Marc | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| YSA Investments 1, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of WOODLAND MANOR TIC 1, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| --- |

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:16 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1258124**

**Service Request No:   20260546497**

Print     Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| WOODLAND MANOR'S BEST LIVING, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| CORPORATION TRUST CENTER 1209 ORANGE ST | Wilmington | DE | 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- |
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8 The Green #23817 | Dover | DE | 19901 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of WOODLAND MANOR'S BEST LIVING, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:41 PM 01/29/2026**
**U.C.C. Initial Filing No: 2026 0645164**
**Amendment No: 2026 0779849**
**Service Request No: 20260352004**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
2026 0645164

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. **COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in DE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) |
| --- |
| B. E-MAIL CONTACT AT SUBMITTER (optional) |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |

David P. Limekiller, ESQ.
GableGotwal
110 N. Elgin, Suite 200 Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 04:17 PM 02/11/2026**
**U.C.C. Initial Filing No: 2026 1154406**

**Service Request No:   20260546501**

| Print | Reset |
| --- | --- |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME WOODLAND OAKS INVESTORS, LLC | | | | | |
| --- | --- | --- | --- | --- | --- |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS CORPORATION TRUST CENTER 1209 ORANGE ST | CITY Wilmington | STATE DE | POSTAL CODE 19801 | | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME Kulick | | FIRST PERSONAL NAME Marc | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 4920 E 113th St. S | CITY Tulsa | STATE OK | POSTAL CODE 74137 | | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b):

| 3a. ORGANIZATION'S NAME YSA Investments 1, LLC | | | | | |
| --- | --- | --- | --- | --- | --- |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 8 The Green #23817 | CITY Dover | STATE DE | POSTAL CODE 19901 | | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Shares of WOODLAND OAKS INVESTORS, LLC, a Delaware Limited Liability Company

5. Check only if applicable and check only one box:  Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

## State of Kansas

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 3:02:48pm
**Filing Type:**        Secured Party Change
**Filing Number:**    122080435
**Payment:**          $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122068018 | 1/26/2026 2:01:28pm | 1/26/2031 | 1 |
| This Amendment Filing #122080435 | 1/29/2026 3:02:48pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| JENKS BEST LIVING, LLC<br>11301 NALL STE. 210<br>LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |
| KULICK, MARC<br>4920 E 113TH ST. S<br>TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Filed Kansas Secretary of State**
**TimeStamp:** 1/29/2026 15:02:48
**Filing #:** 122068018
**Amendment #:** 122080435
**Image #:** 30758479
**Pages:** 1
**Cost:** $20.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
122068018

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE: Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:
*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

**State of Kansas**

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 3:15:45pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080526
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122068026 | 1/26/2026 2:04:35pm | 1/26/2031 | 1 |
| This Amendment Filing #122080526 | 1/29/2026 3:15:45pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| LOUIS INVESTMENTS, LLC<br> 6400 W. 110TH STREET, SUITE 201<br> OVERLAND PARK KS 66211 | YSA HOLDINGS 1 LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |
| KULICK, MARC<br> 4920 E 113TH ST S<br> TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |

---

Business Services: (785) 296-4564
Fax: (785) 296-4570

Web Site: www.sos.ks.gov
E_mail: ksos@sos.ks.gov

Elections: (785) 296-4561
Fax: (785) 291-3051

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

| Filed Kansas Secretary of State | |
|---|---|
| TimeStamp: | 1/29/2026 15:15:45 |
| Filing #: | 122068026 |
| Amendment #: | 122080526 |
| Image #: | 30758488 |
| Pages: | 1 |
| Cost: | $20.00 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
122068026

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.** **COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:   *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

## State of Kansas

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 3:09:30pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080450
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067952 | 1/26/2026 1:49:10pm | 1/26/2031 | 1 |
| This Amendment Filing #122080450 | 1/29/2026 3:09:30pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| LS APARTMENTS SPONSOR, LLC<br> 6400 W 110TH ST., STE. 201<br> LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |
| KULICK, MARC<br> 4920 E 113TH ST. S<br> TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

| Filed Kansas Secretary of State | |
|---|---|
| **TimeStamp:** | 1/29/2026 15:09:30 |
| **Filing #:** | 122067952 |
| **Amendment #:** | 122080450 |
| **Image #:** | 30758481 |
| **Pages:** | 1 |
| **Cost:** | $20.00 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
122067952

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes: ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|
| YSA Investments 1, LLC |

**7b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Holdings 1 LLC | | | |
| **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

## State of Kansas

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 3:06:19pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080443
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067986 | 1/26/2026 1:59:37pm | 1/26/2031 | 1 |
| This Amendment Filing #122080443 | 1/29/2026 3:06:19pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| RIVER WALK SPONSOR, LLC<br> 6400 W 110TH ST., STE. 201<br> LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |
| KULICK, MARC<br> 4920 E 113TH ST. S<br> TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Filed Kansas Secretary of State**
**TimeStamp:** 1/29/2026 15:06:19
**Filing #:** 122067986
**Amendment #:** 122080443
**Image #:** 30758480
**Pages:** 1
**Cost:** $20.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
122067986

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. **COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN* collateral
*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. **OPTIONAL FILER REFERENCE DATA:**
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

# State of Kansas

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 2:59:44pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080385
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067978 | 1/26/2026 1:56:11pm | 1/26/2031 | 1 |
| This Amendment Filing #122080385 | 1/29/2026 2:59:44pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| RIVERPARK BEST LIVING INVESTORS, LLC<br>6911 S. 66TH AVE., SUITE 100<br>TULSA OK 74133 | YSA HOLDINGS 1 LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |
| KULICK, MARC<br>4920 E 113TH ST. S<br>TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Filed Kansas Secretary of State**
**TimeStamp:** 1/29/2026 14:59:44
**Filing #:** 122067978
**Amendment #:** 122080385
**Image #:** 30758474
**Pages:** 1
**Cost:** $20.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
122067978

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

## State of Kansas

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 2:56:24pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080351
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067945 | 1/26/2026 1:45:31pm | 1/26/2031 | 1 |
| This Amendment Filing #122080351 | 1/29/2026 2:56:24pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| SEMINOLE RIDGE APARTMENTS HOLDINGS, LLC<br> 6400 W 110TH STREET SUITE 201<br> LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |
| KULICK, MARC<br> 4921 E 113TH ST. S<br> TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

| Filed Kansas Secretary of State | |
|---|---|
| TimeStamp: | 1/29/2026 14:56:24 |
| Filing #: | 122067945 |
| Amendment #: | 122080351 |
| Image #: | 30758471 |
| Pages: | 1 |
| Cost: | $20.00 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
122067945

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE:  Check only one box:
☐ ADD collateral    ☐ DELETE collateral    ☐ RESTATE covered collateral    ☐ ASSIGN* collateral

Indicate collateral:    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

## State of Kansas

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below. Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 2:51:39pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080336
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067937 | 1/26/2026 1:43:02pm | 1/26/2031 | 1 |
| This Amendment Filing #122080336 | 1/29/2026 2:51:39pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| SEMINOLE RIDGE SPONSOR, LLC<br>6400 W 110TH STREET SUITE 201<br>LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |
| KULICK, MARC<br>4920 E 113TH ST. S<br>TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br>8 THE GREEN #23817<br>DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
David P. Limekiller

B. E-MAIL CONTACT AT SUBMITTER (optional)
dlimekiller@gablelaw.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

| **Filed Kansas Secretary of State** | |
|---|---|
| **TimeStamp:** | 1/29/2026 14:51:39 |
| **Filing #:** | 122067937 |
| **Amendment #:** | 122080336 |
| **Image #:** | 30758469 |
| **Pages:** | 1 |
| **Cost:** | $20.00 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
122067937

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT: Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. PARTY INFORMATION CHANGE:

Check one of these two boxes:                    AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☑ Secured Party of record   ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
YSA Investments 1, LLC

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

8. COLLATERAL CHANGE: Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral:   *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
YSA Holdings 1 LLC

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)



# Scott Schwab
Secretary of State

Docking Building
915 SW Harrison St
Topeka, KS 66612
(785) 296-4564

## State of Kansas

January 29, 2026



The Office of the Kansas Secretary of State has successfully received and filed a UCC-3 financing statement amendment with the information below.  Please find enclosed your stamped request form and any original items submitted as documentation.

**Time of Transaction:** 1/29/2026 3:13:14pm
**Filing Type:** Secured Party Change
**Filing Number:** 122080484
**Payment:** $20.00 PREPAID

| Filing # | File Timestamp | Current Lapse Date | Pages |
|---|---|---|---|
| Original Filing #122067911 | 1/26/2026 1:40:15pm | 1/26/2031 | 1 |
| This Amendment Filing #122080484 | 1/29/2026 3:13:14pm | N/A | 1 |

## Amendment:

| Authorizing Party Information | Filing Action Notes |
|---|---|
| YSA HOLDINGS 1 LLC | This secured party has been removed from this filing: Ysa Holdings 1 LLC and has been replaced by this secured party: Ysa Investments 1, LLC |

| Current Debtor Information | Current Secured Party Information |
|---|---|
| TUSCANY VILLAGE SPONSOR, LLC<br> 6400 W 110TH STREET SUITE 201<br> LEAWOOD KS 66211 | YSA HOLDINGS 1 LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |
| KULICK, MARC<br> 4920 E 113TH ST. S<br> TULSA OK 74137 | YSA INVESTMENTS 1, LLC<br> 8 THE GREEN #23817<br> DOVER DE 19901 |

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Filed Kansas Secretary of State**
**TimeStamp:** 1/29/2026 15:13:14
**Filing #:** 122067911
**Amendment #:** 122080484
**Image #:** 30758484
**Pages:** 1
**Cost:** $20.00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
122067911

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral: *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in KS

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Brian M. Grindall, Esq.   3019615300

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Tenenbaum & Saas, P.C.

4504 Walsh Street
Suite 200
Chevy Chase, MD 20815

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

MD DEPT. OF ASSESSMENTS & TAXATION
NS
260130-1030000
Lapse Date: 01/30/2031
Date: 1/30/2026
Time: 10:30 AM
Page Count: 1 Pg
Debtor Count: 2
Filing Fees: $25.00
Electronic Records Access: $4.50
Total: $29.50
Order ID#: 77273002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 206 Queen Anne Club LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2833 Smith Avenue \| Suite 402 | Baltimore | MD | 21209 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th Street S | Tulsa | OK | 74137 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1 LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | US |

4. COLLATERAL: This financing statement covers the following collateral:

100 out of 100 Membership Interests of 206 Queen Anne Club LLC, a Maryland Limited Liability Company

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

(Rev. 07/01/23)

01/29/2026 02:34:31 PM Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026012702006330

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** PARTY INFORMATION CHANGE:

Check <u>one</u> of these two boxes: | <u>AND</u> Check <u>one</u> of these three boxes to:

This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record | ☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c | ☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Investments 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7c. MAILING ADDRESS**
8 The Green #23817 | CITY Dover | STATE DE | POSTAL CODE 19901 | COUNTRY USA

**8. COLLATERAL CHANGE:** Check only <u>one</u> box: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral: | *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Investments 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in OK

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

2026013002008637
01/30/2026 11:20:06 AM  Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County — State of Oklahoma

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK  74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026012902008058

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.  PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6.  CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7.  CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR **7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.  COLLATERAL CHANGE:**  Check only one box:
☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9.  NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in OK

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

01/29/2026 02:34:31 PM Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County — State of Oklahoma



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2026012702006329

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5. PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8. COLLATERAL CHANGE:** Check only one box:
☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN* collateral

Indicate collateral: *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in OK

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
Loan Star Information Services as agent

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

FILED: Texas Secretary of State
FILING #: 260000854155
FILING DATE: 02/11/2026 04:11 PM
TRACKING #: 15512452160001

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME TRDWIND CAPITOL, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 1422 E 71ST ST | CITY Tulsa | STATE OK   POSTAL CODE 74136 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME Kulick | FIRST PERSONAL NAME Marc | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 4920 E 113th St. S | CITY Tulsa | STATE OK   POSTAL CODE 74137 | COUNTRY USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME YSA Investments 1, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 8 The Green #23817 | CITY Dover | STATE DE   POSTAL CODE 19901 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:

The following files are attached at the end of this document: UCC1 - TRDWIND CAPITOL, LLC.

100 out of 100 Membership Shares of TRDWIND CAPITOL, LLC, a Texas Limited Liability Company

5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

⌐ David P. Limekiller, Esq. ⌐
GableGotwal
⌐ 110 N. Elgin, Suite 200 Tulsa, OK 74120 ⌐

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

| Print | Reset |
|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TRDWIND CAPITOL, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1422 E 71ST ST | Tulsa | OK | 74136 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Kulick | Marc | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4920 E 113th St. S | Tulsa | OK | 74137 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| YSA Investments 1, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

100 out of 100 Membership Shares of TRDWIND CAPITOL, LLC, a Texas Limited Liability Company

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

2026012902008192

01/29/2026 02:34:31 PM  Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County – State of Oklahoma



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
David P. Limekiller

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
dlimekiller@gablelaw.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

⌐GableGotwals
110 N. Elgin Ave., Ste 200
└Tulsa, OK  74120

**SEE BELOW FOR SECURED PARTY CONTACT INFORMATION**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
2025112402120650

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: <u>attach</u> Amendment Addendum (Form UCC3Ad) <u>and</u> provide Debtor's name in item 13.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT:** Provide name of Assignee in item 7a or 7b, <u>and</u> address of Assignee in item 7c <u>and</u> name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** **PARTY INFORMATION CHANGE:**

Check <u>one</u> of these two boxes:

This Change affects ☐ Debtor <u>or</u> ☑ Secured Party of record

<u>AND</u> Check <u>one</u> of these three boxes to:

☑ CHANGE name and/or address: Complete item 6a or 6b; <u>and</u> item 7a or 7b <u>and</u> item 7c  ☐ ADD name: Complete item 7a or 7b, <u>and</u> item 7c  ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only <u>one</u> name (6a or 6b)

**6a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only <u>one</u> name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
YSA Investments 1, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8 The Green #23817 | Dover | DE | 19901 | USA |

**8.** **COLLATERAL CHANGE:**  Check only <u>one</u> box:   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN* collateral

Indicate collateral:

*Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only <u>one</u> name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
YSA Holdings 1 LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
To be filed in OK

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

# EXHIBIT 11

EXHIBIT 11

**EFiled: Nov 13 2025 09:22PM EST**
**Transaction ID 77777095**
**Case No. 2025-1319-**

# IN THE COURT OF CHANCERY OF THE
## STATE OF DELAWARE

MARC KULIC, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC,

C.A. NO.:

Plaintiffs,

vs.

YSA INVESTMENTS 1, LLC,

Defendant.

_____/

## COMPLAINT

1. Plaintiffs Marc Kulick ("Kulick"), Vesta Holdings, LLC ("Vesta Holdings"), and Asset Holder, LLC ("Asset Holder") (collectively, "Plaintiffs") file this Complaint against Defendant YSA Investments 1, LLC ("Defendant") for equitable and declaratory relief.

2. Defendant, a hard money lender led by a notorious felon, has unlawfully recorded over two dozen second mortgages against real property, attached hereto as Exhibit A, as part of an extortive scheme to extract unearned fees and interest from Plaintiffs. Defendant's recording of these second mortgages, including a second mortgage on Kulick's personal residence, is incorrectly premised on "Power of Attorney" clauses in a security agreement and guaranty with Plaintiffs that, as a matter of law and fact, do not provide such rights. Defendant is not in

1

any contractual privity whatsoever with the title owners of these properties and has no right under Delaware law to exercise the Power of Attorney clauses in this outrageous manner. To tighten the noose, Defendant has refused to provide Plaintiffs the amount Defendant contends is outstanding on the debt, thereby preventing a payoff and release of these extortive mortgages.

3. The recording of these unauthorized mortgages—which far exceeds any rights Defendant has under the Power of Attorney clauses or otherwise— constitutes a slander of title, threatens a default under the institutional first mortgages given by the title owners, and exposes Plaintiffs to an enormous and unjustified amount of liability that is causing them ongoing and irreparable injury, justifying expedited action by this Court.

### PARTIES, JURISDICTION, & VENUE

4. Marc Kulick is an individual residing in Oklahoma.

5. Vesta Holdings, LLC is an Oklahoma limited liability company formed and organized under the laws of Oklahoma.

6. Asset Holder, LLC is an Oklahoma limited liability company formed and organized under the laws of Oklahoma.

7. YSA Investments 1, LLC is a Delaware limited liability company formed and organized under the laws of Delaware.

2

8.     This Court has subject matter jurisdiction pursuant to 10 Del. C. § 341 and § 6501, as Plaintiffs seek equitable and declaratory relief including a mandatory injunction to cancel or otherwise rescind the slanderous mortgages.

9.     Further, jurisdiction and venue are proper because the "Power of Attorney" clauses relied upon by Defendant to record the mortgages are contained in a Collateral Pledge and Security Agreement and Guaranty that select the State of Delaware as the governing forum for all disputes arising thereunder.

10.     Defendant agreed in the loan documents that, in the event of its gross negligence or willful misconduct, Plaintiffs would be entitled to issuance of an injunction and their irreparable harm would be presumed.

## GENERAL ALLEGATIONS

11.     Kulick is an individual residing in Oklahoma. Kulick is the founder, Chief Executive Officer, and principal of Vesta Holdings and Asset Holder. Kulick is also the founder and Chief Executive Officer of Vesta Capital, LLC and Vesta Realty, LLC. Vesta Capital, LLC is a fully integrated real estate investment firm specializing in the acquisition and renovation of multifamily communities across Arkansas, Kansas, and Oklahoma. Vesta Realty, LLC is a wholly owned subsidiary of Vesta Capital and is a property management company that ensures operational control and real-time monitoring of Vesta Capital's property.

3

12. Defendant is a hard money lender based out of Miami, Florida, and led by a notorious felon, Efraim Diveroli, who was convicted for conspiring to defraud the United States government out of hundreds of millions of dollars by misrepresenting the source of arms and ammunition.

13. Pursuant to the needs of the Vesta entities, starting in October 2024, Plaintiffs and other entities owned and controlled by Kulick entered several loan transactions with Defendant. The interest rates on these loans started at an extremely high annual rate of 100% and spiraled into ever excessive rates, topping out at an eye-popping and exploitative 7,000% per annum in July 2025.

14. In total, Kulick and his entities borrowed $7,338,166.66 in principal from Defendant. Kulick and his entities have repaid Defendant $8,188,750.00.

15. As part of the loan transactions, Kulick's entities, including Vesta Holdings and Asset Holder, executed Collateral Pledge and Security Agreements in favor of Defendant, all of which are essentially identical. Additionally, Kulick executed a Guaranty and ROFO for each of the transactions, all of which were also essentially identical.

16. The Collateral Pledge and Security Agreements (the "February CPSA," attached hereto as Exhibit B) and Guaranty and ROFO (the "February Guaranty," attached hereto as Exhibit C) upon which Defendant purports to rely on in recording the Second Mortgages are from a loan transaction made as of February 10, 2025. To

4

secure repayment of the loan, the February CPSA collateralized the limited liability company interests held by Asset Holder and Vesta Holdings in seventeen Delaware limited liability companies: Capitol on 28th Investors, LLC; Remington Ranch Investors, LLC; Copperfield Investors, LLC; Putnam Investors, LLC; Woodscape Investors, LLC; Barcelona Best Living, LLC; Riverpark Best Living Investors, LLC; Montgomery Vesta Investors, LLC; Fairfax Holding Company, LLC; OKC3 Investors, LLC; Eton Investor, LLC; Eaton Place Investors, LLC; W.O. Holding Co., LLC; Regency Holdings, LLC; Woodland Manor Holdings, LLC; 727-Classes Best Living Investors, LLC; and Muntage Vesta Investors, LLC (the "Intermediate Holding LLCs").

17.     The Intermediate Holding LLCs have fractional beneficial interests in some but not all the Title Owners, defined below.  All but one of the Intermediate Holding LLCs,  Barcelona Best Living, LLC, hold their beneficial interests in a Title Owner through one or more additional levels of holding companies.

18.     The February CPSA contains a Power of Attorney clause at Section 4.6, which provides as follows:

> [Asset Holder] and [Vesta Holdings] each appoint [Defendant] as its/his/her/their attorney-in-fact with full power in [Asset Holder]'s and [Pledgor]'s name and behalf to do every act that [Asset Holder] and [Vesta Holdings] are obligated to do or may be required to do hereunder or to do all other things which Lender is permitted to do under this Agreement or any other Loan Documents or are necessary to carry out this Agreement or the other Loan Documents; however, nothing in this section shall be construed to obligate [Defendant] to take any action

5

hereunder. Through exercise of this irrevocable power of attorney, [Defendant]may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to [Defendant]. This shall include but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither [Defendant]nor any of its officers, managers, employees or agents of [Defendant] will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, [Defendant] shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

19.     The February Guaranty also contains a Power of Attorney clause at

Section 7.h, which provides as follows:

[Kulick] appoints [Defendant] as its/his/her attorney-in-fact with full power in [Kulick]'s name and behalf to do every act that [Kulick]is obligated to do or may be required to do hereunder; however, nothing in this section shall be construed to obligate [Defendant]to take any action hereunder. The power of attorney hereby created is a power coupled with an interest and shall be irrevocable. Through exercise of this irrevocable power of attorney, [Defendant]may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to [Defendant]. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither [Defendant]nor any of its officers, managers, employees or agents of [Defendant] will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, [Defendant] shall not exercise the foregoing power of attorney unless

6

an Event of Default exists and only as long as an Event of Default exists.

20.    On October 31, 2025, Defendant recorded second mortgages against at least twenty-five properties.  *See* Exhibit A.

21.    The properties (hereafter "Properties") at issue in this case are multifamily apartment complexes located in Oklahoma and Kansas and owned by A-V 23 East Owner, LLC; 727 Lofts Best Living LLC;  Barcelona Best Living LLC; Bryan Hill's Best Living LLC; TRDWind Capitol LLC; A-V Classen Owner LLC; Copperfield Apartments LP; Fairfax Best Living LLC; Lakeside Best Living LLC; Bartlesville Best Living LLC; Lofts at North Penn Best Living LLC; Montgomery Best Living LLC; Muntage Best Living LLC; One Eton Square LLC; Ridge Best Living LLC; Riverpark Best Living LLC; Shoreline's Best Living LLC; Springdale Village's Best Living, LLC; Summer Oaks Best Living, LLC; Ridge Best Living LLC; Jenk's Best Living LLC; A-V Village Creek Owner LLC; Villas at Midtown Best Living LLC; Woodland Manor's Best Living LLC; Woodland Oaks Best Living LLC; B & J Woodscape/Oklahoma City LLC; and Easton Best Living, LLC (together the "Title Owners").

22.    Even though the Title Owners, not Plaintiffs, are their owners, Defendant has purported to record these second mortgages against the Properties under the Power of Attorney clauses that, on their face, do not and cannot confer authority to mortgage the real property discussed herein.

7

23. Defendant also recorded a mortgage against Kulick's personal residence in Oklahoma City, Oklahoma even though the Guaranty he signed provides Defendant no such rights. A copy of the recorded mortgage against Kulick's personal residence is attached hereto as Exhibit D.

24. Following the recording of those second mortgages, on November 5, 2025, Defendant brought a civil action against Kulick and others, alleging breach-of-contract and unjust enrichment with respect to four of the loan transactions referenced herein. The civil action is *YSA Investments 1, LLC v. Marc Kulick, et al.*, Case No. N25C-10-309 KMM (Del. Super. Ct.).

25. Before and since the filing of that suit, Defendant, through Diveroli, has engaged in what can only be described as an extortion scheme. This includes, but is not limited to, threatening to file an Amended Complaint that would allege fraud against Mr. Kulick's wife, business partner, and even his attorneys (for providing advice to their client). Defendant has also threatened to send preservation letters to entities and persons for which it has no reason to believe has relevant information in this suit, including, for example, Mr. Kulick's personal rabbi. Such preservation notices would serve no other purpose than to embarrass and humiliate Mr. Kulick in the communities in which he belongs.

26. The alternative Defendant, through Diveroli, has provided Plaintiffs is perhaps even worse than its threats. Notwithstanding that it has been repaid its

principal in full, Defendant has only offered to dismiss its suit and not proceed with its extortion scheme in exchange for payment of $20 million with the extreme default penalty of deeds-in-lieu of foreclosure for each of the Properties (which Plaintiffs are powerless to provide) and a confession of judgment of $850 million. In the meantime, while waiting to be paid its extortive settlement, Defendant would maintain the unlawful second mortgages on the properties owed by the Title Owner and file additional second mortgages.

27. Defendant's extortion scheme is already causing significant harm. Muntage Best Living LLC is under contract to sell the real property it owns. The title underwriter has indicated that the transaction will not be able to close absent satisfaction of Defendant's unlawful second mortgage.

28. Making this situation further intolerable for Plaintiffs, despite numerous requests from Kulick, Defendant has refused to give them an accounting of what is owed to it, thereby preventing Plaintiffs from paying off the debt.

29. As part of extracting themselves from what can only be characterized as a loan sharking scheme, Plaintiffs have this suit for a declaratory judgment that the second mortgages are unlawful and unauthorized and for a mandatory injunction that they be cancelled or rescinded from the public records.

30. This relief must be granted for several reasons. *First*, Defendant does not have any rights, secured or otherwise, with respect to Title Owners or the

Properties. The Power of Attorney under the February CPSA, which Defendant contends gives it the right to record the second mortgages, appoints Defendant as Plaintiffs' attorney-in-fact with respect to the "Collateral"—i.e., Asset Holder and Vesta Holdings' limited liability company interests in the Intermediate Holding LLCs. As the attorney-in-fact, Defendant is permitted to take "any action against any of the Collateral or any real or personal property owned by the Collateral."

31.     The Collateral—Asset Holder and Vesta Holding's limited liability company interests in the Intermediate Holding LLCs—does not own the Properties. Indeed, the membership interests do not own anything. Some of the Title Owners—A-V 23 East Owner LLC, Lakeside Best Living LLC, Bartlesville Best Living LLC, Lofts at North Penn Best Living LLC, Shoreline's Best Living LLC, Ridge Best Living LLC, THRIVE Argenta Owner LLC, Jenk's Best Living LLC, A-V Village Creek Owner LLC, and Villas at Midtown Best Living, LLC—are not owned by any the Intermediate Holding LLCs and do not otherwise have any connection to them. And even if the collateralized limited liability company interests could be stretched to encompass the entirety of the Intermediate Holding LLCs themselves, these entities own, only indirectly, a fractional interest in some of the Title Owners, which in turn own the Properties. Yet Defendant has recorded the second mortgages against the Properties owned by the Title Owners with which Defendant has no contractual privity and against which Defendant has no rights whatsoever. The Power of

10

Attorney clause in the February Guaranty is narrower than the one contained in the February CPSA and similarly provides no rights to Defendant with respect to Title Owners, the Properties, or to Kulick's personal residence.

32. *Second*, even if the Power of Attorney clauses could be stretched so far as to include rights held by the Title Owners, under 6 Del. Code § 18-702(a), those rights necessarily would not include the control rights necessary to record the Second Mortgages on the Properties. This is because control rights inherent in a limited liability company interest may not be assigned absent a provision in the operating agreement of that limited liability company permitting such an assignment or, alternatively, an affirmative vote or written consent of all members of the LLC permitting such an assignment. None of the operating agreements of the Intermediate Holding LLCs or the Title Owners contain such a right, and Defendant did not receive an affirmative vote or written consent of all members of any of the entities permitting such an assignment. Therefore, the Power of Attorney clause that purports to give Defendant rights to take actions on behalf of the collateralized "membership interests" in the Properties is of no legal effect.

33. *Third*, taking it even further, even if Defendant were to receive such control rights through Kulick, Asset Holder, and/or Vesta Holdings, none of their control rights contain thehave the right to unilaterally mortgage the Properties held

11

by the Title Owners. As attorney-in-fact, Defendant's rights can extend no further than those held by the principal for which it has been appointed an agent.

34. Defendant's recording of these second mortgages was therefore made without any authority, in violation of the loan documents, and plainly unlawful.

35. Defendant's recording of the second mortgages has harmed Plaintiffs' indirect economic interest in the Properties and has exposed them to vast potential liability as manager and/or operator of the Properties.

## COUNT I: DECLATORY JUDGMENT

36. Plaintiffs re-allege and incorporate by reference the allegations preceding the first count of this complaint as if fully set forth herein.

37. An actual controversy exists between Plaintiffs and Defendant regarding the validity of the second mortgages. This controversy is real, adverse and ripe for judicial determination.

38. Defendant contends that it was within its rights to record the second mortgages while Plaintiff contends that this recording was unlawful, a breach of and gross overextension of the Power of Attorney clauses, and part of an extortive scheme and that the second mortgages are invalid and should be cancelled or extinguished.

39. Therefore, Plaintiffs are entitled to a declaration that the second mortgages were recorded without right and in breach and violation of the Power of

Attorney clauses, are void, of no legal effect, and not enforceable against the Properties.

40. Plaintiffs re-allege and incorporate by reference the allegations preceding the first count of this complaint as if fully set forth herein.

41. The second mortgages on the Properties, even though invalid, remain of record and are causing irreparable harm to Plaintiffs.

42. Defendant's recording of the second mortgages was unlawful, a breach of and gross overextension of the Power of Attorney clauses, and part of an extortive scheme.

43. Monetary damages will not cure Plaintiffs' harm because monetary remedies would not remove serve to remove the second mortgages from the public record.

44. Plaintiffs have no adequate remedy at law and are therefore entitled to a preliminary and permanent injunction directing Defendant to immediately execute and record withdrawals, cancellations, or releases of the invalid second mortgage.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that this Court enter judgment against Defendants in Plaintiffs' favor awarding the declaratory and injunctive relief requested herein.

13

Dated: November 14, 2025

Respectfully submitted,

/s/ Sean J. Bellew
Sean J. Bellew (#4072)
BELLEW LLC
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Telephone: (610) 585-5900

*Counsel for Plaintiffs*

Of Counsel
Benjamin H. Brodsky, Esq.,
(*pro hac vice* application forthcoming)
Michael Fisher, Esq.,
BRODSKY FOTIU-WOJTOWICZ, PLLC
(*pro hac vice* application forthcoming)
*Counsel for Plaintiffs*
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054

14

15

# COMPOSITE

# EXHIBIT 12

COMPOSITE EXHIBIT 12

EFiled: Dec 05 2025 04:30PM EST
Transaction ID 77936083
Case No. 2025-1319-MTZ

## IN THE COURT OF CHANCERY OF THE
## STATE OF DELAWARE

MARC KULICK, VESTA
HOLDINGS, LLC, and ASSET
HOLDER, LLC,

        C.A. No.: 2025-1319-MTZ

      Plaintiffs,

vs.

YSA INVESTMENTS 1, LLC,

      Defendant.

_____/

### SECOND VERIFIED MOTION FOR
### <u>EXPEDITED PRELIMINARY AND PERMANENT INJUNCTION</u>

Plaintiffs Marc Kulick, Vesta Holdings, LLC, and Asset Holder, LLC, by and through undersigned counsel, move a second time for expedited preliminary and permanent injunctions.

In its overreaching haste to squeeze Plaintiffs into submission, Defendant YSA Investments 1, LLC has inadvertently satisfied its own debt, mooting this matter and requiring the immediate satisfaction of the unlawful second mortgages at issue. Purporting to act pursuant to Articles 8 and 9 of the Uniform Commercial Code ("UCC"), Defendant has strictly foreclosed on one of the assets it claims as security, *viz.*, the limited liability company interests in Plaintiff Vesta Holdings, LLC ("Vesta Holdings"), an Oklahoma limited liability company and one of the Pledgors

1

under the loan documents.  Under the operative provision of the UCC, 6 Del. C. §

9-620, the only way Defendant could lawfully take this collateral is through full

satisfaction of its debt. Accordingly, the Court should enter an order declaring

Plaintiffs' obligations satisfied and release the second mortgages that are the subject

of this suit.

To briefly recap the background of this matter, over the course of a year,

beginning in September 2024, Plaintiffs borrowed **$7,338,166.66** from Defendant

and has repaid Defendant **$8,188,750.00**.  Although Defendant has repeatedly

refused to give Plaintiff a payoff amount, on December 2, 2025, through counsel, it

offered to settle the remaining debt for **$897,744,576.00** plus loan enforcement costs.

A copy of this proposal from J. Tasca, Esq., dated Dec. 2, 2025, is attached hereto

as Exhibit 1.

In addition to its outrageous and extortionate monetary demands, Defendant

has undertaken unlawful collection efforts, including the recording of the second

mortgages.  Plaintiffs seek a mandatory injunction to remove or cancel those second

mortgages through this action. Notwithstanding the Court's clear admonition, made

at the conclusion of the preliminary hearing on Plaintiffs' first injunction motion

when the Court issued a temporary restraining order, to maintain the status quo and

refrain from recording further mortgages pending final resolution of this dispute,

2

Defendant has taken a slightly different although no less contumacious approach to exert pressure on Plaintiffs.

By letter dated November 30, 2025, sent to Vesta Holdings's commercial bank, First United Bank, Defendant has taken the position that "in accordance with Articles 8 and 9 of the Uniform Commercial Code, 100% of the certificated and issued membership interests in [Vesta Holdings], [sic] have been transferred to [Defendant] effective November 28, 2025. [Defendant] is now the sole member of [Vesta Holdings]." A copy of the letter is attached hereto as Exhibit 2. Through the letter, Defendant is attempting to gain control of Vesta Holdings's bank account. *Id.* Attached to the letter is an Amended and Restated Operating Agreement of Vesta Holdings, LLC that names Defendant as the manager and sole member of the company.

Necessarily, the only way in which Defendant obtained the limited liability company interests in Vesta Holdings is through a process known at common law as "strict foreclosure" and under the modern UCC, 6 Del. C. § 9-620, as "acceptance of collateral in satisfaction of obligation." This is because the UCC provisions governing the levy on collateral by a secured creditor, including through acceptance of collateral in satisfaction of an obligation, may not be waived. *See* 6 Del. C. § 9-602; *see also In re Schwalb,* 347 B.R. 726, 748 (Bankr. D. Nev. 2006) (collecting cases and stating "[c]ourts uniformly agree that section 9-620 may not be waived").

3

Thus, Defendant cannot now try to backtrack out of its conduct by arguing that it acquired the collateral through the Power of Attorney clauses or some other provision of the loan documents. Indeed, Defendant expressly contends in its letter that it did so under the UCC. *See* Ex. 2.

Strict foreclosure under § 9-620 is "a procedure by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition under Section 9-610." U.C.C. § 9-620 cmt. 2 (Am. L. Inst. & Unif. L. Comm'n 2024). Under § 9-620, an acquisition of collateral by a secured creditor results in either a partial or full satisfaction of the obligation the collateral secures.

In order for there to be a partial satisfaction, the debtor must affirmatively agree to the terms of the acceptance in a record signed after default. 6 Del. C. § 9-620(c)(1). **None of the debtors have affirmatively agreed, in a signed writing or otherwise, to a partial satisfaction of the claimed debt in exchange for Defendant's acquisition of the collateral.** Thus, Defendant's acquisition of the Vesta Holdings limited liability company interests cannot, as a matter of law, be deemed a partial satisfaction of Defendant's claimed debt.

Unless Defendant admits to further unlawful conduct, that leaves a full satisfaction of the debt through Defendant's acquisition of the collateral as the only other possible legal alternative it could have taken here. Unlike a partial satisfaction, a full satisfaction of a debt through acceptance of collateral does not require the

4

debtor's affirmative consent. 6 Del. C. § 9-620(c)(2). In order for its conduct to be lawful, Defendant must take the position that it made an offer to Vesta Holdings to acquire its membership units in full satisfaction of the debt to which Vesta Holdings never responded. *Id.* And, having its debt satisfied, Defendant must record satisfactions or releases of the unlawful second mortgages. 25 Del. C. § 2111.

In short, Defendant has been hoisted by its own petard. Once it realizes what it has done, Defendant will likely argue that it simply acted as a pirate and unlawfully commandeered Vesta Holdings—surely, nothing that cannot be undone—and that the appropriate remedy would be for the Court to determine that it has no rights to membership interests of the company and put the parties in the status quo ex ante. The Court should reject that argument. Defendant has repeatedly acted unconscionably here, claiming that it is entitled to approximately $1 billion of interest on $7 million worth of loans made over the past year for which it has already been repaid $8 million. It has unlawfully mortgaged properties, something this Court has already acknowledged is causing great harm and distress to Plaintiffs. It has made extortionate and outrageous threats to sue Marc Kulick's wife and humiliate him in front of his rabbi. And now it has undertaken actions that, construed in the only lawful way possible, have resulted in a satisfaction of its debt. Defendant should be forced to live with the consequences of its conduct.

5

In the alternative, Plaintiff requests that the Court enjoin Defendant from exercising any further purported rights as a secured party under the loan documents, including through its hijacking of Vesta Holdings, pending final resolution of this matter and the companion matter brought by Defendant to be consolidated here.

Dated: December 5, 2025

Respectfully submitted,

*/s/ Sean J. Bellew*
Sean J. Bellew (#4072)
BELLEW LLC
2961 Centerville Road, Suite 302
Wilmington, DE 19808
Telephone: (610) 585-5900

*Attorney for Plaintiffs*

Of Counsel
Benjamin H. Brodsky, Esq.,
(admitted *pro hac vice* application)
Michael Fisher, Esq.,
BRODSKY FOTIU-WOJTOWICZ, PLLC
(admitted *pro hac vice* application)
*Counsel for Plaintiffs*
44 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 503-5054

Words: 1,123
Word Limit: 14,000

6

**EFiled:  Dec 05 2025 04:30PM EST**
**Transaction ID 77936083**
**Case No. 2025-1319-MTZ**

**EXHIBIT 1**

| | |
|---|---|
| **From:** | Joel.Tasca@gtlaw.com |
| **To:** | sjbellew@bellewllc.com |
| **Cc:** | Benjamin Brodsky; Sarah.Martin@gtlaw.com |
| **Subject:** | Vesta -- indebtedness |
| **Date:** | Tuesday, December 2, 2025 8:33:57 PM |

Sean:

We are aware that you previously requested a payoff amount from YSA Investments 1, LLC ("YSA") on behalf of your clients, Marc Kulick and his related entities (the "Vesta Parties"). We note for the record that your request is not compliant with the requirements of 6 Del. C. § 9-210 as it was not signed by the debtor nor did it reasonably identify the specific transaction for which an accounting was requested. Therefore, no response is required under the statute. However, in the spirit of cooperation and as a show of good faith, YSA has authorized me to provide this information in response to your request.

Per YSA's accounting, loans issued by YSA on 2/18/25, 3/29/25, 4/10/25, 7/16/25, and 7/31/25 are in default and continue to accrue and compound interest pursuant to the loans' terms. As previously offered to Mr. Kulick in person, YSA has previously offered to limit the aggregate amount jointly and severally owed by the borrowers, pledgors, and guarantor under the loan agreements to $897,744,576—the estimated value of part of YSA's security interest vis-a-vis the Vesta portfolio as provided by Mr. Kulick's May 9, 2025 Schedule of Real Estate Owned—in addition to its loan enforcement costs, including its attorney's fees and costs, provided that full payment is made by 12:00pm EST on March 31, 2026.

Respectfully,

 Joel

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

EFiled: Dec 05 2025 04:30PM EST
Transaction ID 77936083
Case No. 2025-1319-MTZ

**EXHIBIT 2**

November 30th, 2025

First United Bank

Attn: Commercial Banking Department / David Keese

1400 West Main St.

Durant, OK 74701

Dear Commercial Banking Department,

Please be advised that YSA Investments 1 LLC ("YSA"), a Delaware limited liability company, as lender, made a series of loans to Vesta Holdings LLC, an Oklahoma limited liability company (the "Company") which are in default. Marc Kulick guaranteed the repayment of the Company's indebtedness to YSA.

You are further advised that, pursuant to the terms of the loan documents and the Guaranty, and in accordance with Articles 8 and 9 of the Uniform Commercial Code, 100% of the certificated and issued membership interests in the Company, have been transferred to YSA effective November 28, 2025. YSA is now the sole member of the Company.

As a direct result:

- Mr. Kulick, the prior member, no longer holds any ownership, economic, or governance rights in the Company.

- YSA is the sole member of Vesta Holdings LLC.

- Aharon Diveroli is the authorized manager of both YSA and the Company and Mr. Diveroli, and not Mr. Kulick, is the only individual currently authorized to act on behalf of the Company with respect to all banking matters, including but not limited to signing checks, withdrawing funds, initiating wires, borrowing, and executing any bank documents.

- A stop payment on all existing payments should be immediately instituted.

Please immediately update your records to reflect the following:

- Sole Member: YSA Investments 1 LLC, a Delaware limited liability company.
- Authorized Manager and Sole Signatory: Aharon Diveroli

— All prior signing authorities are hereby revoked.

Attached for your reference:

1. Copy of the membership interest certificate issued by the Company that was secured via certain collateral pledge and security agreements in favor of YSA Investments 1, LLC.

2. Amended and Restated Limited Liability Company Agreement of Vesta Holdings LLC (executed copy available upon request)

We will promptly complete and return any new signature cards, banking resolutions, or other forms your institution requires.

Please direct all future correspondence and account-related communications to:

Aharon Diveroli

YSA Investments 1 LLC

8 The Green #23817

Dover, DE 19901

AD@YSAInvestments.com

Thank you for your immediate attention and cooperation.

Sincerely,

Aharon Diveroli

Manager

YSA Investments 1 LLC, Sole Member of Vesta Holdings LLC

-and-

Manager of Vesta Holdings LLC

Enclosures: As listed above

# AMENDED AND RESTATED OPERATING AGREEMENT
## OF VESTA HOLDINGS LLC

This Amended and Restated Operating Agreement (as amended, modified or restated from time to time, this "Agreement") of Vesta Holdings LLC, an Oklahoma limited liability company (the "Company"), is entered into effective as of November 30th, 2025 (the "Effective Date"), by YSA Investments 1, LLC, a Delaware limited liability company, as the Company's sole member (the "Member"). This Agreement replaces the existing operating agreement of the Company together with any and all amendments, restatements, and modifications thereto.

The Member agrees as follows:

1. **Formation.** The Company is a limited liability company organized under the Oklahoma Limited Liability Company Act (Oklahoma Statutes, title 18, chapter 32), as amended from time to time (the "Act"). The Company's Articles of Organization (the "Articles") were filed November 1st 2022 with the Secretary of State of the State of Oklahoma.

2. **Name.** The Company's name is Vesta Holdings LLC.

3. **Purpose.** The Company's purpose is to engage in any lawful act or activity for which limited liability companies may be formed under the Act and to engage in any and all activities that are necessary or incidental to this purpose.

4. **Office.** The Company's registered office in the State of Oklahoma is the registered office named in the Articles or another place designated by the Manager from time to time in the manner provided by law. The registered agent for service of process is the registered agent named in the Articles or another person designated by the Manager from time to time in the manner provided by law. As of the Effective Date, the Company's registered office is:

> GableGotwals
> c/o Jake Krattiger
> BOK Park Plaza
> 499 W. Sheridan Ave., Ste. 2200
> Oklahoma City, OK 73102

5. **Members.**

    (a) **Existing Member.** The Member owns 100% of the membership interests in the Company.

    (b) **Additional Members.** The Company may admit one or more additional members with the Member's consent. Before admission of any additional members to the Company, the Member shall amend this Agreement to make changes as the Member determines necessary to reflect the Company's additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary.

6. **Management.**

1

(a) **Authority; Powers and Duties of Manager.** The business, property and affairs of the Company are managed by one manager ("Manager") appointed by the Member. The Manager possesses all rights and powers possessed by manager under the Act and otherwise by law, subject to the provisions of the Act and this Agreement. Except for situations in which the approval of the Members is expressly required by nonwaivable provisions of the Act, the Manager has full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform all other acts or activities customary or incident to the management of the Company's business. Persons dealing with the Company are entitled to rely exclusively upon the power and authority of the Manager as set forth in this Agreement. No Member other than a Member who is the Manager has any authority to act for or on behalf of the Company. Without otherwise limiting this Section, the Manager is authorized, on the Company's behalf, to approve the Company's merger, consolidation or conversion or the sale of all or substantially all the Company's assets. The Manager may resign at any time in its sole discretion. Manager need not be a resident of the State of Oklahoma or Member of the Company. Any action taken by the Manager(s), in their capacity as such, is the Company's act and will bind the Company. If at any time the Company has no Manager appointed by the Member, the Member will be deemed to be the Manager.

(b) **Action by Manager.** Except for situations in which the approval of the Members is expressly required by nonwaivable provisions of the Act, (i) no decision or action of the Manager shall require Member approval, and (ii) Manager shall have the unilateral right and authority to take any action on behalf of the Company to bind or commit the Company without requiring any additional authorization or written notice.

(c) **Appointment of Officers; Delegation of Authority.** The Manager may, from time to time, designate one or more officers with titles designated by the Manager to act in the Company's name with authority delegated by the Manager (each such designated person, an "<u>Officer</u>"). Any Officer will act under the Officer's delegated authority until the Officer is removed by the Manager. Any action taken by an Officer designated by the Manager under properly delegated authority will constitute the Company's act and will bind the Company. Persons dealing with the Company are entitled to rely conclusively on an Officer's delegated power and authority and any instrument designating the Officer and the authority delegated to him or her.

(d) **Duties.** Whenever in this Agreement the Manager is permitted or required to make a decision (including a decision that is in such Manager's "discretion" or under a grant of similar authority or latitude), the Manager shall be entitled to consider only such interests and factors as the Manager desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person. If the Manager is permitted or required to make a decision in that Manager's "good faith," the Manager shall act under that express standard and is not subject to any other or different standard imposed by this Agreement or any other applicable law.

2

(e)     **Appointment and Term; Successor Manager.** YSA Investments 1 LLC is hereby appointed as the Company's sole Manager as of the Effective Date, and any Manager prior to the Effective Date is hereby removed. A Manager will hold office until such Manager resigns, dies, becomes incompetent or otherwise vacates his or her position. If at any time the Company does not have a Manager, the holders of a majority of Units will appoint a successive Manager; provided, however, that so long as YSA Investments 1 LLC or any entity directly or indirectly controlling, controlled by, or under common control with YSA Investments 1 LLC (any of which, "Affiliate") is a Member, such entity must approve the appointment or removal of a Manager.

(f)     **Resignation.** A Manager may resign at any time by giving written notice to the Members. Unless otherwise specified in the notice, the resignation takes effect upon receipt, and the acceptance of the resignation is not necessary to make it effective.

(g)     **Removal of Manager.** A Manager may be removed only upon good cause and upon ninety (90) days written notice. Good cause is defined as the criminal conviction of the Manager for any felony or other criminal offense, not including the violation of any traffic law, municipal ordinance, or other non-violent misdemeanors. Upon notice of removal, a Manager shall pay or cause to be repaid, any and all loans or other obligations any entity directly or indirectly owned, controlled or affiliated with the Manager owes to the Company.

(h)     **Time Devoted to Business.** A Manager will devote an amount of time to the Company's business as such Manager determines necessary for the efficient carrying on of the Company's business.

(i)     **Compensation and Reimbursement.** The Company has or will enter into the Services Agreement with the Manager, providing for, among other things, the payment of an annual fee by the Company to the Manager of Fifty-Thousand Dollars. In addition to any fees payable under this Section or otherwise under this Agreement, each Manager is entitled to reimbursement of ordinary and necessary business expenses incurred by such Manager in connection with such Manager's duties to the Company.

(j)     **Competing Interests; Related Transactions.** The Manager, Members and their respective Affiliates may have business interests and engage in business activities for his or her own account or for the account of others in addition to those relating to the Company, including business interests and activities in direct competition with the Company. No provision of this Agreement prohibits the Manager or Members from conducting competitive businesses and activities. Neither the Company nor the Members have any rights by this Agreement in any business ventures of a Manager or other Member. The Company may enter into any agreement, arrangement or understanding between the Company and any Member or Manager or any Affiliate of a Member or Manager, or employee or agent of the Company, and no such agreement, arrangement or understanding will be void or unenforceable solely due to it being with such Member, Manager, Affiliate, employee, or agent. Notwithstanding anything to the contrary in this Agreement, any fees or compensation expressly provided for the Manager or any of its Affiliates under the Services Agreement are expressly approved and ratified by the Members.

3

## 7. Limitation of Liability; Indemnification.

(a) **Limitation of Liability.** This Agreement does not create or impose any fiduciary duty on any Manager. Furthermore, each of the Members waives all fiduciary duties that, absent waiver, are implied by the applicable law (including the Act), and in doing so, acknowledges and agrees that the Manager's duties and obligations to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of the Manager otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Manager. Except as otherwise required in the Act, the Company's debts, obligations, and liabilities are solely its debts, obligations and liabilities, and the Manager and Member are not and will not be obligated personally for any of the Company's debts, obligations, and liabilities solely by reason of being a Manager, Member, or participating in the Company's management, as applicable. No Manager, by reason of his or her acting as such, shall be obligated personally for any debts, obligations or liabilities of the Company.

(b) **Indemnification.** To the fullest extent permitted by the Act, as currently in effect or as amended, substituted or replaced in the future (but, in the case of any amendment, substitution or replacement, only to the extent that the amendment, substitution or replacement permits the Company to provide broader indemnification rights than the Act permitted the Company to provide before the amendment, substitution or replacement), the Company shall indemnify, hold harmless, defend, pay and reimburse any Manager or Officer ("Covered Person") against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines or liabilities, and any amounts expended in settlement of any claims (collectively, "Losses") to which the Covered Person is subject by reason of:

(i) any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member or any Affiliate of the foregoing in connection with the Company or the Company's activities; or

(ii) the Covered Person being or acting in connection with the business of the Company as a member, stockholder, Affiliate, manager, director, officer, employee or agent of the Company, any Member, or any of their respective Affiliates, or that the Covered Person is or was serving at the Company's request as a member, manager, director, officer, employee or agent of any Person including the Company;

*if* (x) the Covered Person in a manner the Covered Person believed to be in, or not opposed to, the Company's best interests and, with respect to any criminal proceeding, had no reasonable cause to believe his, her or its conduct was unlawful, and (y) the Covered Person's conduct did not constitute fraud or willful misconduct. In connection with the foregoing, the termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, will not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any

4

criminal proceeding, had reasonable cause to believe that the Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(c) **Reimbursement**. The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for the Covered Person's reasonable legal or other expenses (as incurred) in connection with investigating, preparing to defend or defending any claim, lawsuit or other proceeding relating to any Losses for which such Covered Person may be indemnified under this Section 7, but if it is finally judicially determined that the Covered Person is not entitled to the indemnification under this Section 7, the Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d) **Entitlement to Indemnity**. Indemnification under this Section **Error! Reference source not found.** is not exclusive of any other rights to indemnification to which those seeking indemnification are entitled under any agreement or otherwise. This Section 7 will continue to afford protection to each Covered Person regardless of whether the applicable Covered Person remains in the position or capacity by which such Covered Person became entitled to indemnification under this Section 7 and will inure to the benefit of the executors, administrators, legatees and distributees of each Covered Person.

(e) **Insurance**. To the extent available on commercially reasonable terms and subject to Manager's sole discretion, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Manager(s) determine, but the Company's failure to obtain insurance will not affect the right to indemnification of any Covered Person under this Agreement's indemnification provisions, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses. If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then the Covered Person shall, to the extent the recovery is duplicative, reimburse the Company for any amounts previously paid to the Covered Person by the Company in respect of the applicable Losses.

(f) **Funding of Indemnification Obligation**. Notwithstanding anything in this Agreement to the contrary, any indemnity by the Company relating to the matters covered in this Section 7 shall be provided out of and to the extent of Company assets only, and no Member (unless a Member otherwise agrees in writing) is personally liable on account of the Company's indemnification obligations or is required to make additional Capital Contributions to help satisfy the Company's indemnification obligations.

(g) **Savings Clause**. If all or any part of this Section 7 is invalidated by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person under this Section 7 to the fullest extent permitted by any applicable portion of this Section 7 that is not invalidated and to the fullest extent permitted by applicable law.

5

(h)     **Amendment.** This Section 7 is a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 7 is in effect, on the other hand, by which the Company and each Covered Person intend to be legally bound. No amendment, modification or repeal of this Section 7 that adversely affects a Covered Person's rights to indemnification for Losses incurred or relating to a state of facts existing before the applicable amendment, modification or repeal will apply in a way that eliminates or reduces the Covered Person's entitlement to indemnification for Losses without the Covered Person's prior written consent.

(i)     **Survival.** This Section 7 will survive the Company's dissolution, liquidation, winding up and termination.

8.     **Exculpation**

(a)     **Standard of Care.** No Manager is or will be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any action taken or omitted to be taken by the Covered Person in good faith reliance on the provisions of this Agreement, so long as the action or omission does not constitute fraud or willful misconduct by the Covered Person.

(b)     **Good Faith Reliance.** A Manager is and will be fully protected in relying in good faith upon the Company's records and upon information, opinions, reports or statements (including financial statements and information, opinions, reports or statements as to the value or amount of the assets, liabilities, distributions or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) Manager; (ii) one or more of the Company's employees; (iii) any attorney, independent accountant, appraiser or other expert or professional employed or engaged by the Company or on its behalf; or (iv) any other Person selected in good faith by the Company or on its behalf, in each case as to matters that the relying Person reasonably believes to be within the other Person's professional or expert competence.

9.     **Term.** The Company's term is perpetual unless the Company is dissolved and terminated in accordance with Section 13.

10.     **Capital Contributions.** The Member agrees to contribute to the Company cash, property or services as determined by the Member.

11.     **Tax Status; Income and Deductions.**

(a)     **Tax Status.** As long as the Company has only one member, the Company and the Member intend that the Company be treated as a disregarded entity for federal and all state tax purposes and neither the Company nor the Member will take any action or make any election which is inconsistent with such tax treatment. All provisions of this Agreement are to be construed so as to preserve the Company's tax status as a disregarded entity.

6

(b)    **Income and Deductions.** All items of income, gain, loss, deduction and credit of the Company (including, without limitation, items not subject to federal or state income tax) will be treated for federal and all relevant state income tax purposes as items of income, gain, loss, deduction and credit of the Member.

**12.**    **Distributions.** The Company shall make distributions, if any, to the Member at the times and in the amounts determined by the Manager in its sole discretion.

**13.**    **Dissolution; Liquidation.**

(a)    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member or (ii) any other event or circumstance giving rise to the dissolution of the Company under the Act, unless the Company's existence is continued pursuant to the Act.

(b)    Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Manager shall promptly liquidate the business of the Company. During the period of the winding up of the affairs of the Company, the rights and obligations of the Member under this Agreement shall continue.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (ii) thereafter, to the Member.

(d)    Upon the completion of the winding up of the Company, the Manager shall file Articles of Dissolution in accordance with the Act.

**14.**    **Miscellaneous.**

(a)    **Assignment.** Member shall not sell, assign, pledge, or transfer any portion of its membership interest without the Manager's prior written consent, which may be withheld in Manager's sole discretion.

(b)    **Amendments.** Amendments to this Agreement may be made only with the consent of the Member.

(c)    **Governing Law.** This Agreement shall be governed by the laws of the State of Oklahoma (excluding its conflict of laws rules).

(d)    **Venue.** The Member and Manager irrevocably and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Agreement or any other agreement, document, or instrument delivered pursuant to, or in connection with, this Agreement shall be brought and maintained exclusively in a court of competent jurisdiction in the State of Delaware; (b) consent to the jurisdiction of such courts in any such suit, action, or proceeding as applicable; and (c) waive any objection

7

which it or they may have to the laying of venue or jurisdiction of any such suit, action, or proceeding in such courts. With respect to any claim hereunder, whether legal or equitable in nature, no bond or other security of any kind shall be due by either Party if such claim arises.

(e) **Attorney's Fees.** Should any action or proceeding be commenced between the parties hereto or their respective representatives concerning the enforcement or interpretation of any of the provisions of this Agreement or the rights and duties of any person or entity hereunder, solely as between the parties hereto or their successors, the party prevailing in such proceedings shall be entitled to the reasonable attorney's fees and expenses of counsel and court costs incurred by reason of such action.

(f) **Severability.** If any provision of this Agreement is declared to be invalid, illegal or unenforceable, such provision shall survive to the extent it is not so declared, and the validity, legality and enforceability of the other provisions hereof shall not in any way be affected or impaired thereby, unless such action would substantially impair the benefits to any party of the remaining provisions of this Agreement.

(g) **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[SIGNATURE PAGE ATTACHED]*

THIS OPERATING AGREEMENT is executed and delivered by the undersigned sole Member and sole Manager as of the Effective Date.

SOLE MEMBER:

_____

YSA Investments 1 LLC a Delaware Limited Liability Company

SOLE MANAGER:

_____

Aharon Diveroli

---

## MEMBERSHIP INTEREST CERTIFICATE

---

Certificate Number: 1     Number of Membership Units: 100

### VESTA HOLDINGS LLC

an Oklahoma Limited Liability Company

This Certifies that YSA Investments 1, LLC

(Name of Member)

is the owner of one hundred shares out of one hundred total existing shares

Membership Units of Vesta Holdings LLC, an Oklahoma limited liability company, transferable only on the books of the Company by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed.

The membership interests represented by this Certificate are subject to all of the terms, conditions, and restrictions set forth in the Operating Agreement of Vesta Holdings LLC dated November 30, 2025, as may be amended from time to time, which Operating Agreement is on file at the principal office of the Company and incorporated herein by reference.

IN WITNESS WHEREOF, Vesta Holdings LLC has caused this Certificate to

**EFiled: Dec 05 2025 04:30PM EST**
**Transaction ID 77936083**
**Case No. 2025-1319-MTZ**

# IN THE COURT OF CHANCERY OF THE
# STATE OF DELAWARE

MARC KULICK, VESTA
HOLDINGS, LLC, and
ASSET HOLDER, LLC,

CASE NO.: 2025-1319-MTZ

Plaintiffs,

vs.

YSA INVESTMENTS 1, LLC,

Defendant.

/

## VERIFICATION TO SECOND VERIFIED MOTION
## FOR EXPEDITED PRELIMINARY AND PERMANENT INJUNCTION

I , Marc Kulick, being duly sworn, say that I am a named Plaintiff and principal of Plaintiffs Vesta Holdings and Asset Holder, that I have read the foregoing Second Verified Motion for Expedited Preliminary and Permanent Injunction and know the contents thereof, that the same is true and correct to the best of my knowledge, information and belief under penalty of perjury.

Marc Kulick

SWORN TO AND SUBSCRIBED before me

CHANDLER RAE PHILLIPS
Notary Public, State of Oklahoma
Commission # 21013210
My Commission Expires 10-07-2029

this _____5th_____ day of _December_, 2025

Notary Public

# IN THE COURT OF CHANCERY OF THE
## STATE OF DELAWARE

MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC,

        Plaintiffs,

v.

YSA INVESTMENTS 1, LLC,

        Defendant.

_____/

C.A. No.: 2025-1319-MTZ

## [PROPOSED] PRELIMINARY AND PERMANTENT INJUNCTION

WHEREAS, on December 5, 2025, Mark Kulick ("Kulick"), Vesta Holdings, LLC ("Vesta Holdings") and Asset Holder LLC ("Asset Holder"), filed a Second Verified Motion for Expedited Preliminary and Permanent Injunction in the above-captioned action (the "Action"), with a combined brief in support thereof;

IT IS HEREBY ORDERED as follows:

1.    Plaintiffs' Motion is GRANTED;

2.    Defendant has satisfied its debt; AND

3.    Defendant is permanently enjoined from exercising any further purported rights as a secured party under the Loan Documents.

IT IS SO ORDERED this _____ day of _____, 2025.

1

_____

[Vice] Chancellor

**EFiled:  Dec 12 2025 03:29PM EST**
**Transaction ID 77987299**
**Case No. 2025-1319-MTZ**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> YSA INVESTMENTS 1, LLC, <br><br> Defendant. | C.A. No. 2025-1319-MTZ |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' SECOND VERIFIED MOTION FOR EXPEDITED PRELIMINARY AND <u>PERMANENT INJUNCTION</u>

Of Counsel:

**GREENBERG TRAURIG, LLP**
Joel E. Tasca
10845 Griffith Peak Drive
Suite 600
Las Vegas, Nevada 89135
(702) 792-3773

**GREENBERG TRAURIG, LLP**
Sarah R. Martin (#5230)
Samuel L. Moultrie (#5979)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
(302) 661-7000
Sarah.Martin@gtlaw.com
Moultries@gtlaw.com

*Attorneys for Defendant YSA Investments 1, LLC*

DATED:  December 12, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF CASES AND AUTHORITIES ..............................................................ii

INTRODUCTION ....................................................................................................1

ARGUMENT............................................................................................................2

    I.      PLAINTIFFS ARE NOT ENTITLED TO THE RELIEF
           SOUGHT .....................................................................................2

    II.     PLAINTIFFS' OBLIGATIONS HAVE NOT BEEN
           SATISFIED...................................................................................4

          A.     YSA Acted to Preserve the Value of Its Collateral ....................4

          B.     YSA Did Not Accept the Collateral in Satisfaction of
              Plaintiffs' Obligations................................................................8

          C.     Even if YSA Had Not Complied with the UCC,
              Plaintiffs' Obligations Would Not Be Deemed Fully
              Satisfied ...................................................................................10

CONCLUSION ......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cannon v. Romeo Sys.*,
2025 Del. Ch. LEXIS 251 (Ch. Oct. 7, 2025) ......................................................8

*CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*,
Case No. 123585 ...................................................................................................7

*CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*,
Case No. CJ-2025-7426, Order Appointing Receiver (Nov. 25,
2025).....................................................................................................................6

*First Am. Bank v. Poplar Creek, LLC*,
482 Ill. Dec. 848, 258 N.E.3d 857 (2024) .........................................................10

*Joyland Daycare Center v. Director of Dept' of Services for Children,
Youth & Their Families*,
1996 WL 74713 (Del. Ch. Jan 22, 1996) ............................................................3

*Kapor v. RJC Inv., Inc.*,
394 Mont. 311, 434 P.3d 869 (2019).................................................................10

*MyCarrier, LLC v. Project44, LLC*,
2025 Del. Ch. LEXIS 57 (Del. Ch. March 3, 2025)............................................3

*Nicotra v. Rowe*,
2000 Del. Ch. LEXIS 53 (Ch. Mar. 21, 2000) ....................................................3

*Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.*,
2009 U.S. Dist. LEXIS 57452 (S.D.N.Y. July 7, 2009)..................................8, 9

*Shultz v. Del. Tr. Co.*,
360 A.2d 576 (Del. Super. Ct. 1976)...................................................................4

*Smith v. Cmty. Nat'l Bank*,
344 S.W.3d 561 (Tex. App. 2011) .......................................................................9

**Statutes**

6 Del. C.............................................................................................................................4

6 Del. C. § 9-207(b)(4)(A)...............................................................................................4, 5

6 Del. C. § 9-609(a)(1) ....................................................................................................4, 5

6 Del. C. § 9-625(b).........................................................................................................11

U.C.C. § 9-620.......................................................................................8, 10

U.C.C. § 9-620 cmt. 5..............................................................................8

Case 26-11758-LSD Doc 775-4 Filed 08/13/26 Page 92 of 240

iii

## INTRODUCTION

Although titled "Second Verified Motion for Expedited Preliminary and Permanent Injunction," Plaintiffs' latest motion seeks unclear relief and does not even mention, let alone demonstrate, the requirements for obtaining injunctive relief. Rather, it appears Plaintiffs seek judgment in their favor based on a wholly new theory that has not even been alleged: that the second mortgages must be released because Plaintiffs' debt purportedly has been satisfied as a result of YSA's exercise of its statutory and contractual rights to protect its collateral. Even if the Court considers this new and unpled claim (which it should not), Plaintiffs are flatly wrong.

In an effort to salvage its interest in Kulick's quickly diminishing empire of slum-apartments, YSA exercised its contractual and statutory rights to preserve the collateral supporting YSA's interest. That interest is in serious jeopardy due to Kulick's business operations and finances. Just weeks ago, in a receivership action in Oklahoma involving one of the Kulick-properties at issue here, the court granted a receiver after the first-position lender-plaintiff produced evidence that Kulick has been engaging in a scheme in which he withdraws and commingles amounts paid in rent that should be held in trust for the lender and improperly uses these amounts for other purposes, all while failing to pay the expenses of operating the property and permitting liens to cloud the title of the property. Two months *before* the Oklahoma court filing containing those allegations, YSA's forensic accounting expert

independently recognized a nearly identical pattern in the books of Kulick's entities. The Oklahoma ruling thus validates YSA's serious concerns regarding its collateral.

In a list ditch move, Plaintiffs have burdened this Court with another request for "expedited" relief, making the surprising claim that YSA's efforts to protect its collateral somehow resulted in extinguishment of the hundreds of millions of dollars that Plaintiffs owe pursuant to loans that they repeatedly asked YSA for. Plaintiffs' entire position is meritless, and their motion should be denied.

## ARGUMENT

## I.      PLAINTIFFS ARE NOT ENTITLED TO THE RELIEF SOUGHT

The primary relief apparently sought by Plaintiffs through their latest motion is not injunctive relief at all.  Instead, Plaintiffs request that this Court "enter an order declaring Plaintiffs' obligations satisfied and release the second mortgages that are the subject of this suit." Mot. at 2. In essence, Plaintiffs are bringing an entirely new claim for declaratory relief via a motion that was filed on the same day Plaintiffs filed their Amended Complaint. Despite filing an Amended Complaint, nowhere is the theory on which they now seek expedited relief pled. The Court should not countenance Plaintiffs' improper attempt to obtain final relief on an entirely new claim based on new factual allegations and legal arguments outside its Amended Complaint.

2

Even were the Court to consider Plaintiffs' new theory (that their debts have been fully satisfied based on YSA's efforts to protect its collateral), it is patently meritless. Further, Plaintiffs do not even *attempt* to demonstrate irreparable harm or that the balance of equities favors the issuance of an injunction. *See Joyland Daycare Center v. Director of Dept' of Services for Children, Youth & Their Families*, 1996 WL 74713, at *2 (Del. Ch. Jan 22, 1996) (outlining standard for mandatory injunction). Thus, the Court should deny this request.

The Court should likewise deny Plaintiffs' alternative relief—that the Court "enjoin [YSA] from exercising any further purported rights as a secured party under the loan documents[.]" Mot. at 6. Again, Plaintiffs fail to even mention, let alone demonstrate, the necessary elements for an injunctive relief – a reasonable probability of success on the merits, irreparable harm, and the balance of equities. *See MyCarrier, LLC v. Project44, LLC*, 2025 Del. Ch. LEXIS 57, at *15-16 (Del. Ch. March 3, 2025). Indeed, Plaintiffs cannot establish even one of these factors. Even if Plaintiffs prevailed on their claim that YSA was not entitled to record the second mortgages, that has no bearing on YSA's entitlement to exercise its other rights under the loan documents. Further, Plaintiffs fail to show how they would be irreparably harmed in the absence of such a broad injunction that appears directed toward hypothetical, future wrongs. *See Nicotra v. Rowe*, 2000 Del. Ch. LEXIS 53, at *11 (Ch. Mar. 21, 2000) ("An injunction may issue to address a specific wrong,

3

but not to address purely speculative or hypothetical future wrongs."). Finally, as explained further below, the balance of equities strongly favors YSA, whose rights and interests are in serious jeopardy as a result of Kulick's continuing misconduct.

## II.  PLAINTIFFS' OBLIGATIONS HAVE NOT BEEN SATISFIED.

### A.  YSA Acted to Preserve the Value of Its Collateral

The Uniform Commercial Code ("UCC"), as adopted in Title 6 of the Delaware Code, provides secured parties with several rights and remedies upon a debtor's default. These remedies are cumulative: "A secured party is not required to elect one remedy to the exclusion of another. . . . In fact, the secured party is permitted to pursue alternative remedies until the obligation is satisfied." *Shultz v. Del. Tr. Co.*, 360 A.2d 576, 579 (Del. Super. Ct. 1976) (citation omitted). For example, the UCC permits a secured creditor to take possession of the collateral protecting its security interest after the debtor defaults on its obligation. 6 Del. C. § 9-609(a)(1). Additionally, it expressly permits a secured party in possession of collateral to "use or operate the collateral . . . for the purpose of preserving the collateral or its value." 6 Del. C. § 9-207(b)(4)(A). That is precisely what YSA did here.

Plaintiffs insist that if YSA has not accepted collateral in full satisfaction of Plaintiffs' debts, YSA's conduct is "unlawful," contending that YSA cannot "argu[e] that it acquired the collateral through the Power of Attorney clauses or some other

provision of the loan documents." Mot. at 4. Of course, YSA can—and indeed, it did.

As noted above, 6 Del. C. § 9-609(a)(1) entitles a secured creditor to take possession of collateral upon default. To take possession of the pledged membership interests in Vesta Holdings, LLC ("Vesta"), YSA relied on its broad Power of Attorney under the Collateral Pledge and Security Agreement ("CPSA"), under which Vesta appointed YSA as its attorney-in-fact with full power to take any steps YSA deems necessary to secure and protect YSA's interests, including by "taking any action against any of the Collateral[.]"

Thus, immediately upon Vesta's default, YSA was entitled to take possession of the pledged Vesta membership interests by transferring them. Far from "unlawfully commandeer[ing]" Vesta, YSA exercised its right pursuant to 6 Del. C. § 9-609(a)(1), and the CPSA's Power of Attorney, to take possession of the membership interests.

Once the collateral was in YSA's possession, YSA was entitled pursuant to 6 Del. C. § 9-207(b)(4)(A) to preserve the value of the collateral, including by sending the letter to First United Bank, as Plaintiffs' actions have put the collateral in serious jeopardy. YSA is informed and believes that Plaintiffs have engaged in large-scale fraud to wrongfully induce YSA into making the underlying loans in the first place,

and they continue to engage in financial misconduct that is actively depriving the collateralized real property assets of equity.

In fact, YSA has recently learned that an Oklahoma court has appointed a receiver to oversee one of the properties on which YSA already has a recorded second mortgage—the property owned and managed by Lofts at North Penn Best Living, LLC ("Lofts, LLC"), which is in turn, owned and managed by Kulick. *See CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*, Case No. CJ-2025-7426, Order Appointing Receiver (Nov. 25, 2025).[1]

The Receiver was appointed because the plaintiff in that case—the first-position mortgage lender (the "Lender")—obtained discovery showing Kulick's rampant misuse and misappropriation of funds, funneling rent payments to himself and his other entities to the Property and Lender's detriment. Specifically, that Lender discovered that in October 2025, Lofts, LLC had net operating income of $126,454.63, but maintained a paltry $583.39 in their bank account despite failing to make required mortgage payments and refusing to pay "the vendors whose goods and services are necessary for the operation and upkeep of Lofts' apartment

---

[1] A copy of this order was attached as Exhibit A to the Transmittal Affidavit of Sarah R. Martin in support of YSA's Motion to Set an Injunction Bond (Dkt. 30).

complex." *See CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*, Case No. 123585, Pltf's Mot. for Expedited Review (Dec. 3, 2025), at p.5.[2]

The Lender's evidence showing that Kulick withdraws rent payments, which should have been held in trust for the Lender, while failing to pay expenses necessary to the operation and maintenance of the Property validates and corroborates the alarm that YSA has been sounding: Plaintiffs are actively cannibalizing the equity that was pledged to secure the YSA Loans.

Indeed, two months **before** the Oklahoma court filing containing those allegations, YSA's forensic accounting expert independently recognized a nearly identical pattern in the books of Kulick's entities.[3]

Therefore, given (i) the lack of equity in the collateral properties, (ii) Plaintiffs' conduct in pledging the same properties multiple times as collateral for various loans, and (iii) priority repayments to Kulick and his entities to the detriment of arm's length lenders like YSA, YSA has exercised its right to use the collateral in its possession (including the Vesta membership interests) to preserve the remaining collateral.

---

[2] A copy of this motion was attached as Exhibit B to the Transmittal Affidavit of Sarah R. Martin in support of YSA's Motion to Set an Injunction Bond.

[3] A copy of the expert report was attached as Exhibit C to the Transmittal Affidavit of Sarah R. Martin in support of YSA's Motion to Set an Injunction Bond.

**B.      YSA Did Not Accept the Collateral in Satisfaction of Plaintiffs' Obligations**

Section 9.620 allows a secured party to accept collateral in full or partial satisfaction *only if* the procedures set out in the statute are complied with. Indeed, the Official Comments to U.C.C. § 9-620 make clear that "acceptance does not occur unless . . . the secured party consents to the acceptance in an authenticated record or sends to the debtor a proposal." U.C.C. § 9-620 cmt. 5. And the comment explicitly states that this requirement is "[t]o ensure that the debtor cannot unilaterally cause an acceptance of collateral[.]"[4]  *Id.*  Accordingly, a "secured party's acceptance of possession of the collateral does not, of itself, necessarily raise an implication that the secured party intends or is proposing to accept the collateral in satisfaction of the secured obligation under this section." *Id.*

Indeed, courts have uniformly rejected attempts by debtors to unilaterally cause an acceptance of collateral.  For example, in *Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.*, the debtor ("RPSI") entered into a loan with the creditor ("Carbon Capital") that was secured by RPSI's membership interests in a separate LLC.  2009 U.S. Dist. LEXIS 57452, at *9 (S.D.N.Y. July 7, 2009).  After

---

[4] "While Delaware has not adopted the Official Comments prepared by the drafters of the [UCC], these comments are nevertheless useful in interpreting the Code, as it is to be applied in Delaware, . . . [and] [t]he court may also consider case law from other jurisdictions that addresses comparable UCC provisions." *Cannon v. Romeo Sys.*, 2025 Del. Ch. LEXIS 251, at *40 n.164 (Ch. Oct. 7, 2025) (internal quotations and citation omitted).

8

RPSI first defaulted, the parties entered into a settlement agreement that gave RPSI an extension on the debt repayment date but required RPSI to transfer the membership interests upon default. "In effect," the court held, "the Settlement Agreement transferred possession of the collateral to Carbon Capital so that Carbon Capital could preserve the value of the collateral and prepare for its ultimate disposition." *Id.* The court thus rejected RPSI's claim that the transfer of the membership interests constituted acceptance of the collateral in satisfaction of the obligation, citing comment 5 and holding: "Since it is undisputed that the Settlement Agreement did not set forth any terms by which Carbon Capital would accept the collateral in satisfaction of the debt and Carbon Capital did not send written notice of any intention to do so, the Court declines to apply this remedy." *Id.* at *10.

Similarly, in *Smith v. Community National Bank*, the Texas Court of Appeals rejected an attempt by a guarantor to claim that an assignment of collateral to the creditor constituted an acceptance in satisfaction of the obligation. *Smith v. Cmty. Nat'l Bank*, 344 S.W.3d 561, 571 (Tex. App. 2011). There, the guarantor argued that "the fact that all of [the debtor's] ownership interests in the collateral were transferred amounted to an acceptance by [creditor] under Section 9.620." *Id.* The court cited *Royal Palms* in holding that because there was no evidence that the creditor "wanted Section 9.620 to apply," the creditor "did not accept the collateral in full or partial satisfaction of" the debtor's obligation. *Id.* at 573-74.

9

Myriad other courts are in accord. *First Am. Bank v. Poplar Creek, LLC*, 482 Ill. Dec. 848, 854, 258 N.E.3d 857, 863 (2024) ("[G]uarantors misconstrue section 9-620 to conclude that retaining collateral means a creditor has 'accepted' it in complete satisfaction of the debt obligation. Under that section, acceptance requires more than retaining collateral to trigger the total or partial satisfaction provision. . . . Nothing in the record suggests an agreement on accepting the collateral in full or partial satisfaction of the obligation. Thus, we find no support in the UCC for the guarantors' illogical Catch-22 interpretation."); *Kapor v. RJC Inv., Inc.*, 394 Mont. 311, 323, 434 P.3d 869, 876 (2019) (holding that strict foreclosure pursuant to Section 6-20 requires "mutual agreement between the parties").

Here, Plaintiffs readily admit that "[n]one of the debtors have affirmatively agreed, in a signed writing or otherwise, to a partial satisfaction of the claimed debt in exchange for [YSA's] acquisition of the collateral." Mot. at 4. And YSA did not make any proposal to Vesta under Section 9-620, as YSA expressly did not intend for that provision to apply. Accordingly, YSA did not accept Vesta's membership interests in satisfaction of Vesta's indebtedness.

**C.      Even if YSA Had Not Complied with the UCC, Plaintiffs'
         Obligations Would Not Be Deemed Fully Satisfied**

Even if Plaintiffs were correct that YSA had not complied with the statutory provisions of Delaware's UCC, the consequence would not be the wholesale extinguishment of Plaintiffs' indebtedness. Rather, where a secured party has failed

10

to comply with the statute, a debtor is entitled only to damages for actual loss caused by the failure to comply.  6 *Del. C.* § 9-625(b).

Finally, even assuming, *arguendo*, that YSA's acquisition of the Vesta membership interests could be considered to have fully satisfied an obligation, only the February 18, 2025, loan would be considered satisfied, as that is the operative obligation pursuant to which YSA took possession of the membership interests.  The obligations of Plaintiffs under the April 9, 20205, July 16, 2025, and July 31, 2025, loans remain wholly unaffected under any circumstances.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion should be denied.

Respectfully submitted,

*/s/ Sarah R. Martin*
Sarah R. Martin (#5230)
Samuel L. Moultrie (#5979)
GREENBERG TRAURIG, LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
(302) 661-7000
Sarah.Martin@gtlaw.com
Moultries@gtlaw.com

*Attorneys for Defendant YSA Investments 1, LLC*

WORDS:  2,355/14,000

DATED:  December 12, 2025

11

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |
|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC, | |
| Plaintiffs, | C.A. No. 2025-1319-MTZ |
| v. | |
| YSA INVESTMENTS 1, LLC, | |
| Defendant. | |

**TRANSMITTAL AFFIDAVIT OF SARAH R. MARTIN
IN SUPPORT OF DEFENDANTS'
<u>MOTION TO SET AN INJUNCTION BOND</u>**

I, Sarah R. Martin, being duly sworn according to law, depose and state:

1. I am a member in good standing of the Bar of the State of Delaware, a shareholder of Greenberg Traurig, LLP ("GT"), an international law firm with an office in Delaware, and serve as counsel for the Defendant YSA Investments 1, LLC.

2. To the best of my knowledge and belief, true and correct copies of the following documents are attached hereto as follows:

| Exhibit | Description |
|---------|-------------|
| A | *CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*, Case No. CJ-2025-7426, Order Appointing Receiver (Nov. 25, 2025) |
| B | *CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*, Case No. 123585, Pltf's Mot. for Expedited Review (Dec. 3, 2025) |
| C | Memo prepared by American Fiduciary Services re: Preliminary Forensic Accounting Observations of Ponzi-Like Indicia in Kulick-Controlled Bank Accounts |
| D | *CREO QRS NP, LLC v. Lofts at N. Penn Best Lvg.*, Case No. CJ-2025-7426, First Amended Petition (Dec. 9, 2025) |

Sarah R. Martin (ID No. 5230)
Greenberg Traurig, LLP
222 Delaware Ave., suite 1600
Wilmington, Delaware 19801
(302) 661-7000
Sarah.Martin@gtlaw.com

DATED: December 11, 2025

SWORN TO AND SUBSCRIBED
Before me on this ___11___ day of December, 2025.

_____
NOTARY PUBLIC

My commission expires: __4/08/2027__

# EXHIBIT A

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

NOV 25 2025

RICK WARREN
COURT CLERK

111 _____



**IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

CREO QRS NP LLC,                            )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )   CJ-2025-7426
                                            )
LOFTS AT NORTH PENN BEST LIVING             )
LLC,                                        )
                                            )
                                            )
                Defendant.                  )

## ORDER GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER

This matter comes before the court upon Plaintiff's Motion for Appointment of Receiver. Having reviewed the pleadings on file, including Plaintiff's Motion, and being otherwise fully advised, finds that for good cause shown a receiver should be and is hereby appointed over the Property as defined in the Petition, and Motion and referenced in the loan documents (hereinafter called the "Property"). IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1.      Pursuant to 12 O.S. § 1551(2)(c), Jim Parrack of Price Edwards & Company is hereby appointed as receiver over the Property.

2.      The Receiver's appointment shall become effective upon the filing herein by the Receiver of a bond in the sum of $1,000, conditioned as provided by law and the filing herein of his Oath as Receiver as provided by law.

3.      The Receiver shall be ordered and authorized to immediately take the Property into his possession and control.

4.      The Receiver shall have all of the powers of a Trustee; Defendant Lofts at North Penn Best Living LLC ("Lofts") is directed to deliver to the Receiver possession of (1) the

Property; (2) any leases, contracts, agreements, books and records with respect to the operation of the Property; (3) all bank accounts containing funds of or utilized in connection with the operation of the Property; and (4) all rents, deposits and other cash or cash equivalents generated from or related to the operation of the Property. Lofts is enjoined from paying or distributed any funds held in bank accounts maintained by Lofts pending the Receiver obtaining control of such bank accounts. Lofts and all persons claiming by, through and under it should be authorized and directed to facilitate and afford to the Receiver forthwith reasonable access to all books, records and other documents related to the Property, wherever located.

5. Subject to Paragraphs 12 and 13 below, the Receiver is authorized to list the Property through Price Edwards & Company or any other reputable commercial broker and to market the Property for sale and, subject to approval by this Court, sell the Property.

6. The Receiver shall be protected by the doctrine of judicial immunity. *See Hathcock v. Barnes*, 2001 OK CIV APP 69 ¶ 5.

7. The Receiver is authorized and ordered to manage the Property to its best advantage and to collect and receive all accrued or accruing revenues, collections, accounts, income, profits, rents, and proceeds therefrom arising from the Property's operations. The Receiver is authorized to pay the reasonable and necessary expenses required to carry on the business of administrating the Property, including all taxes, insurance premiums, operations expenses, expenses for any repairs necessary to preserve said property in good condition, and to maintain all required licenses and certificates as well as permits for the operation of the Receiver Property. Revenues exceeding the herein authorized expenses shall be held by the Receiver to await the further order of the Court.

8. The Receiver is authorized to employ such managers (including, without limitation, a property manager), agents, employees, servants, accountants and attorneys as may, in the

Receiver's judgment, be advisable or necessary in carrying out his duties regarding the Receiver Property. In connection therewith, the Receiver should be specifically authorized to retain his company, Price Edwards & Company, as property manager or otherwise, to assist in the performance of his duties as receiver.

9. Concerning his decisions regarding the management and operations of the property, the Receiver shall be protected by the business judgment rule. *See Harris v. Dildine*, 1926 OK 839 § 8.

10. All persons who receive actual or constructive notice of this Order are, unless given written permission upon application to this Court, hereby enjoined from: (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Lofts, the Property or the Receiver that was or could have been commenced before the entry of such Order or to recover a claim against Lofts, the Property or the Receiver that arose before the entry of such Order; (2) any act to obtain possession of or to exercise control over the Property or any property thereof; (3) any act to create, perfect, or enforce any lien against the Property or any property thereof; (4) any act to create, perfect, or enforce against the Property or any property thereof any lien to the extent that such lien secures a claim that arose before the entry of such Order; (5) any act to collect, assess, or recover a claim against Lofts, the Property or the Receiver that arose before the entry of this Order; (6) the setoff of any debt owing to Lofts that arose before the entry of such Order against any claim against the Lofts or the Receiver; or (7) the commencement or continuation of any actions on behalf of any entity after demand has been made upon management of such entity to bring or defend such action and such demand has been refused or where it is shown that such a request would be futile and therefore unnecessary (commonly known as "derivative actions").

11.     The Receiver shall be compensated at the monthly rate of $2,500.00 and shall be reimbursed for reasonable out of pocket expenses including reasonable costs of an attorney to the extent required. The Receiver is permitted to utilize his staff to assist him in the performance of the duties listed herein; the Receiver's staff may be compensated for the time reasonably spent by such persons at reasonable rates under the circumstances.

12.     The Receiver is bound by the Purchase and Sale Agreement dated November 21, 2025 and entered into evidence with the buyer's identity redacted as Exhibit D 2 at the hearing on November 24, 2025 (the "PSA") and directed to reasonably cooperate on behalf Lofts as seller thereunder to facilitate the pending sale of the Property in connection with the PSA.

13.     In the event the Property is sold pursuant to the PSA and the debt to the plaintiff satisfied, the receivership shall be dissolved. In the event the PSA is terminated by buyer, the Receiver is authorized to list the Property through Price Edwards & Company or any other reputable commercial broker and to market the Property for sale and, subject to approval by this Court, sell the Property.

IT IS SO ORDERED THIS _25_ DAY OF NOVEMBER 2025.

_____
District Court Judge

PREPARED BY:

_____

ROSS A. PLOURDE, OBA #7193
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Eighth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
405/235-9621
405/235-0439 (FAX)
ross.plourde@mcafeetaft.com

*Counsel For Plaintiff, CREO QRS NP LLC*

APPROVED AS TO FORM ONLY:

_____

Andrew A. Shank, OBA # 22298
Lacy B. Williamson, OBA #34004
ELLER & DETRICH, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma 74114
(918) 747-8900- telephone
(918) 747-2665 - facsimile
ashank@ellerdetrich.com
lwilliamson@ellerdetrich.com

*Attorneys For Defendant*
*Lofts At North Penn Best Living LLC*

# EXHIBIT B

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

CREO QRS NP, LLC,

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

DEC - 3 2025

RICK WARREN
COURT CLERK
46_____

FILED
SUPREME COURT
STATE OF OKLAHOMA

DEC - 3 2025

SELDEN JONES
CLERK

Plaintiff/Appellee,

v.

LOFTS AT NORTH PENN BEST LIVING LLC,

Defendant/Appellant

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 12358 5

Oklahoma County
Case No. CJ-25-7426

## PLAINTIFF'S/APPELLEE'S MOTION FOR EXPEDITED REVIEW AND MOTION FOR PLACEMENT ON THE FAST TRACK DOCKET AND BRIEF IN SUPPORT

### Motion

Pursuant to Sup.Ct.R. 1.17(III), CREO QRS NP LLC ("CREO") respectfully moves this Court for an Order: (1) expediting the review of the Petition in Error filed on November 26, 2025 by the appellant, Lofts at North Penn Best Living LLC ("Lofts"); and (2) placing this appeal on the Court's Fast Track Docket. In support of its Motion, CREO submits the following Brief.

### Brief in Support

### I. BACKGROUND AND PROCEDURAL HISTORY

This case involves a mortgage loan secured by an apartment complex in Edmond, Oklahoma. Among other loan documents, to secure the debt to CREO, Lofts granted a mortgage against the property as well as an assignment of the rents generated by the property. The collateral secured a promissory note in the original principal of $28,900,000.

Lofts defaulted upon the loan. On October 10, 2025, CREO filed suit in the District Court of Oklahoma County seeking judgment on the note and foreclosure of the mortgage. CREO moved for the appointment of a receiver. The district court held a hearing on November 7, 2025 regarding

CREO's motion for appointment of a receiver. At the hearing, Lofts did not contest the fact that "a condition of the mortgage has not been performed and the mortgage instrument provides for the appointment of a receiver." See Okla. Stat. tit. 12, § 1551(2)(c). Rather, it asserted that CREO was required to prove more than is required by § 1551(2)(c) and that CREO was obligated to prove, in addition to the statutory requisites set forth in § 1551(2)(c), that the property was in some jeopardy or imminent danger if a receiver was not appointed.

At the hearing on November 7, 2025, the district court continued the hearing until January 5, 2026, ordered Lofts to provide to CREO the monthly reports it was obligated to provide under the loan documents (but had not provided for many months), and ordered Lofts to timely provide such reports going forward. The district court stated that CREO could seek emergency relief prior to January 5, 2026 should the reports, when provided, showed exigent circumstances such as misuse of rents being collected by Lofts.

CREO received past due reports from Lofts. Based upon those reports, CREO ascertained (i) that Lofts was collecting hundreds of thousands of dollars each month in rents, (ii) that Lofts was misappropriating those funds and transferring them to its affiliates, (iii) that Lofts has been losing occupants, to the harm of the property, and (iv) that Lofts was not paying its bills, resulting in liens and a second mortgage being filed against the property. Based on that information, CREO applied to the district court for an emergency hearing on its motion to appoint a receiver. The district court scheduled the hearing on November 24, 2025.

At the November 24, 2025 hearing, CREO introduced the reports provided by Lofts showing the misappropriation of funds, the loss of occupants, and the failure of Lofts to pay its bills. Lofts did not contest the fact that it was paying rents to its affiliates, that occupancy was declining, and that its accounts payables were increasing. Rather, it argued that it hoped to sell the

2

property soon and that it would be inequitable to appoint a receiver. The district court granted CREO's motion and ordered the appointment of a receiver.

Part of the evidence offered by CREO at the hearing on appointment of a receiver was testimony of Jim Parrack, who was appointed as receiver, that his firm, Price Edwards, maintained insurance that provided coverage for any improper acts by Price Edwards such as those that would be covered by a receiver's bond. Based on this assurance, CREO recommended, and the district agreed, that the amount of the receiver's bond should be $1000. The receiver posted a bond for that amount and the district court approved the bond.

Lofts appealed the order appointing receiver. Pursuant to Okla. Stat. tit. 12, § 993(C), Lofts obtained a stay of the order appointing receiver by posting a bond in the same amount as had been required by the receiver - $1000. As a result, pending resolution of this appeal, Lofts may be left to misappropriate hundreds of thousands of dollars of rents each month as it has been doing for the past five months.

It is important to note that the issues presented in this appeal lend themselves to swift resolution. The legal issue involved is very discrete – whether the district court abused its discretion in appointing a receiver under Okla. Stat. tit. 12, § 1551(2)(c). The transcripts of the hearings conducted on November 7th and November 24th have already been prepared. The pleadings are very limited. And the issue involved has been briefed at the district court level.

## II.    ARGUMENT AND AUTHORITIES

Oklahoma Supreme Court Rule 1.17(III) provides in part:

> All appeals—whether now in the Supreme Court or in the Court of Civil Appeals—
> which are found suitable by the court to which they are assigned for disposition by
> the fast-track docket method may be placed on that docket and decided promptly
> by a short memorandum order.
> . . .

3

The court may sua sponte place an appeal on the fast-track docket. The advanced case may be set for oral presentation with or without any record or briefs.

Moreover, Oklahoma Supreme Court Rule 1.1 provides that in the absence of law or rule directing otherwise, this Court has the inherent power to manage its dockets and to enter orders necessary for the orderly administration of legal process. CREO is aware of no law or rule prohibiting the Court from ordering expedited review of an appeal, and an accelerated disposition of this appeal certainly furthers the orderly administration of legal process.

As is reflected in CREO's exhibit 25 introduced at the November 24th hearing, in October 2025, the last month for which Lofts provided records, Lofts collected rents, fees, and other income of $230,575.32. Lofts' October bank statement, introduced as CREO's exhibit 19 at the November 24th hearing discloses (excerpts below) that $1,085,000 was transferred out of Lofts' bank account during a one-week span in October:

| 10/02 | Transfer from 1326 to 2233 rep ay Conf #:14299177 | $25,500.00- |
| 10/03 | Transfer from 1326 to 2233 rep ay Conf #:14309539 | $37,000.00- |
| 10/06 | Transfer from 1326 to 2233 rep ay Conf #:14331221 | $29,000.00- |
| 10/06 | Transfer from 1326 to 2233 rep ay Conf #:14335187 | $70,000.00- |
| 10/06 | Transfer from 1326 to 2233 rep ay Conf #:14334050 | $750,000.00- |
| 10/07 | Transfer from 1326 to 2233 rep ay Conf #:14339523 | $25,000.00- |
| 10/07 | Transfer from 1326 to 2233 rep ay Conf #:14340207 | $31,000.00- |
| 10/07 | Transfer from 1326 to 2233 rep ay Conf #:14340853 | $90,000.00- |
| 10/08 | Transfer from 1326 to 2233 rep ay Conf #:14348358 | $27,500.00- |

These are only examples of the transfers out of Lofts' bank account. And although the bank statements also show deposits to Lofts account, many times in the same amounts as were transferred out, at the end of October the balance held in Lofts's bank account was $583.39, despite

4

(as shown in CREO's exhibit 25) having net operating income in October of $126,454.63. Lofts' ownership simply took that money – as they did in prior months – for their own misuse. Under the assignment of rents executed by Lofts, such funds are required to be held in trust for CREO. But each month, Lofts is transferring the money out of Lofts to bank accounts held by its affiliates and each month that resolution of this appeal is delayed threatens to deprive CREO of similar amounts of money.

As CREO's exhibit 25 also reflects, since May 2025, CREO's monthly rents and other income has steadily declined from $270,467.22 in May to $230,575.32, reflecting a sharp downward trend. This trend is confirmed by Lofts' monthly rent rolls which were introduced as CREO's exhibits 33, 34, 35, 36, and 37 introduced at the November 24th hearing. Those rent rolls reflect a steady decline in the percentage of units that were occupied from 95.31% in June 2025 to 82.29% in October.

And, as reflected in CREO's exhibits 33, 34, 35, 36, and 37 introduced at the November 24th hearing, Lofts' accounts payables have steadily increased from $271,105.88 ($133,608.18 more than 90 days past due) in June 2025 to $355,537.00 ($236,909.19 more than 90 days past due) in October 2025.

Lofts is misappropriating rents every month. It is allowing occupancy to decline each month. And, despite have plenty of money to pay its operating expenses (since it is paying CREO nothing), Lofts' payables continue to mount and it is falling further and further in arears to the vendors whose goods and services are necessary for the operation and upkeep of Lofts' apartment complex. While CREO intends to seek an increase in the appeal bond and is considering seeking other equitable relief, without an expedited resolution of this appeal, CREO could suffer very substantial losses.

## III. CONCLUSION

Based on the foregoing and in light of these special circumstances, CREO urges this Court to grant its Motion and issue an Order expediting review and/or to place this appeal on the Court's Fast Track Docket.

Respectfully submitted,

ROSS A. PLOURDE, OBA #7193
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Eighth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
405/235-9621
405/235-0439 (FAX)
ross.plourde@mcafeetaft.com

*Counsel For Plaintiff, CREO QRS NP LLC*

6

## CERTIFICATE OF MAILING TO ALL PARTIES AND COURT CLERK

I hereby certify that a true and correct copy of the Response to Petition in Error was mailed this 3rd day of December 2025 by depositing it in the U.S. Mail, postage prepaid to:

Andrew A. Shank,
Lacy B. Williamson,
ELLER & DETRICH, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma 74114
**Attorney for Appellants**

I further certify that a copy of the Response to Petition in Error was mailed to, or filed in, the Office of the Court Clerk of Oklahoma County, Oklahoma on the 3rd day of December 2025.



# EXHIBIT C



**MEMO re: Forensic Accounting Observations in Support of Ponzi-like Indicia Vesta Holdings and Vesta Realty Accounts**

**Vesta Realty and Vest Holdings Jan-Feb 2025 Review**

A table summarizing the 01/2025-02/2025 transfers between the Vesta accounts, the sources and uses of these accounts, and analysis of the volume, balances and flows of these funds may be found at the end of this report in the table titled "Preliminary Account Analysis".

**Overview of Account Activity**

The following analysis summarizes key findings identified during the review of bank activity for January and February 2025 across accounts ending 2390 and 5657. The review focused on identifying unusual patterns, inconsistencies, or transactions that may indicate irregular fund movement, cash flow strain, or potential misuse of company assets.

Each topic discussed in the sections below highlights a specific area of concern noted during the analysis. The goal of this review is to provide a clear and factual summary of activity observed, supported by transaction data, and to flag items requiring further verification or investigation.

**Analysis of Controlled Accounts**

Analysis was conducted on statements for Vesta Realty a/e 2390 and Vesta Holdings a/e 5657 Bank of Blue Valley accounts. A running daily account balance is not available on these statements, so this was calculated to assist in analysis and cash-tracing. Critically, Bank of Blue Valley business accounts show memos that allow the user to ascertain those transfers among the controlled Bank of Blue Valley Accounts (i.e. memo descriptions that start with "IB TFR FR" indicate that this is a credit and an "inbound transfer from" a certain controlled account, and those that start with "IB TFR TO" indicate that this is a debit and an "outbound transfer to" a certain controlled account).

The controller appeared to exert transfer control among 88 accounts at Bank of Blue Valley. These accounts had $19.8 million in deposits into the two subject accounts and $40.7 million in withdrawals from the subject accounts. 35 accounts were identified as belonging to an associate rental property owned by the subject, and these accounts had $11.7 million in deposits and $8.6 million in withdrawals (meaning these known entities deposited a net $3.1 million into the enterprise during this period). 53 accounts were not able to be identified as belonging to an associated rental property, and these accounts had $8.0 million in deposits and $32.1 million in withdrawals (meaning these unknown entities withdrew a net $24.0 million from the enterprise during this timeframe).

715 NW Hoyt Street #4364
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102

(855) 880-0100
www.americanfiduciaryservices.com



**Preliminary Analysis of Vesta Realty Account Ending 2390 Jan-Feb 2025**

This account had a negative -$132,971 balance on 1/1/2025 and ended the period with a balance of $126 on 2/28/2025. For 43% of the days in this period this account ended the day with a balance of $0 or less. During this period, the account incurred 98 overdraft fees. The average daily balance in the account over this period was a negative -$86,190 and it cleared 340 outgoing transactions for $10,208,756. The sources of funding for this account were: 1) transfers from Vesta Holdings (69.5%); 2) Inflows from known managed properties' accounts (13.0%); funds from apparent commercial loans (6.6%); and other unknown sources (10.8%).

$1.9 million was used for payroll, $1.2 million was used to pay for Marc Kulick's personal American Express bills, pay for auto loans, taken in cash or directly sent to other Marc Kulick accounts, $3.1 million was used to pay the Vest American Express card, $887k paid for apparent commercial loan repayments, $3,430 paid for 98 overdraft charges, and there were $372k in other outflows for normal operations and other small unknown wires.

We observed similar flows and transactions in the subsequent months' activity in this account. For example, a further $1,357,640 was sent to pay the Marc Kulick personal American Express in March.

There is a very high likelihood that the activities in this account are not accurately being tracked in the management's accounting books because management is overdrawing the account constantly and sometimes multiple times per day. This account is behaving like an account for a business that is rapidly approaching insolvency as it lacks the working capital to maintain a positive balance as its payments are clearing.

Based on the negative average balance in this account we will be able to demonstrate through cash tracing that significant unavoidable commingling of funds occurred in this account.

**Preliminary Analysis of Vesta Account Ending 5657 Jan-Feb 2025**

This account had a $0 balance on 1/1/2025 and finished February with a $523,212 ending balance. The average daily balance in this period was $82,288 versus $58.7 million in outflows, indicating the account turnover ratio, otherwise know as the velocity of funds in this account was 357:1 per month during this period. The account had a day-end balance of $0 or less on 30% of the days in this period. This result is highly correlated with observations made in classic Ponzi-like schemes and is highly demonstrative of commingled sources and uses of funds. Because the account lack a sufficient funding balance on an ongoing basis, we will likely be able to trace every source fund to its eventual use to demonstrate commingling. The results measured in January and February 2025 are also anecdotally observed in March and April 2025 as well.

715 NW Hoyt Street #4364
Portland, Oregon 97208

(855) 880-0100
www.americanfiduciaryservices.com

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102



The sources of the $58.5 million of funding in this account during this period are: 1) 43 wires deposited from unknown third parties (52.4%); 2) Inflows from known properties' accounts (19.7%); 3) transfers from 53 unknown controlled accounts (13.6%); 4) YSA Investments I LLC (9.0%); and 4) apparent commercial loans (5.3%).

$58.0 million flowed out of this account during these two months. 54.8% of these outflows were transfers to unknown controlled accounts, including $29.2 million that was transferred to an unknown account a/e 5643. 14.7% of these outflows were transferred to known properties. 9.1% of these funds were sent to Vesta Realty. 3.8% of these funds paid for apparent commercial loans. 12.0% of these funds were wired to unknown third parties, and the remaining 4.7% of these outflows covered a Vesta Realty bounced payroll, payments to YSA Investments I LLC, 17 unreviewable checks, and personal payments made to Marc Kulick in the form of transfers or cash.

### Overdraft Activity – Account Ending 2390

Between January and February 2025, there were a total of 2,089 transactions across the two bank accounts ending in 2390 and 5657. All the overdraft activity, however, occurred only in the 2390 account. During this period, the account was charged $3,430 in overdraft fees, made up of 101 separate overdraft incidents caused by non-sufficient funds. This means that nearly one hundred times, payments or withdrawals were attempted when there was not enough money in the account to cover them.

This pattern shows repeated shortfalls and suggests that the accounts often did not have enough available cash to meet outgoing payments. It may also point to weak oversight or poor cash management practices. When we compare the timing of these overdrafts to incoming deposits or transfers between related accounts, it could also suggest that money was being moved around to temporarily cover shortages or create the appearance of available funds. For this reason, the overdraft activity in this account stands out as a warning sign that deserves a closer look in the larger context of how funds were being handled.

The frequency and timing of these overdrafts do not appear to be part of normal, day-to-day business activity. While occasional overdrafts can happen, having this many in such a short time is unusual and can be indicative of deepening insolvency.

### Payroll Transactions with Incorrect Dates

During the review of bank activity for January and February 2025, a total of 61 payroll-related transactions were identified with incorrect or inconsistent transaction dates. These transactions were labeled with dates such as December 24, April 19, and October 6, 2023, even though the corresponding bank activity took place in 2025. The total value of these transactions was $605,894.43.

715 NW Hoyt Street #4364
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102

(855) 880-0100
www.americanfiduciaryservices.com



This means that the data recorded for these payroll items does not align with the actual statement period being reviewed. Inconsistent or backdated entries of this nature can make it difficult to clearly trace the timing and purpose of the payments and may suggest errors in payroll processing, data entry, or deliberate mislabeling. Such discrepancies are important to note because they can affect how cash flow and payroll obligations appear in the records.

Further review is needed to confirm whether these dates were carried over from an internal payroll system, manually entered in error, or intentionally altered. Depending on the findings, these inconsistencies could indicate anything from simple administrative mistakes to an attempt to disguise when payroll expenses were actually incurred or paid. Given the high total value of these items, this issue should be investigated in more detail to determine the source and impact of the date irregularities.

This pattern of transactions is clear red flag and may be indicative of a billing scheme, payroll fraud and/or financial statement fraud.

**Payments to Personal Credit Card – Account Ending 2390**

A review of disbursements from bank account ending in 2390 identified payments totaling $1,156,837.13 made directly to the personal American Express credit card of Marc Kulick. These payments occurred during the same review period of January and February 2025.

Payments of this nature are significant because they represent the use of company funds to pay a personal financial obligation of the principal. Unless such payments were properly documented as owner draws, reimbursements for legitimate business expenses, or other approved disbursements, they could indicate commingling of personal and business funds. This type of activity makes it difficult to distinguish between company and personal expenditures and raises concerns about whether company resources were being used for non-business purposes.

Further investigation is recommended to determine the nature, supporting documentation, and approval of these payments. If these transactions lack adequate backup or appear unrelated to business operations, they may need to be reclassified as personal withdrawals or potential misuse of company assets. Special care should be taken to compare the balance sheet of the underlying entity to these transactions to make sure they are being appropriately booked as compensation to the principal. We have had success in recovering funds from credit card companies where business funds were used to pay personal credit card bills in the presence of Ponzi-scheme findings.

**Auto Loan Payments**

During the review of January and February 2025, a total of 13 auto loan payments were identified across the entity's bank activity, even though the nature of the business does not

715 NW Hoyt Street #4364
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102

(855) 880-0100
www.americanfiduciaryservices.com



involve vehicle financing or ownership. In January 2025, there were 8 payments totaling $16,740.76, and in February 2025, there were 5 payments totaling $7,131.50.

The presence of these transactions is unusual and inconsistent with the normal business operations. In addition, the decrease in the number of payments from one month to another raises questions about who these loans belong to and whether they are related to business or personal use. Without supporting documentation identifying the vehicles or loan holders, it is unclear whether these payments were legitimate business expenses, employee reimbursements, or personal obligations paid using company funds.

Interestingly, in March 2025, there were no further auto loan payments recorded. The sudden stop in activity, after two consecutive months of payments, adds to the irregularity. This could suggest that the payments were not tied to ongoing business obligation and may instead have been personal in nature or connected to short-term use of company funds.

Further review is recommended to determine the purpose and ownership of the vehicles tied to these payments. If found to be personal in nature these amounts should be reclassified as personal withdrawals or non-business disbursements. The inconsistency in payment frequency and the lack of clear business purpose make these transactions noteworthy and deserve additional scrutiny.

### Short-Term Commercial Loans

During the review of activity for January and February 2025, the entity received several short-term commercial loans from outside lending companies. In January 2025, six separate loan deposits totaling $1,950,000 were received from a single lender, Oak Lending. In February 2025, the entity obtained an additional five loans totaling $1,657,154.98., this time from three different lending companies. Also in February, three repayments were made to these lenders totaling $325,000.

In total, during just these two months, the entity borrowed $3,607,154 while repaying only $3,122,639. The size, frequency, and short-term nature of these loans ae significant. This level of borrowing suggests the company may have been relying heavily on external financing to meet its immediate cash needs. The fact that loans were obtained from multiple lenders in such a short period could indicate cash flow strain or an effort to cover ongoing obligations when internal funds were insufficient.

Without corresponding business expansion or investment activity to justify these inflows, the borrowing pattern appears reactive rather than strategic. It raises the question or whether loan proceeds were being used to fund routine operating costs, prior debts, or potential investor payments rather than genuine business growth. Additional analysis of how these loans proceeds were used is necessary to determine whether the borrowing aligns with legitimate business

715 NW Hoyt Street #4364  
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839  
Las Vegas, Nevada 89102

(855) 880-0100  
www.americanfiduciaryservices.com



purposes or reflects a cycle of short-term borrowing or sustain cash flow, which may be an early sign of financial distress.

**Bounced Payroll Payments (ADP)**

During the review of January and February 2025, it was noted that payroll payments processed through ADP were returned twice due to insufficient funds or other payment errors. These failed transactions indicate that payroll was initiated without adequate available balance in the account to support the disbursement.

Bounced payroll transactions are a serious operational red flag because they directly affect employees and suggest weaknesses in cash flow management and internal controls. Rejected payroll payments can also indicate liquidity problems – that is, the company may have been struggling to maintain enough funds to cover regular obligations like salaries.

For the second bounced payroll payment, the company did not attempt to reprocess the payroll from the same account (ending 2390). Instead, payroll was later processed and paid out of 5657. This substitution strongly suggests commingling of funds between related entities, as one account was used to satisfy the obligations of another. This behavior points to poor fund segregation and could indicate improper use of one entity's cash to fund another's expenses.

**Major Transfers to Unidentified External Account (Account Ending 5643)**

During the review of January and February 2025, a total of 58 transfers were identified between the entity's account ending in 5657 and another account ending in 5643, whose ownership has not been confirmed. Of these, 54 transfers were outgoing from the 5657 account to 5643, totaling $29,216,579 while 4 transfers were incoming from 5643 back into 5657, totaling $1,643,587.

Several of the transfer descriptions included the word "loan", suggestion that the transactions may have been labeled as loan related; however no supporting documentation or loan agreements were identified to confirm this.

Further analysis indicates that the account ending in 5643 functioned as a holding account, while account ending in 5657 acted as a clearing account through which funds were routinely moved before swept into 5643. This structure, where one account consistently clears its balances into another, reflects a comingle of funds between accounts and a lack of clear separation of financial activity.

Until the ownership and the purpose of 5643 account are confirmed, these transfers should be treated as unverified fund movements. Their frequency, volume, and timing particularly the recurring pattern of clearing daily balances – suggest that this account may have been used to temporarily hold, consolidate, or obscure cash flows, which warrants further tracing and verification.

715 NW Hoyt Street #4364
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102

(855) 880-0100
www.americanfiduciaryservices.com



**Significant Borrowing to Cover Outflows**

In addition to the identified short-term commercial loans, further review of the January and February 2025 bank activity revealed 43 inflow transactions that included the word "loan" in their descriptions. These inflows totaled $6,809,878. Notable, the majority of these transactions are $6,109,372. – originated from the account ending in 5657, indicating that many of the so called "loan" deposits were internal transfers rather than true external financing.

This suggests that the company may have been labelling internal fund movements as "loans", potentially to create the appearance of new capital being introduced or to justify the inflows when reconciling accounts. When viewed together with the verified short-term loans from outside lenders, the pattern reinforces the conclusion that the company was repeatedly borrowing -or appearing to borrow – to cover cash shortfalls, rather than generating sufficient operating income to support disbursements.

**Executive Summary**

Based on the limited analysis conducted to-date, our professional experience suggests that absent significant evidence to the contrary and based on what we have seen so far, we will be likely to demonstrate in a fulsome analysis and accounting reconciliation that: 1) significant commingling of the funds of entities occurred and that funds from certain entities were used to cover the expenses of other entities; 2) high levels personal spending patterns of executives occurred among accounts and deepened the enterprise insolvency; 3) the lack of liquidity demonstrated in the operating accounts will uncover an insolvent position when the entity's balance sheet is reconstructed and audited; and 4) that I will be able to determine precisely how every significant inflow was used because these accounts lack sufficient fungible reserves to lead to doubt in such analyses.

715 NW Hoyt Street #4364
Portland, Oregon 97208

2300 W. Sahara Avenue, Suite 839
Las Vegas, Nevada 89102

(855) 880-0100
www.americanfiduciaryservices.com

| PRELIMINARY ACCOUNT ANALYSIS JAN-FEB 2025 | VESTA REALTY XXXXXX239O | VESTA HOLDINGS XXXXXX5657 | BOTH |
|---|---|---|---|
| Tranfers Out | (780,897) | (6,109,373) | (6,890,269) |
| Transfers In | 6,109,373 | 780,897 | 6,890,269 |
| **Transfers Between Vesta Accounts** | 5,328,476 | (5,328,476) | - |
| **SOURCES** | | | |
| Inflows From Known Properties Accounts | 996,939 | 11,518,715 | 12,515,654 |
| Apparent Commerial Loans | 507,155 | 3,100,000 | 3,607,155 |
| Other Unknown Sources | 833,448 | | 833,448 |
| Returned Items | 1,894,940 | | 1,894,940 |
| YSA Investments I LLC | | 5,288,333 | 5,288,333 |
| Wires From ~43 Unknown Third Parties | | 30,659,316 | 30,659,316 |
| Transfers From ~53 Unknown Controlled Accounts | | 7,958,878 | 7,958,878 |
| **Total Sources of Funds** | 4,232,482 | 58,525,242 | 62,757,723 |
| **USES** | | | |
| Bank Transfers to Known Properties Accounts | | 8,617,950 | 8,617,950 |
| Bank Transfers to Unknown Controlled Accounts | | 32,050,678 | 32,050,678 |
| Returned Items | 1,869,940 | | 1,869,940 |
| Payroll | 1,906,951 | 893,171 | 2,800,122 |
| MK Personal Amex/Auto Loans/Cash/Pmts to MK | 1,205,709 | 142,486 | 1,348,195 |
| 98 Overdraft Fees | 3,430 | | 3,430 |
| Apparent Commerial Loans | 887,639 | 2,235,000 | 3,122,639 |
| Vesta Realty Amex | 3,181,899 | | 3,181,899 |
| 17 Unreviewed Checks | | 722,044 | 722,044 |
| Payment to YSA Investments LLC | | 975,000 | 975,000 |
| All Other Unknown | 372,291 | 7,037,226 | 7,409,518 |
| **Total Uses of Funds** | 9,427,860 | 52,673,554 | 62,101,414 |

**Confidential**

10/24/2025

Page 2

| *PRELIMINARY ACCOUNT ANALYSIS* | VESTA REALTY | VESTA HOLDINGS | |
|---|---|---|---|
| **Account** | **XXXXXX239O** | **XXXXXX5657** | **BOTH** |
| 1/1/2025 Beginning Balance | (132,971) | - | (132,971) |
| 2/28/2025 Ending Balance | 126 | 523,212 | 523,338 |
| **Change In Cash** | 133,097 | 523,212 | 656,309 |
| Average Daily Balance | (86,190) | 82,288 | (3,902) |
| Volume of Account Outflows | 10,208,757 | 58,782,927 | 68,991,683 |
| Turnover Per 40 Days | (118) | 714 | (17,680) |
| Turnover Per Calendar Month | (59) | 357 | (8,840) |
| Days with $0 balance or Less | 43% | 30% | 35% |
| **Daily Balances** | **XXXXXX239O** | **XXXXXX5657** | **BOTH** |
| 1/2/2025 | (208,755) | - | (208,755) |
| 1/3/2025 | 3,943 | 937 | 4,880 |
| 1/6/2025 | 1,219 | (0) | 1,219 |
| 1/7/2025 | (19,596) | (0) | (19,596) |
| 1/8/2025 | (99,757) | (0) | (99,757) |
| 1/9/2025 | 613 | 61 | 674 |
| 1/10/2025 | 761 | 119 | 880 |
| 1/13/2025 | 848 | 1 | 849 |
| 1/14/2025 | 492 | 229 | 721 |
| 1/15/2025 | 330 | 202,347 | 202,677 |
| 1/16/2025 | (217,212) | (0) | (217,212) |
| 1/17/2025 | 16,427 | 210,239 | 226,667 |
| 1/21/2025 | (70,993) | (0) | (70,993) |
| 1/22/2025 | 44 | (0) | 44 |
| 1/23/2025 | (192,320) | (0) | (192,320) |
| 1/24/2025 | 196 | (0) | 196 |
| 1/27/2025 | 729 | 1,597 | 2,327 |
| 1/28/2025 | 618 | (0) | 618 |
| 1/29/2025 | 596 | 186,626 | 187,222 |
| 1/30/2025 | 725 | 250,000 | 250,725 |
| 1/31/2025 | 907 | 71,609 | 72,516 |
| 2/3/2025 | (59,215) | 10,887 | (48,328) |
| 2/4/2025 | (72,724) | 661 | (72,063) |
| 2/5/2025 | 126 | 89,674 | 89,801 |
| 2/6/2025 | 1,540 | 174 | 1,715 |
| 2/7/2025 | 485 | 62,383 | 62,868 |
| 2/10/2025 | (103,797) | 10,610 | (93,187) |
| 2/11/2025 | (731,193) | 250,000 | (481,193) |
| 2/12/2025 | (62,015) | (0) | (62,015) |
| 2/13/2025 | 9,774 | 58,912 | 68,686 |
| 2/14/2025 | (293,038) | 109,530 | (183,508) |
| 2/18/2025 | (300,878) | 51,667 | (249,211) |
| 2/19/2025 | (201,729) | 61,446 | (140,284) |
| 2/20/2025 | 24,177 | 905 | 25,081 |
| 2/21/2025 | (128,377) | 257,000 | 128,623 |
| 2/24/2025 | (751,172) | 850,439 | 99,266 |
| 2/25/2025 | 0 | 20,968 | 20,969 |
| 2/26/2025 | 3 | 12 | 15 |
| 2/27/2025 | 503 | 9,256 | 9,760 |
| 2/28/2025 | 126 | 523,212 | 523,338 |

# EXHIBIT D

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

**FILED**
DISTRICT COURT
OKLAHOMA COUNTY, OKLAHOMA
December 9, 2025 3:42 PM
RICK WARREN, COURT CLERK
Case Number CJ-2025-7426

|  |  |  |
|---|---|---|
| CREO QRS NP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CJ-2025-7426 |
| | ) | |
| LOFTS AT NORTH PENN BEST LIVING | ) | |
| LLC, RASA FLOORS & CARPET | ) | |
| CLEANING, LLC, TRES PALM SUPPLY, | ) | |
| LLC d/b/a MAINTENANCE SUPPLY | ) | |
| SOLUTIONS, SWIFT FLOORING | ) | |
| SERVICES, LLC, SWIFT PEST | ) | |
| SERVICES, LLC, and YSA | ) | |
| INVESTMENTS 1, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED PETITION**
**FOR BREACH OF**
**PROMISSORY NOTE, FORECLOSURE OF**
**MORTGAGE AND APPOINTMENT OF A RECEIVER**

Plaintiff, CREO QRS NP LLC ("CREO") states as follows against the Defendant, Lofts at North Penn Best Living LLC ("Lofts"), Rasa Floors & Carpet Cleaning, LLC ("Rasa"), Tres Palm Supply, LLC d/b/a Maintenance Supply Solutions ("Maintenance"), Swift Flooring Services, LLC ("Swift Flooring"), Swift Pest Services, LLC ("Swift Pest"), and YSA Investments 1, LLC ("YSA"):

**THE PARTIES, JURISDICTION AND VENUE**

1. The real property ("Property") that is the subject of this action is located in Oklahoma County, Oklahoma. The Property is more particularly described in Exhibit A to the mortgage described below.

2. CREO is a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania.

3. Lofts is a Delaware limited liability company with its principal place of business in Overland Park, Kansas.

4. Rasa is a Texas limited liability company with its principal place of business in Carrollton, Texas.

5. Maintenance is a Texas limited liability company with its principal place of business in Dallas, Texas.

6. Swift Flooring is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

7. Swift Pest is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

8. YSA is a Delaware limited liability company with its principal place of business Dover, Delaware.

9. Jurisdiction and venue are proper in this Court.

### FIRST CAUSE OF ACTION
### (Loan Agreement and Promissory Note)

10. On or about December 29, 2021, Lofts executed and delivered to Cohen CREO LLC, a Delaware limited liability company ("Original Lender"), a Loan Agreement and a Promissory Note. A copy of the Promissory Note is attached to the original Petition filed herein (the "Petition") as Exhibit "1." Pursuant to the Loan Agreement and the Promissory Note, Original Lender agreed to loan to Lofts up to $28,900,000.00 (the "Loan").

11. Original Lender assigned its right, title and interest in and to the Promissory Note to CREO Lending LP, a Delaware limited partnership (the "First Interim Lender"), pursuant to that certain Allonge to Promissory Note dated as of December 29, 2021 (the "First Interim Allonge"). A copy of the First Interim Allonge is attached to the Petition as Exhibit "2-A."

2

12. Original Lender assigned its right, title and interest in and to the Loan Agreement and other loan documents to First Interim Lender, pursuant to that certain Assignment and Assumption of Agreements and Accounts dated as of December 29, 2021 (the "First Omnibus Assignment"). A copy of the First Omnibus Assignment is attached to the Petition as Exhibit "2-B."

13. First Interim Lender assigned its right, title and interest in and to the Promissory Note to CREO Lending S1 LLC, a Delaware limited liability company ("Second Interim Lender") pursuant to that certain Allonge to Promissory Note dated as of January 13, 2022 (the "Second Interim Allonge"). A copy of the Second Interim Allonge is attached to the Petition as Exhibit "3-A."

14. First Interim Lender assigned its right, title and interest in and to the Loan Agreement and other loan documents to Second Interim Lender, pursuant to that certain Assignment and Assumption of Agreements and Accounts dated as of January 13, 2022 (the "Second Omnibus Assignment"). A copy of the Second Omnibus Assignment is attached to the Petition as Exhibit "3-B."

15. Second Interim Lender assigned its right, title and interest in and to the Promissory Note to CREO pursuant to that certain Allonge to Promissory Note dated as of September 30, 2025 (the "CREO Allonge"). A copy of the CREO Allonge is attached to the Petition as Exhibit "4-A."

16. Second Interim Lender assigned its right, title and interest in and to the Loan Agreement and other loan documents to CREO, pursuant to that certain Assignment and Assumption of Agreements and Accounts dated as of September 30, 2025 (the "CREO Omnibus Assignment"). A copy of the CREO Omnibus Assignment is attached to the Petition as Exhibit "4-B."

17. Second Interim Lender and Lofts entered into that certain Extension Letter Agreement dated as of January 9, 2025 (the "Extension Letter"), in which Lofts agreed to, among other things, prepay the outstanding principal balance of the Loan in part in an amount equal to $500,000.00 (the "Prepayment Amount").

18. Lofts is in default under the terms of the Loan Agreement and the Promissory Note, among other grounds, because it failed (i) to pay the Prepayment Amount pursuant to the terms of the Extension Letter and (ii) to make the monthly debt service payments required pursuant to the Promissory Note and Loan Agreement prior to acceleration of the Loan by Second Interim Lender.

19. On August 20, 2025, Second Interim Lender sent an Acceleration and Demand for Payment Letter to Lofts, whereby Second Interim Lender notified Lofts of its election to accelerate the Loan and demand for payment in full of all sums due to Cohen under the Loan. The Loan remains unpaid.

20. CREO is the holder and owner of the Loan Agreement and the Promissory Note and is entitled to enforce the Loan Agreement and the Promissory Note.

21. Under the terms of the Loan Agreement and the Promissory Note, CREO is entitled to recover all reasonable costs (including reasonable attorneys' fees and other legal expenses) associated with CREO's efforts to collect sums owed by Lofts.

22. The current principal balance owed to CREO pursuant to the Loan Agreement and the Promissory Note is $26,000,000.00. Interest has accrued though November 9, 2025 at the non-default rate in the amount of $1,094,236.06 and at the default rate (5% per annum over the non-default rate) in the amount of $581,555.56. Interest continues to accrue at a floating rate of interest as provided in the Loan Agreement plus 5%. Additionally, CREO is entitled to accrued late charges of $54,862.29, an exit fee of $72,250.00, servicing fees of $7,106.67, and out of pocket

costs and expenses incurred through November 13, 2025 of $74,499.44. After application of funds held in a suspense account (Rate Cap Funds) in the amount of $161,396.65, tax escrow funds of $149,460.93, insurance escrow funds of $161,790.42, and CapEx reserve escrow funds of $138,103.49, the balance owed by Lofts is $27,273,758.16, plus interest accrued after November 9, 2025.

WHEREFORE CREO prays for judgment in its favor against Lofts upon its First Cause of Action for the principal sum of $26,000,000.00, interest accrued at the non-default rate though November 9, 2025 in the amount of $1,094,236.06, additional default interest accrued though November 9, 2025 in the amount of $581,555.56, interest accruing after August 20, 2025, at a floating rate of interest as provided in the Loan Agreement plus 5%, accrued late charges of $54,862.29, an exit fee of $72,250.00, lien release/assignment fees of $2,300.00, servicing fees of $7,106.67, out of pocket costs and expenses incurred through November 13, 2025 of $74,499.44 (less Rate Cap Funds, tax escrow funds, insurance escrow funds, and CapEx reserve escrow funds) costs of this action, reasonable attorneys' fees, and such other and further relief as the Court deems proper.

### SECOND CAUSE OF ACTION
### (Foreclosure of Mortgage)

23.    On or about December 29, 2021, to secure its obligations to Original Lender, Lofts made, executed, and delivered to Original Lender a Mortgage With Power Of Sale And Security Agreement And Fixture-Financing Statement (the "Mortgage") with respect to the Property, granting Original Lender a mortgage on the Property. The Mortgage was recorded on January 6, 2022, as Document 2022010601003523, Book 15023, Page 902, in the real estate records of the County Clerk of Oklahoma County, Oklahoma, with the required mortgage tax paid by Original Lender. A copy of the Mortgage is attached to the Petition as Exhibit "5."

5

24. Original Lender assigned its right, title and interest in and to the Mortgage to First Interim Lender, pursuant to that certain Assignment And Assumption Of Interest Under Mortgage With Power Of Sale And Security Agreement And Fixture-Financing Statement And Assignment Of Leases And Rents dated as of December 29, 2021 (the "First Mortgage Assignment"), and recorded on January 12, 2022, as Document 2022011201006605, Book 15029, Page 1377, in the real estate records of the County Clerk of Oklahoma County, Oklahoma. A copy of the First Mortgage Assignment is attached to the Petition as Exhibit "6."

25. First Interim Lender assigned its right, title and interest in and to the Mortgage to Second Interim Lender pursuant to that certain Assignment And Assumption Of Interest Under Mortgage With Power Of Sale And Security Agreement And Fixture Financing Statement And Assignment Of Leases And Rents dated as of January 13, 2022 (the "Second Mortgage Assignment"), and recorded on January 18, 2022, as Document 2022011801009297, Book 15034, Page 495, in the real estate records of the County Clerk of Oklahoma County, Oklahoma. A copy of the Second Mortgage Assignment is attached to the Petition as Exhibit "7."

26. Second Interim Lender assigned its right, title and interest in and to the Mortgage to CREO pursuant to that certain Assignment And Assumption Of Interest Under Mortgage With Power Of Sale And Security Agreement And Fixture-Financing Statement And Assignment Of Leases And Rents dated as of September 30, 2025 (the "CREO Mortgage Assignment"), and recorded on October 8, 2025, as Document 2025100801143405, Book 16251, Page 1820, in the real estate records of the County Clerk of Oklahoma County, Oklahoma. A copy of the CREO Mortgage Assignment is attached to the Petition as Exhibit "8."

27. CREO is the lawful holder of the Mortgage and by the terms and conditions thereof, it is provided that in the event of the failure to pay the indebtedness secured thereby, such

indebtedness, including all accrued interest thereon, shall, at the option of the lender, become immediately due and payable and that the Mortgage may be foreclosed.

28. The Mortgage specifically provides that if the Mortgage is placed in the hands of an attorney for collection, Lofts shall pay to CREO its reasonable attorneys' fees and expenses, together with all court costs and other legal expenses, appraisal fees, and other disbursements relating to the Property, all of which shall constitute obligations immediately due and payable, shall bear interest at the default rate and shall constitute secured indebtedness.

29. Lofts has defaulted under the Mortgage because, among other grounds, it failed to pay the Prepayment Amount pursuant to the terms of the Extension Letter.

30. CREO is the current holder of the Mortgage, has complied with all the terms, conditions and provisions of the Mortgage, and is entitled to enforce it according to its terms.

31. Rasa may claim some right, title, or interest in the Property by reason of a Mechanic's or Materialman's Lien Statement filed by Rasa on September 24, 2025 in the office of the County Clerk of Oklahoma County, document number 20250924011136561, Book 16236, Page 1338.

32. Maintenance may claim some right, title, or interest in the Property by reason of a Mechanic's or Materialman's Lien Statement filed by Maintenance on August 27, 2025 in the office of the Clerk of Oklahoma County, document number 2025082701123418, Book 16210, Page 278.

33. Swift Flooring may claim some right, title, or interest in the Property by reason of a Mechanic's or Materialman's Lien Statement filed by Maintenance on October 24, 2025 in the office of the Clerk of Oklahoma County, document number 2025102401153590, Book 16270, Page 526.

7

34. Swift Pest may claim some right, title, or interest in the Property by reason of a Mechanic's or Materialman's Lien Statement filed by Maintenance on October 24, 2025 in the office of the Clerk of Oklahoma County, document number 2025102401153600, Book 16270, Page 577.

35. YSA may claim some right, title, or interest in the Property by reason of a Mortgage filed by YSA on November 4, 2025 in the office of the Clerk of Oklahoma County, document number 20251104001158034, Book 16280, Page 723.

36. CREO seeks an *in rem* judgment in its favor against Lofts, Rasa, Maintenance, Swift Flooring, Swift Pest, and YSA foreclosing the CREO Mortgage and determining and declaring that the CREO Mortgage is a valid first and prior lien upon the Property, for and in the amount of the indebtedness owed to CREO, together with all unpaid *ad valorem taxes* owed to the State of Oklahoma though date of payment thereof, CREO's reasonable attorneys' fees, court costs, appraisal fees, expenses for title examination or title insurance, ad valorem taxes, and all accrued and accruing expenses of foreclosure herein, and ordering the lien of the Mortgage foreclosed and ordering Lofts's fee interest in the Property to be sold, with or without appraisement as CREO may elect at the time judgment is rendered, to satisfy the judgment herein, with the proceeds of said sale applied first to the costs herein, then to the payment and satisfaction of CREO's claims and judgment, with the surplus, if any, paid into Court to abide further order; determining the right, title, and interest of Lofts, Rasa, Maintenance, Swift Flooring, Swift Pest, and YSA and any person or entity claiming by or through Lofts, Rasa, Maintenance, Swift Flooring, Swift Pest, or YSA, in and to Lofts's fee interest in the Property to be subject, junior, and inferior to the mortgage lien of CREO, and adjudging that upon confirmation of the sale of Lofts's fee interest in the Property, Lofts, Rasa, Maintenance, Swift Flooring, Swift Pest, and YSA

8

and all persons or entities claiming by, through, or under them, be forever barred, foreclosed, and enjoined from asserting or claiming any right, title, interest, estate, or equity of redemption in or to Lofts's fee interest in the Property, or any part thereof; requesting an order of sale, issued from the office of the Court Clerk of Oklahoma County, Oklahoma directing the Sheriff of Oklahoma County to advertise and sell, as upon special execution and according to law, Lofts's fee interest in the Property, and for such other and further relief as the Court may deem just and proper under the circumstances.

WHEREFORE CREO prays for judgment in its favor against Lofts, Rasa, Maintenance, Swift Flooring, Swift Pest, and YSA upon its Second Cause of Action in rem against the Property for all amounts due under the Loan Agreement and the Promissory Note, (a) foreclosing the Mortgage, (b) granting CREO costs of this action including reasonable attorney's fees, and (c) such other and further relief as the Court deems proper.

### THIRD CAUSE OF ACTION
### (Receiver)

37. Among other remedies afforded CREO under the Mortgage in the event of a default, the Mortgage provides that CREO shall be entitled to have a receiver appointed to take possession of the Property.

38. 12 OKLA. STAT. § 1551(2)(c) authorizes appointment of a receiver by a district court where "a condition of the mortgage has not been performed and the mortgage instrument provides for the appointment of a receiver." As set forth above, this statutory condition has been met in the instant action because Lofts is in default upon its obligations to CREO under the Loan Agreement and Promissory Note. Accordingly, because the Mortgage expressly provides for it, CREO is entitled to appointment of a receiver to take possession, protect, maintain and preserve the Property.

9

WHEREFORE, CREO respectfully requests that this Court enter an Order Appointing

Receiver and for such order and further relief as the Court deems just and proper.

Respectfully submitted,

ROSS A. PLOURDE, OBA #7193
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Eighth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
405/235-9621
405/235-0439 (FAX)
ross.plourde@mcafeetaft.com

*Counsel For Plaintiff, CREO QRS NP LLC*

# CERTIFICATE OF SERVICE

This is to certify that on this 9th day of December 2025, a true and correct copy of the foregoing was mailed, postage prepaid, to:

Andrew A. Shank, OBA # 22298
Lacy B. Williamson, OBA #34004
ELLER & DETRICH, P.C.
2727 East 21st Street, Suite 200
Tulsa, Oklahoma 74114

Ross A. Plourde



Joel. E. Tasca
702-938-6869
joel.tasca@gtlaw.com

January 29, 2026

**VIA E-MAIL**

Sean J. Bellew, Esq.
BELLEW LLC
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808
Email:  sjbellew@bellewllc.com


Benjamin H. Brodsky, Esq.
Michael Fisher, Esq.
BRODSKY FOTIU-WOJTOWICZ, PLLC
44 West Flager Street, Suite 2200
Miami, Florida 33130

Email; bbrodsky@bfwlegal.com
Email: michael@bfwlegal.com


Re:     **Marc Kulick, et al. v. YSA Investments, LLC, C.A. No.: 2025-1319-MTZ**


Dear Counsel:

You are hereby notified that YSA Investments 1 LLC ("YSA"), as secured party, in the exercise of its rights as secured party under the Collateral Pledge and Security Agreements among YSA and Marc Kulick, Vesta Holdings, LLC and Asset Holder, LLC (collectively "Debtors") and under applicable law, has foreclosed its security interest and taken control of 100% of the membership interests pledged to YSA of the entities set forth on the attached Exhibit A. (the "Collateral").

YSA is not taking the Collateral in full or partial satisfaction of the debt Debtors owe to YSA, and no such agreement with Debtors exists. YSA's control of its Collateral is expressly authorized under Section 9-207 of the Uniform Commercial Code, and any other applicable

---

**Greenberg Traurig, LLP | Attorneys at Law**

10845 Griffith Peak Drive  |  Suite 600  |  Las Vegas, Nevada 89135  |  T +1 702.792.3773  |  F +1 702.792.9002

Albany. Amsterdam. Atlanta. Austin. Berlin˙ Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Kingdom of Saudi Arabia˙. Las Vegas. London˙. Long Island.  Los Angeles.  Mexico City˙ Miami.  Milan˙. Minneapolis.  Munich˙. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia.  Phoenix. Portland.  Sacramento.  Salt Lake City.  San Diego.  San Francisco.  São Paulo˙.  Seoul˙.  Shanghai.  Silicon Valley.  Singapore˙.  Tallahassee.  Tampa.  Tel Aviv˙.  Tokyo˙. United Arab Emirates˙ Warsaw˙. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¬Greenberg Traurig Germany, LLP; «Greenberg Traurig Khalid Al-Thebity Law Firm; *A separate UK registered legal entity; +Greenberg Traurig, S.C.; » Greenberg Traurig Studio Legale Associato; ›Greenberg Traurig Brazil Consultores em Direito Estrangeiro – Direito Estadunidense; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; "Greenberg Traurig Singapore LLP; ^A branch of Greenberg Traurig, P.A., Florida, USA; ≡GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ‹Greenberg Traurig Limited; ~Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k..

www.gtlaw.com

January 29, 2026
Page Two

provision of the Code or other law, and the parties' loan documents.  YSA intends to possess and operate the Collateral to preserve the value of its Collateral in the hope to enhance its value in any future disposition, which would directly benefit the Debtors. Any proceeds obtained from such future disposition in excess of the amount that Debtors owe YSA shall be remitted to Debtors in accordance with applicable law.

YSA's actions are necessary due to Mr. Kulick's mismanagement, fraud, and other financial improprieties regarding the Collateral, as he admitted during his deposition and has been shown through documentary evidence.

Best Regards,

Joel. E. Tasca

JET/pl
Enc.

# EXHIBIT A

BARTLESVILLE BEST LIVING, LLC

SHORELINE'S BEST LIVING, LLC

SPRINGDALE VILLAGE TIC 1, LLC

SPRINGDALE VILLAGE TIC 2, LLC

SPRINGDALE VILLAGE TIC 3, LLC

SPRINGDALE VILLAGE'S BEST LIVING, LLC

A-V 23 EAST OWNERS, LLC

A-V CLASSEN OWNER, LLC

A-V VILLAGE CREEK OWNER, LLC

AUERBACH-VESTA, LLC

BARCELONA BEST LIVING, LLC

BRYAN HILLS BEST LIVING, LLC

EATON PLACE TIC 1 LLC

FAIRFAX HOLDING COMPANY LLC

LAKESIDE BEST LIVING LLC

LOFTS AT NORTH PENN BEST LIVING LLC

MONTGOMERY APARTMENT HOLDINGS, LLC

MONTGOMERY BEST LIVING, LLC

MUNTAGE BEST LIVING, LLC

NAE CANOPY APARTMENTS, LLC

OKC3 INVESTORS LLC

ONE ETON TIC 1 LLC

REMINGTON RANCH BEST LIVING LLC

RIDGE BEST LIVING INVESTORS LLC

RIDGE BEST LIVING, LLC

RIVER WALK BEST LIVING, LLC

RIVERPARK BEST LIVING, LLC

SUMMER OAKS BEST LIVING LLC

TUSCANY VILLAGE BEST LIVING LLC

VESTA-SEMINOLE RIDGE LLC

VILLAS AT MIDTOWN BEST LIVING LLC

W.M. BEST LIVING OWNER, LLC

W.O. SOLE MEMBER LLC

WOODLAND OAKS BEST LIVING LLC

JENKS BEST LIVING LLC

LOUIS INVESTMENTS LLC

LS APARTMENT SPONSOR LLC

RIVER WALK SPONSOR LLC

RIVERPARK BEST LIVING INVESTORS LLC

SEMINOLE RIDGE APARTMENTS HOLDINGS LLC

SEMINOLE RIDGE SPONSOR LLC

TUSCANY VILLAGE SPONSOR LLC

B&J WOODSCAPE / OKLAHOMA CITY, LLC

COPPERFIELD APARTMENTS, LP

ACTIVE 718562048v1



## BRODSKY FOTIU-WOJTOWICZ

February 2, 2026

**VIA EMAIL**

Joel Tasca, Esq.
Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
joel.tasca@gtlaw.com

> **Re:** **Marc Kulick, et al. v. YSA Investments, LLC, C.A. No.: 2025-1319-MTZ**

Mr. Tasca:

We write with respect to your letter dated January 29, 2026 in which you notified Marc Kulick, Vesta Holdings, LLC and Asset Holder, LLC that YSA Investments 1 LLC ("YSA") had purportedly "foreclosed its security interest and taken control of 100% of the membership interests pledged to YSA" of certain entities listed on Exhibit A to the letter.

YSA does not have a security interest in any of the listed membership interests, and therefore does not have the right to take any action with respect to them. Accordingly, we consider your letter a nullity.

We also deny your statements that Mr. Kulick has committed any mismanagement, fraud, or other financial improprieties, that he admitted to misconduct at his deposition, or that documentary evidence supports your allegations.

All rights are reserved and none are waived.

Sincerely yours,

Benjamin H. Brodsky

---

BENJAMIN H. BRODSKY, ESQ.                                    44 W. FLAGLER ST., SUITE 2200
WWW.BFWLEGAL.COM                                              MIAMI, FLORIDA 33130
BBRODSKY@BFWLEGAL.COM                                 T. 305-503-5054 F. 786-749-7644

# EXHIBIT 13

EXHIBIT 13

EFiled:  Feb 11 2026 04:40PM EST
Transaction ID 78449646
Case No. 2025-1319-KSJM

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> YSA INVESTMENTS 1, LLC, <br><br> Defendant, | C.A. No. 2025-1319-KSJM |

YSA INVESTMENTS 1, LLC,

      Counterclaimant and Third-Party Plaintiff,

    v.

MARC KULICK, VESTA HOLDINGS LLC, BARTLESVILLE BEST LIVING, LLC; SHORELINE'S BEST LIVING, LLC; SPRINGDALE VILLAGE TIC 1 LLC; SPRINGDALE VILLAGE TIC 2, LLC; SPRINGDALE VILLAGE TIC 3, LLC; SPRINGDALE VILLAGE'S BEST LIVING, LLC; A-V 23 EAST OWNERS, LLC; A-V CLASSEN OWNER, LLC; A-V VILLAGE CREEK OWNER, LLC; AUERBACH-VESTA, LLC; BARCELONA BEST LIVING, LLC; BRYAN HILLS BEST LIVING, LLC; EATON PLACE TIC 1 LLC; FAIRFAX HOLDING COMPANY, LLC; LAKESIDE BEST LIVING LLC; LOFTS AT NORTH PENN BEST LIVING LLC;; MONTGOMERY APARTMENT HOLDINGS, LLC; MONTGOMERY BEST LIVING, LLC; MUNTAGE BEST LIVING,

1

LLC; NAE CANOPY APARTMENTS, LLC;
OKC3 INVESTORS LLC; ONE ETON TIC 1
LLC; REMINGTON RANCH BEST LIVING
LLC; RIDGE BEST LIVING INVESTORS
LLC; RIDGE BEST LIVING, LLC; RIVER
WALK BEST LIVING, LLC; RIVERPARK
BEST LIVING, LLC; SUMMER OAKS
BEST LIVING LLC; TUSCANY VILLAGE
BEST LIVING LLC; VESTA-SEMINOLE
RIDGE LLC; VILLAS AT MIDTOWN BEST
LIVING LLC; W.M. BEST LIVING
OWNER, LLC; W.O. SOLE MEMBER LLC;
WOODLAND OAKS BEST LIVING LLC;
JENKS BEST LIVING LLC; LOUIS
INVESTMENTS LLC; LS APARTMENT
SPONSOR LLC; RIVER WALK SPONSOR
LLC; RIVERPARK BEST LIVING
INVESTORS, LLC; SEMINOLE RIDGE
APARTMENTS HOLDINGS LLC;
SEMINOLE RIDGE SPONSOR LLC;
TUSCANY VILLAGE SPONSOR LLC;
VESTA HOLDINGS, LLC; 206 QUEEN
ANNE CLUB LLC; B&J WOODSCAPE /
OKLAHOMA CITY, LLC; AND
COPPERFIELD APARTMENTS, LP, and
related entities, identified presently as DOES
1-100 and ROES 1-100,

      Counterdefendants and
      Third-Party Defendants.

**YSA INVESTMENT LLC'S AMENDED ANSWER AND AFFIRMATIVE
DEFENSES TO VERIFIED AMENDED COMPLAINT
AND VERIFIED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

    YSA Investments 1, LLC's ("YSA"), by and through its undersigned counsel,

hereby answers the allegations contained in the Verified Amended Complaint (the

"Complaint") of plaintiffs Marc Kulick, Vesta Holdings, LLC, and Asset Holder, LLC (collectively "Plaintiffs").

Defendant is not responding to the headings in the Complaint; to the extent a response is required, any allegations contained in the headings are denied. The Prayer for Relief in the Complaint does not contain allegations of fact and is therefore omitted from this Answer. Unless expressly admitted, all allegations contained in the Complaint are denied. YSA reserves the right to amend and/or supplement this Answer.

PARAGRAPH NO. 1:

Plaintiffs Marc Kulick ("Kulick"), Vesta Holdings, LLC ("Vesta Holdings"), and Asset Holder, LLC ("Asset Holder") (collectively, "Plaintiffs") file this Complaint against YSA Investments 1, LLC ("Defendant") for equitable and declaratory relief.

RESPONSE TO PARAGRAPH NO. 1:

Admitted.

PARAGRAPH NO. 2:

YSA, a hard money lender led by a notorious felon, has unlawfully recorded over two dozen second mortgages against real property, attached hereto as Exhibit A, as part of an extortive scheme to extract unearned fees and interest from Plaintiffs. YSA's recording of these second mortgages, including a second mortgage on Kulick's personal residence, is incorrectly premised on "Power of Attorney" clauses in a security agreement and guaranty with Plaintiffs that, as a matter of law and fact, do not provide such rights. YSA is not in any contractual privity whatsoever with the title owners of these properties and has no right under Delaware law to exercise the Power of Attorney clauses in this outrageous manner. To tighten the noose, YSA is demanding an eye-popping $900 million payoff to satisfy its debt and release its mortgages. To put this absurd,

3

extortionate number into context, YSA has made $7 million worth of loans over the last year and has been paid back $8 million. In truth, YSA does not want to be paid off—it wants to squeeze Plaintiffs into submission.

RESPONSE TO PARAGRAPH NO. 2:

YSA admits that it made hard money loans to Plaintiffs. YSA denies all other allegations contained herein.

PARAGRAPH NO. 3:

The recording of these unauthorized mortgages—which far exceeds any rights YSA has under the Power of Attorney clauses or otherwise—constitutes a slander of title, threatens a default under the institutional first mortgages given by the title owners, exposes Plaintiffs to an enormous and unjustified amount of liability, and creates an inability to alienate property that is causing them ongoing and irreparable injury, justifying expedited action by this Court. In fact, the second mortgages have already scuttled a closing on one property and threaten do so on several other properties in the immediate future.

RESPONSE TO PARAGRAPH NO. 3:

Denied.

### PARTIES, JURISDICTION, & VENUE

PARAGRAPH NO. 4:

Marc Kulick is an individual residing in Oklahoma.

RESPONSE TO PARAGRAPH NO. 4:

YSA lacks information sufficient to admit or deny the allegations in this paragraph and on that basis denies the same.

PARAGRAPH NO. 5:

Vesta Holdings, LLC is an Oklahoma limited liability company formed and

4

organized under the laws of Oklahoma.

RESPONSE TO PARAGRAPH NO. 5:

YSA lacks information sufficient to admit or deny the allegations in this

paragraph and on that basis denies the same.

PARAGRAPH NO. 6:

Asset Holder, LLC is an Oklahoma limited liability company formed and
organized under the laws of Oklahoma.

RESPONSE TO PARAGRAPH NO. 6:

YSA lacks information sufficient to admit or deny the allegations in this

paragraph and on that basis denies the same.

PARAGRAPH NO. 7:

YSA Investments 1, LLC is a Delaware limited liability company formed and
organized under the laws of Delaware.

RESPONSE TO PARAGRAPH NO. 7:

Admitted.

PARAGRAPH NO. 8:

This Court has subject matter jurisdiction pursuant to 10 Del. C. § 341 and §
6501, as Plaintiffs seek equitable and declaratory relief including a mandatory
injunction to cancel or otherwise rescind the slanderous mortgages.

RESPONSE TO PARAGRAPH NO. 8:

Denied.

PARAGRAPH NO. 9:

Further, jurisdiction and venue are proper because the "Power of Attorney" clauses relied upon by YSA to record the mortgages are contained in a Collateral Pledge and Security Agreement ("CPSA") and Guaranty that select the State of Delaware as the governing forum for all disputes arising thereunder.

RESPONSE TO PARAGRAPH NO. 9:

YSA admits that the loan documents include a forum selection clause and a

Power of Attorney, and respectfully refers the Court to the loan documents for a

complete and accurate description of its contents.

PARAGRAPH NO. 10:

YSA agreed in the loan documents that, in the event of its gross negligence or willful misconduct, Plaintiffs would be entitled to issuance of an injunction and their irreparable harm would be presumed.

RESPONSE TO PARAGRAPH NO. 10:

YSA admits that remedies are provided for in the loan documents and

respectfully refers the Court to those documents for a complete and accurate

description of their contents.

**GENERAL ALLEGATIONS**

PARAGRAPH NO. 11:

Kulick is an individual residing in Oklahoma. Kulick is the founder, Chief Executive Officer, and principal of Vesta Holdings and Asset Holder. Kulick is also the founder and Chief Executive Officer of Vesta Capital, LLC and Vesta Realty, LLC. Vesta Capital, LLC is a fully integrated real estate investment firm specializing in the acquisition and renovation of multifamily communities across Arkansas, Kansas, and Oklahoma. Vesta Realty, LLC is a wholly owned subsidiary of Vesta Capital and is a property management company that ensures operational control and real-time monitoring of Vesta Capital's property

6

RESPONSE TO PARAGRAPH NO. 11:

YSA lacks information sufficient to admit or deny the allegations in this paragraph and on that basis denies the same.

PARAGRAPH NO. 12:

YSA is a hard money lender based out of Miami, Florida, and led by a notorious felon, Efraim Diveroli, who was convicted for conspiring to defraud the United States government out of hundreds of millions of dollars by misrepresenting the source of arms and ammunition.

RESPONSE TO PARAGRAPH NO. 12:

YSA admits that it made hard money loans to Plaintiffs at their request and that Efraim Diveroli is its principal and that he was convicted of a felony more than a decade ago.

PARAGRAPH NO. 13:

Pursuant to the needs of the Vesta entities, starting in October 2024, Plaintiffs and other entities owned and controlled by Kulick entered several loan transactions with YSA. The interest rates on these loans started at an extremely high annual rate of 100% and spiraled into ever excessive rates, topping out at an eye-popping and exploitative 7,000% per annum in July 2025.

RESPONSE TO PARAGRAPH NO. 13:

YSA admits that it provided funds to Kulick based on repayment terms proposed by Plaintiffs on numerous occasions between October 2024 and July 2025.

PARAGRAPH NO. 14:

In total, Kulick and his entities borrowed $7,338,166.66 in principal from YSA. Kulick and his entities have repaid YSA $8,188,750.00.

7

## RESPONSE TO PARAGRAPH NO. 14:

Denied. YSA loaned Plaintiffs more than $7.8 million in principal.

## PARAGRAPH NO. 15:

As part of the loan transactions, Kulick's entities, including the other Plaintiffs Vesta Holdings and Asset Holder, executed Collateral Pledge and Security Agreements in favor of YSA, all of which are essentially identical. Additionally, Kulick executed a Guaranty and ROFO (Right of First Offer) for each of the transactions, all of which were also essentially identical.

## RESPONSE TO PARAGRAPH NO. 15:

Admitted. YSA refers the Court to the Collateral Pledge and Security Agreements and Guaranty and Right of First Offer for a complete and accurate description of their contents.

## PARAGRAPH NO. 16:

The Collateral Pledge and Security Agreements (the "February CPSA," attached hereto as Exhibit B) and Guaranty and ROFO (the "February Guaranty," attached hereto as Exhibit C) upon which YSA purports to rely on in recording the Second Mortgages are from a loan transaction made as of February 18, 2025. To secure repayment of the loan, the February CPSA collateralized the limited liability company interests held by Asset Holder and Vesta Holdings in seventeen Delaware limited liability companies: Capitol on 28th Investors, LLC; Remington Ranch Investors, LLC; Copperfield Investors, LLC; Putnam Investors, LLC; Woodscape Investors, LLC; Barcelona Best Living, LLC; Riverpark Best Living Investors, LLC; Montgomery Vesta Investors, LLC; Fairfax Holding Company, LLC; OKC3 Investors, LLC; Eton Investor, LLC; Eaton Place Investors, LLC; W.O. Holding Co., LLC; Regency Holdings, LLC; Woodland Manor Holdings, LLC; 727-Classes Best Living Investors, LLC; and Muntage Vesta Investors, LLC (the "Intermediate Holding LLCs").

## RESPONSE TO PARAGRAPH NO. 16:

YSA admits that the loan documents pledge collateral. YSA respectfully

refers the Court to the documents for a complete and accurate description of their contents.

PARAGRAPH NO. 17:

The Intermediate Holding LLCs have fractional beneficial interests in some but not all the Title Owners, which are defined below. All but one of the Intermediate Holding LLCs, Barcelona Best Living, LLC, hold their beneficial interests in a Title Owner through one or more additional levels of holding companies.

RESPONSE TO PARAGRAPH NO. 17:

YSA lacks information sufficient to admit or deny the allegations in this paragraph and on that basis denies the same.

PARAGRAPH NO. 18:

The February CPSA contains a Power of Attorney clause at Section 4.6, which provides as follows:

[Asset Holder] and [Vesta Holdings] each appoint [Defendant] as its/his/her/their attorney-in-fact with full power in [Asset Holder's] and [Vesta Holdings'] name and behalf to do every act that [Asset Holder] and [Vesta Holdings] are obligated to do or may be required to do hereunder or to do all other things which [Defendant] is permitted to do under this Agreement or any other Loan Documents or are necessary to carry out this Agreement or the other Loan Documents; however, nothing in this section shall be construed to obligate [Defendant] to take any action hereunder. Through exercise of this irrevocable power of attorney, [Defendant] may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to [Defendant]. This shall include but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither [Defendant] nor any of its officers, managers, employees or agents of [Defendant] will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted

9

from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, [Defendant] shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

RESPONSE TO PARAGRAPH NO. 18:

YSA admits that the CPSA contains a Power of Attorney clause, and the YSA respectfully refers the Court to the loan documents for a complete and accurate description of their contents.

PARAGRAPH NO. 19:

The February CPSA also contains a Joinder, titled "Joinder of Borrowed-Affiliated Entities," which provides:

The undersigned [Kulick], as manager, member or other authorized person of any and all Guarantor Entities and any other entities [] which the undersigned does now own or control or may herein after own or control during the term of that certain [CPSA] hereby agrees to jointly and severally assume all obligations of Pledgor under the [CPSA] for all purposes thereof on the terms set forth therein and to be bound by the terms as fully as if the undersigned has personally and individually executed and delivered the [CPSA] as of the date thereof.

RESPONSE TO PARAGRAPH NO. 19:

YSA admits that there is a Joinder and respectfully refers the Court to the loan documents for a complete and accurate description of its contents.

PARAGRAPH NO. 20:

The February Guaranty also contains a Power of Attorney clause at Section 7.h, which provides as follows:

[Kulick] appoints [Defendant] as its/his/her attorney-in-fact with full power in [Kulick]'s name and behalf to do every act that [Kulick] is obligated to do or may be required to do hereunder; however, nothing in this section shall be construed to obligate [Defendant] to take any action hereunder. The power of attorney

10

hereby created is a power coupled with an interest and shall be irrevocable. Through exercise of this irrevocable power of attorney, [Defendant] may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to [Defendant]. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Neither [Defendant] nor any of its officers, managers, employees or agents of [Defendant] will be liable for any acts of commission or omission nor for any error in judgment or mistake of fact or law unless the same shall have resulted from gross negligence or willful misconduct. Notwithstanding anything to the contrary above, [Defendant] shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

RESPONSE TO PARAGRAPH NO. 20:

YSA admits that there is a Power of Attorney clause in the Guaranty and respectfully refers the Court to the loan documents for a complete and accurate description of its contents.

PARAGRAPH NO. 21:

On October 31, 2025, Defendant recorded second mortgages against at least twenty-five properties. *See* Exhibit A.

RESPONSE TO PARAGRAPH NO. 21:

Admitted.

PARAGRAPH NO. 22:

The properties (hereafter "Properties") at issue in this case are multifamily apartment complexes located in Oklahoma and Kansas and owned by A-V 23 East Owner, LLC; 727 Lofts Best Living LLC; Barcelona Best Living LLC; Bryan Hill's Best Living LLC; TRDWind Capitol LLC; A-V Classen Owner LLC; Copperfield Apartments LP; Fairfax Best Living LLC; Lakeside Best Living LLC; Bartlesville Best Living LLC; Lofts at North Penn Best Living LLC; Montgomery Best Living LLC; Muntage Best Living LLC; One Eton

11

Square LLC; Ridge Best Living LLC; Riverpark Best Living LLC; Shoreline's Best Living LLC; Springdale Village's Best Living, LLC; Summer Oaks Best Living, LLC; Ridge Best Living LLC; Jenk's Best Living LLC; A-V Village Creek Owner LLC; Villas at Midtown Best Living LLC; Woodland Manor's Best Living LLC; Woodland Oaks Best Living LLC; B & J Woodscape/Oklahoma City LLC; and Easton Best Living, LLC (together the "Title Owners").

RESPONSE TO PARAGRAPH NO. 22:

YSA admits that the properties at issue are multifamily complexes located in Oklahoma and Kansas. Defendant lacks information sufficient to admit or deny the remaining allegations in this paragraph and on that basis denies the same.

PARAGRAPH NO. 23:

Even though the Title Owners, not Plaintiffs, are their owners, Defendant has purported to record these second mortgages against the Properties under the Power of Attorney clauses that, on their face, do not and cannot confer authority to mortgage the real property discussed herein.

RESPONSE TO PARAGRAPH NO. 23:

Denied.

PARAGRAPH NO. 24:

Defendant also recorded a mortgage against Kulick's personal residence in Oklahoma City, Oklahoma even though the Guaranty he signed provides Defendant no such rights. A copy of the recorded mortgage against Kulick's personal residence is attached hereto as Exhibit D.

RESPONSE TO PARAGRAPH NO. 24:

YSA admits it recorded a mortgage against real property in Oklahoma City, Oklahoma. YSA denies any remaining allegations.

12

PARAGRAPH NO. 25:

Following the recording of those second mortgages, on November 5, 2025, Defendant brought a civil action against Kulick and others, alleging breach of contract and unjust enrichment with respect to four of the loan transactions referenced herein. The civil action is *YSA Investments 1, LLC v. Marc Kulick, et al.*, Case No. N25C-10-309 KMM (Del. Super. Ct.).

RESPONSE TO PARAGRAPH NO. 25:

Admitted. YSA respectfully refers the Court to the complaint in *YSA Investments 1, LLC v. Marc Kulick, et al.*, Case No. N25C-10-309 KMM for a complete and accurate description of its contents.

PARAGRAPH NO. 26:

Before and since the filing of that suit, Defendant, through Diveroli, has engaged in what can only be described as an extortion scheme. This includes, but is not limited to, threatening to file an Amended Complaint that would allege fraud against Mr. Kulick's wife, business partner, and even his attorneys (for providing advice to their client). Defendant has also threatened to send preservation letters to entities and persons for which it has no reason to believe has relevant information in this suit, including, for example, Mr. Kulick's personal rabbi. Such preservation notices would serve no other purpose than to embarrass and humiliate Mr. Kulick in the communities in which he belongs.

RESPONSE TO PARAGRAPH NO. 26:

Denied.

PARAGRAPH NO. 27:

The alternative Defendant, through Diveroli, has provided Plaintiffs is perhaps even worse than its threats. Notwithstanding that it has been repaid its principal in full and more, Defendant has only offered to dismiss its suit and not proceed with its extortion scheme in exchange for payment of $20 million with the extreme default penalty of deeds-in-lieu of foreclosure for each of the Properties (which Plaintiffs are powerless to provide) and a confession of judgment of $850

13

million. In the meantime, while waiting to be paid its extortive settlement, Defendant would maintain the unlawful second mortgages on the properties owed by the Title Owners and file additional second mortgages.

RESPONSE TO PARAGRAPH NO. 27:

YSA admits that it has engaged in conversations with Plaintiffs regarding potential settlement of YSA's claims, but denies Plaintiffs' characterization and publication of those settlement discussions. YSA denies all remaining allegations, if any.

PARAGRAPH NO. 28:

On December 2, 2025, Defendant informed Plaintiffs that it would "limit" the amount owed to approximately $900 million dollars, despite having lent only $7 million over the last year and having received $8 million in repayments.

RESPONSE TO PARAGRAPH NO. 28:

Denied.

PARAGRAPH NO. 29:

Defendant's extortion scheme is already causing significant harm Muntage Best Living LLC was under contract with Greenlite Holdings, LLC to sell the real property it owns. However, because the title underwriter indicated that the transaction would not be able to close absent satisfaction of Defendant's unlawful second mortgage, that transaction was unable to close.

RESPONSE TO PARAGRAPH NO. 29:

Denied.

PARAGRAPH NO. 30:

Making this situation further intolerable for Plaintiffs is Defendant's $900 million payoff demand, an extortive and criminally usurious amount that

14

prevents Plaintiffs from satisfying the illegitimate second mortgages.

RESPONSE TO PARAGRAPH NO. 30:

Denied.

PARAGRAPH NO. 31:

As part of extracting themselves from what can only be characterized as a loan sharking scheme, Plaintiffs have been forced to file this suit for a declaratory judgment that the second mortgages are unlawful and unauthorized and for a mandatory injunction that they be cancelled or rescinded from the public records.

RESPONSE TO PARAGRAPH NO. 31:

Denied, except YSA admits that Plaintiffs filed this suit for declaratory judgment and for mandatory injunctive relief.

PARAGRAPH NO. 32:

This relief must be granted for several reasons. *First*, Defendant does not have any rights, secured or otherwise, with respect to the Title Owners or the Properties. The Power of Attorney under the February CPSA, which Defendant contends gives it the right to record the second mortgages, appoints Defendant as Plaintiffs' attorney-in-fact with respect to the "Collateral"—i.e., Asset Holder and Vesta Holdings' limited liability company interests in the Intermediate Holding LLCs. As the attorney-in-fact, Defendant is permitted to take "any action against any of the Collateral or any real or personal property owned by the Collateral."

RESPONSE TO PARAGRAPH NO. 32:

Denied.

PARAGRAPH NO. 33:

The Collateral—Asset Holder and Vesta Holding's limited liability company interests in the Intermediate Holding LLCs—does not own the Properties.

15

Indeed, the membership interests do not own anything. Some of the Title Owners—A-V 23 East Owner LLC, Lakeside Best Living LLC, Bartlesville Best Living LLC, Lofts at North Penn Best Living LLC, Shoreline's Best Living LLC, Ridge Best Living LLC, THRIVE Argenta Owner LLC, Jenk's Best Living LLC, A-V Village Creek Owner LLC, and Villas at Midtown Best Living, LLC—are not owned by any of the Intermediate Holding LLCs and do not otherwise have any connection to them. And even if the collateralized limited liability company interests could be stretched to encompass the entirety of the Intermediate Holding LLCs themselves, these entities own, only indirectly, a fractional interest in some of the Title Owners, which in turn own the Properties. Yet Defendant has recorded the second mortgages against the Properties owned by the Title Owners with which Defendant has no contractual privity and against which Defendant has no rights whatsoever. The Power of Attorney clause in the February Guaranty is narrower than the one contained in the February CPSA and similarly provides no rights to Defendant with respect to Title Owners, the Properties, or to Kulick's personal residence.

RESPONSE TO PARAGRAPH NO. 33:

Denied.

PARAGRAPH NO. 34:

The Joinder does not alter this analysis. The Joinder extends the Power of Attorney clauses to entities which Kulick individually owns or controls. But Kulick does not individually own or control any of the Title Owners such that the Joinder would give Defendant any rights to mortgage their properties. And even if the import of the Joinder was to make every Title Owner and holding company a Pledgor under the February CPSA, the Joinder, at most, provides Defendant with a secured interest in the Title Owners' limited liability company interests, which does not translate to a right to a secured interest in the Title Owners' assets. Under the CPSA, the "Collateral" in which Defendant has a security interest are limited liability company interests owned by the Pledgors. (Ex. B, CPSA § 1.1(a).) The limited liability company interests owned by the Pledgors (including, *arguendo*, those of the Title Owners) do not own the Properties or have any cognizable rights to the entities' assets under 6 Del. C. § 18-701.

16

RESPONSE TO PARAGRAPH NO. 34:

Denied. YSA respectfully refers the Court to the Joinder and Power of Attorney clauses for a complete and accurate description of their contents.

PARAGRAPH NO. 35:

*Second*, even if the Power of Attorney clauses could be stretched so far as to include rights held by the Title Owners, under 6 Del. Code § 18-702(a), those rights necessarily would not include the control rights necessary to record the Second Mortgages on the Properties. This is because control rights inherent in a limited liability company interest may not be assigned absent a provision in the operating agreement of that limited liability company permitting such an assignment or, alternatively, an affirmative vote or written consent of all members of the LLC permitting such an assignment. None of the operating agreements of the Intermediate Holding LLCs or the Title Owners contain such a right, and Defendant did not receive an affirmative vote or written consent of all members of any of the entities permitting such an assignment. Therefore, the Power of Attorney clause that purports to give Defendant rights to take actions on behalf of the collateralized "membership interests" in the Properties is of no legal effect.

RESPONSE TO PARAGRAPH NO. 35:

Denied. YSA respectfully refers the Court to the Power of Attorney clauses for a complete and accurate description of their contents.

PARAGRAPH NO. 36:

*Third*, taking it even further, even if Defendant were to receive such control rights through Kulick, Asset Holder, and/or Vesta Holdings, none of their control rights contain the right to unilaterally mortgage the Properties held by the Title Owners. As attorney-in-fact, Defendant's rights can extend no further than those held by the principal for which it has been appointed an agent. Nor did Defendant have the apparent authority on behalf of the principals for purposes of the Second Mortgages (i.e., the Title Owners), as the Title Owners never manifested Kulick's authority to permit Defendant to record the second mortgages.

17

RESPONSE TO PARAGRAPH NO. 36:

Denied.

PARAGRAPH NO. 37:

Defendant's recording of these second mortgages was therefore made without any authority, in violation of the loan documents, and plainly unlawful.

RESPONSE TO PARAGRAPH NO. 37:

Denied.

PARAGRAPH NO. 38:

Defendant's recording of the second mortgages has harmed Plaintiffs' indirect economic interest in the Properties and has exposed them to vast potential liability as manager and/or operator of the Properties.

RESPONSE TO PARAGRAPH NO. 38:

Denied, except YSA admits that Plaintiffs are the manager(s) and/or operator(s) of the Properties.

## COUNT I: DECLARATORY JUDGMENT

PARAGRAPH NO. 39:

Plaintiffs re-allege and incorporate by reference the allegations preceding the first count of this complaint as if fully set forth herein.

RESPONSE TO PARAGRAPH NO. 39:

YSA incorporates by reference its responses to all of the preceding paragraphs as if set forth fully in this response.

PARAGRAPH NO. 40:

An actual controversy exists between Plaintiffs and Defendant regarding the validity of the second mortgages. This controversy is real, adverse and ripe for judicial determination.

RESPONSE TO PARAGRAPH NO. 40:

Denied.

PARAGRAPH NO. 41:

Defendant contends that it was within its rights to record the second mortgages while Plaintiff contends that this recording was unlawful, a breach of and gross overextension of the Power of Attorney clauses, part of an extortive scheme and that the second mortgages are invalid and should be cancelled or extinguished.

RESPONSE TO PARAGRAPH NO. 41:

YSA admits that it was within its rights to record the second mortgages and that Plaintiffs contend otherwise. YSA denies any remaining allegations.

PARAGRAPH NO. 42:

Therefore, Plaintiffs are entitled to a declaration that the second mortgages were recorded without right and in breach and violation of the Power of Attorney clauses, are void, of no legal effect, and not enforceable against the Properties.

RESPONSE TO PARAGRAPH NO. 42:

Denied.

PARAGRAPH NO. 43:

Plaintiffs re-allege and incorporate by reference the allegations preceding the first count of this complaint as if fully set forth herein.

19

RESPONSE TO PARAGRAPH NO. 43:

YSA incorporates by reference its responses to all of the preceding paragraphs

as if set forth fully in this response.

PARAGRAPH NO. 44:

The second mortgages on the Properties, even though invalid, remain of record
and are causing irreparable harm to Plaintiffs.

RESPONSE TO PARAGRAPH NO. 44:

Denied.

PARAGRAPH NO. 45:

Defendant's recording of the second mortgages was unlawful, a breach of and
gross overextension of the Power of Attorney clauses, and part of an extortive
scheme.

RESPONSE TO PARAGRAPH NO. 45:

Denied.

PARAGRAPH NO. 46:

Defendant's recording of the second mortgages has scuttled the closing of one
real estate transaction and threaten to obstruct many more. The second
mortgages have caused, and will continue to cause, significant financial harm to
Plaintiffs.

RESPONSE TO PARAGRAPH NO. 46:

Denied.

PARAGRAPH NO. 47:

However, monetary damages alone will not cure Plaintiffs' harm because
monetary remedies would not serve to remove the second mortgages from the

20

public record. The second mortgages have clouded the Properties' title and have impacted the ability to alienate the Properties in the ordinary course of business.

RESPONSE TO PARAGRAPH NO. 47:

Denied.

PARAGRAPH NO. 48:

Plaintiffs have no adequate remedy at law and are therefore entitled to a preliminary and permanent injunction directing Defendant to immediately execute and record withdrawals, cancellations, or releases of the invalid second mortgage.

RESPONSE TO PARAGRAPH NO. 48:

Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to describe the claims against YSA with sufficient particularity to allow it to determine all of its defenses, and YSA therefore lacks knowledge or information sufficient to form a belief as to the existence and availability of additional affirmative defenses. YSA reserves the right to rely on any other defenses that may become available or may be disclosed by additional investigation or discovery during the proceedings in this case and reserve the right to amend this Answer and assert such other defenses, affirmative or otherwise.

### Second Affirmative Defense

This Court lacks jurisdiction to hear this dispute and Plaintiffs lack standing.

21

### Third Affirmative Defense

Plaintiffs' claims are barred by the doctrines of waiver, estoppel and acquiescence. Specifically, Plaintiffs are estopped from contesting the YSA's ability to record second mortgages based on Kulick's statements and conduct, and Plaintiffs are further estopped from raising any arguments relating to purported usury, as Kulick proposed the loan terms and interest rates. Additionally, Plaintiffs' Complaint fails to allege the necessary elements of gross negligence or willful misconduct and, thus, this action cannot stand.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands and fraudulent inducement. Plaintiffs have failed to act equitably towards YSA by, *inter alia*, misrepresenting material facts and failing to meet their obligations under the loan documents. All of these false representations were made with Plaintiffs' knowledge of their falsehood, and with the intent to induce YSA to loan Plaintiffs millions of dollars. YSA reasonably relied on Plaintiffs misrepresentations and falsified documents and has suffered damage as a result.

### Fifth Affirmative Defense

In the alternative, without conceding any defect in the loan documents or recorded mortgaged, if the Court does not agree with YSA's interpretation of the loan documents and the parties intent behind them, the recorded mortgages are

22

enforceable as equitable mortgages and/or equitable liens under Delaware law.

## Sixth Affirmative Defense

Plaintiffs possessed the actual or apparent authority to grant YSA the right to record mortgages against the subject Properties.

## Seventh Affirmative Defense

Plaintiffs are not entitled to injunctive relief because they cannot establish irreparable harm given the existence of YSA's equitable interests and given that Plaintiffs' alleged injuries are fully compensable at law.

## Eighth Affirmative Defense

Plaintiffs are the alter egos of each other and are further the alter egos of the various entities identified in Plaintiffs' Complaint as the "Title Owners" and "Intermediate Holding LLCs." Therefore, the Title Owners and Intermediate Holding LLCs are not legally distinct entities from Plaintiff Kulick and, as such, all Title Owners and Intermediate Holding LLCs are liable under the loan documents.

## Ninth Affirmative Defense

Plaintiffs are not entitled to affirmative equitable or mandatory injunctive relief, and the Complaint fails to state a claim upon which relief can be granted, because Plaintiffs' claims fail based on YSA's rights under the loan documents at issue in this action.

**WHEREFORE**, YSA respectfully requests that the Court enter an order:

23

a) Dismissing the Complaint, with prejudice;

b) Affirming the validity of the recorded second mortgages;

c) Awarding YSA its costs, including reasonable attorneys' fees; and

d) Awarding such other relief as the Court deems just and proper.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Counterclaimant/Third-Party Plaintiff YSA Investments 1, LLC ("YSA"), by and through undersigned counsel, hereby submits this Counterclaim against Counterdefendants Marc Kulick and Vesta Holdings, LLC, and brings this Third-Party Complaint against Bartlesville Best Living, LLC; Shoreline's Best Living, LLC; Springdale Village TIC 1, LLC; Springdale Village TIC 2, LLC; Springdale Village TIC 3, LLC; Springdale Village's Best Living, LLC; A-V 23 East Owners, LLC; A-V Classen Owners, LLC; A-V Village Creek Owners, LLC; Auerbach-Vesta, LLC; Barcelona Best Living, LLC; Bryan Hills Best Living, LLC; Eaton Place TIC 1 LLC; Fairfax Holding Company, LLC; Lakeside Best Living LLC; Lofts at North Penn Best Living LLC;; Montgomery Apartment Holdings, LLC; Montgomery Best Living, LLC; Muntage Best Living, LLC; NAE Canopy Apartments, LLC; OKC3 Investors LLC; One Eton TIC 1 LLC; Remington Ranch Best Living LLC; Ridge Best Living Investors LLC; Ridge Best Living, LLC; River Walk Best Living, LLC; Riverpark Best Living, LLC; Summer Oaks Best Living LLC; Tuscan Village Best Living LLC; Vesta-Seminole Ridge LLC; Villas at

24

Midtown Best Living LLC; W.M. Best Living Owner, LLC; W.O. Sole Member LLC; Woodland Oaks Best Living LLC; Jenks Best Living LLC; Louis Investments LLC; LS Apartment Sponsor LLC; River Walk Sponsor LLC; Riverpark Best Living Sponsor LLC; Seminole Ridge Apartments Holdings LLC; Seminole Ridge Sponsor LLC; Tuscany Village Sponsor LLC; Vesta Holdings, LLC; 206 Queen Anne Club LLC; B&J Woodscape / Oklahoma City, LLC; and Copperfield Apartments, LP and all entities that Kulick owns or manages that are implicated in the allegations as follows:

### Parties, Jurisdiction, and Venue

1. YSA is a Delaware limited liability company.

2. Marc Kulick is an individual residing in Oklahoma.

3. Vesta Holdings, LLC is an Oklahoma limited liability company.

4. Third-Party Defendant BARTLESVILLE BEST LIVING, LLC is a limited liability company formed and organized under the laws of Oklahoma.

5. Third-Party Defendant SHORELINE'S BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

6. Third-Party Defendant SPRINGDALE VILLAGE TIC 1, LLC is a limited liability company formed and organized under the laws of Delaware.

7. Third-Party Defendant SPRINGDALE VILLAGE TIC 2, LLC is a limited liability company formed and organized under the laws of Delaware.

8.      Third-Party Defendant SPRINGDALE VILLAGE TIC 3, LLC is a limited liability company formed and organized under the laws of Delaware.

9.      Third-Party Defendant SPRINGDALE VILLAGE'S BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

10.     Third-Party Defendant A-V 23 EAST OWNERS, LLC is a limited liability company formed and organized under the laws of Delaware.

11.     Third-Party Defendant A-V CLASSEN OWNER, LLC is a limited liability company formed and organized under the laws of Delaware.

12.     Third-Party Defendant A-V VILLAGE CREEK OWNER, LLC is a limited liability company formed and organized under the laws of Delaware.

13.     Third-Party Defendant AUERBACH-VESTA, LLC is a limited liability company formed and organized under the laws of Delaware.

14.     Third-Party Defendant BARCELONA BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

15.     Third-Party Defendant BRYAN HILLS BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

16.     Third-Party Defendant EATON PLACE TIC 1 LLC is a limited liability company formed and organized under the laws of Delaware.

17.     Third-Party Defendant FAIRFAX HOLDING COMPANY LLC is a

26

limited liability company formed and organized under the laws of Delaware.

18.     Third-Party Defendant LAKESIDE BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

19.     Third-Party Defendant LOFTS AT NORTH PENN BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

20.     Third-Party Defendant MONTGOMERY APARTMENT HOLDINGS, LLC is a limited liability company formed and organized under the laws of Delaware.

21.     Third-Party Defendant MONTGOMERY BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

22.     Third-Party Defendant MUNTAGE BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

23.     Third-Party Defendant NAE CANOPY APARTMENTS, LLC is a limited liability company formed and organized under the laws of Delaware.

24.     Third-Party Defendant OKC3 INVESTORS LLC is a limited liability company formed and organized under the laws of Delaware.

25.     Third-Party Defendant ONE ETON TIC 1 LLC is a limited liability company formed and organized under the laws of Delaware.

26.     Third-Party Defendant REMINGTON RANCH BEST LIVING LLC is

27

a limited liability company formed and organized under the laws of Delaware.

27. Third-Party Defendant RIDGE BEST LIVING INVESTORS LLC is a limited liability company formed and organized under the laws of Delaware.

28. Third-Party Defendant RIDGE BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

29. Third-Party Defendant RIVER WALK BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

30. Third-Party Defendant RIVERPARK BEST LIVING, LLC is a limited liability company formed and organized under the laws of Delaware.

31. Third-Party Defendant SUMMER OAKS BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

32. Third-Party Defendant TUSCANY VILLAGE BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

33. Third-Party Defendant VESTA-SEMINOLE RIDGE LLC is a limited liability company formed and organized under the laws of Delaware.

34. Third-Party Defendant VILLAS AT MIDTOWN BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

35. Third-Party Defendant W.M. BEST LIVING OWNER, LLC is a limited liability company formed and organized under the laws of Delaware.

36. Third-Party Defendant W.O. SOLE MEMBER LLC is a limited

28

liability company formed and organized under the laws of Delaware.

37. Third-Party Defendant WOODLAND OAKS BEST LIVING LLC is a limited liability company formed and organized under the laws of Delaware.

38. Third-Party Defendant JENKS BEST LIVING LLC is a limited liability company formed and organized under the laws of Kansas.

39. Third-Party Defendant LOUIS INVESTMENTS LLC is a limited liability company formed and organized under the laws of Kansas.

40. Third-Party Defendant LS APARTMENT SPONSOR LLC is a limited liability company formed and organized under the laws of Kansas.

41. Third-Party Defendant RIVER WALK SPONSOR LLC is a limited liability company formed and organized under the laws of Kansas.

42. Third-Party Defendant RIVERPARK BEST LIVING INVESTORS LLC is a limited liability company formed and organized under the laws of Kansas.

43. Third-Party Defendant SEMINOLE RIDGE APARTMENTS HOLDINGS LLC is a limited liability company formed and organized under the laws of Kansas.

44. Third-Party Defendant SEMINOLE RIDGE SPONSOR LLC is a limited liability company formed and organized under the laws of Kansas.

45. Third-Party Defendant TUSCANY VILLAGE SPONSOR LLC is a limited liability company formed and organized under the laws of Kansas.

29

46. Third-Party Defendant 206 QUEEN ANNE CLUB LLC is a limited liability company formed and organized under the laws of Maryland.

47. Third-Party Defendant B&J WOODSCAPE / OKLAHOMA CITY, LLC is a limited liability company formed and organized under the laws of Oklahoma.

48. Third-Party Defendant COPPERFIELD APARTMENTS, LP is a limited partnership formed and organized under the laws of Oklahoma.

49. The true names and capacities, whether individual, corporate, associate, partnership, or otherwise, of the Defendants herein designated as Does 1-100 and Roe Entities 1-100 are unknown to YSA, who therefore sues said Defendants by such fictitious names. YSA will seek leave of the Court to insert the true names and capacities of such Defendants when the same have been ascertained.

50. This Court has subject matter jurisdiction pursuant to 10 Del. C. § 341, as YSA seeks equitable remedies in the form of a declaratory judgment, an order for specific performance, and the imposition of a constructive trust.

51. Further, jurisdiction and venue are proper because the documents governing the loans at issue in this case select the State of Delaware as the governing forum for all disputes arising thereunder.

30

## General Allegations

### *Kulick Borrows Millions of Dollars from YSA and Defaults*

52.     Between October 2024 and July 2025, Kulick requested and obtained a dozen short-term loans from YSA, ostensibly for the benefit of various multifamily apartment complexes that Kulick owns and manages.

53.     In connection with each loan, Kulick executed a Promissory Note, a Collateral Pledge and Security Agreement ("CPSA"), a Personal Guaranty and Right of First Offer (the "Guaranty"), and a Confession of Judgment (collectively, the "Loan Documents"). The Loan Documents are virtually identical for all loans issued, with the only material differences being the amounts, rates, dates, repayment schedules, and in some cases, the particular Kulick-entity that was Borrower or Pledgor.

54.     Kulick and his attorney, A.J. Jindal, prepared the Loan Document templates and provided them to YSA.

55.     For each of the loans, Kulick solicited YSA's funds by asking for a certain amount to be wired to an affiliated entity's bank account and offering to repay a substantially higher amount at a later date. Based on the terms proposed by Kulick, YSA would reverse engineer the effective interest rate and the Loan Documents would be prepared to reflect the terms proposed by Kulick.

56.     Kulick would frequently miss payment deadlines and request

31

extensions from YSA. Each time Kulick requested an extension, he would offer to pay an additional amount of money to compensate YSA for the delay.

57. Kulick and his entities fell into formal Default beginning on May 19, 2025, when Kulick failed to make a balloon principal payment of $1,500,000.00 for a loan issued on February 18, 2025 (the "February Loan").

58. Despite being in Default on the February Loan, in mid-June, Kulick begged YSA to provide him with additional funds so he would not default on a repayment agreement with the IRS for his personal tax liability.

59. When YSA still hesitated to fund additional loans, on June 16, 2025, Kulick represented to YSA that its loans were more secured and collateralized than any other loans he had ever obtained and that if Kulick defaulted on future loans, YSA could take over all equity in the properties.

60. Based on those representations, YSA issued approximately $1,000,000.00 in additional loans on June 19, 2025, July 16, 2025, and July 31, 2025, each with interest that Kulick agreed would be compounded daily.

61. Kulick did not repay any of those loans.

62. In total, Kulick and his related entities failed to repay four loans dated: February 18, 2025; June 19, 2025; July 16, 2025; and July 31, 2025 (collectively the "Defaulted Loans").

### *The Loan Documents and Joinder of All Affiliated Entities*

63.    Kulick executed a set of Loan Documents to obtain each of the Defaulted Loans. The terms contained in the Loan Documents for each of the Defaulted Loans are identical in all material respects.

64.    Under each promissory note, Kulick represented and warranted that he and the borrowing entity were lawfully able to enter into the contemplated transactions and that all obligations and promises contained within the Loan Documents had "been authorized by all necessary company action and do not and will not contravene Borrower's formation or constitutional documents, violate any provision of law or result in a breach of or default under any other agreement to which Borrower is a party." *See* Note, ¶ 9.2.

65.    Under each CPSA, Kulick, Vesta Holdings, and the borrower entity agreed to "pledge, grant, and assign to Lender a security interest in and lien upon the Collateral" as defined in the CPSA. *See* CPSA ¶ 1.1(a).

66.    The Collateral is defined expansively and includes all right, title, and interest in membership interests and capital account contribution amounts belonging to the Borrower and Pledgor <u>and</u> *inter alia*:

  a.  Any and all other interests in any Entity owned by Borrower or Pledgor, whether owned at the time the Loan Documents were executed or thereafter acquired;

33

b. All claims that the Borrower or a Pledgor has against any Entity or its property, whether existing at the time the Loan Documents were executed or thereafter acquired; and

c. All rights conferred to Borrower or a Pledgor under any organizational documents or agreement, "including all voting and consent rights." *Id.*

67. Additionally, the CPSA expressly provides that YSA's "security interest shall attach automatically to any interests in any entity that Borrower or Pledgor, as applicable, may at any time in the future acquire without any further action by Borrower or Lender." *Id.* at ¶ 1.2.

68. The CPSA further defines the term "Guarantor Entity" as being "any entity (i) directly or indirectly controlled or managed by [Kulick] or (ii) directly or indirectly owned by [Kulick] in whole or in part with respect to which [Kulick] receives notices in the ordinary course of business." *Id.* at ¶ 3.5.

69. The final page of the CPSA is a "Joinder of Borrower-Affiliated Entities," (the "Joinder") which Kulick personally executed as an express condition precedent to YSA agreeing to fund the Defaulted Loans.

70. Kulick executed the Joinder on behalf of "any and all Guarantor Entities and any other entities in which the undersigned does now own or control or may herein after [*sic*] own or control during the term of [the CPSA]."

71. The Joinder states that all entities that Kulick owns or controls agreed

34

to "jointly and severally assume all obligations of Pledgor under [the CPSA] for all purposes thereof on the terms set forth therein and to be bound by the terms of the [CPSA] as fully as if the undersigned had personally and individually executed and delivered the [CPSA]."

72. Accordingly, pursuant to the Joinder, every Guarantor Entity—which is to say any entity that Kulick directly or indirectly owns, controls, or manages—is properly considered a Pledgor and signatory to the CPSA.

73. In addition, the CPSA contains a Power of Attorney clause that appoints YSA as attorney-in-fact for the Borrower and the Pledgors. This provision authorizes YSA to act "with full power in Borrower's and Pledgor's name and behalf to do every act . . . necessary to carry out this Agreement or the other Loan Documents." CPSA ¶ 4.5.

74. This clause further states that "[t]hrough exercise of this irrevocable power of attorney, [YSA] may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to [YSA]." *Id.*

75. That Power of Attorney clause is reiterated in the Guaranty, under which Kulick personally appointed YSA as his attorney-in-fact and authorized YSA to act "with full power in Guarantor's name and behalf to do every act that [Kulick]

35

is obligated to do or may be required to do hereunder," including by "filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender." Guaranty, ¶ 7(h).

76. Finally, the CPSA expressly acknowledges that YSA is authorized to: "without notice or demand . . . exercise any rights under the UCC, rights and remedies of Lender under this Agreement or otherwise, including but not limited to taking any action against the Collateral or any of the Collateral's real or personal property." CPSA ¶ 5.2.

### *Kulick's Fiduciary Obligation to YSA, and His Breach of that Duty*

77. Kulick is personally obligated to ensure repayment of the Defaulted Loans under the Guaranty that he signed with each. *See, e.g.*, Guaranty (KULICK020592–KULICK020599).

78. As part of this obligation, the Guaranty requires that Kulick act in a fiduciary capacity for the duration of any default. Specifically, Paragraph 2(g) of the Guaranty provides, in relevant part, that "[u]pon any notice by Lender to the Company or Pledgor of any default under the Note or Agreement, Guarantor shall enforce any of their claims as a trustee for Lender, and shall cause any receipts to be paid over to Lender on account of the Note and Agreement. . . ." *Id.*

79. Thus, upon notice by YSA of Vesta Holdings' default, Kulick has an obligation under Paragraph 2(g) of the Guaranty to enforce Vesta Holdings' claims

36

as trustee for YSA and to pay any amounts recovered to YSA. *Id.*

80. Kulick provided sworn testimony that Vesta Holdings has made loans totaling approximately $37 million to the Kulick-related entities that own and manage the various real properties under Kulick's control. *See* Kulick Deposition Transcript, Day 1, at 165:14–166:5.

81. Under the express terms of the CPSA, Vesta Holdings' claims for repayment of that $37 million constitutes collateral that was pledged to YSA to secure repayment of the Defaulted Loans. *See* CPSA ¶ 1.1(a)(iv).

82. Kulick also provided sworn testimony that he is owed "over $22 million personally" from various entities under his control. Kulick Deposition Transcript, Day 1, at 89:2–5.

83. According to Kulick's sworn deposition testimony, these loans have no maturity date and are payable on demand. *Id.* at 172:16–173:3.

84. YSA notified Vesta Holdings through Kulick that Vesta Holdings is in default on the loans at issue. *See* YSA_00000071–YSA_00000072. Kulick repeatedly acknowledged that the loans were in default throughout the parties' relationship, and reconfirmed that he understood he was in serious, uncured default as of September 18, 2025. *See* YSA_00000115.

85. Therefore, under Paragraph 2(g) of the Guaranty, Kulick is required to enforce the claims that he and Vesta Holdings have against his related entities as

37

YSA's trustee and "cause any receipts to be paid over to Lender on account of the Note and Agreement."

86. Kulick has failed to do so.

87. Instead, between September 26, 2025 and October 20, 2025, Kulick sold approximately $13,400,000 of the loans owed to Vesta Holdings to third-party buyers for a mere $3,415,385—amounting to a nearly 75% discount. *See, e.g.*, KULICK1501566–1501575; KULICK1541535–1541452; KULICK1914566–1914576; KULICK1934943–1934950 (various purported Loan Purchase and Sale Agreements, "LPSAs").

88. Upon information and belief, the buyers listed on the LPSAs are Kulick's partners, relatives, or others with close personal contacts to Kulick and/or entities owned by those people, to the point that the LPSAs evidence purported sales to insiders.

89. Kulick continues to solicit buyers to purchase Vesta Holdings' claims against Kulick's related entities at a discount to obtain cash for himself. *See, e.g.*, KULICK022585–KULICK022589; KULICK0037528; KULICK0038428; *see also* Kulick Deposition Transcript, Day 1, at 221:15–222:13 (admitting to pledging future rents/receivables to multiple different lenders).

90. YSA does not have an adequate remedy at law.

91. YSA is being irreparably harmed as a result of Kulick's actions. YSA's

38

ability to recover on the $37 million in Vesta Loans is in jeopardy. Kulick has and continues to dissipate funds from the Vesta Loans to himself and others, rather than holding those funds in trust for YSA, as required by the Guaranty. *See, e.g.*, Kara Thomas Deposition Transcript, Day 1, at 98:17-99:23; 151:16-152:13 (stating that Kulick directed funds from Vesta Holdings to be used to pay his personal mortgage, personal vehicle payment, and the rent of a former employee named "Milly").

92.     More egregiously, Kulick has purported to sell more than $13 million of the Vesta Loans without notice or approval from YSA, and Kulick has not remitted any of the proceeds from such sales to YSA, despite his clear obligation to do so under Paragraph 2(g) of the Guaranty.

93.     Kulick also appears to be commingling funds among his dozens of affiliates, and he is using their cash to pay his own lavish personal expenses. Immediate action has become necessary to ensure that the proceeds of the Vesta Loans and the Kulick Loans are available to be paid to YSA once YSA succeeds on its claim for specific performance under the Guaranty. *See, e.g.*, KULICK009775–KULICK009796 (Vesta Holdings July 31, 2025 Checking Account Statement, showing deposits and withdrawals exceeding $27 million, primarily from internal transfers).

### *YSA's Efforts to Preserve the Value of Pledged Collateral*

94.     Kulick's actions have resulted in a devaluation of the collateral securing

39

repayment of the Defaulted Loans.

95. Additionally, Kulick has purported to transfer large portions of the collateral to third parties without YSA's knowledge or approval.

96. Upon information and belief, multiple senior mortgage lenders have initiated foreclosure proceedings and/or requested appointment of a receiver over specific properties due to Kulick's extensive financial misconduct. Although a receivership would unequivocally benefit the properties being foreclosed upon, Kulick is instead expending his limited resources to resist the appointment of a receiver because a receiver would cut off Kulick's ability to take money from his properties at will.

97. As a result of Kulick's ongoing misdeeds and self-dealing, YSA has been forced to exercise its rights under Title 9 of the Uniform Commercial Code ("UCC"), codified in Title 6 of the Delaware Code, to take possession of and operate the collateral "for the purpose of preserving the collateral or its value." 6 Del. C. § 9-207(b)(4)(A); *see also* 6 Del. C. § 9-609(a)(1) (allowing a secured creditor to take possession of collateral after default).

98. To accomplish this necessary collateral preservation, YSA has taken ownership of and control over many of the Guarantor Entities, evidenced by UCC filings which have been recorded in their respective states.

99. Specifically, YSA has taken ownership of the following entities to

preserve its collateral: Bartlesville Best Living, LLC; Shoreline's Best Living, LLC; Springdale Village TIC 1, LLC; Springdale Village TIC 2, LLC; Springdale Village TIC 3, LLC; Springdale Village's Best Living, LLC; A-V 23 East Owners, LLC; A-V Classen Owners, LLC; A-V Village Creek Owners, LLC; Auerbach-Vesta, LLC; Barcelona Best Living, LLC; Bryan Hills Best Living, LLC; Eaton Place TIC 1 LLC; Fairfax Holding Company, LLC; Lakeside Best Living LLC; Lofts at North Penn Best Living LLC;; Montgomery Apartment Holdings, LLC; Montgomery Best Living, LLC; Muntage Best Living, LLC; NAE Canopy Apartments, LLC; OKC3 Investors LLC; One Eton TIC 1 LLC; Remington Ranch Best Living LLC; Ridge Best Living Investors LLC; Ridge Best Living, LLC; River Walk Best Living, LLC; Riverpark Best Living, LLC; Summer Oaks Best Living LLC; Tuscan Village Best Living LLC; Vesta-Seminole Ridge LLC; Villas at Midtown Best Living LLC; W.M. Best Living Owner, LLC; W.O. Sole Member LLC; Woodland Oaks Best Living LLC; Jenks Best Living LLC; Louis Investments LLC; LS Apartment Sponsor LLC; River Walk Sponsor LLC; Riverpark Best Living Sponsor LLC; Seminole Ridge Apartments Holdings LLC; Seminole Ridge Sponsor LLC; Tuscany Village Sponsor LLC; Vesta Holdings, LLC; 206 Queen Anne Club LLC; B&J Woodscape / Oklahoma City, LLC; and Copperfield Apartments, LP (collectively the "Collateral Entities"). As owner of the Collateral Entities, YSA will take all steps that it deems reasonable and necessary to preserve the value of any assets owned by

41

the Collateral Entities, including by making assignments of rents where appropriate.

100. These actions are lawful under the UCC and expressly authorized under the terms of the CPSA and the Guaranty. *See* CPSA ¶¶ 4.5, 5.2; Guaranty 7(h).

101. Each of the Collateral Entities are entities that Kulick pledged as an additional Pledgor of the CPSA pursuant to the Joinder.

102. Moreover, Kulick has held himself out to be the owner of the Collateral Entities to YSA and many other lenders. *See, e.g.*, KULICK022405 (Kulick holding himself out as owner of many Collateral Entities to obtain a loan from TVT Capital on April 21, 2025); KULICK021288-KULICK021307 (Kulick signing as owner of many Collateral Entities to obtain a loan from Coldwater Capital LLC on April 24, 2025); KULICK021127-KULICK021161 (Kulick signing as owner of 43 entities, including many Collateral Entities, to obtain a loan from BH Capital Group on June 10, 2025).

103. Despite his persistent representations that he is the owner of the Collateral Entities, and despite the clear language of the Loan Documents, Kulick nonetheless contests YSA's ability to seize pledged collateral, assign the rents generated by the Collateral Entities, or act as his attorney-in-fact.

104. Therefore, YSA requires a judicial declaration that it lawfully owns and controls the Collateral Entities pursuant to the UCC and the Loan Documents in order to ensure that nonparties to this action (to wit: banks, financial institutions,

other courts, and service providers) recognize YSA's legal authority to make decisions for those entities until the Defaulted Loans have been repaid in full.

105. Further, a judicial declaration is necessary to ensure that Kulick does not continue to hold himself out to be the manager of any such entities for the purpose of continuing to encumber or dissipate the collateral.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment re: UCC against all Counterdefendants and Third-Party Defendants)

106. YSA repeats and realleges the foregoing paragraphs as if fully set forth herein.

107. YSA is a secured creditor of Kulick and his related entities under the Loan Documents.

108. Kulick and his related entities fell into default on the Defaulted Loans in May 2025. That default continues to this day.

109. Under Title 9 of the UCC, codified in Title 6 of the Delaware Code, a secured creditor is allowed to take possession of collateral after default. *See* 6 Del. C. § 9-609(a)(1).

110. 6 Del. C. § 9-207(b)(4)(A) further authorizes a secured creditor to take possession of and operate the collateral "for the purpose of preserving the collateral or its value."

111. As set forth in the Loan Documents, part of the collateral that Kulick

43

and his related entities pledged were membership interests and control rights over every entity (i) directly or indirectly controlled or managed by Kulick or (ii) directly or indirectly owned by Kulick, in whole or in part. YSA identified those entities as the Collateral Entities, defined above.

112. YSA has taken ownership, possession, and operational control of the Collateral Entities and executed or will execute an assignment of rents to preserve them from further devaluation at Kulick's hands.

113. Despite YSA's clear authority to do so under the CPSA, Joinder, and Guaranty, Kulick has contested YSA's legal authority to exercise its rights under 6 Del. C. §§ 9-207, 9-609, and other provisions of the UCC or applicable law. Thus, a live, justiciable controversy exists.

114. YSA requires a judicial declaration that it has lawful ownership of and control over the Collateral Entities until the Defaulted Loans are fully repaid.

**SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty against Marc Kulick)**

115. YSA repeats and realleges the foregoing paragraphs as if fully set forth herein.

116. The Guaranty is a valid and enforceable contract.

117. Paragraph 2(g) of the Guaranty imposes a fiduciary obligation on Kulick to serve as YSA's trustee after an "Event of Default" occurs and enforce any

44

claims that he and Vesta Holdings have against Kulick's related entities (the third-party defendants herein) and remit the proceeds of such claims to YSA.

118.  Pursuant to the terms of the Loan Documents, non-payment constitutes an Event of Default.

119.  YSA has notified Kulick and his related entities that an Event of Default had occurred.

120.  Kulick and his entities remain in persistent uncured default.

121.  Despite that, Kulick is not enforcing his claims or Vesta Holdings' claims against any of his related entities.

122.  Instead, Kulick has purportedly sold some of these claims to third parties at a cash discount and kept the proceeds of such sales for himself, as documented in multiple LPSAs.

123.  Upon information and belief, Kulick continues to try and sell some or all of the Vesta Loans and/or Kulick Loans to third parties.

124.  By failing to enforce these claims for YSA's benefit, by entering into LPSAs with third parties purportedly selling some of these claims, and by further attempting to sell these claims to third parties, Kulick has and continues to violate his fiduciary duties of care and loyalty to YSA.

125.  Kulick's actions have not been taken in good faith, are not fair, and are the result of Kulick's willful misconduct.

45

126. Through the misconduct described above, Kulick has breached—and continues to breach—his fiduciary duties, causing damage to YSA for which there is no adequate remedy at law.

**THIRD CAUSE OF ACTION**
**(Specific Performance against Marc Kulick)**

127. YSA repeats and realleges the foregoing paragraphs as if fully set forth herein.

128. The Guaranty is a valid and enforceable contract.

129. YSA at all times has been ready, able, and willing to perform its obligations under the Guaranty and the other documents governing the loans at issue, and YSA in fact has performed them.

130. Kulick has failed to perform his obligations under the Guaranty.

131. The balance of equities tip in favor of requiring specific performance. YSA in good faith loaned significant amounts of money under the loans at issue and has not been repaid. There is cash that can be used to repay YSA's loans, and the Guaranty requires Kulick, as YSA's fiduciary, to seek to recover that cash and use it to repay YSA.

132. Instead, Kulick is attempting to sell loans belonging to himself and Vesta Holdings to third parties, when he should be enforcing those loans as YSA's trustee.

133. Upon information and belief, rather than calling the aforementioned

loans due and remitting their proceeds to YSA, Kulick is using that cash for his personal benefit and other improper purposes.

134. YSA has no adequate remedy at law for Kulick's ongoing breach of fiduciary duty. In addition, Kulick's ongoing dissipation of the funds that could be used to repay YSA presents a meaningful threat that any legal remedy here would be meaningless and that Kulick will effectively be judgment proof.

### FOURTH CAUSE OF ACTION
**(Fraudulent Transfer under 6 Del. C. §§ 1304 – 1305)**

135. YSA repeats and realleges the foregoing paragraphs as if fully set forth herein.

136. YSA is a creditor of Kulick and his related entities by virtue of the Loan Documents containing the terms of the Defaulted Loans.

137. Kulick knew of his obligations relating to the Defaulted Loans beginning in May of 2025. Kulick admitted that he and his entities were in Default on September 18, 2025.

138. Despite this knowledge, between September 26 and October 20, 2025, Kulick sold approximately $13,400,000 of the loans owed to Vesta Holdings to third-party buyers for a mere $3,415,385—amounting to a nearly 75% discount. *See, e.g.*, KULICK1501566–1501575; KULICK1541535–1541452; KULICK1914566–1914576; KULICK1934943–1934950 (various purported Loan Purchase and Sale Agreements, "LPSAs").

47

139. Upon information and belief, the buyers listed on the LPSAs are properly considered insiders.

140. These purported sales occurred without YSA's knowledge or approval, and Kulick knowingly and deliberately concealed the existence of the LPSAs from YSA.

141. Kulick entered into each LPSA with the intent to hinder, delay, or defraud YSA and to prevent YSA from collecting amounts due under each of the Defaulted Loans.

142. Given that Kulick testified that the Vesta Loans and Kulick Loans were payable on demand, there was not a reasonably equivalent exchange for the sale of these loans in the LPSA.

143. Instead, the LPSAs simply provided a $10 million discount to insiders, while purporting to give them rights to claims that properly belong to YSA.

144. Each LPSA constitutes a fraudulent transfer under 6 Del. C. § 1304 and/or 6 Del. C. § 1305. Accordingly, each LPSA should be deemed void.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment/Constructive Trust against all defendants)

145. YSA repeats and realleges the foregoing paragraphs as if fully set forth herein.

146. Money that Kulick and Vesta Holdings have received from Kulick's other entities since YSA provided notice of default has not been paid to YSA, in

48

violation of Kulick's contractual and fiduciary obligations to YSA under Paragraph 2(g) of the Guaranty.

147. Upon information and belief, this money has been further transferred to Kulick himself, as well as to various related and unrelated third parties, identified here as Does 1–100 and Roes 1–100.

148. These parties have been enriched by the amounts they received, while YSA simultaneously has been impoverished by those amounts.

149. There is no justification for these parties to retain these amounts as they should have been recovered by Kulick as trustee and then paid to YSA.

150. In addition, Kulick's ongoing dissipation of the cash that could be used to repay YSA presents a meaningful threat that any legal remedy here would be meaningless.

151. Therefore, the Court should impose a constructive trust over such amounts.

**PRAYER FOR RELIEF**

WHEREFORE, YSA prays that judgment be entered in its favor and against the Counterdefendants, jointly and severally, on all counts as follows:

a) Finding and declaring that Kulick has breached his fiduciary duties;

b) Requiring Kulick to perform on his obligation under Paragraph 2(g) of the Guaranty, including, but not limited to, by immediately taking all necessary

steps to recover on the loans Kulick and Vesta Holdings made to the Doe and Roe third-party defendants;

c) Voiding the LPSAs for fraudulent transfer;

d) Finding and declaring that YSA's exercise of its rights under 6 Del. C. §§ 9-207 and 9-609 was proper and lawful, and that YSA is lawfully owner of and has control over the Collateral Entities until the Defaulted Loans are repaid in full;

e) Imposing a constructive trust over all amounts that Kulick and Vesta Holdings have received from related entities since the first event of default;

f) Preliminarily and permanently enjoining Kulick, the third-party defendants, and any other affiliate or individual they control, from removing any additional cash from those entities, until such time as Kulick complies with his fiduciary duty and recovers the $37 million in Vesta Holdings' loans and the $22 million in his personal loans for YSA's benefit.

g) Awarding YSA its costs and expenses incurred in enforcing its security interest under the Loan Documents, including the costs and reasonable attorneys' fees incurred in this litigation; and

h) Awarding such other relief as the Court deems just and proper.

**GREENBERG TRAURIG, LLP**

Of Counsel:

*/s/ Sarah R. Martin*
Sarah R. Martin (#5230)
Samuel L. Moultrie (#5979)

**GREENBERG TRAURIG, LLP**
Joel Tasca (admitted *pro hac vice*)
Kerry Kleiman (admitted *pro hac vice*)
10845 Griffith Peak Drive, suite 600
Las Vegas, Nevada 89135

222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
(302) 661-7000
Sarah.Martin@gtlaw.com
Moultries@gtlaw.com

*Attorneys for Defendant YSA*
*Investments 1, LLC*

DATED:  February 11, 2026

51

# EXHIBIT 14

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2025-1319-KSJM |
| YSA INVESTMENTS 1, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |
| YSA INVESTMENTS 1, LLC, | ) ) ) | |
| Counterclaim-Plaintiff and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| MARC KULICK, VESTA HOLDINGS, LLC, et al., | ) ) ) ) | |
| Counterclaim-Defendants and Third-Party Defendants. | ) ) ) ) | |

**POST-TRIAL MEMORANDUM OPINION**

Date Submitted: April 9, 2026
Date Decided: June 9, 2026

Sean J. Bellew, BELLEW LLC, Wilmington, Delaware; Benjamin H. Brodsky, Michael Fisher, BRODSKY FOTIU-WOJTOWICZ, PLLC, Miami, Florida; *Counsel for Plaintiffs and Counterclaim-Defendants, Marc Kulick, Vesta Holdings, LLC, and Asset Holder, LLC.*

Sarah R. Martin, Samuel L. Moultrie, GREENBERG TRAURIG LLP, Wilmington, Delaware; Joel Tasca, Kerry Kleinman, GREENBERG TRAURIG LLP, Las Vegas, Nevada; *Counsel for Defendant and Counterclaim and Third-Party Plaintiff YSA Investments 1, LLC.*

**McCORMICK, C.**

Plaintiff Marc Kulick controls and manages a portfolio of 34 multifamily real estate assets in Oklahoma, Arkansas, and Kansas. Beginning in October 2024, Defendant YSA Investments 1, LLC loaned the Kulick-led plaintiff entities millions of dollars. In February 2025, Kulick asked YSA for another loan. Because the amount requested was twice as large as any previous loan, YSA demanded better terms and additional security. In response, cash-strapped Kulick proposed an extremely favorable interest rate and agreed to pledge his entire real estate portfolio. YSA accepted the terms. And Kulick signed a joinder committing all entities that he owned, in whole or part, or managed or controlled directly or indirectly, to the obligations in the loan agreements. Kulick later defaulted on four loans, including the February loan, and YSA placed second mortgages on properties in Kulick's portfolio. Kulick filed this litigation to require that YSA remove the second mortgages and to enjoin YSA from recording additional second mortgages. The case proceeded to trial.

The key issue is whether YSA had the right to record mortgages on the properties. Kulick argues that the loan agreements identified as collateral interests in the holding companies, and not the properties at issue. But this argument does not matter, because the loan documents granted YSA expansive rights to take actions against real property owned by the collateral, including the properties. YSA exercised that right by recording the second mortgages. Kulick also argues that the loans cannot be enforced because their terms were predatory, usurious, and against public policy. Setting aside the fact that Kulick proposed the loan terms about which

he now complains, this defense fails for a more basic reason—Delaware law does not extend usury defenses to limited liability companies like the plaintiff entities.  This decision therefore enters judgment for YSA.

## I.     FACTUAL BACKGROUND

The facts are drawn from the 222 joint trial exhibits, live testimony from four witnesses, deposition testimony from two fact witnesses, and 22 stipulations of fact. These are the facts as the court finds them after trial.[1]

### A.     Marc Kulick And The Vesta Entities

Kulick controls and manages a portfolio of 34 multifamily real estate assets in Oklahoma, Arkansas, and Kansas (the "Properties").[2]  The Properties are owned by

---

[1] This decision cites to: C.A. No. 2025-1319-KSJM docket entries (by "Dkt." number); trial exhibits (by "JX-" number); the trial transcript, Dkt. 98 (by "Trial Tr. at"); stipulated facts set forth in the parties' Joint Pre-Trial Order, Dkt. 88 ("PTO"); and the Transcript of the November 25, 2025 hearing on Plaintiffs' Motion for Expedited Proceedings and Motion for Expedited Preliminary and Permanent Injunction, Dkt. 25 ("11/25/25 Hr'g Tr.").  The parties called the following fact witnesses: Marc Kulick (owner and controller of Plaintiffs Vesta and Asset Holder); Efraim Diveroli (YSA's principal); Robert Miley (YSA's Rule 30(b)(6) representative); John Hall (Defendant's expert).  The parties submitted the deposition transcripts of the live witnesses, except for John Hall, and called the following witnesses by deposition only: Kara Thomas (Controller at Vesta Realty) and Courtney Merritt (Controller at Vesta Realty).  The transcripts of the witnesses' respective depositions are cited using the witnesses' last name and "Dep. Tr."  The decision notes in citation form where a witness was designated to testify under Rule 30(b)(6).  This decision cites the following declaration by the declarant's last name: Christopher Rogers (Partner at Capital Fund Law Group), Dkt. 86 ("Rogers Decl.").

[2] JX-185; Trial Tr. at 6:23–7:4 (Kulick).  Some of Kulick's 34 assets have a tenancy in common ("TIC") ownership structure that results in two or more entities serving as the ultimate owners of the TIC assets.  Trial Tr. at 7:5–8:1 (Kulick).

34 separate, single-purpose limited liability companies (the "Title Owners").[3] Each Title Owner is owned by one or more holding company (the "Intermediate Holding Companies").[4] The Title Owners are capitalized by investments at the Intermediate Holding Company level.[5]

Plaintiffs Vesta Holdings, LLC and Asset Holder, LLC (with Kulick, the "Plaintiffs")[6] are Kulick's personal investment vehicles.[7] Kulick is the sole owner and manager of Vesta and Asset Holder.[8] Vesta and Asset Holder hold membership interests in several Intermediate Holding Companies.[9] Kulick also holds an interest in all the Title Owners.[10]

### B. Plaintiffs Seek Short-Term Loans From Defendant.

In 2024, Kulick was in search of short-term financing for one of the Properties.[11] An acquaintance introduced Kulick to Efraim Diveroli. Diveroli is the

---

[3] Trial Tr. at 7:5–8:1, 115:22–116:17 (Kulick); JX-27 at 1, 41, 81, 121, 136, 175, 192, 207, 229, 249, 264, 304, 343, 383, 398, 413, 453, 468, 508, 550, 567, 584, 599, 639, 680, 721, 763, 803; *see* JX-221; JX-215; JX-11; JX-169 §§ 1–3, Ex. A; *compare* PTO ¶ 6 *with* JX-27 at 1, 41, 81, 121, 136, 175, 192, 207, 229, 249, 264, 304, 343, 383, 398, 413, 453, 468, 508, 550, 567, 584, 599, 639, 680, 721, 763, 803.

[4] Trial Tr. at 7:5–8:1 (Kulick); *see* JX-198.

[5] Trial Tr. at 7:5–8:1 (Kulick).

[6] *Id.* at 8:7–18 (Kulick).

[7] *Id.* at 8:7–24 (Kulick).

[8] *Id.* at 8:7–8:18 (Kulick).

[9] *Id.* at 9:2–9:14 (Kulick).

[10] *Id.* at 49:17–51:1 (Kulick).

[11] JX-3 at 1; Trial Tr. at 9:18–10:8 (Kulick); Trial Tr. at 146:21–147:22 (Diveroli).

3

principal of Defendant YSA Investments 1, LLC ("Defendant" or "YSA"),[12] a special purpose vehicle for Diveroli's commercial lending.[13] Kulick connected with Diveroli in September 2024. Kulick urged Diveroli to finance some of his loans, claiming "[i]t's the easiest money you'll ever make" and that Diveroli has no reason to worry about losing his investment.[14]

On September 7, 2024, Kulick provided YSA a form agreement for the proposed loan.[15] On September 29, Kulick and his counsel provided YSA's counsel and Diveroli the material loan terms.[16] The terms included: a loan of $775,000, an interest rate of 7% per month (84% annualized), a 2% closing fee for YSA, and a right of first refusal in favor of YSA.[17] Kulick, Diveroli, and YSA's counsel discussed the proposed loan.[18] After, YSA's counsel proposed more detailed descriptions of the material terms, and

---

[12] Dkt. 81 ¶ 12.

[13] Trial Tr. at 146:10–20 (Diveroli); *see* Dkt. 81 ¶ 12.

[14] JX-3 at 4; JX-4 (attaching a draft loan agreement). The initial draft of the loan document contemplated an interest rate of 20% per annum, compounding annually. JX-4 at 2. Kulick explained his goal for the interest rate was to provide Diveroli "10% over the 3-month term." JX-3 at 10.

[15] JX-4 (providing Diveroli initial versions of a promissory note and a collateral pledge and security agreement); JX-3 at 2–12; *see* JX-6 at 4. The "form agreement" Kulick provided the borrower would have "[n]o right of rescission, setoff, abatement, diminution, counterclaim, or defense . . . with respect to this Note or any other Loan Documents." JX-4 at 4.

[16] JX-6; Trial Tr. at 10:11–13 (Kulick).

[17] JX-5 at 1–2 ("Efraim and I have basically finished our deal for Parc 1010 EM."); JX-3 at 2–12.

[18] *See* JX-46.

4

the parties deferred to Kulick's counsel to revise the documents consistent with that proposal.[19]

Kulick agreed to the revised terms on October 2 and his attorney agreed to update the drafts.[20]

The parties closed the transaction on October 8, 2024 (the "October 8 Loan").[21] The October 8 Loan included a Promissory Note ("Note"), a Collateral Pledge and Security Agreement ("CPSA"), and a Personal Guaranty and Right of First Offer (the "Guaranty" and collectively, the "Loan Documents").[22]

The October 8 Loan made Asset Holder the Borrower, Vesta the Pledgor, and YSA as the Lender.[23] YSA loaned Asset Holder $775,000, maturing ninety days after closing.[24] Asset Holder and Pledgor secured the October 8 Loan with "Collateral" defined as "Unencumbered Interests" and "Encumbered Interests" in the form of membership interests that Kulick held in the Intermediate Holding Companies.[25]

---

[19] JX-5 at 1–2 (noting that Kulick's counsel "prefer[ed] to make the initial edits" to the documents Kulick previously provided); JX-46 at 7–8.

[20] JX-6.

[21] PTO ¶ 7; JX-10.

[22] Kulick Day 1 Dep. Tr. at 28:19–23.

[23] JX-10 at 1.

[24] *Id.*

[25] *Id.* at 9. For the October 8 Loan, the Unencumbered Interests were Kulick's membership interest in the following Intermediate Holding Companies: Capitol on 28th Investors, LLC, Remington Ranch Investors, LLC, Copperfield Investors, LLC, and Putnam Investors, LLC. *Id.* Kulick represented that Asset Holder, as borrower, "owns the Unencumbered Collateral absolutely and free of any . . . encumbrance" and Asset Holder "has the unencumbered and unrestricted right to pledge the Unencumbered Collateral." *Id.* at 11.

5

The CPSA included a Power of Attorney provision applicable in the event of a borrower breach proposed by YSA on October 3. That day, YSA's counsel asked Kulick to provide a list of suits filed against "Vesta and its affiliated entities" and to identify any UCC liens.[26] A UCC search precipitated YSA's request.[27] Kulick then identified nine civil actions and stated that "none of the entities that are a party to this loan have any UCCs filed against them[.]"[28] YSA proposed additional terms, including the Power of Attorney provision. The Power of Attorney provision, quoted more fully in the below legal analysis, gave YSA the right to "take whatever steps that it deems necessary in its sole discretion to secure and protect its interests . . . includ[ing] but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral."[29] Kulick agreed to most of the proposed terms but noted that he would need a few hours to consider the Power of Attorney,[30] which Kulick later agreed to.[31]

---

[26] JX-7 at 4.

[27] *Id.*

[28] *Id.* at 3.

[29] JX-9 at 2–3.

[30] *Id.* at 2; JX-3 at 15; JX-46 (discussing representations and warranties of the loan). For instance, Kulick agreed to "waive any defense or asset protection mechanism that may be available in the event of a default." JX-9 at 2.

[31] Trial Tr. at 54:2–56:5 (Kulick); JX-46.

The October 8 Loan was due with interest on January 8, 2025,[32] when Kulick was obligated to remit payment of $829,250.[33]  But Kulick requested a one-week extension on January 8,[34] when he informed Diveroli he was short over $500,000.[35] Diveroli agreed to a short extension on the condition that Kulick pay an additional $25,000.[36]  Kulick paid the $829,250 and additional $25,000 on January 21.[37]  And YSA continued loaning Kulick money.

### C.    Defendants Provide Additional Loans Subject To A Joinder.

By February 2025, YSA had loaned Kulick $4,775,000 over six loans.[38]  That month, Kulick approached YSA requesting a $1,500,000 loan, nearly twice the amount of any previous Loan.[39]  Diveroli wanted to loan the money to Kulick. Diveroli considered Kulick "a fantastic salesman" and "very persist[ent]," noting that Kulick "presents as trustworthy."[40]

---

[32] *Id.* at 2; JX-3 at 22–23 ("If money doesn't come in as expected would you be open to a week extension for an additional 25k of interest paid today.").

[33] JX-10 at 2.

[34] JX-3 at 22–24.

[35] JX-3 at 23.

[36] *Id.* at 22–24.

[37] JX-58; JX-22.

[38] JX-10 at 1 (October 8 Loan for $775,000); JX-60 at 2 (loaning Plaintiffs $750,000 on January 21, 2025); JX-63 at 2 (loaning Plaintiffs $750,000 on January 24, 2025); JX-65 at 2 (loaning Plaintiffs $800,000 on January 30, 2025); JX-67 at 2 (loaning Plaintiffs $850,000 on February 4, 2025); JX-71 at 2 (loaning Plaintiffs $850,000 on February 10, 2025).

[39] Trial Tr. at 149:3–22 (Diveroli); Rogers Decl. ¶ 4; *compare* JX-16 at 1 *with* JX-71 at 2.

[40] Trial Tr. at 151:19–152:5 (Diveroli).

But given that Kulick repaid the October 8 Loan late, and the amount requested, YSA "made it crystal clear" it would need "significantly more collateral" before agreeing to Kulick's request.[41] Diveroli directed his office to "cease almost all other activities" to review Kulick's portfolio of assets prior to extending additional capital.[42] And YSA searched for a consultant "familiar with multi-family residential real estate" who could assist in "making sure [YSA] [is] as protected by the collateral" as it was made to believe.[43]

On February 13, YSA requested that Kulick provide preliminary diligence materials.[44] Kulick resisted YSA's requests initially,[45] expressing his desire to end the parties' relationship, and even requested that YSA "release all liens . . . from the [October 8 Loan]."[46]

Kulick then changed his tune. The next morning, Kulick offered to move forward if YSA would accept a subset of the requested materials.[47] YSA agreed based on Kulick's offer to provide: "[a]ll tax returns"; "[a]ll mortgage statements"; "a

---

[41] *Id.* at 149:23–152:5 (Diveroli).

[42] *Id.* at 149:23–151:10 (Diveroli); JX-73; *see* JX-222.

[43] JX-222; *see* JX-73.

[44] JX-76 at 2 (Defendant requested the following materials: (i) bank statements for the preceding six months for all entities; (ii) financial statements from the last three years; (iii) tax returns from the last three years; (iv) internal analytics for the properties Kulick developed; (v) "all Loan Documents related to loans currently encumbering one or multiple properties that will be securing the loan"; and (vi) "[a]ny and all active UCC filings related to any of the entities/properties.").

[45] JX-73.

[46] JX-76 at 1.

[47] *Id.*

8

portfolio p&l" statement; and "[c]onstant live access to data curated between [Kulick's] team and [YSA]."[48]

YSA's counsel reviewed the materials. Because the materials did not clearly identify the entity associated with each property, YSA's counsel requested additional information.[49] YSA also asked whether any encumbrances on the properties would be senior to the contemplated loan.[50] Kulick provided additional documentation, including a broker's valuation opinion for one property and operating agreements for five of the entities.[51]

The following morning, Kulick texted Diveroli and Robert Miley, YSA's counsel, to check on the status of the Loan.[52] Miley responded by sharing an image of the CPSA provision that defined "Unencumbered Interests" and "Encumbered Interests."[53] Miley asked Kulick: "Where this had previously included 17 total entities (4 unencumbered), are we expanding to rest of portfolio? If so, could you please send me a paragraph that I can copy into it with the other entities?"[54]

Kulick immediately responded stating: "The answer is yes and no. I suggest we keep that the same but maybe add a joinder to the portfolio as a whole[.]"[55]

---

[48] *Id.*

[49] JX-77 at 2–3.

[50] *Id.*

[51] JX-77 at 1.

[52] JX-12.

[53] *Id.* at 2.

[54] *Id.*

[55] *Id.*

9

Miley then asked the group for "consensus on the entity language for the collateral agreement."[56] He noted that, given certain covenants in the CPSA, it was critical to keep the unencumbered and encumbered interests separate.[57] Kulick responded stating: "Yes the collateral needs to remain the same but does my idea for a joinder with any asset controlled by any affiliate of mine work?"[58]

Miley said that the joinder "may" work.[59] Miley then emailed Kulick updated drafts of the Confession of Judgment and Guaranty.[60] In the same email, Miley again flagged for the group Kulick's suggestion of adding a joinder to the CPSA. He noted that the CPSA does not clearly state which entities are intended to be "unencumbered vs encumbered."[61] Kulick responded: "No change to this document at all except to add a joinder that joins *any asset controlled by any affiliate of mine*."[62] YSA's counsel circulated a revised CPSA that included a one-paragraph joinder consistent with Kulick's proposal (the "February Joinder").[63]

On February 18, 2025, the parties entered the new loan agreement (the "February 2025 Loan").[64] The February 2025 Loan comprises: a promissory note (the

---

[56] *Id.* at 3.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] JX-13 at 1.

[61] *Id.*

[62] *Id.* (emphasis added).

[63] JX-15 at 1, 18, 32.

[64] PTO ¶ 7; *see generally* JX-16.

"February Note"); a collateral pledge and security agreement (the "February CPSA"), a Personal Guaranty and Right of First Offer (the "February Guaranty"); and a Joinder.[65]  The February 2025 Loan is governed by Delaware law.[66]

Section 5(c) of the February Guaranty requires Kulick, as Guarantor, to "deliver to Lender a true, correct, and complete schedule of real estate and entities owned (whether directly or indirectly, and whether wholly or partly) by Guarantor. . . ."[67]  Kulick delivered the required schedule of real estate owned, which identified the Title Owners.[68]  Again, requiring a schedule of real estate owned by Kulick, the Guarantor, reinforces the terms and purpose of the February Joinder.

The February Guaranty, like the February CPSA, granted YSA a broad power of attorney (the "February Guaranty POA").[69]  The February POA, in relevant part, provided: "Lender may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests. . . ."[70]

---

[65] JX-16

[66] *Id.* at 6–7.

[67] *Id.* at 26.

[68] JX-27 at 39–40; JX-169 §§ 1–3, Ex. A (providing Louis Investments, LLC an entity solely owned and managed by Kulick "directly or indirectly, owns or controls" the entities listed on Exhibit A, which includes the Title Owners).

[69] JX-16 at 28.

[70] *Id.*

### D. Plaintiffs Default On Four Loans.

Plaintiffs ultimately defaulted on four loans (the "Defaulted Loans"): (1) the February 2025 Loan; (2) the "April 2025 Loan"; (3) the "July 16, 2025 Loan"; and (4) the "July 31, 2025 Loan."[71]  Each Defaulted Loan followed the format of the February 2025 Loan,[72] in that each involved a Note, a CPSA, a Guaranty, and a Joinder.[73]

The principal amount of the February 2025 Loan is $1,500,000.  Plaintiffs defaulted on May 19, 2025.[74]  The interest rate is 133.333% per annum, compounded monthly.[75]  Plaintiffs owe approximately $3.3 million under the February 2025 Loan.[76]

The principal amount of the April 2025 Loan is $300,000.[77]  The purpose of the April 2025 Loan was to finance Kulick's closing costs related to the acquisition of Parc

---

[71] JX-16; JX-17; JX-20; JX-21; *see* JX-28.

[72] Trial Tr. at 14:2–8, 51:6–54:12 (Kulick).

[73] *See generally* JX-16; JX-17; JX-20; JX-21.The identity of the Borrower Entity providing the "Encumbered Interests" and the Pledgor Entity providing the "Unencumbered Interests" differ.  JX-16 at 9 (identifying Vesta as Pledgor and Asset Holder as Borrower); JX-17 at 11 (identifying Kulick Manager, LLC as Pledgor and Parc 1010 HoldCo., LLC, Parc 1010 GP, LLC, and Parc 1010 Investors, LLC as Borrowers); JX-20 at 9 (identifying Vesta as Pledgor and Borrower); JX-21 at 9 (identifying Vesta as Pledgor and Borrower). The April 2025 Loan included one bespoke feature, a membership interest pledge and assignment agreement ("MIPAA").  JX-17 at 34–42.  The April 2025 Loan stands apart from the other Defaulted Loans in that regard.  The MIPAA is not relevant to the resolution of this action.

[74] JX-94; JX-201; JX-28 at 2–4; *see* JX-104.

[75] JX-16 at 1.

[76] JX-28 at 2–4.

[77] PTO ¶ 17. The loan went to three entities owned by Kulick Manager, LLC—Parc 1010 HoldCo., LLC, Parc 1010 GP, LLC, and Parc 1010 Investors, LLC.  PTO ¶ 17.

1010, an apartment complex in Tulsa, Oklahoma.[78] It was a short-term loan, due to be repaid ten days after closing.[79] But the transaction never closed.[80] The interest rate of the April 2025 Loan was 1,500% per annum, compounded monthly. [81] Plaintiffs owe approximately $3 million on the loan.[82]

---

Kulick manages each of the entities. JX-17 at 8–9. Under the April 2025 Loan, Parc 1010 HoldCo., LLC, Parc 1010 GP, LLC, and Parc 1010 Investors, LLC are each a "Borrower" and the "Pledgor" is Kulick Manager, LLC. *Id.* at 1.

[78] PTO ¶ 17.

[79] *Id.* at 1–2.

[80] Trial Tr. at 117:20–118:1 (Kulick).

[81] JX-17 at 1. Kulick proposed repaying YSA $425,000, inclusive of principal and interest, in exchange for April 2025 Loan with a face value of $300,000. JX-3 at 53.

[82] Diveroli consistently messaged Kulick seeking payment once Kulick defaulted on the April 2025 Loan. JX-3 at 56–82; *see* JX-99 at 1. On June 16, Diveroli contacted Kulick to work out a plan for the two defaulted Loans, Kulick responded asking for a new loan and stating that: "you already have way more secure loan docs than anything else I've ever used." JX-3 at 83; *see* JX-104 at 1. On June 15, Kulick requested a new loan of $315,000 from Diveroli (the "June 2025 Loan"). JX-104. Kulick proposed satisfying the June 2025 Loan by repaying Diveroli $515,000 by July 1. *Id.* Kulick acknowledged he was in default under the April 2025 Loan and that failure to satisfy that Loan "would be a default on this loan." *Id.* Kulick also proposed including a $1,000,000 penalty if the June 2025 Loan negatively impact either the February 2025 Loan or the April 2025 Loan. *Id.* On June 19, Kulick and YSA closed on the June 2025 Loan. JX-108; JX-109; JX-110; JX-111. The June 2025 Loan included a Note, an Affidavit of Confession of Judgment, a CPSA, and a Guaranty. JX-108; JX-109; JX-110; JX-111. The June 2025 Loan reflected the terms proposed by Kulick. *Compare* JX-104 *with* JX-108. The principal amount of the June 2025 Loan was $315,000 and Kulick was obligated to repay $515,000 by July 1. JX-108 at 1–2. The interest rate of the June 2025 Loan is for 1565% per annum, compounded daily. JX-108 at 1. Also on June 19, Kulick executed a Confidential Side Letter Related to the February 2025 Loan, April 2025 Loan, and June 2025 Loan granting YSA the right to seek repayment from reserves held by entities identified on Schedule 3. JX-112; Trial Tr. at 114:4–116:22 (Kulick). The properties on Schedule 3 appear to overlap significantly with properties owned by the Title Owners. *Compare* JX-112 at Schedule 3 *with* PTO ¶ 6. Exhibit C to the Confidential Side Letter does not provide the full names of the listed entities and, since the names of the Title Owner

13

The principal amount of the July 15, 2025 Loan is $365,000.[83] Plaintiffs defaulted on July 30, 2025.[84] The interest rate is 960% per year, compounded daily.[85] Plaintiffs owe approximately $5 million on the loan.[86]

The principal amount of the July 31, 2025 Loan is $317,000. Plaintiffs defaulted on August 5, 2025.[87] The interest rate is 7,000% per year, compounded daily.[88] Plaintiffs owe a staggering $921 million on the loan.[89]

Kulick testified that he proposed the interest rates on each loan by reverse engineering whatever payment he thought appropriate on the loan amount.[90] He calculated that payment amount assuming timely payment.[91] But he knew that YSA implied the interest rate that appeared in the Loan Documents from those amounts.[92]

When asked at trial about the interest rates of the Defaulted Loans, Kulick testified that "I'm not playing the victim on paying high interest rates on my loans. I

---

and Intermediate Holding Companies share some names, it is difficult to discern the exact identity of each entity provided on Exhibit C. Also around this time, Diveroli offered Kulick a $5 to $10 million payoff option, which Kulick declined. Trial Tr. at 188:17–189:13 (Diveroli).

[83] JX-20 at 1

[84] *Id.*

[85] *Id.*

[86] JX-28 at 2.

[87] *Id.*

[88] *Id.*

[89] *Id.* at 3.

[90] Trial Tr. at 91:9–19 (Kulick).

[91] *Id.* at 29:9–18 (Kulick).

[92] *Id.* at 91:9–93:3 (Kulick).

14

understand that, you know, my cash position was bad, it was stressed. I was having trouble getting investors to fund pro rata capital calls."[93]  He also acknowledged that he kept returning to YSA because he was "desperate" for funding.[94]

### E.      Defendant Records Second Mortgages.

By August 2025, Plaintiffs had defaulted on four loans and owed approximately $900 million under the Defaulted Loans.[95]  (By trial, Plaintiffs owed $932,149,606.85 under the Defaulted Loans.)[96]

In October 2025, Diveroli and two YSA representatives visited Kulick in Tulsa, Oklahoma, to diligence the Properties in connection with a contemplated loan where YSA would provide Plaintiffs tranche financing.[97]  Diveroli asked to see "the worst units at the worst properties" to evaluate whether it made sense to move forward

---

[93] *Id*. at 94:20–24 (Kulick).

[94] *Id.* at 29:11–17, 84:16–18, 122:24–123:1 (Kulick).

[95]  JX-28 at 4; *see* JX-24 (informing Kulick he owed $897,744,576 under the Defaulted Loans on December 2, 2025).  Kulick complained throughout this litigation about Defendant's delays in providing a payoff summary.  He testified that he made multiple requests for a payoff summary as early as November 2025.  Dkt. 22 ¶ 28 ("On December 2, 2025, Defendant informed Plaintiffs that it would "limit" the amount owed to approximately $900 million dollars. . . .").  At trial Kulick testified he did not receive a payoff from YSA until February 6, 2026.  Trial Tr. at 45:15–46:5 (Kulick); Dkt. 103 at 11.  But in the Amended Complaint Plaintiffs plead having received a payoff summary on December 2, 2025, which is supported by contemporaneous evidence.  JX-24.

[96] JX-28 at 2.

[97] Trial Tr. at 29:22–35:7 (Kulick).

with the requested tranche financing.[98]  After the tour, they asked Kulick to join for a meeting at their hotel conference room.[99]

During the meeting, Diveroli informed Kulick that he owed them "well over a billion dollars" due to the compounding interest rates.[100]  Diveroli told Kulick that he could "either do this *the easy way or the hard way*[.]"[101]  As Kulick recalled, "[t]hey told me that basically they *now own my entire portfolio*[.]"[102]  Kulick understood the "easy way" would entail handing over to YSA the deeds to the Properties in lieu of YSA seeking to foreclose on the Properties.[103]  Kulick claims YSA offered cash if he were to hand over the deeds.[104]  Kulick understood the "hard way" as involving litigation, as YSA had brought a draft complaint to the meeting.[105]  YSA also threatened to alert persons in Kulick's professional network, including his Rabi and wife.[106]

---

[98] *Id.* at 32:2–24 (Kulick).

[99] *Id.* at 33:1–20 (Kulick).

[100] *Id.* at 33:1–19 (Kulick).

[101] *Id.* at 33:13–33:19 (Kulick) (emphasis added).

[102] *Id.* (Kulick) (emphasis added).

[103] *Id.* at 34:6–35:6 (Kulick).

[104] *Id.* (Kulick).

[105] *Id.* at 34:6–37:14 (Kulick).

[106] *Id.* at 34:19–35:6 (Kulick); *see* JX-23 (providing Plaintiffs and Plaintiffs' counsel the Complaint YSA filed in Superior Court noting "YSA also intends to submit litigation preservation letters to various third parties, including but not limited to Vesta employees, investors, and lenders that are believed to have either benefited from or borne witness to Defendants' misconduct").  In addition to attaching the Superior Court Complaint, YSA shared with Plaintiffs and Plaintiffs' counsel drafts of an amended complaint and motion for a temporary restraining order and noted

Diveroli pursued the hard way.[107]  On October 31, 2025, YSA recorded second

mortgages against at least 25 Properties located in Oklahoma and Kansas.[108]  The

Properties are owned by the Title Owners.[109]  Kulick identified the Properties in

compliance with Section 5(c)'s requirement under the February Guaranty to provide

YSA the "complete schedule of real estate and entities owned (whether directly or

indirectly, and whether wholly or partly)" by Kulick, in connection with the February

---

"YSA is willing to forego further litigation, including the filing of the amended complaint, in exchange for Mr. Kulick executing deeds-in-lieu of foreclosure voluntarily turning over ownership of each of the subject properties. . . ."  *Id.*

[107] Diveroli testified that it was only because YSA "discovered the fraud and deceit" coupled with the poor conditions of the Properties that YSA decided to record the second mortgages.  Trial Tr. at 188:21–189:13 (Diveroli).  Kulick acknowledged at trial that he repeatedly recorded second mortgages on properties owned by Title Owners.  *Id.* at 110:24–113:7 (Kulick).  Kulick admitted that two weeks before commencing this action he granted a second mortgage on another property owned by a Title Owner.  *Id.* at 112:1–20 (Kulick); JX-170 (granting second mortgage on Jenk's Best Living on October 30, 2025); JX-168 (granting second mortgage on Eaton Place Best Living, LLC on October 24, 2025); JX-155 (granting second mortgage on Bartlesville Best Living, LLC on September 24, 2025).  Kulick explained that 32 of Vesta's 34 properties routinely need cash, and his solution was to have Vesta make a loan to the cash-strapped property, to allow the property to get their reserve funded, and then subsequently pay back to the loan to Vesta. Trial Tr. at 115:7–116:18 (Kulick).  Kulick acknowledged comingling his personal funds with Vesta's to create a "lending pool" to move cash around to pay the debts of one property with proceeds from another.  Trial Tr. at 128:15–18, 129:9–13, 131:6–22 (Kulick).  YSA's forensic accountant confirmed as much, based on his limited review of Kulick's bank accounts. JX-198; JX-194 ("In summary, from November 2024-July 2025 $33.2 million was deposited from the associated real estate portfolio of Vesta and from the net operational flows of the Vesta accounts, and these $33.2 million were comingled and sent to unidentified entities controlled by the controller.").

[108] Dkt. 81 ¶ 21; JX-27; PTO ¶ 6.

[109] JX-27 at 1, 41, 81, 121, 136, 175, 192, 207, 229, 249, 264, 304, 343, 383, 398, 413, 453, 468, 508, 550, 567, 584, 599, 639, 680, 721, 763, 803; *see* JX-221; JX-215; JX-11; JX-169 §§ 1–3, Ex. A.

17

2025 Loan.[110]   Kulick testified that he personally owns interests in each Title Owner.[111]

### F.   Plaintiffs File This Litigation.

Plaintiffs were first to file litigation.  On November 13, 2025, Plaintiffs filed their Complaint against YSA, seeking an order from this Court requiring Defendant to remove the second mortgages.[112]  At the same time, Plaintiffs moved for expedition and separately moved for expedited preliminary and permanent injunctive relief.[113]

On November 25, 2025, the court heard argument on Plaintiffs' motions to expedite and for injunctive relief.[114]   In seeking preliminary injunctive relief, Plaintiffs claimed "many of these properties are under contract or actively being marketed for sale" including one property set to close the next day.[115]   At the

---

[110] JX-16 at 26 ("By February 28, 2025, Guarantor shall deliver to Lender a true, correct, and complete schedule of real estate and entities owned (whether directly or indirectly, and whether wholly or partly) by Guarantor; provided, however, that in the event that the schedule of real estate as of February 28, 2025 is identical to the schedule of real estate most recently provided by Guarantor to Lender, then Guarantor may instead email Lender confirmation that the schedule of provided as of [Date] remains true, correct and complete as of February 14, 2025, in lieu of resubmitting the schedule of real estate.  The same schedule shall provide the percentage of ownership attributable to Guarantor with respect to such real estate and entities and, with respect to real estate, identify which entity the real estate is owned through. Upon delivering same to Lender, Guarantor shall be deemed to have represented and warranted that such schedule is true, correct, and complete as of the date thereof."); JX-27 at 39–40.

[111] Trial Tr. at 8:2–9:11 (Kulick).

[112] Dkt. 1 ¶¶ 37–44.

[113] Dkt. 1 at Plaintiffs' Motion to Expedite; Dkt. 1 at Plaintiffs' Motion for Expedited Preliminary and Permanent Injunction.

[114] Dkt. 14.

[115] 11/25/25 Hr'g Tr. at 4:6–5:10.

preliminary stage, Plaintiffs also claimed Kulick lacked authority to record second mortgages directly on the Title Owners' properties.[116]

The court denied Plaintiffs' request for preliminary injunctive relief because the relief requested—ordering Defendant to lift the second mortgages—was mandatory in nature and thus foreclosed, absent discovery to resolve factual disputes.[117]  But the court granted expedition.  The court directed the parties to "take some targeted discovery" to allow the court to determine "whether the defendant has the authority to impose these mortgages on a full discovery record that reflects the parties' intent." [118]   The court did enjoin YSA from imposing additional second mortgages.[119]

On December 5, Plaintiffs filed their Amended Complaint.[120]  The Amended Complaint asserts one claim.[121]  Plaintiffs claim that Defendant unlawfully recorded the second mortgages and seek a declaratory judgment that the second mortgages are void, coupled with an order from this court directing Defendant to immediately execute and record withdrawals, cancellations, or releases of the second mortgages.[122]

---

[116] *Id.* at 15:24–17:5.

[117] *Id.* at 42:17–43:8.

[118] *Id.* at 44:1–8.

[119] *Id.* at 43:9–24.

[120] Dkt. 22.

[121] *Id.* ¶¶ 39–48 (alleging the second mortgages "are invalid" and seeking a "permanent injunction directing Defendant to immediately execute and record withdrawals, cancellations, or releases of the invalid second mortgage[s].").

[122] *Id.* ¶¶ 42–48.

19

Plaintiffs again moved for Expedited Preliminary and Permanent Injunctive relief (the "Motion").[123]  Defendant opposed the Motion.[124]

After the court preliminarily enjoined additional second mortgages, Defendants moved to set an injunction bond under Court of Chancery Rule 65 (the "Bond Motion").[125]  On December 30, the court granted the Bond Motion, requiring Plaintiffs to post a bond in the amount of $22,368,257.93.[126]  On January 7, 2026, Defendant informed the court that Plaintiffs were unable to post the bond.[127]  Plaintiffs' failure to post bond caused the ordered injunction to dissolve by operation of law.[128]

On February 11, Defendant filed an Amended Answer and brought counterclaims and third-party claims.[129]  Defendant asserted counterclaims against Kulick and Vesta and brought third-party claims against 46 named third-party defendants and Does 1-100 and Roe Entities 1-100.[130]  On March 6, Plaintiffs

---

[123] Dkt. 23.

[124] Dkt. 32.

[125] Dkt. 29; Ct. Ch. R. 65(c).

[126] Dkt. 60 ("In connection with this Court's entry of a temporary restraining order [] in connection with the above-captioned action, within five (5) calendar days of the entry of this Order, Plaintiffs shall post with this Court a secured bond. . . .").

[127] Dkt. 64.

[128] Ct. Ch. R. 65(c).

[129] Dkt. 81.

[130] *Id.* ¶¶ 4–49.

20

answered the Counterclaims.[131]  In May, Defendant began to effectuate service on the counterclaim/third-party defendants.[132]

The court held trial on March 5, 2026.[133]  The parties completed post-trial briefing on March 26, 2026.[134]

## II.    LEGAL ANALYSIS

Plaintiffs seek permanent injunctive relief, asking the court to order Defendant to immediately execute and record withdrawals, cancellations, or releases of the second mortgages.[135]  To obtain a permanent injunction, "a party must show (i) actual success on the merits, (ii) the inadequacy of remedies at law, and (iii) a balancing of the equities that favors an injunction." [136]   A party need not show imminent irreparable harm to obtain a permanent injunction. [137] There are other ways to demonstrate no adequate remedy at law.[138]

Permanent injunctive relief comes in one of two forms: prohibitive or mandatory.  "A permanent injunction is a form of final relief that prohibits a party

---

[131] Dkt. 93.

[132] Dkt. 107; Dkt. 108; Dkt. 109; Dkt. 110; Dkt. 111; Dkt. 112; Dkt. 113.

[133] Dkt. 92.

[134] Dkt. 103.

[135] Dkt. 22 ¶ 48.

[136] *In re COVID-Related Restrictions on Religious Svcs.*, 285 A.3d 1205, 1232–33 (Del. Ch. 2022), *aff'd*, 326 A.3d 626 (Del. 2024).

[137] *Id*. at 1228–31; 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2944 (3d ed.) ("[I]rreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy.").

[138] *Id*. at 1230.

from taking action or compels a party to take action."[139]  Its negative version serves

as a prohibitive injunction, "whereby defendant is perpetually inhibited from the

assertion of an assumed right, or perpetually restrained from the commission of an

act which would be contrary to equity and good conscience."[140]  Its affirmative or

mandatory version compels a party to take specific action.[141]

An order directing YSA to undertake specific affirmative actions to remove the

second mortgages is mandatory in nature.[142]  Kulick bears the burden of proving that

the second mortgages are "invalid" as a matter of law and that he has "clearly

established" the legal right to have the court order YSA to cancel the second

mortgages.[143]  To show success on the merits, therefore, Plaintiffs must "clearly

establish" the legal right they seek to enforce.[144]  "The showing on the merits required

---

[139] *Glob. Cap. P'rs LLC v. Green Sapphire Hldgs., Inc.*, 2026 WL 709819, at *45 (Del. Ch. Mar. 13, 2026), *judgment entered*, (Del. Ch. 2026).

[140] *Id.* (quoting James L. High, *A Treatise on the Law of Injunctions as Administered in the Courts of the United States and England* § 3, at 4 (1879)); *see In re COVID*, 285 A.3d at 1228; *NEC Fund VI HE Lender, LLC v. Hecate Hldgs. LLC*, 2026 WL 527007, at *7 (Del. Ch. Feb. 25, 2026).

[141] *In re COVID*, 285 A.3d at 1226 n.4; 43A C.J.S. Injunctions § 19 ("A mandatory injunction is an equitable remedy that commands the subject of the order to perform an affirmative act to undo a wrongful act or injury."); *Hughes Tool Co. v. Fawcett Publications, Inc.*, 315 A.2d 577, 579 (Del. 1974); *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 16.02[c] (2025) ("[A] mandatory injunction requires an individual to perform a specific act.").

[142] Dkt. 22 ¶ 48.

[143] *DeMarco v. Christiana Care Health Servs., Inc.*, 263 A.3d 423, 434 (Del. Ch. 2021).

[144] *DeMarco*, 263 A.3d at 434; *Kingsbridge Cap. Gp. v. Dunkin' Donuts Inc.*, 1989 WL 89449, at *3 (Del. Ch. Aug. 7, 1989); *see Pomilio v. Caserta*, 215 A.2d 924, 925 (Del. 1965) ("There is no right to an injunction as a matter of course; and this is especially

22

by the 'clearly established' standard is 'more than a reasonable probability of success.'[145] Satisfying the 'clearly established' standard requires "a showing that the petitioner is entitled as a matter of law to the relief" sought.[146]

Plaintiffs' claim flounders on the first element—Plaintiffs have not clearly established the right at issue. Plaintiffs' primary argument is that neither the CPSAs, nor the Joinders, nor the POAs, define Collateral to include properties held by the Title Owners. In the alternative, Plaintiffs argue that the CPSAs are usurious and cannot be enforced even if the CPSAs support Defendant's right to record the second mortgages.[147]

### A. Contractual Entitlement

Plaintiffs argue that Defendant must remove the second mortgages because the definition of "Collateral" in the Loan Documents did not create a security interest

---

so as to the mandatory writ which is issuable only in the exercise of extraordinary judicial caution.").

[145] *DeMarco*, 263 A.3d at 423 (quoting Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 14.03[b][6], at 14-03.44 (2021)); *Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1120 (Del. Ch. 1990) ("Upon an application for mandatory preliminary relief, however, plaintiff must show more than a reasonable probability of success on the merits; he must clearly establish the legal right he seeks to protect or the duty he seeks to enforce.").

[146] *Alpha Nat. Res., Inc. v. Cliff's Nat. Res., Inc.*, 2008 WL 4951060, at *2 (Del. Ch. Nov. 6, 2008); *Bertucci's Rest. Corp. v. New Castle Cnty.*, 836 A.2d 515, 519 (Del. Ch. 2003) ("[T]he Court of Chancery has consistently applied an exacting standard, requiring that an applicant seeking mandatory preliminary injunctive relief clearly establish the legal right he seeks to protect or the duty he seeks to enforce." (internal quotation omitted)).

[147] Dkt. 95 at 33.

in the Properties.[148]  Defendant disputes Plaintiffs' interpretation of Collateral but says that it does not matter, because Defendant had the right to record the second mortgages even assuming Plaintiffs' interpretation. [149]  This decision rules in Defendant's favor, concluding that Defendant had the right to record the mortgages even under Plaintiffs' interpretation.

The court's task is to interpret the Loan Documents in a way that carries out the parties' intent.[150]  Absent ambiguity, the court "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions."[151]  The contract terms will be given their "plain, ordinary meaning."[152]  "[T]he meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan."[153]  The court must "reconcile all the provisions of the instrument" if possible. [154]  When a

---

[148] *Id.* at 19–21.

[149] Dkt. 100 at 23–24; Dkt. 106 at 45.

[150] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

[151] *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (quoting *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014)).

[152] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (citing *City Investing Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993)).

[153] *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985); *accord HUMC Holdco, LLC v. MPT of Hoboken TRS, LLC*, 2020 WL 3620220, at *6 & n.40 (Del. Ch. July 2, 2020); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *50 & n.648 (Del. Ch. Dec. 3, 2018).

[154] *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998).

transaction consists of multiple documents, Delaware courts will interpret the documents as one singular contract.[155]

Where language is unambiguous, courts "will give effect to the plain meaning of the contract's terms and provisions."[156] "Language is ambiguous if it is susceptible to more than one reasonable interpretation."[157] "An interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'"[158] "The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous."[159] "Ambiguity does not exist where the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.'"[160] If ambiguity exists, then the court "may consider extrinsic evidence to resolve the ambiguity."[161]

---

[155] *See, e.g., E.I. du Pont de Nemours & Co.*, 498 A.2d at 1115 ("The specific provisions of these Agreements and the interrelationship thereof make it clear that the parties intended these two Agreements to operate as two halves of the same business transaction . . . Where two agreements are executed on the same day and are coordinated to the degree outlined above, in essence, they form one contract and must be examined as such." (internal citations omitted)); *Karish v. SI Int'l, Inc.*, 2002 WL 1402303, at *3 (Del. Ch. June 24, 2002).

[156] *Manti Hldgs., LLC v. Authentix Acq. Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010)).

[157] *Id.* (citing *Osborn*, 991 A.2d at 1160).

[158] *Id.* (quoting *Osborn*, 991 A.2d at 1160).

[159] *Id.* (quoting *Osborn*, 991 A.2d at 1160).

[160] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. App. 1983)).

[161] *Salamone*, 106 A.3d at 374 (citation omitted).

25

Plaintiffs rest their contract claim on the definition of "Collateral" in the CPSAs.  Under the CPSAs, Borrower[162] and Pledgor[163] agreed to "pledge, grant, and assign to Lender a security interest in and lien upon the Collateral . . . to secure the payment and the performance of the Obligations . . . ."[164]  The CPSA defines "Collateral" to include "the Interest and any and all other interests in any Entity that are now owned or hereafter acquired by Borrower or Pledgor, as applicable in or to any Entity, together with (i) all additional membership interests or other equity interests in any Entity now or hereafter acquired by Borrower or Pledgor, as applicable, . . ."[165]  The CPSAs define "Interests" with reference to two other defined terms—"Unencumbered Interests" and "Encumbered Interests."[166]  Those terms are defined as Borrower's and Pledgor's "membership interest[s]" in the Intermediate Holding Companies listed in the recitals of the CPSAs.[167]  In Plaintiffs' view, the

---

[162] Asset Holder, Vesta, and Parc 1010 HoldCo., LLC are each a "Borrower" under one of the Defaulted Loans.  JX-16 at 1; JX-17 at 1; JX-20 at 1; JX-21 at 1.

[163] Vesta and Kulick Manager, LLC are each a "Pledgor" under one or more of the Defaulted Loans.  JX-16 at 1; JX-17 at 1; JX-20 at 1; JX-21 at 1.

[164] JX-16 at 10; JX-17 at 11–12; JX-20 at 10; JX-21 at 10.

[165] JX-16 at 10; JX-17 at 11–12; JX-20 at 10; JX-21 at 10.

[166] JX-16 at 9; JX-17 at 11; JX-20 at 9; JX-21 at 9.

[167] *See, e.g.*, JX-16 at 9 (defining the Unencumbered Interests as the Borrower's membership interest in the following Intermediate Holding Companies: Capitol on 28th Investors, LLC; Remington Ranch Investors, LLC; Copperfield Investors, LLC; Putnam Investors, LLC); *id.* (defining the Encumbered Interests as Pledgor's membership interest in the following Intermediate Holding Companies: Woodscape Investors, LLC; Barcelona Best Living, LLC; Riverpark Best Living Investors, LLC; Montgomery Vesta Investors, LLC; Fairfax Holding Company, LLC; OKC3 Investors, LLC; Eton Investor, LLC; Eaton Place Investor, LLC; W.O. Holding Co., LLC; Regency Holdings, LLC; Woodland Manor Holdings, LLC; 727-Classes Best Living

26

definition of "Collateral" does not extend to the assets held by these entities, which include the Properties.[168]  Rather, the CPSAs gave Defendant a security interest in Plaintiffs' *membership interests* in the entities, full stop.

Plaintiffs' argument is a red herring.  Defendant concedes that the Loan Documents did not create a secured interest in the Properties.[169]  Rather, they created a secured interest in the entities that own the Properties.  The Loan Documents also gave Defendant the right to take action against real property owned by those entities, including the Properties.

Defendant's interpretation begins with the Joinder.  The Joinder states that:

> [Marc Kulick], as a manager, member or other authorized person *of any and all Guarantor Entities* and *any other entities in which the undersigned does now own or control or may herein after own or control* during the term of that certain [February CPSA, April CPSA, and July CPSAs] hereby agrees *to jointly and severally assume all obligations of Pledgor* under the [February CPSA, April CPSA, and July CPSAs] for all purposes thereof on the terms set forth therein and to be bound by the terms of the [February CPSA, April CPSA, and July CPSAs] as fully as if [Marc Kulick] had personally and individually executed

---

Investors, LLC; Muntage Vesta Investors, LLC); JX-20 at 9 (identifying the Unencumbered Interests as Borrower's membership interest in the following Intermediate Holding Companies: Capitol on 28th Investors, LLC; Remington Ranch Investors, LLC; Copperfield Investors, LLC; Putnam Investors, LLC); JX-21 at 9 (identifying the Encumbered Interests as Pledgor's membership interest in the following Intermediate Holding Companies: Woodscape Investors, LLC; Barcelona Best Living, LLC; Riverpark Best Living Investors, LLC; Montgomery Vesta Investors, LLC; Fairfax Holding Company, LLC; OKC3 Investors, LLC; Eton Investor, LLC; Eaton Place Investor, LLC; W.O. Holding Co., LLC; Regency Holdings, LLC; Woodland Manor Holdings, LLC; 727-Classes Best Living Investors, LLC; Muntage Vesta Investors, LLC); *see* PTO ¶ 10.

[168] Dkt. 95 at 15–21.

[169] *See* Dkt. 100 at 18–24.

and delivered the [February CPSA, April CPSA, and July CPSAs] as of the date thereof.[170]

Kulick admitted at trial that he signed the Joinder and that he did so "as manager, member or other authorized person of" two broad categories of entities, including "any and all Guarantor Entities" and "any other entities in which [Kulick] does now own or control or may here after own or control . . . ."[171]

Under the CPSA, "Guarantor Entities" includes the Title Owners.[172] The CPSA defined "Guarantor Entities" as "any entity directly or indirectly controlled or managed by [Kulick]," or "directly or indirectly owned by [Kulick] in whole or in part with respect to which Guarantor receives notices in the ordinary course of business[.]"[173]

This definition of Guarantor Entities sweeps in the Title Owners in multiple ways. First, the definition includes entities that Kulick owns in part. At trial, Kulick admitted that he had an investment in each of the Title Owners and Properties.[174]

---

[170] Trial Tr. at 20:2–21:6, 61:12–65:15 (Kulick); JX-16 at 22; JX-17 at 25; JX-20 at 22; JX-21 at 22. The Joinders are substantively identical. The only difference among the Joinders is the identity of the Kulick-affiliated entities named as Pledgor under the respective CPSA. *See* JX-16 at 1 (identifying Vesta as Pledgor); JX-17 at 1 (identifying Kulick Manager, LLC as Pledgor); JX-20 at 1 (identifying Vesta as Pledgor); JX-21 at 1 (identifying Vesta as Pledgor).

[171] Trial Tr. at 61:12–62:7 (Kulick).

[172] JX-169 ¶¶ 1–3, Ex. A (providing Kulick is the "sole Member" and "100%" owner of Louis Investments, LLC, and identifying the Title Owners as "directly or indirectly" owned by Louis Investments, LLC).

[173] JX-16 at 12; JX-20 at 12; JX-21 at 12.

[174] Trial Tr. at 69:1–2 (Kulick) ("I have an investment in each property."); JX-169 ¶¶ 1–3, Ex. A.

28

And Kulick identified every one of the Title Owners in response to a provision in his Guaranty requiring him to provide a "complete schedule of . . . entities owned (whether directly or indirectly, and whether wholly or partly) by Guarantor."[175] Thus, at a minimum, Kulick "indirectly own[s] . . . in part" each Title Owner. Second, Kulick controls or manages the Title Owners, as he testified at trial.[176] That too brings them within the scope of the Guarantor Entities.

Because each Title Owner is a Guarantor Entity, each Title Owner assumed "all obligations of Pledgor under the [CPSA] for all purposes thereof on the terms set forth therein and to be bound by the terms of the [CPSA]" by operation of the Joinder.[177] Thus, the Joinder renders each Title Owner an additional Pledgor under the CPSA, subject to the Pledgor's obligations under the CPSA.

Each Pledgor has obligations under the Power of Attorney provision of the CPSA. The Power of Attorney states that:

> Through exercise of this irrevocable power of attorney, Lender may take whatever steps that it deems necessary in its sole discretion to secure and protect its interests, including but not limited to filing any action and doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender. This shall include but not be limited to taking any action against any of the Collateral or any real or personal property owned by the Collateral.[178]

---

[175] JX-16 at 26; JX-27 at 39–40.

[176] Trial Tr. at 63:24–67:21 (Kulick); *see* JX-168 at Ex. A.

[177] JX-16 at 22; JX-20 at 22; JX-21 at 22.

[178] JX-16 at 13; JX-20 at 13; JX-21 at 13.

The first sentence of this provision gives YSA the right to "take whatever steps that it deems necessary in its sole discretion to secure and protect its interests."[179] This expressly includes "doing whatever else is necessary to protect its interests, enforce its rights, and collect all amounts due to Lender."[180] This power is not tied to or limited by the definition of Collateral. The second sentence does reference "taking action against the Collateral" but as a non-exclusive right. It reads: "This shall include *but not be limited to* taking any action against any of the Collateral. . . ."[181] By defining "action against the Collateral" as a non-exclusive right encompassed by the preceding sentence, the language and structure of the Power of Attorney indicate that the parties intended for YSA's rights to extend beyond the right to take "action against the Collateral."

Eliminating all doubt, the Power of Attorney provision uses the word "secure."[182] It gives YSA the right to take "whatever steps that it deems necessary in its sole discretion to *secure* and protect its interests[.]," including "whatever . . . is necessary to . . . collect all amounts due" to YSA.[183] The Power of Attorney thus grants YSA the right, if YSA deems it necessary, to "secure" its interests against those entities bound by the Joinder, including the Title Owners, to facilitate payment of

---

[179] JX-16 at 13; JX-20 at 13; JX-21 at 13.

[180] JX-16 at 13; JX-20 at 13; JX-21 at 13.

[181] JX-16 at 13; JX-20 at 13; JX-21 at 13 (emphasis added).

[182] JX-16 at 13; JX-20 at 13; JX-21 at 13.

[183] JX-16 at 13; JX-20 at 13; JX-21 at 13. (emphasis added).

30

amounts due to YSA. YSA deemed the second mortgages necessary to protect its rights to collect amounts due to it.[184] Plaintiffs do not argue otherwise.

Plaintiffs instead argue that Defendant's interpretation runs afoul of Article Nine of the UCC.[185] According to Plaintiffs, the CPSAs had to describe the Collateral consistent with Article Nine of the UCC.[186] Under Article Nine, and a recent case interpreting it, that description must "reasonably identif[y] what is described."[187] The Loan Documents provided the full name and state of incorporation of each Intermediate Holding Companies entity comprising the Collateral.[188] But it did not list the details of the Properties. It does not so much as list: the Title Owners, the Properties, or the Properties' addresses.[189] Plaintiffs say that neither the CPSAs nor

---

[184] Trial Tr. at 190:15–191:13 (Diveroli); *id.* at 196:17–200:6 (Miley).

[185] Dkt. 95 at 20–21; Dkt. 103 at 3–6.

[186] Dkt. 103 at 3–6; *see Haft v. Haft*, 671 A.2d 413, 417 (Del. Ch. 1995) ("Article 9 generally governs the creation, perfection, and enforcement of security interests in property and applies to 'any transaction (regardless of its form) which is intended to create a security interest in personal property.'" (quoting 6 *Del. C.* § 9-102(1)(a))).

[187] 6 *Del. C.* § 9-108(a) ("[A] description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described."); *Cannon v. Romeo Sys., Inc.*, 2025 WL 2848069, at *22 (Del. Ch. Oct. 7, 2025) ("[T]he description must objectively identify the collateral so that, at a minimum, it 'puts subsequent creditors on notice so that, aided by inquiry, they may reasonably identify the collateral involved.'" (quoting *Bishop v. All. Banking Co.*, 412 S.W.3d 217, 220 (Ct. App. KY, 2013))); *see* 6 *Del. C.* § 9-108, cmt. 2. ("The test of sufficiency of a description under this section . . . is that the description do the job assigned to it: make possible the identification of the collateral described. This section rejects any requirement that a description is insufficient unless it is exact and detailed (the so-called 'serial number' test).").

[188] JX-16 at 9; JX-20 at 9; JX-21 at 9.

[189] *See generally* JX-16; *see also* Trial Tr. at 205:24–206:6 (Miley).

any of the Loan Documents reasonably identify the Properties consistent with Article Nine.[190] Plaintiffs, therefore, contend that Article Nine prevents a security interest from attaching to the Properties because the Properties are not mentioned, let alone described in the CPSAs.[191]

But again, Plaintiffs' argument is of no moment. Defendant admits that the Loan Documents standing alone did not create a secured interest in the Properties. Defendant argues that they did not have to, because the Loan Documents gave Defendant the right in its "sole discretion to secure and protect its interests" by "taking any action against . . . . any real or personal property owned by the Collateral," including the Properties. And the Loan Documents reasonably describe the Collateral by providing the full name and state of incorporation of each entity comprising the Collateral.

Contrary to Plaintiffs' contentions, the Loan Documents granted YSA expansive rights to take actions against real property owned by Collateral. YSA exercised that right by recording the second mortgages on real property owned by the Collateral, in this case Properties owned by the Intermediate Holding Companies.

Parol evidence confirms what the plain language of the Loan Documents requires. When Kulick requested a substantially larger loan from YSA, he had only

---

[190] Dkt. 95 at 20–21.

[191] *Id.* at 3, 20–21, 29–30.

just repaid the October 8 Loan three weeks late.[192] YSA required more protection

than it had on previous loans.[193] In a February 10, 2025 email to his colleague, Miley

explained that YSA needed to hire a lawyer or other professional to advise on "a loan

whereby we would be providing funding to a multi-family real estate firm which

would be secured by the firm's real estate portfolio."[194]

On February 18, 2025, Miley texted Kulick: "Where this had previously

included 17 total entities (4 unencumbered), are we expanding to rest of portfolio? If

so, can you please send me a paragraph that I can copy into it with the other

entities?"[195] Kulick was in a rush to get funded,[196] and so Kulick told Miley to leave

---

[192] JX-10 at 2 (identifying January 8, 2025 as the maturity date of the October 8 Loan); JX-58 (informing Diveroli on January 13, 2025 the October 8 Loan would be repaid on January 20); JX-22 (providing the October 8 Loan was repaid on January 21, 2025); JX-3 at 35 (requesting a "longer term" Loan on January 31); JX-222 (searching for a real estate consultant on February 10 regarding a "loan to Vesta" and seeking expertise to ensure YSA is "as protected by the collateral as we think we are").

[193] Trial Tr. at 149:23–151:24 (Diveroli); JX-77 at 2 (requesting Kulick identify the owner of each Property); JX-76 (requesting Kulick submit to "due diligence" in connection with the February 2025 Loan); JX-73 at 2.

[194] JX-222 at 1.

[195] JX-12 at 2.

[196] JX-73 at 2. Shortly after Miley asked Kulick if he had a paragraph to use for the Joinder Kulick exclaimed, "[M]y biggest concern is as usual (lol) funding. Do we have enough time to get this done?" JX-12 at 2. Less than 15 minutes later, Kulick asked: "Efraim can we please get sign off so we can push ahead[.]" *Id.* at 3. Two hours later, Kulick again pled for the Loan to be funded that day. *Id.* at 3 ("Can we find a way to fund today still[?]").

33

it the same.[197] Kulick texted back: "The answer is yes and no. I suggest we keep that the same but maybe add a joinder to the portfolio as a whole."[198]

Putting a fine point on it, in the preceding text message, Miley asked two questions: (1) "are we expanding to rest of portfolio"; and (2) "can you please send me a paragraph?" Kulick responded to each in turn: (1) "yes"; and (2) "no."[199] Yes, they were expanding to the rest of the portfolio. No, no language was necessary. Instead, Kulick suggested "a joinder to the portfolio as a whole."[200] Vesta's website refers to the word "portfolio" as individual real properties owned or controlled by Vesta,[201] supporting that Kulick intended "portfolio" to refer to real properties.[202]

Kulick also referred in the exchanges that day to "a joinder with any asset controlled by any affiliate of mine," and "a joinder that joins any asset controlled by any affiliate of mine."[203] If Kulick intended the Joinder to be limited to adding entities to stand behind the same Collateral in the CPSA, there would have been no reason to refer to joining "any asset of any affiliate."

---

[197] JX-12; *see* JX-13 ("No change to [CPSA] at all except to add a joinder *that joins any asset controlled by any affiliate of mine*." (emphasis added)).

[198] JX-12 at 2.

[199] *Id.*

[200] *Id.*

[201] JX-185.

[202] Trial Tr. at 149:23–151:9 (Diveroli); *id.* at 82:2–23 (Kulick).

[203] JX-13.

Consistent with this contemporaneous evidence, both Diveroli and Miley testified that, prior to the February 2025 Loan, Kulick agreed to pledge his entire portfolio to support the next loan.[204]

Plaintiffs also argue that it does not make sense that Kulick would pledge $900 million worth of additional property to support a $1.5–2 million loan. But Kulick wanted the loans, YSA wanted greater protection, this is the compromise that Kulick proposed and ultimately the deal the parties struck.[205]

## B.    Usury Defense

Plaintiffs separately raise a usury defense, contending that the interest rates of the Loans are "facially unreasonable[.]"[206] But Section 2306 forecloses any defense based on the interest rate charged because here the borrower of each Loan was a limited liability company. [207]  Section 2306 provides: "No corporation, limited partnership, statutory trust, business trust or *limited liability company, . . . shall interpose the defense of usury in any action.*"[208] Delaware courts have consistently declined invitations to deviate from Section 2306's mandate, even where the

---

[204] Trial Tr. at 185:5–9 (Diveroli); *id.* at 196:17–197:7 (Miley).

[205] Trial Tr. at 29:9–17 (Kulick) (testifying that "[t]hroughout 2025 I was desperate for access to money to come into my business"); *id.* at 84:13–18 (Kulick) ("I was not of the opinion that they needed additional collateral. . . . But this was meant to solve an issue that was stopping us from getting the loan done that I desperately needed.").

[206] Dkt. 95 at 32–34.

[207] 6 *Del. C.* § 2306.

[208] *Id.* (emphasis added).

35

individual indorser or guarantor is a natural person.[209]  Because the defense of usury would not be available to the entity Borrowers under the Loan Documents, the defense is not available to Kulick.[210]

## III.   CONCLUSION

Because Plaintiffs have not demonstrated clear legal entitlement to the mandatory injunctive relief they seek, this decision need not reach the other elements of the claim or the other arguments raised by Defendant.[211]  Plaintiffs' failure to prove an essential element of their claim warrants judgment for Defendant.

---

[209] *Bank of Delaware v. NMD Realty Co.,* 325 A.2d 108, 111 (Del. Super. 1974) (holding that "individual defendants as accommodation indorsers are not entitled to assert the defense of usury inasmuch as it was not an available defense for the corporate maker of the notes"); *MacNeil v. Cusato*, 1998 WL 1029267, at *4 (Del. Super. Nov. 30, 1998) ("Whether Defendant's position is termed privy, guarantor, or accommodation party, the result consistently is estoppel from asserting usury where such defense was not available to the original debtor. . . . Defendant, as guarantor, was no stranger to the corporation's preclusion from the defense of usury. Upon the Corporation's expiration, the Defendant-guarantor was not transformed into an individual-debtor who could then assert the defense of usury."); *River Bank Am. v. Tally-Ho Assocs., L.P.*, 1991 WL 35719, at *6 (Del. Super. Feb. 22, 1991) ("Under Delaware law, an individual who is surety or guarantor of the corporate obligation is under the same disability to assert the defense of usury as the corporation.").

[210] *NMD Realty Co.,* 325 A.2d at 111.

[211] YSA raised other arguments including that Kulick, Vesta, and Asset Holder lacked standing because none hold title to the Properties subject to the second mortgages. Dkt. 100 at 12.  Having found that Plaintiffs failed to establish a right to have the second mortgages removed, the court need not reach any other argument.

36

# EXHIBIT 15



Garnett

16 11320
15 11324
11 11326
1 11501
2 11525
26
17 11322
12 11328
18 11323
10 11504
9 11520
3 11524
8
4 11526
5 11528
20 11321 Office
19 11325
13 11333
14 11327
7 11501
6 11539

So. 115th E. Ave
So. 116th E. Ave

E. 23rd Street

23 11524
11534
21 11504
22 11506
25
24 11518



# 23 EAST
APARTMENTS & VILLAS

11327 E 23rd St.
Tulsa, OK 74129
www.23EastApartments.com

# 23 East Apartments




Case 3:23-17808-SD Doc 776-4 Filed 03/28/25 Page 240 of 240